## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

IN RE:                      )    **Chapter 7**

                         )

**OUR ALCHEMY, LLC,** *et al.*,    )    **Case No. 16-11596-KG**

                         )    **Jointly Administered**

          **Debtors.**       )

                         )

_____  )

                         )

**GEORGE L MILLER In His Capacity as**  )

**Chapter 7 Trustee for the jointly**  )

**administered bankruptcy estates of Our**  )

**Alchemy, LLC and Anderson Digital, LLC,**  )

                         )    **Adv. Proc. No.  18-50633 (KG)**

         **Plaintiff,**      )

                         )

         **v.**             )

                         )

**ANCONNECT, LLC; ANDERSON**  )

**MERCHANDISERS, LLC; ANDERSON**  )

**MERCHANDISERS CANADA, INC.; OA**  )

**INVESTMENT PARTNERS LLC; OA**  )

**INVESTMENT HOLDINGS LLC;**  )

**VIRGO INVESTMENT GROUP, LLC;**  )

**VIRGO SOCIETAS PARTNERS, LLC;**  )

**VIRGO SOCIETAS PARTNERSHIP III**  )

**(ONSHORE), L.P.; VIRGO SOCIETAS**  )

**PARTNERSHIP III (OFFSHORE), L.P.;**  )

**VIRGO SERVICE COMPANY LLC;**  )

**ARC ENTERTAINMENT, LLC; ARDON**  )

**MOORE; MARK PEREZ; JESSE**  )

**WATSON; TODD DORFMAN; BILL**  )

**LEE; STEPHEN LYONS; and FREYR**  )

**THOR,**  )

         **Defendants.**  )

## MEMORANDUM OF LAW IN SUPPORT OF ANCONNECT, LLC AND ANDERSON MERCHANDISERS, LLC'S MOTION TO DISMISS <u>COUNTS I, II, III, IV, AND V OF THE TRUSTEE'S COMPLAINT</u>

Dated: October 15, 2018
Wilmington, DE

Respectfully Submitted,

**PEPPER HAMILTON LLP**

/s/ Evelyn J. Meltzer
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Tel: (302)-777-6532
Fax: (302)-421-8390
strattond@pepperlaw.com
meltzere@pepperlaw.com

-and-

**ALSTON & BIRD LLP**
Grant T. Stein
David A. Wender
William Hao
1201 West Peachtree Street
Atlanta, Georgia, 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
Grant.stein@alston.com
David.wender@alston.com
William.hao@alston.com

*Counsel to ANConnect, LLC and Anderson
Merchandisers, LLC*

**TABLE OF CONTENTS**

I.    STATEMENT OF THE NATURE AND STAGE OF
      PROCEEDINGS ................................................................................. 1

II.   SUMMARY OF THE ARGUMENT ................................................... 2

III.  STATEMENT OF FACTS.................................................................. 5

      A. Alleged Avoidable Transfers:  Counts I, II, III, IV, and V........................... 5

          1. *Alleged Avoidable Transfers:  Counts I, II, III, and V -*
             *$29,888,124.40 Cash Purchase Price Plus Assumption of*
             *Liabilities…………………* ..................................................................... 6

          2. *Alleged Avoidable Transfers:  Counts I, II, III, and V -*
             *$2,089,775.45 in Reimbursement Fees* .......................................... 7

          3. *Alleged Avoidable Transfers:  Counts I, II, III, and V - $510,000*
             *From Anderson Digital to ANConnect* ............................................ 8

          4. *Alleged Preferential Transfers:  Count IV - §§ 547 and 550*
             *Avoidance Claims Against AMerch - $3,208,314.00 and*
             *Reimbursement Fees*.................................................................. 8

IV.   ARGUMENT AND CITATION OF AUTHORITY........................................ 10

      A. The Pleading Standards Of *Twombly*, *Iqbal*, *Valley Media*, And
         *Zazzali* Set The Applicable Review Standard. ................................. 10

      B. Count I for Actual Fraud Should be Dismissed............................... 11

      C. Count II for Constructive Fraud Should be Dismissed. .................. 13

          1. *The Complaint Fails To Plausibly Allege That the ANConnect*
             *Transaction Was For Less Than Reasonably Equivalent Value*............... 15

          2. *The Complaint Fails To Plausibly Allege That The Reimbursement*
             *Fees Transfers Were Made For Less Than Reasonably Equivalent*
             *Value Or Adequately Identify Them By Date Or Amount* ..................... 16

          3. *The Complaint Fails To Allege That Anderson Digital Was*
             *Insolvent At The Time Of The July 2, 2015 Transfer* ..................... 17

      D. Count V for Actual and Constructive Fraudulent Conveyance under
         Delaware State Law Should be Dismissed..................................... 18

**E. Count III for Unjust Enrichment Should be Dismissed**................................ **19**

**F. Count IV for Preferential Transfers to AMerch Should be Dismissed.**........................................................................................... **20**

**V.      CONCLUSION** ............................................................................................... **23**

#50507410 v2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re AgFeed USA, LLC,*
    546 B.R. 318 (Bankr. D. Del. 2016) .................................................................13, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................2, 10, 12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................2, 10, 13

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) .................................................................9,12, 21

*Circuit City Stores, Inc. v. Citgo Petroleum Corp.,*
    1994 WL 483463 (E.D. Pa. Sept. 7, 1994) .......................................................2

*Cortec Indus., Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2nd Cir.1991).................................................................................21

*Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.,*
    879 F.3d 79 (3d Cir. 2018).................................................................................18

*In re Direct Response Media, Inc.,*
    466 B.R. 626 (Bankr. D. Del. 2012) .................................................................17

*In re Fedders N. Am., Inc.,*
    405 B.R. 527 (Bankr. D. Del. 2009) .................................................................13

*Fleer Corp. v. Topps Chewing Gum, Inc.,*
    539 A.2d 1060 (Del. 1988) .................................................................................19

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d. Cir. 2009).............................................................................11

*Friedberg v. Barefoot Architect Inc,*
    723 F. App'x 100 (3d Cir. 2018) ................................................................11, 12

*Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.),*
    327 B.R. 711 (Bankr. D. Del. 2005) .................................................................15

*Godlewski v. Affiliated Computer Servs., Inc.,*
    210 F.R.D. 571 (E.D. Va. 2002) .........................................................................2

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.,*
    434 F. Supp. 2d 598 (N.D. Iowa 2006).............................................................2

*In re Image Masters, Inc.*,
   421 B.R.164 (E.D. Pa. 2009) ............................................................................21

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009)..........................................................................19

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
   945 F.2d 635 (3d Cir. 1996)..............................................................................14

*Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*,
   92 F.3d 139 (3d Cir.1996)..................................................................................14

*In re Mervyn's Holdings, LLC*,
   426 B.R. 96, 104 (Bankr. D. Del. 2010) ...........................................................20

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ...............................................................................19

*Pardo v. Gonzaba (In re APF Co.)*,
   308 B.R. 183 (Bankr. D. Del. 2004) ..................................................................17

*In re PennySaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D. Del. 2018) ..................................................................16

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
   998 F.2d 1192 (3rd Cir. 1993) ..........................................................................21

*Pension Transfer Corp. v. Beneficiaries Under the Third Amend. to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*,
   444 F.3d 203 (3d Cir. 2006).........................................................................14, 15

*In re Physiotherapy Holdings, Inc.*,
   No. 13-12965(KG), 2016 WL 3611831 (Bankr. D. Del. June 20, 2016) ...............12

*Rubin v. Mfrs. Hanover Trust Co.*,
   661 F.2d 979 (2d Cir. 1981).........................................................................14, 17

*In re United Tax Grp., LLC*,
   No. 14-10486 (LSS), 2016 WL 7235622 (Bankr. D. Del. Dec. 13, 2016) .............15

*Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*,
   288 B.R. 189 (Bankr. D. Del. 2003) ..................................................................20

*Watterson v. Page*,
   987 F.2d 1 (1st Cir.1993)...................................................................................21

iv

*Zazzali v. Swenson (In re DBSI, Inc.),*
   No. 10-54649, 2011 WL 1810632 (Bankr. D. Del. May 5, 2011)....................................11, 16

**STATUTES**

11 U.S.C. § 544, 548 and 550 ......................................................................................... *passim*

Delaware Uniform Fraudulent Transfer Act §§ 1304(a) and 1305(a) .......................................3, 5

**RULES**

Del. Bankr. L.R. 7012-1...................................................................................................................5

Fed. R. Bankr. P. 7008 .................................................................................................................10

Fed. R. Bankr. P. 7012(b) ....................................................................................................1, 5, 10

Fed. R. Civ. P. 8 ...........................................................................................................................10

Fed. R. Civ. P. 9 ...........................................................................................................................11

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 2, 10

#50507410 v2

ANConnect, LLC ("**ANConnect**"), and Anderson Merchandisers, LLC ("**AMerch**") hereby file this memorandum of law (the "**Supporting Memorandum**") in support of the *ANConnect, LLC and Anderson Merchandisers, LLC's Motion to Dismiss Counts I, II, III, IV, and V of the Trustee's Complaint* (the Motion, together with the Supporting Memorandum**,** the "**Motion to Dismiss**").  The Motion to Dismiss the Trustee's[1] complaint (the "**Complaint**")[2] is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures (the "**Federal Rules**"), incorporated herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  In support of the Motion to Dismiss, ANConnect and AMerch show as follows:

## I.    STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Plaintiff commenced the above-captioned Adversary Proceeding on June 29, 2018 by filing the Complaint wherein Plaintiff is seeking, among other claims, to avoid and recover certain purported preferential and fraudulent transfers made by Debtors to ANConnect and AMerch.

On August 2, 2018, this Court entered its order approving a stipulation extending the period in which ANConnect and AMerch could respond to the Complaint to October 15, 2018 [Dkt. No. 6].  On October 15, 2018, in accordance with their stipulation with Plaintiff and the order of the Court, ANConnect and AMerch filed their Motion to Dismiss.  By the Motion to Dismiss, ANConnect and AMerch move the Court to dismiss certain counts of the Trustee's

---

[1]    The Plaintiff is George L. Miller, in his capacity as Chapter 7 Trustee (the "**Trustee**" or "**Plaintiff**") for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC (the "**Debtors**").
[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

Complaint that apply to them as identified herein.[3]  For the reasons explained more fully below, the Court should grant the Motion to Dismiss filed by ANConnect and AMerch.

The Motion to Dismiss by ANConnect and AMerch is the fifth motion to dismiss filed by the seventeen different defendants in this Adversary Proceeding.  *See* Docket Nos. 7, 12, 24, 26. Although this Motion to Dismiss is made solely in respect of the claims asserted against ANConnect and AMerch, and does not address issues raised by any of the other Defendants' motions to dismiss, ANConnect and AMerch believe that, in anticipation of potentially having the Plaintiff file an amended Complaint after the Court considers and rules on the different motions to dismiss, it is in the interest of the efficient administration of this case for the Court to defer ruling on any single motion to dismiss and instead rule on the separate motions to dismiss simultaneously to ensure that the Adversary Proceeding proceeds efficiently and without unnecessary duplication.

## II.    SUMMARY OF THE ARGUMENT

A.    Counts I, II, III, IV, and V[4] of the Complaint should be dismissed for failure to state a claim as to ANConnect and AMerch under *Twombly*,[5] *Iqbal*,[6] and similar authority. Specifically, Counts I, II, III, and V seek avoidance of allegedly intentional and constructively

---

[3]    Because "the language of Rule 12(a) plainly contemplates that a Rule 12(b) motion will extend the time to answer as to all claims, even those not challenged in the Rule 12(b) motion," ANConnect and AMerch have not filed an answer at this time with respect to claims asserted in the Complaint that are not the subject of the Motion to Dismiss.  *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598, 639 (N.D. Iowa 2006); *see also Godlewski v. Affiliated Computer Servs., Inc.,* 210 F.R.D. 571, 572 (E.D. Va. 2002) (holding that,"[i]n the interests of efficiency for all parties, including the courts, it is best to stall the proceedings on all counts until after the court rules on the Rule 12(b)(6) motion"); *Circuit City Stores, Inc. v. Citgo Petroleum Corp.,* 1994 WL 483463, *4 (E.D. Pa. Sept. 7, 1994) (holding that "[a] partial 12(b) motion enlarges the time to file an answer").

[4]    The Complaint refers to the separate requests for relief as "First Claim," "Second Claim," etc.  They are referred to as "Counts" by number in the instant submission.

[5]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

[6]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

fraudulent transfers under Sections 544, 548 and 550 of the Bankruptcy Code, Delaware's Uniform Fraudulent Transfer Act ("**DUFTA**") §§ 1304(a) and 1305(a), and based on a claim of unjust enrichment. The substance of Plaintiff's argument, as asserted through the Complaint, is that an arm's length transaction negotiated between OurAlchemy and ANConnect, two sophisticated commercial parties, and independently underwritten and financed by SunTrust Bank, should be avoided because in retrospect, Plaintiff thinks OurAlchemy paid too much.

B.      The intentionally fraudulent transfer claims in Counts I and V should be dismissed for failure to state a claim because Plaintiff alleges no facts in the Complaint that OurAlchemy engaged in intentional fraud as to its creditors in buying the movie distribution business from ANConnect or making the payments it made that are alleged to be fraudulent transfers.

C.      The constructively fraudulent transfer claims in Counts II and V should also be dismissed for failure to state a claim because the Complaint has not pled a claim that is conceivable or plausible. Instead, the allegations show that the purchase price paid by OurAlchemy for the movie distribution business it acquired from ANConnect (independently underwritten and financed by SunTrust Bank) was for reasonably equivalent value.

D.      The other fraudulent transfer claims in Counts II and V should be dismissed for failure to state a claim for three reasons. First, with respect to the alleged fraudulent transfer of $2,089,775.45 in Reimbursement Fees, this claim should be dismissed because the allegations in the Complaint show that the alleged transfer by OurAlchemy was a payment on account of an antecedent debt for amounts owed to AMerch pursuant to a contract between the parties. Because a transfer on account of an antecedent debt is reasonably equivalent value as a matter of law, the constructive fraudulent transfer claims related to OurAlchemy's alleged repayment of

3

Reimbursement Fees previously paid by AMerch (which OurAlchemy was contractually obligated to repay) should be dismissed.  Second, because paragraph 208(f) of the Complaint alleges that such transfers occurred "between July 2015 and July 2016," the Complaint thus does not identify the actual date of the transfers, or the amounts paid on the dates as required by applicable law.[7]  Third, with respect to the $510,000 transfer from Anderson Digital to ANConnect, this claim should be dismissed because there are no factual allegations with respect to Anderson Digital's insolvency on or around the alleged transfer date range.

E.      Count III's unjust enrichment claim should also be dismissed for failure to state a claim for the same reasons as the constructive fraudulent transfer claims in Counts II and V, and because Plaintiff cannot maintain an unjust enrichment claim where the transfers were made pursuant to contracts between the parties.

F.      Finally, the purported preference claims against AMerch in Count IV should be dismissed for failure to state a claim for two reasons.  First, as noted above, the claims related to the payment of the "Reimbursement Fees" should be dismissed because Plaintiff does not identify the date and amount of the purported transfers (reflecting the fact that, as noted earlier, these transfers did not occur).  Second, the preference claim related to the purported transfer of $3,208,314.00 on April 12, 2016 from OurAlchemy to AMerch should be dismissed because OurAlchemy did not transfer this amount to AMerch.  In fact, the documents incorporated into the Complaint confirm that this amount was never transferred to AMerch.  Specifically, the Superior Court Complaint (defined below) is clear in paragraph 43, footnote 2, that ANConnect setoff the $3,208,314.00 on or before February 17, 2016, the date of the Superior Court Complaint.  Proof of Claim 158, filed by ANConnect on October 13, 2016, also confirms that

---

[7]      AMerch and ANConnect aver that Plaintiff cannot identify the date and amount of individual transfers because the Debtors made no such transfers.

this setoff was taken.  Because the documents incorporated into the Complaint confirm that the $3,208,314.00 was setoff by ANConnect before April 12, 2016, the Trustee cannot maintain a preference claim against AMerch with respect to the same $3,208,314.00.

ANConnect and AMerch deny that the allegations as to them in the Complaint entitle the Plaintiff to any relief but note that not every Count in the Complaint is the subject of the Motion to Dismiss.  In accordance with Bankruptcy Rule 7012(b) and Del. Bankr. L.R. 7012-1, ANConnect and AMerch consent to entry of final orders and judgment by the bankruptcy court.

### III.        STATEMENT OF FACTS

### A.        <u>Alleged Avoidable Transfers:  Counts I, II, III, IV, and V</u>

Counts I, II, III, and V seek avoidance of allegedly intentional and constructively fraudulent transfers under Sections 544, 548 and 550 of the Bankruptcy Code, DUFTA §§ 1304(a) and 1305(a), and based on a claim of unjust enrichment.  Plaintiff's primary basis to avoid and recover amounts paid to AMerch and ANConnect is the argument that the arm's length acquisition negotiated between OurAlchemy and ANConnect, two sophisticated commercial parties, and independently underwritten and financed by SunTrust Bank, should be avoided because the Trustee now thinks OurAlchemy paid too much.  As the Plaintiff alleges in paragraph 1(a) of the Complaint, the Plaintiff "brings this action, *inter alia*: (a) to avoid as fraudulent transfers various transactions associated with and including the acquisition of ANConnect, LLC's physical and digital [movie] distribution business for a value far in excess of the fair market value of that interest (the "ANConnect Transaction")."  The specific transfers alleged to be avoidable with respect to ANConnect and AMerch are defined by the Plaintiff as "Fraudulent Transfers" and are identified by the Plaintiff in paragraphs 208(b), (c), and (f) of the Complaint.  In the instant Supporting Memorandum, they will be referred to as the "**Transfers**."

The Transfers are identified as follows in the Complaint:

a.  The cash portion of the purchase price of $29,888,124.40 paid by OurAlchemy to ANConnect for the acquisition of the movie distribution business of ANConnect. Complaint ¶ 208(c).

b.  OurAlchemy's assumption of liabilities totaling in excess of $16 million as part of the acquisition of the movie distribution business of ANConnect.   Complaint ¶ 208(c).

c.  $2,089,775.45 in Reimbursement Fees allegedly paid by OurAlchemy to AMerch as part of the acquisition of the movie distribution business of ANConnect. Complaint ¶ 208(f).[8]

d.  $510,000 transfer from Anderson Digital to ANConnect in connection with but immediately prior to the acquisition of the digital movie distribution business of Anderson Digital.  Complaint ¶ 208(a).

The Plaintiff's factual allegations in the Complaint with respect to these Transfers are discussed in the following:

1.  *Alleged Avoidable Transfers:  Counts I, II, III, and V - $29,888,124.40 Cash Purchase Price Plus Assumption of Liabilities*

First, the Complaint alleges that SunTrust, a third party lender, made a loan to fund the acquisition of ANConnect and Anderson Digital by its borrower, OurAlchemy, and that in connection therewith, SunTrust engaged in customary due diligence.   As part of the due diligence, SunTrust and the Debtor OurAlchemy were aware of the liabilities being assumed and the alleged decline in the nature of the business of ANConnect before the sale closed.  *See* Complaint ¶¶ 2, 34, 49, 67, 69, 70, 72, 155, 156.  The ANConnect Transaction is not alleged to be between insiders, or to benefit an insider.   Instead, the Complaint establishes that the ANConnect Transaction was an arm's length transaction between third parties with Bill Lee taking the lead for OurAlchemy, and Charles Anderson acting for ANConnect.  Complaint ¶¶ 55, 57, 97, 102 107 (Transition Services Agreement), 108, 109, 123 (Merchandising Agreement).

---

[8]   Although Plaintiff cannot identify the individual transfers subsumed within this claim—because they were never made by OurAlchemy—because the fact that these transfers did not occur is a factual issue, the non-occurrence is not being raised in support of this Motion to Dismiss.

The Complaint's allegations concerning the alleged lack of reasonably equivalent value are all conclusory.  *See* Complaint ¶¶ 65, 66, 69, 71, 72, 75, 83, 84.  There are references to the purchase price being determined by a multiple of earnings which shows that the purchase prices of the businesses being transferred were calculated by metrics agreed to by the buyer and seller and nothing more.  *See* ¶¶ 57, 86, and 87 (discussing the EBITDA multiples of 4X and 6X for the ANConnect sale and the Anderson Digital sale, respectively).

Importantly, there are no allegations of fraud or misrepresentations made by ANConnect at any time on any point.  There are no allegations with respect to any badge of fraud under DUFTA for an intentional fraudulent transfer other than the allegation that OurAlchemy was insolvent.  There is not a single factual allegation that OurAlchemy intended to hinder, delay, or defraud creditors in making the acquisition of the movie distribution business of ANConnect.

There are no allegations that the assets acquired from ANConnect or Anderson Digital had no value, and there are no allegations concerning the "actual" value of the property that was transferred.

2.  *Alleged Avoidable Transfers:  Counts I, II, III, and V - $2,089,775.45 in Reimbursement Fees*

The second largest transfer challenged in Counts I, II, III, and V is OurAlchemy's purported transfer of $2,089,775.45 in Reimbursement Fees to AMerch.  By way of background, pursuant to the Merchandising Agreement OurAlchemy was required to pay certain "Reimbursement Fees" to AMerch.  The Reimbursement Fees were tied to costs or fees imposed by any Material Content Suppliers that required its consent to the assignment of its contract to OurAlchemy.  Complaint ¶¶ 131-133.

The Complaint alleges generally that "between July 2015 and July 2016" OurAlchemy paid AMerch certain Reimbursement Fees totaling $2,089,775.45.  Complaint ¶ 208(f).  The

7

Complaint fails to identify the dates and amounts of the alleged avoidable transfers as is required by applicable law.[9]  The Complaint also does not allege, other than in a conclusory fashion, that such purported Transfers were for less than reasonably equivalent value.  In fact, in alleging that the Reimbursement Fees were tied to obligations under the Merchandising Agreement, the Complaint shows that these Transfers (if made) were made in respect of outstanding obligations. *See* Complaint ¶¶ 131-134.

There are no allegations of fraud or misrepresentations made by ANConnect at any time on any point.  There are no allegations with respect to any Badge of Fraud under DUFTA for an intentional fraudulent transfer other than the allegation that OurAlchemy was insolvent.  There is not a single factual allegation that OurAlchemy intended to hinder, delay, or defraud creditors with respect to the purported transfer of $2,089,775.45 in Reimbursement Fees to AMerch.

3. *Alleged Avoidable Transfers:  Counts I, II, III, and V - $510,000 From Anderson Digital to ANConnect*

The third largest transfer challenged in Counts I, II, III, and V is the $510,000 transfer from Anderson Digital to ANConnect that occurred prior to the closing of the sale of Anderson Digital "on or around July 2, 2015."  Complaint ¶ 208(b).[10]  Notwithstanding this claim, the Complaint makes no factual allegations about Anderson Digital's solvency as of July 2, 2015.[11]  There are no allegations of fraud or misrepresentations made by ANConnect at any time on any point.  There is not a single factual allegation that Anderson Digital intended to hinder, delay, or defraud creditors with respect to the transfer of $510,000 to ANConnect.

4. *Alleged Preferential Transfers:  Count IV - §§ 547 and 550 Avoidance Claims Against AMerch - $3,208,314.00 and Reimbursement Fees*

---

[9]     *See* n.7 above.
[10]    The sale closing took place on July 9, 2015.  Complaint ¶ 65.
[11]    While AMerch and ANConnect acknowledged that there are factual allegations about the solvency of OurAlchemy, none of these apply to Anderson Digital.  *Cf.* Complaint ¶¶ 67, 68, 76, 77, 78, 79, 80, 81, and 82.

Count IV identifies two preference claims against AMerch related to transfers that OurAlchemy purportedly made. The first is an alleged transfer of $3,208,314 and relates to the purported transfer of amounts to repay the Reimbursement Fees discussed above (i.e., the transfers not identified by date or amount). Complaint ¶¶ 227(a) and (e).

With respect to the Transfers tied to OurAlchemy's payment of amounts to AMerch to repay AMerch for its prior satisfaction of Reimbursement Fees (which OurAlchemy was contractually obligated to repay), paragraph 227(e) of the Complaint alleges only that the purported payments occurred between April 1, 2016 and the Petition Date. The Complaint does not identify the date and amount of any transfer.[12]

With respect to the $3,208,314 transfer alleged to have occurred on April 12, 2016, the Complaint and the documents to which it cites show that this transfer from OurAlchemy to AMerch did not occur. In fact, the Complaint filed in the Delaware Court Action on February 17, 2016 (the "**Superior Court Complaint**") and ANConnect's Proof of Claim No. 158 ("**POC 158**") show that the $3,208,314 was not transferred to AMerch.[13] Specifically, the Superior Court Complaint is clear in paragraph 43, footnote 2, that ANConnect setoff the $3,208,314.00, which forms the basis of Plaintiff's preference claim against AMerch on or before February 17, 2016, the date of the Superior Court Complaint.[14] Thus, the documents that the Complaint relies upon and incorporates shows that the setoff was effectuated by ANConnect ***before***

---

[12]     *See* n.7 above.

[13]     As set forth in additional detail below, this Court may consider the Superior Court Complaint and ANConnect's POC 158 in connection with this Motion to Dismiss because Plaintiff cites to and relies upon each as part of the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); Complaint ¶¶ 112, 114, 127, 128, and 285. A true and correct copy of the Superior Court Complaint is attached as Exhibit A to the Declaration of David Stratton filed contemporaneously herewith (the "**Stratton Declaration**"). A true and correct copy of ANConnect's POC 158 is attached as Exhibit B to the Stratton Declaration.

[14]     ANConnect's proof of claim confirms this prior setoff.

OurAlchemy's unilateral "agree[ment]" on April 12, 2016 to direct this amount be applied against the debt OurAlchemy owed to AMerch.  *Compare* Complaint ¶ 128 *with* Superior Court Complaint ¶ 43, footnote 2.  Because the Complaint and the documents upon which it relies shows that the alleged preferential transfer by OurAlchemy to AMerch in Count IV did not occur this claim should be dismissed.

## IV.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The Pleading Standards Of *Twombly*, *Iqbal*, *Valley Media*, And *Zazzali* Set The Applicable Review Standard.

Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012(b), provides for dismissal if a complaint fails to state a claim upon which relief can be granted.  Rule 12(b)(6) is associated with Federal Rule of Civil Procedure 8(a)(2), made applicable by Bankruptcy Rule 7008, which states that a complaint fails unless it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  The United States Supreme Court has observed that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 285 (1986)).  The *Twombly* standard is one of plausibility and not probability "[and] simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  *Id.* at 556.  In analyzing a complaint, the court will determine if a plaintiff has "nudged [their] claims across the line from conceivable to plausible." *Id.* at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), the Supreme Court affirmed that the *Twombly* standard applies to all civil suits in federal courts and explained that "a court must

accept as true all of the allegations contained in the complaint," and "only a complaint that states

a plausible claim for relief survives a motion to dismiss." *Id.* at 678.  The United States Court of

Appeals for the Third Circuit has applied *Iqbal* by employing a two-part test:

> First, the factual and legal elements of a claim should be separated. The [court]
> must accept all of the complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. Second, a [court] must then determine whether the facts
> alleged in the complaint are sufficient to show that the plaintiff has a plausible
> claim for relief.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d. Cir. 2009).

### B.    Count I for Actual Fraud Should be Dismissed.

Count I asserts claims for actual fraudulent conveyance under section 548(a)(1)(A) of the

Bankruptcy Code.   In addition to the plausibility requirements under *Twombly* and *Iqbal*

discussed above, claims for fraudulent conveyance must meet the heightened pleading standards

under Civil Rule 9(b) and "must state with particularity the circumstances constituting fraud."

Fed. R. Civ. P. 9(b).  As the Third Circuit has explained, this is a "stringent" requirement and

"[t]o satisfy this standard, the plaintiff must plead or allege the date, time and place of the

alleged fraud or otherwise inject precision or some measure of substantiation into a fraud

allegation." *Friedberg v. Barefoot Architect Inc*, 723 F. App'x 100, 103 (3d Cir. 2018) (citing

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

The Complaint makes no attempt whatsoever to allege any fraudulent conduct in

connection with any of the Transfers.  For example, with respect to the ANConnect Transaction,

the Complaint alleges only that the applicable transfer was in connection with an arm's length

transaction negotiated between OurAlchemy and ANConnect (independently underwritten and

financed by SunTrust Bank), and that the transfers made in connection therewith should be

avoided because OurAlchemy paid too much.  Yet, there is not a single factual allegation that

meets the standards for actual intent to hinder, delay, or defraud creditors by OurAlchemy in making the acquisition of the movie distribution business of ANConnect.  With respect to the Transfers, there is only a conclusory allegation in paragraph 212 that they were "Fraudulent Transfers" and made with actual intent to hinder, delay, and defraud.[15]  However, "[a]t all events, conclusory allegations will not suffice."  *Friedberg*, 723 F. App'x at 103 (citing *Burlington Coat Factory*, 114 F.3d at 1418; *Iqbal*, 556 U.S. at 678)).  Count I should therefore be dismissed with respect to the Transfers.

Moreover, although courts may consider so-called "badges of fraud" where there is an absence, like here, of allegations of specific intent, Plaintiff alleges only a single badge of fraud—insolvency—which is insufficient to plead a plausible claim of actual fraudulent conveyance.  Courts have considered:

> (1) the relationship between the debtor and the transferee; (2) consideration for conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor; and (6) secrecy or concealment of the transaction.

---

[15]   As discussed in the Statement of Facts, the "Fraudulent Transfers" identified by the Plaintiff that are the subject of the Motion to Dismiss were as follows:

a. The cash portion of the purchase price of $29,888,124.40 paid by OurAlchemy to ANConnect for the acquisition of the movie distribution business of ANConnect.

b. OurAlchemy's assumption of liabilities totaling in excess of $16 million as part of the acquisition of the movie distribution business of ANConnect.

c. $2,089,775.45 in Reimbursement Fees allegedly paid by OurAlchemy to AMerch as part of the acquisition of the movie distribution business of ANConnect [this amount was not actually paid but that is not the subject of the Motion to Dismiss].

d. $510,000 transfer from Anderson Digital to ANConnect in connection with but immediately prior to the acquisition of the digital movie distribution business of Anderson Digital.

*In re Physiotherapy Holdings, Inc.*, No. 13-12965(KG), 2016 WL 3611831, at *15 (Bankr. D. Del. June 20, 2016), *leave to appeal denied*, No. AP 15-51238-KG, 2017 WL 6524524 (D. Del. Dec. 21, 2017).

The only badge of fraud alleged with respect to any of the Transfers is that OurAlchemy was insolvent at the time such transfers were made.  An allegation of insolvency alone, however, does not satisfy pleading requirements under *Iqbal* and *Twombly* for a transfer being made with actual intent to hinder, delay, or defraud creditors.  *See In re Fedders N. Am., Inc.,* 405 B.R. 527, 545 (Bankr. D. Del. 2009) (dismissing actual intent fraudulent conveyance claim because "Plaintiff pleads [only] a single badge of fraud—[the debtor's] insolvency").  Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The allegations in the Complaint do not nearly approach that threshold.  Count I should therefore be dismissed with respect to the Transfers.

### C.  Count II for Constructive Fraud Should be Dismissed.

Count II asserts claims for constructive fraudulent conveyance pursuant to section 548 of the Bankruptcy Code, which requires that the Plaintiff allege that:

(i) the transfers were made within two years of the petition date;

(ii) the debtor received less than reasonably equivalent value in exchange of the transfers; and

(iii) the debtor either (a) was insolvent on the date that the transfers were made or became insolvent as a result of the transfers; or (b) was or was about to engage in a business or transaction for which any remaining property remaining with the debtor was an unreasonably small capital; or (c) intended or believed that the debtor would incur debts beyond the debtor's ability to pay; or (d) the debtor made the transfer or incurred the obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business

11 U.S.C. § 548(a)(1)(B).

13

In order to survive a motion to dismiss, Plaintiff must allege, at a minimum, facts that plausibly support a finding that (i) the Debtor was insolvent at the time of the transfer, and (ii) that the transfer was for less than reasonably equivalent value. *See In re AgFeed USA, LLC,* 546 B.R. 318, 336 (Bankr. D. Del. 2016).

The Third Circuit has held that assessing whether a debtor received reasonably equivalent value in exchange for a transfer or obligation requires a two-step approach. *Pension Transfer Corp. v. Beneficiaries Under the Third Amend. to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.),* 444 F.3d 203, 212 (3d Cir. 2006). First, "a court must consider whether, 'based on the circumstances that existed at the time' of the transfer, it was 'legitimate and reasonable' to expect some value accruing to the debtor." *Id.* (quoting *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.),* 92 F.3d 139, 152 (3d Cir.1996)).

Second, if the court finds that the debtor received any value, the court must engage in a fact-driven comparison between such value and the transfer or obligation sought to be avoided to determine "whether the debtor got roughly the value it gave." *Id.* at 212-13 (citations omitted). To assess the reasonable equivalence of the transfer or obligation and the value received by the debtor, a court should "look to the 'totality of the circumstances,' including (1) the 'fair market value' of the benefit received as a result of the transfer, (2) 'the existence of an arm's-length relationship between the debtor and the transferee,' and (3) the transferee's good faith." *Id.* at 213 (quoting *Mellon Bank,* 92 F.3d at 148-49, 153). Courts have previously upheld the reasonable equivalence of indirect value as well. *See Fruehauf,* 444 F.3d at 212-13; *Mellon Bank, N.A. v. Metro Commc'ns, Inc.,* 945 F.2d 635, 646 (3d Cir. 1996); *Rubin v. Mfrs. Hanover Trust Co.,* 661 F.2d 979, 991 (2d Cir. 1981). Count II should

14

be dismissed as to each of the Transfers because the Complaint fails to adequately plead constructive fraudulent conveyance claims.

>    1.    *The Complaint Fails To Plausibly Allege That the ANConnect Transaction Was For Less Than Reasonably Equivalent Value*

Plaintiff's claim that the ANConnect Transaction was a constructive fraudulent conveyance should be dismissed because Plaintiff fails to plausibly allege that the sale was for less than reasonably equivalent value. Initially, the Complaint shows that "value accru[ed] to the debtor" in its acquisition of the movie distribution business of ANConnect. *Fruehauf Trailer,* 444 F.3d at 212. Next, the Complaint's allegations show that fair equivalent value was received, and not its absence. Specifically, the Complaint alleges, among other things, that:

- Alchemy entered into the ANConnect Transaction well aware of the value of the business and assets that it was purchasing prior to the closing of the transaction and of the economic challenges with the business. Complaint ¶¶ 2, 67, 69, 70, 72.

- The ANConnect Transaction was funded by a loan from OurAlchemy's lender, SunTrust. Complaint ¶¶ 70, 150-168.

- SunTrust performed due diligence with respect to the ANConnect Transaction and was told by OurAlchemy's representatives that it would "generate significant free cash flow [for OurAlchemy] and enable favorable working capital with 100% services model" and that the DVD sales business "was in rapid decline . . . with declines expected to accelerate rapidly through 2021." Complaint ¶¶ 69(d), 72.

Notably, the Complaint does not allege that the ANConnect Transaction was anything other than an arm's length transaction negotiated and consummated in good faith. The Complaint acknowledges that the aggregate purchase price in connection with the ANConnect Transaction was $37,637,347 but, critically, the Complaint fails to allege the value of the assets OurAlchemy received for the purchase price. Absent such allegations, Plaintiff does not present a plausible constructive fraudulent conveyance claim.

As Judge Walrath explained in *Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005), constructive fraudulent

transfer claims are not adequately pled where a complaint fails to allege, among other things, "the value of what was received" in the transfer. *See also In re United Tax Grp., LLC*, No. 14-10486 (LSS), 2016 WL 7235622, at *3 (Bankr. D. Del. Dec. 13, 2016) (plaintiff "must allege specific facts showing the debtor's financial position and the value of what was received in exchange for the transfer") (quotations omitted). There can be no inference that the ANConnect Transaction was for less than reasonably equivalent value when the Complaint lacks any allegations regarding the value of what OurAlchemy received. The Complaint therefore fails to plausibly allege fraudulent transfer claims arising from the ANConnect Transaction and such claims should be dismissed.

2.    *The Complaint Fails To Plausibly Allege That The Reimbursement Fees Transfers Were Made For Less Than Reasonably Equivalent Value Or Adequately Identify Them By Date Or Amount*

The Complaint also alleges that, pursuant to the Merchandising Agreement between OurAlchemy and AMerch, OurAlchemy "paid $2,089,775.45 [in] Reimbursement Fees to Anderson Merchandisers . . . between July 7, 2015 and July 1, 2016." Because the Complaint does not identify the actual date or amount of any transfer, dismissal is required. *See Zazzali v. Swenson (In re DBSI, Inc.)*, No. 10-54649, 2011 WL 1810632, at *3 (Bankr. D. Del. May 5, 2011) ("Trustee must specifically identify the allegedly fraudulent transfers, and he may do so by providing specific facts about (a) *the date of the transfer, (b) the amount of the transfer*, (c) the name of the transferor, and (d) the name of the transferee.") (emphasis added); *In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 456 (Bankr. D. Del. 2018) (complaints must "identify the dates, amounts, source, and transferee of each of the alleged transfers [to] successfully support claims of constructive fraudulent transfer").[16]

---

[16]    As noted in footnote 7 above, AMerch avers that Plaintiff did not identify the dates and amounts of specific Transfers because no amounts were actually paid by OurAlchemy in respect

The Complaint also fails to adequately allege that any payments in respect of Reimbursement Fees were for less than reasonably equivalent value. To the contrary, assuming the transfers were made, Plaintiff alleges that the $2,089,775.45 transferred in respect of Reimbursement Fees were for payment of antecedent debts arising under the Merchandising Agreement. *See* Complaint ¶ 131. It is well-settled that payments on account of an antecedent debt constitute reasonably equivalent value as a matter of law for constructive fraudulent transfer purposes. *See In re Direct Response Media, Inc.*, 466 B.R. 626, 660 (Bankr. D. Del. 2012) ("A transfer made in satisfaction of an antecedent debt or for an obligation for which the debtor was liable presumptively constitutes reasonably equivalent value."); *Pardo v. Gonzaba, (In re APF Co.)*, 308 B.R. 183, 187 (Bankr. D. Del. 2004) (holding that the trustee could not state a 548 fraudulent transfer claim because the transfer was in satisfaction of an antecedent debt); *Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir. 1981) (same); 11 U.S.C. § 548(d)(2)(A). Plaintiff's allegation that "the Debtors did not receive reasonably equivalent value in exchange for the Fraudulent Transfers" in paragraph 219 of the Complaint is wholly conclusory and, thus, does not form a basis to sustain a claim in response to a motion to dismiss. Accordingly, as the Complaint shows, OurAlchemy received reasonably equivalent value for any alleged Reimbursement Fees transfers and claims for avoidance of such transfers as constructive fraudulent conveyances should be dismissed for this independent reason as well.

3.  *The Complaint Fails To Allege That Anderson Digital Was Insolvent At The Time Of The July 2, 2015 Transfer*

The Count II claim for avoidance of the alleged $510,000 transfer from Anderson Digital to ANConnect on July 2, 2015 should be dismissed because the Complaint fails to adequately

---

of the Reimbursement Fees. Nevertheless, because this is a fact issue, the fact that OurAlchemy did not make the purported transfers is not a basis of the Motion to Dismiss; Plaintiff's failure to adequately plead this claim requires its dismissal in any event.

plead that Anderson Digital was insolvent at the time of the transfer.  To survive a motion to dismiss, Plaintiff must allege, at a minimum, facts that plausibly support a finding that the Debtor was insolvent at the time of the transfer.  *See In re AgFeed USA, LLC*, 546 B.R. 318, 336 (Bankr. D. Del. 2016).  All the factual allegations about insolvency in the Complaint relate to OurAlchemy's solvency.  *See* Complaint ¶¶ 67, 68, 76, 77, 78, 79, 80, 81, and 82.  Because there is no presumption of insolvency for a fraudulent transfer or for transfers made more than 90 days prior to the petition date (the challenged transfer occurred in July 2015 almost a year prior to the bankruptcy filings by the Debtors),[17]  this portion of Counts II and V should be dismissed for failure to state a claim.

**D.    Count V for Actual and Constructive Fraudulent Conveyance under Delaware State Law Should be Dismissed.**

Count V asserts claims for actual and constructive fraudulent conveyance under DUFTA with respect to the alleged Transfers.  As the Court of Appeals for the Third Circuit has recognized:

> The relevant DUFTA and Bankruptcy Code provisions are nearly identical, and Delaware courts have interpreted and applied them uniformly. "Because Delaware has adopted the Federal UFTA, a statute that was itself modeled on Section 548 of the Bankruptcy Code ... Delaware courts generally recognize that our state and the federal fraudulent transfer statutes' principles are substantially the same."  DUFTA is "virtually a carbon copy of the fraudulent transfer law under the Bankruptcy Code" and "the result under Delaware law should be the same as the outcome under the Bankruptcy Code."

---

[17]    The only allegations in the Complaint that arguably relate to Anderson Digital's solvency is that it had zero "working capital" as a result of the July 2, 2015 transfer and had "collection issues" prior to the transaction.  *See* Complaint ¶¶ 69(a), 73, 75.  These two allegations alone, however, do not make Anderson Digital's insolvency plausible as the Complaint itself alleges facts to show that OurAlchemy and Anderson Digital would be viable businesses after the transaction.  This is reflected by the underwriting and loan made by SunTrust which included its evaluation of information provided by OurAlchemy's representatives that it would "generate significant free cash flow [for OurAlchemy] and enable favorable working capital with 100% services model."  Complaint ¶¶ 69(d), 72.

*Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 86 (3d Cir. 2018) (citations omitted).

As a result, Defendants' arguments above with respect to Counts I and II apply equally to Plaintiffs' DUFTA claim under Count V and need not be repeated here. Defendants hereby incorporate all of the arguments made in sections IV.B and IV.C and respectfully submit that Court V should be dismissed as well for failure to adequately plead claims for actual and constructive fraudulent conveyance claims under DUFTA.

### E.    Count III for Unjust Enrichment Should be Dismissed.

Count III, like Counts I, II, and V, is based on the contention that the arm's length transaction negotiated between OurAlchemy and ANConnect, and financed by SunTrust Bank, should be avoided because OurAlchemy paid too much. Under Delaware law, a claim for unjust enrichment is not available where, as here, there is an underlying contract. As the court explained in *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009):

> A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim. In other words, if "the contract is the measure of [a] right, there can be no recovery under an unjust enrichment theory independent of it." Thus, "[w]hen the complaint alleges an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed."

Here, where the Complaint is clear that there is a contract between OurAlchemy and ANConnect, a claim for unjust enrichment cannot lie.

Under Delaware Law, unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citing *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)). The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation

19

between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.  *Id.*

For the same reasons that the constructive fraud claims in Counts II and V should be dismissed, Count III for unjust enrichment should be dismissed.

### F. <u>Count IV for Preferential Transfers to AMerch Should be Dismissed.</u>

Count IV, paragraph 227 of the Complaint, identifies two preference claims against AMerch related to Transfers allegedly made by OurAlchemy.  One is for $3,208,314 and the other relates to the purported transfer of amounts to repay "Reimbursement Fees" arising under the Merchandising Agreement.  These claims should be dismissed because neither meets the pleading standards for avoidable preferences.

As discussed above, the Complaint alleges that OurAlchemy transferred $2,089,775.45 to AMerch on account of "Reimbursement Fees" owed by OurAlchemy to AMerch under the Merchandising Agreement between July 7, 2015 and July 1, 2016.  Complaint ¶¶ 131-134.  In Count IV, Plaintiff alleges that certain transfers were made on account of Reimbursement Fees "between April 1, 2016 and the Petition Date."  Complaint ¶ 227(e).  The Complaint does not identify the date and amount of any transfer.[18]  A long line of authority follows *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189 (Bankr. D. Del. 2003) in which Bankruptcy Judge Walsh held that "fair notice" of a preference claim required: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer."  288 B.R. at 192.  Because the alleged Reimbursement Fees transfers are not identified by "(i) date, [or] (iv) the amount of the transfer," Plaintiff's preference claim is not adequately pled and this portion of Count IV is required to be dismissed.

---

[18]     *See* fn. 7 above.

#50507410 v2

The Complaint also alleges that there was a "$3,208,314 preferential transfer from [OurAlchemy] to [AMerch] on April 12, 2016." Complaint ¶ 227(a).  The complaint filed in the Delaware Court Action on February 17, 2016 (defined above as the "**Superior Court Complaint**," attached as Exhibit A to the Stratton Declaration), cited to and relied upon at paragraphs 112, 113, and 127 of the Complaint, and ANConnect's proof of claim, cited to and relied upon at paragraph 114 of the Complaint, both show that the $3,208,314.00 was not transferred to AMerch.  The Superior Court Complaint and ANConnect's POC 158 are cited to and relied on by the Plaintiff and thus may appropriately be considered by this Court as part of the Complaint in connection with the Motion to Dismiss.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).[19]  In reviewing a motion to dismiss, the Court may

---

[19]    The Third Circuit reasoned as follows in *Burlington:*

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *Angelastro,* 764 F.2d at 944. However, an exception to the general rule is that a "document *integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *Shaw,* 82 F.3d at 1220 (emphasis added); *see also Trump,* 7 F.3d at 368 n. 9 ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3rd Cir.1993)).

The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." *Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir.1993) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2nd Cir.1991)); *see also San Leandro,* 75 F.3d at 808-09. What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent. *See Shaw,* 82 F.3d at 1220.

As best we can tell, plaintiffs are correct that the Complaint does not *explicitly* refer to or cite BCF's 1994 Annual Report. But the language in both *Trump* and *Shaw* makes clear that what is critical is whether the claims in the complaint are "based" on an

#50507410 v2

consider "undisputedly authentic documents attached as exhibits to a complaint or to a motion to dismiss if the documents are '*integral to or explicitly relied upon* in the complaint.'" *In re Image Masters, Inc.*, 421 B.R. 164, 178 n.13 (E.D. Pa. 2009) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (emphasis in original); *see also In re Mervyn's Holdings, LLC*, 426 B.R. 96, 104 (Bankr. D. Del 2010) (same)).

The Superior Court Complaint is clear in paragraph 43, footnote 2, that ANConnect setoff $3,208,314.00, which forms the basis of Plaintiff's preference claim against AMerch, on or before February 17, 2016, the date of the Superior Court Complaint.  POC 158, filed by ANConnect on October 13, 2016, also confirms that this setoff was taken.  Thus, the documents that the Complaint relies upon and incorporates show that the setoff was effectuated by ANConnect before OurAlchemy's unilateral "agree[ment]" on April 12, 2016 to direct this amount against the debt OurAlchemy owed to AMerch.  *Compare* Complaint ¶ 12 *with* Superior Court Complaint ¶ 43, fn. 2.  The Complaint and the documents it relies upon show that the alleged preferential transfer of $3,208,314.00 by or on behalf of OurAlchemy to AMerch did not occur.  Plaintiff's Count IV claim for avoidance of such a transfer necessarily fails and should be dismissed.[20]

---

extrinsic document and not merely whether the extrinsic document was explicitly cited. *See Trump,* 7 F.3d at 368 n. 9; *Shaw,* 82 F.3d at 1220. Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.

114 F.3d at 1426.

[20]   Though not part of the Complaint and thus not part of the record for this Motion to Dismiss, AMerch's July 22, 2016 Motion for Relief from the automatic stay, and specifically Exhibit C thereto, make it clear in the June 27, 2016 Default Notice that the $3,208,314 had not been applied to reduce the debt owed by OurAlchemy to AMerch. *See* Bankr. Docket No. 42 at ¶¶ 6-8 and Bankr. Docket No. 42-3 in Case No. 16-11596.

#50507410 v2

## V.    CONCLUSION

Accordingly, this Court should dismiss the portions of Counts I, II, III, IV, and V of the

Complaint as to ANConnect and AMerch for the reasons explained above.

WHEREFORE, ANConnect and AMerch respectfully request that this Court enter an

order dismissing Counts I, II, III, IV, and V of the Complaint with respect to the claims

identified and discussed above.

Dated: October 15, 2018                     Respectfully Submitted,
Wilmington, DE

**PEPPER HAMILTON LLP**


/s/ Evelyn J. Meltzer
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Tel: (302)-777-6532
Fax: (302)-421-8390
strattond@pepperlaw.com
meltzere@pepperlaw.com

-and-

**ALSTON & BIRD LLP**
Grant T. Stein
David A. Wender
William Hao
1201 West Peachtree Street
Atlanta, Georgia, 30309
Tel: (404) 881-7000
Fax: (404) 881-7777
Grant.stein@alston.com
David.wender@alston.com
William.Hao@alston.com

*Counsel to ANConnect, LLC and Anderson Merchandisers, LLC*

#50507410 v2