**<u>Exhibit A</u>**

**Complaint**

*ANConnect, LLC and Anderson Merchandisers, LLC v. Our Alchemy, LLC* in the Superior
Court of the State of Delaware, New Castle County, Case No. N16C-02-152 WCC [CCLC]

**SUPERIOR COURT**
**CIVIL CASE INFORMATION STATEMENT (CIS)**
eFiled Feb 18 2016 04:16PM EST
Transaction ID 58617244
COUNTY:   **N**    K    S    CIVIL ACTION NUMBER:
**Case No. N16C-02-152 WCC CCLD**

| | |
|---|---|
| Caption:<br>ANCONNECT, LLC, and ANDERSON<br><br>MERCHANDISERS, LLC<br><br>     Plaintiffs<br><br>v.<br><br>OUR ALCHEMY, LLC,<br><br>     Defendant. | Civil Case Code:   __CCLD__<br><br>Civil Case Type: <u>Complex Commercial Litigation Division</u><br>(SEE REVERSE SIDE FOR CODE AND TYPE)<br><br>Name and Status of Party filing document:<br><u>ANconnect, LLC and Anderson Merchandisers, LLC  –</u><br><u>Plaintiffs</u><br><br>Document Type:(E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM)<br>**Complaint**<br><br><br>JURY DEMAND:   YES _____   NO __X__ |
| ATTORNEY NAME(S):<br>DOUGLAS D. HERRMANN<br>CHRISTOPHER B. CHUFF<br><br>ATTORNEY ID(S):<br>DEL. BAR NO. 4872<br>DEL. BAR NO. 5729<br><br>FIRM NAME:<br>PEPPER HAMILTON LLP<br><br>ADDRESS:<br>1313 MARKET ST., HERCULES PLAZA, SUITE 5100<br><br>WILMINGTON, DE 19801<br><br>TELEPHONE NUMBER:<br>302.777.6500<br><br>FAX NUMBER:<br>302.421.8390<br><br>E-MAIL ADDRESS:<br>herrmannd@pepperlaw.com<br>chuffc@pepperlaw.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT OR ANY RELATED CASES THAT HAVE BEEN CLOSED IN THIS COURT WITHIN THE LAST TWO YEARS BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS:<br><br><br><br>EXPLAIN THE RELATIONSHIP(S):<br><br><br><br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br><br><br><br>(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE) |

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.**

Revised 5/2009

# SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS) INSTRUCTIONS

## CIVIL CASE TYPE

Please select the appropriate civil case code and case type (e.g., **CODE - AADM** and **TYPE - Administrative Agency**) from the list below.  Enter this information in the designated spaces on the Case Information Statement.

| | |
|---|---|
| **APPEALS** | **MISCELLANEOUS** |
| AADM - Administrative Agency | MAGM - AG Motion - Civil/Criminal Investigations * |
| ACER - Certiorari | MADB - Appeal from Disability Board * |
| ACCP - Court of Common Pleas | MAFF - Application for Forfeiture |
| AIAB - Industrial Accident Board | MAAT - Appointment of Attorney |
| APSC - Public Service Commission | MGAR - Appointment of Guardianship |
| AUIB - Unemployment Insurance Appeal Board | MCED - Cease and Desist Order |
| | MCDR - Child Death Review |
| **COMPLAINTS** | MCON - Civil Contempt/Capias |
| CASB – Asbestos | MCVP - Civil Penalty |
| CAAA - Auto Arb Appeal | MSOJ - Compel Satisfaction of Judgment |
| CMIS - Civil Miscellaneous | MSAM - Compel Satisfaction of Mortgage |
| CACT - Class Action | MCTO - Consent Order |
| CCON - Condemnation | MIND - Destruction of Indicia of Arrest * |
| CCLD - Complex Commercial Litigation Division **(NCC ONLY)** | MESP - Excess Sheriff Proceeds |
| CDBT - Debt/Breach of Contract | MHAC - Habeas Corpus |
| CDEJ - Declaratory Judgment | MTOX - Hazardous Substance Cleanup |
| CDEF - Defamation | MFOR - Intercept of Forfeited Money |
| CEJM - Ejectment | MISS - Issuance of Subpoena |
| CATT - Foreign & Domestic Attachment | MLEX - Lien Extension |
| CFJG - Foreign Judgment | MMAN - Mandamus |
| CFRD - Fraud Enforcement | MWIT - Material Witness * |
| CINT - Interpleader | MWOT - Material Witness - Out of State |
| CLEM - Lemon Law | MRAT - Motion for Risk Assessment |
| CLIB - Libel | MROP - Petition for Return of Property |
| CMAL - Malpractice | MCRO - Petition Requesting Order |
| CMED - Medical Malpractice | MROD - Road Resolution |
| CPIN - Personal Injury | MSEL - Sell Real Estate for Property Tax |
| CPIA - Personal Injury Auto | MSEM - Set Aside Satisfaction of Mortgage |
| CPRL - Products Liability | MSSS - Set Aside Sheriff's Sale |
| CPRD - Property Damage | MSET - Structured Settlement |
| CRPV - Replevin | MTAX - Tax Ditches |
| CSPD - Summary Proceedings Dispute | MREF - Tax Intercept |
| CCCP - Transfer from CCP | MLAG - Tax Lagoons |
| CCHA - Transfer from Chancery | MVAC - Vacate Public Road |
| | MPOS - Writ of Possession |
| **MASS TORT** | MPRO - Writ of Prohibition |
| CBEN - Benzene Cases | |
| CPEL - Pelvic Mesh Cases | **MORTGAGES** |
| CPRA - Pradaxa Cases | MCOM - Mortgage Commercial |
| CSER - Seroquel Cases | MMED - Mortgage Mediation |
| | MORT - Mortgage Non-Mediation (Res.) |
| **INVOLUNTARY COMMITMENTS** | **MECHANICS LIENS** |
| INVC- Involuntary Commitment | LIEN - Mechanics Lien |

## * Not eFiled

## DUTY OF THE PLAINTIFF
Each plaintiff/counsel shall complete the attached Civil Case Information Statement (CIS) and file <u>with</u> the complaint.

## DUTY OF THE DEFENDANT
Each defendant/counsel shall complete the attached Civil Case Information Statement (CIS) and file <u>with</u> the answer and/or first responsive pleading.

Revised 5/2013

EFiled:  Feb 23 2016 04:16PM EST
Transaction ID 58617244
Case No. N16C-02-152 WCC CCLD

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

|  |  |
|---|---|
| ANCONNECT, LLC, and ANDERSON MERCHANDISERS, LLC, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| OUR ALCHEMY, LLC, | ) ) ) |
| Defendant. | ) ) ) |

C.A. No. _____-____ [CCLD]

## COMPLAINT

**YOU ARE IN POSSESSION OF A DOCUMENT FILED IN THE SUPERIOR COURT OF DELAWARE THAT IS CONFIDENTIAL AND FILED UNDER SEAL.**

**If you are not authorized by Court order to view or retrieve this document read no further than this page.  You should contact the following person:**

Douglas D. Herrmann (Del. Bar No. 4872)
Christopher B. Chuff (Del. Bar No. 5729)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street, PO Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
*herrmand@pepperlaw.com*
*chuffc@pepperlaw.com*

*Attorneys for Plaintiffs ANconnect, LLC and Anderson Merchandisers, LLC*

Dated: February 17, 2016

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | |
|---|---|
| ANCONNECT, LLC, and ANDERSON MERCHANDISERS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> OUR ALCHEMY, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. _____-\_\_\_\_ [CCLD] <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

ANconnect, LLC ("<u>ANconnect</u>"), and Anderson Merchandisers, LLC ("<u>Anderson</u>") (collectively, "<u>Plaintiffs</u>"), by and through their undersigned counsel, file Plaintiffs' Complaint (the "<u>Complaint</u>") against Defendant, Our Alchemy, LLC ("<u>Alchemy</u>"). Plaintiffs allege, upon information and belief, as follows:

## INTRODUCTION

1.     ANconnect is the physical distribution arm of Anderson Media Corporation.   On May 7, 2015, ANconnect entered into an Asset Purchase Agreement ("<u>Purchase Agreement</u>") with Alchemy, an independent film and television distributor, whereby Alchemy agreed to purchase and assume from ANconnect certain assets and liabilities of ANconnect's business consisting of home video and digital distribution of motion pictures and other audiovisual media

1

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

in and throughout the United States. The parties agreed on an aggregate purchase price subject to certain closing and post-closing adjustments pursuant to sections 2.05 and 2.06 of the Purchase Agreement, and the assumption by Alchemy of specified liabilities.

2.    The parties later executed two amendments to the Purchase Agreement: Amendment No. 1, dated May 29, 2015, and Amendment No. 2, dated July 9, 2015.

3.    In connection with the Purchase Agreement, ANconnect and Alchemy entered into a Transition Services Agreement, dated July 9, 2015, whereby ANconnect agreed to provide Alchemy with specified distribution and returns transition services, including warehousing, order fulfillment, freight management to customers, price stickering, and returns processing, as well as other administrative services. Alchemy agreed to pay weekly fees and charges for ANconnect's transition services.

4.    In connection with the Purchase Agreement, Alchemy also entered into a Merchandising Agreement with Anderson, dated July 9, 2015, whereby Alchemy engaged Anderson to perform certain merchandising services, including but not limited to, stocking, zoning, and setting of the movie department at Walmart stores. The parties agreed that Anderson would submit monthly invoices to Alchemy, which would be payable within thirty (30) days of receipt.

2

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

5.     The ANconnect-Alchemy transaction was finalized and closed on July 9, 2015.

6.     Since that time, Alchemy has failed to perform numerous obligations under the Purchase Agreement, the Transition Services Agreement, and the Merchandising Agreement.  Alchemy has also failed to compensate ANconnect for various other services rendered in connection with the ANconnect-Alchemy transaction.  As a result, Alchemy currently owes Plaintiffs a net amount of not less than **$9,023,611.00**.[1]  Plaintiffs bring this action to recover the amounts rightfully due to them under the parties' agreements.

### PARTIES

7.     Plaintiff ANconnect, LLC is a Texas limited liability company with its principal place of business at 421 SE 34th Street, Amarillo, Texas 79103.

8.     Plaintiff Anderson Merchandisers, LLC is a Delaware limited liability company with its principal place of business at 5601 Granite Parkway, Suite 1400, Plano, Texas 75024.

9.     Defendant Our Alchemy, LLC is a Delaware limited liability company with its principal place of business at 5900 Wilshire Boulevard, Floor 18, Los Angeles, California 90036.

---

[1] This net amount reflects an equitable setoff of $6,047,325.00 owed to Alchemy under the Transition Services Agreement.  In total, Alchemy owes Plaintiffs an aggregate amount of  $15,070,936.00 under the parties' various agreements.

3

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

## JURISDICTION, VENUE & GOVERNING LAW

10.    Jurisdiction and venue in this Court are proper because the Purchase Agreement contains a forum-selection clause whereby the parties expressly agree that the state and federal courts located in Delaware shall have exclusive jurisdiction over any legal suit, action, or proceeding arising out of or based upon the Purchase Agreement or other transaction documents, including the Transition Services Agreement and the Merchandising Agreement.  *See* Ex. A, Purchase Agreement § 10.10(b).  Further, the amount in controversy exceeds $1 million.

11.    According to the Purchase Agreement and the Transition Services Agreement, the Purchase Agreement, the Transition Services Agreement, and any claims arising thereunder, shall be governed, construed, interpreted and enforced in accordance with the substantive laws of the State of Delaware.  *See* Ex. A, Purchase Agreement § 10.10(a); Ex. B, Transition Services Agreement § 23 (incorporating the provisions of Section 10.10(a) of the Purchase Agreement).

12.    According to the Merchandising Agreement, the validity and interpretation of the Merchandising Agreement, the performance of the parties and their respective obligations, and any claims arising thereunder, shall be governed and construed in accordance with the substantive laws of the State of Texas.  *See* Ex. C, Merchandising Agreement § 14.4.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

## FACTUAL ALLEGATIONS

13.    Alchemy has breached the Purchase Agreement, Transition Services Agreement, and Merchandising Agreement, and has failed to pay for other services provided by ANconnect.  As set forth herein, Alchemy has caused and continues to cause Plaintiffs to suffer direct and consequential damages.

**FIRST, ALCHEMY HAS FAILED TO PERFORM OBLIGATIONS UNDER THE PURCHASE AGREEMENT AND AMENDMENTS THERETO.**

14.    Under the Purchase Agreement, ANconnect and Alchemy agreed that the original purchase price would be adjusted pursuant to Sections 2.05 and 2.06. Ex. A, Purchase Agreement § 2.05.  However, as detailed below, Alchemy has failed to pay certain post-closing adjustments.

15.    Section 2.06(a)(i) provides (in part):

> To the extent that the sum of the Content Owners Gross Due balances set forth on the Closing Balance Sheet for the 3PL Business exceeds such amount as set forth on the Estimated Balance Sheet for the 3PL Business, Seller shall pay the amount of such excess to Buyer in accordance with Section 2.06(b)(iv).  Solely by way of illustration, if the Estimated Balance Sheet reflected a Content Owners Gross Due Balance of $1,000,000 and the Closing Balance Sheet reflected a Content Owners Gross Due Balance of $1,200,000, then Seller shall owe Buyer $200,000. **To the extent that the sum of the Content Owners Gross Due balances set forth on the Closing Balance Sheet for the 3PL Business is less than such amount as set forth on the Estimated Balance Sheet for the 3PL Business, Buyer [Alchemy] shall pay the amount of such shortfall to Seller [ANconnect] in accordance with Section 2.06(b)(iv)** . . . .

(emphasis added).

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

16.    Sections 2.06(b)(i)-(ii) provide (in part):

**(b) Examination and Review; Disputes; Adjustment Payments.**

> (i) After receipt of (A) the Closing Balance Sheets, (B) the
> Product Return A/R Statement for each of Walmart, Sam's
> Club, and Best Buy, and (C) the Magnolia Inventory Statement,
> Buyer shall have thirty (30) days (each such period, a "**Review
> Period**") to review such Closing Balance Sheets, Product
> Return A/R Statement, and/or Magnolia Inventory Statement,
> as applicable. . . .

> (ii) On or prior to the last day of the applicable Review Period,
> Buyer may object to the Closing Balance Sheets, Product
> Return A/R Statement, and/or Magnolia Inventory Statement,
> as applicable, by delivering to Seller a written statement setting
> forth Buyer's objections in reasonable detail, indicating each
> disputed item or amount and the basis for Buyer's disagreement
> therewith (each such statement, a "Statement of Objections"). **If
> Buyer [Alchemy] fails to deliver the applicable Statement of
> Objections before the expiration of the applicable Review
> Period, the Closing Balance Sheets, Product Return A/R
> Statement, and/or Magnolia Inventory Statement, as
> applicable, and the Purchase Price adjustments determined
> pursuant to Section 2.06(a) based on the Closing Balance
> Sheets, Product Return A/R Statement, and/or Magnolia
> Inventory Statement, as applicable,** *shall be deemed to have
> been accepted by Buyer*. . . .

(emphasis added).

17.    Alchemy never objected to the sum of the Content Owners Gross Due

balances as set forth on the Closing Balance Sheet for the 3PL Business, which

was **$4,685,941.00** *less* than such amount as set forth on the Estimated Balance

Sheet for the 3PL Business. *Compare* Ex. A, Purchase Agreement, Ex. A, *with* Ex.

D, Closing Balance Sheet for the 3PL Business.  However, Alchemy never paid

6

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

this amount to ANconnect, as required under Section 2.06(a)(i).

18.    Section 2.05(a)(i)(B) provides:

At the Closing, the Purchase Price shall be increased by $3,201,982.00, $102,429.00 and $500,000.00, representing the respective estimated values of Walmart/Sam's Club, Best Buy, and Ingram product returns (valued based on "dealer cost" charged to the applicable Retailer), computed as set forth in Exhibit I, credited against Seller's Accounts Receivable from Walmart/Sam's Club, Best Buy, and Ingram, respectively, for the 3PL Business as of the Closing Date (each such amount, the "**3PL Product Return A/R**" with respect to the applicable Retailer). *The Purchase Price adjustments contemplated by this Section 2.05(a)(i)(B) shall be subject to further adjustment after the Closing as set forth in Section 2.06.*

(emphasis added).

19.    Section 2.05(a)(ii)(B) provides:

At the Closing, the Purchase Price shall be increased by $4,033,429.00 and $1,058,479.00, representing the respective estimated values of Walmart/Sam's Club and Best Buy product returns (valued based on "dealer cost" charged to the applicable Retailer), computed as set forth in Exhibit I, credited against Seller's Accounts Receivable from Walmart/Sam's Club and Best Buy, respectively, as of the Closing Date for the Wholesale Business (each such amount, the "**Wholesale Product Return A/R**" with respect to the applicable Retailer). *The Purchase Price adjustments contemplated by this Section 2.05(a)(ii)(B) shall be subject to further adjustment after the Closing as set forth in Section 2.06.*

(emphasis added).

20.    Section 2.06(a)(ii) provides (in part):

Within thirty (30) days following the Vendor Effective Date for a given Retailer, Seller shall prepare and deliver to Buyer a statement setting forth its calculation of the actual amount of 3PL Product Return A/R and Wholesale Product Return A/R from each such Retailer for the period between the Closing Date and the applicable

7

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

Vendor Effective Date (each such statement, the "**Product Return A/R Statement**" with respect to the applicable Retailer). **Should the actual combined 3PL Product Return A/R and Wholesale Product Return A/R from such Retailer set forth on the Product Return A/R Statement for such Retailer exceed the aggregate of the estimated amounts set forth in Section 2.05(a)(i)(B) and Section 2.05(a)(ii)(B), respectively, for such Retailer, Buyer [Alchemy] shall pay the amount of such excess to Seller [ANconnect] in accordance with Section 2.06(b)(iv). . . .**

(emphasis added).

21.     Although Alchemy representatives raised questions during an e-mail exchange with ANconnect, Alchemy never formally objected to the actual combined 3PL Product Return A/R and Wholesale Product Return A/R as set forth on the Combined Product Return A/R Statement in accordance with Sections 2.06(b)(i)-(ii), which *exceeded* the aggregate estimated amounts set forth in Sections 2.05(a)(i)(B) and 2.05(a)(ii)(B) by **$4,422,675.00**.   *Compare* Ex. A, Purchase Agreement §§ 2.05(a)(i)(B), 2.05(a)(ii)(B), *with* Ex. E, Combined Product Return A/R Statement.   But, Alchemy never paid this amount to ANconnect, as required under Sections 2.05(a)(i)(B), 2.05(a)(ii)(B), and 2.06(a)(ii).

22.     Section 2.06(d) provides:

**(d) Millennium Receivable**. Buyer shall pay the gross amount owed by it, as successor to Millennium Media Services, Inc., on the Closing Date to Seller without regard to deferrals for collection of accounts receivable or future product returns. Such amount shall be offset by amounts owed by Seller to Buyer. At the Closing, the parties shall estimate the amount of such payment, with such estimate to be trued

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

up in the Closing Balance Sheet for the Wholesale Business. Buyer's payment shall be made in accordance with the payment schedule set forth on Exhibit H.

23.     After closing, Alchemy delivered to ANconnect a final statement summary, which reflects a balance payable to ANconnect of $4,850,622.50 for the gross amount owed by it, as successor to Millennium Media Services, Inc. *See* Ex. F, Alchemy Statement Summary. Pursuant to Section 2.06(d), ANconnect offset this amount by $1,691,337.00 owed by ANconnect to Alchemy, as reflected on the Closing Balance Sheet for the Wholesale Business, resulting in a net amount of **$3,159,285.50** due to ANconnect. *See* Ex. F, Alchemy Statement Summary; Ex. G, Closing Balance Sheet for the Wholesale Business. Pursuant to the payment schedule set forth in Exhibit H, Alchemy was required to pay this amount within 120 days after closing. But, as of the date of this Complaint, Alchemy has made no payments to satisfy its obligation.

24.     On July 9, 2015, ANconnect and Alchemy executed Amendment No. 2, which added a new Section 2.06(f) to the Purchase Agreement. *See* Ex. H, Amendment No. 2 § 1(c). Section 2.06(f) provides:

> **Anderson Digital Receivable**. Buyer [Alchemy] shall cause Anderson Digital to pay the receivable in the amount of $1,450,924.92 owed by Anderson Digital, on the Closing Date to Seller [ANconnect] in twelve equal monthly installments beginning on the first day of the month following the Closing Date.

25.     Alchemy's first monthly installment was due on August 1, 2015.

9

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

However, Alchemy has made no monthly payments, and, as of the date of this Complaint, is currently six months past due. The amount currently outstanding is **$725,462.46**.

26.    Under Section 2.03(d), Alchemy assumed and agreed to pay, perform, and discharge certain liabilities of ANconnect, including "all liabilities constituting, or arising in connection with, accounts payable and Gross Due Content Owner relating to the Business" of certain parties set forth in Exhibits A and B. *See* Ex. A, Purchase Agreement § 2.03(d).

27.    Despite the fact that Alchemy assumed the obligation to pay, ANconnect has paid a total of **$1,054,961.03** in wholesale amounts to the following vendors:

| | |
|---|---|
| Sony Music Entertainment | $415,245.00 |
| WEA Corp. | $264,424.00 |
| E1 Entertainment | $79,374.00 |
| IMT Records | $955.00 |
| Capital Christian Distribution | $294,657.00 |
| Covenant Communications | $306.03 |

Ex. I, Receipts of Wholesale Amounts Paid by ANconnect. Alchemy was obligated to pay these amounts under Section 2.03(d), but never did.

**SECOND, ALCHEMY HAS FAILED TO PAY FOR SERVICES UNDER THE TRANSITION SERVICES AGREEMENT.**

28.    Under the Transition Services Agreement, ANconnect agreed to

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

provide Alchemy with specified distribution and returns transition services and other administrative services. *See* Ex. B, Transition Services Agreement § 2. Alchemy agreed to pay for these services in accordance with Section 3 of the Transition Services Agreement, which provides:

Compensation for Transition Services.

(a) For Distribution and Returns Transition Services, Buyer shall pay Seller weekly fees and charges according to Seller's Rate Card as set forth on Exhibit A.

(b) For Administrative Services, Buyer shall pre-pay Seller on a weekly basis the fees as set forth on Exhibit B.

(c) The total costs and reimbursements set forth in Sections 3(a) and (b) hereof shall be referred to as the "Transition Service Fees."

29.    Alchemy has failed to compensate ANconnect for its transition services. Specifically, Alchemy has failed to pay weekly fees for distribution and returns transition services in accordance with Section 3(a) and Exhibit A, and currently owes ANconnect **$844,815.55**. *See* Ex. B, Transition Services Agreement, Ex. A; Ex. J, Summary and Invoices for Distribution and Returns Services.

30.    Alchemy has also failed to pre-pay weekly administrative fees in accordance with Section 3(a) and Exhibit B; thus, Alchemy currently owes ANconnect **$376,768.00**. *See* Ex. K, Invoices for Administrative Fees.

31.    Section 17 provides:

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

Dispute Resolution. If a dispute arises between the Parties under this Agreement, the Parties will use reasonable efforts to settle such dispute at an operational level. If such dispute cannot be resolved at the operational level within a period of 10 days, then it will be referred to Bill Lardie of Seller and Bill Lee of Buyer (together, the "Dispute Resolution Parties") for resolution within a further period of 10 days. If any dispute shall not be resolved in accordance with the above, the Parties may resort to such other dispute resolution remedies as may be available under applicable law.

32.     The parties have used reasonable efforts to settle their disputes at the operational level.    Since October, 2015, representatives of ANconnect and Alchemy, including Bill Lardie of ANconnect and Bill Lee of Alchemy (later replaced by Scott Guthrie), have engaged in on-going communications regarding past-due amounts and disputes under the Transition Services Agreement. However, as of the date of this Complaint, the parties have been unable to resolve their disputes.

**THIRD, ALCHEMY HAS FAILED TO PAY FOR SERVICES UNDER THE MERCHANDISING AGREEMENT.**

33.     Under the Merchandising Agreement, Alchemy engaged Anderson to perform certain merchandising services.  *See* Ex. C, Merchandising Agreement § 1.1, Ex. A.  The parties agreed that Anderson would submit monthly invoices to Alchemy, which would be payable within thirty (30) days of receipt.  *See* Ex. C, Merchandising Agreement § 2.5.

34.     Alchemy has failed to make monthly payments as required by Section 2.5.  As of the date of this Complaint, ten (10) monthly invoices are past due,

12

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

totaling an amount not less than **$2,267,327.13**.  *See* Ex. L, Invoices for Merchandising Services.  Additionally, Alchemy has yet to pay the most recent invoice for **$236,815.20**, which is due on February 28, 2016.  *See* Ex. L, Invoices for Merchandising Services.

**FOURTH, ALCHEMY HAS FAILED TO REIMBURSE ANCONNECT AND PAY FOR OTHER SERVICES RENDERED BY ANCONNECT.**

35.    In February, 2015, Jim Jenkins of Alchemy and Chuck Taylor of ANconnect agreed that the parties would engage Ansarada Pty Limited ("Ansarada"), a third-party vendor, to set up a data room for Alchemy, and that Alchemy would reimburse ANconnect for any fees it incurred in the process. ANconnect ultimately paid Ansarada **$18,107.00** in data room fees, expecting to be reimbursed by Alchemy per the parties' agreement.  *See* Ex. M, Invoices for Data Room Usage.  Although ANconnect invoiced Alchemy for the data room fees, Alchemy has neither disputed the charges nor reimbursed ANconnect for the charges.

36.    In late December, 2015 and early January, Alchemy engaged ANconnect to perform services in Denton, Texas to oversticker existing Universal Product Codes on certain Dreamworks titles prior to shipping a liquidation order. ANconnect overstickered 131,742 units at its standard rate of $0.08 per unit.  *See* Ex. N, Invoice for Classic-Dreamworks Oversticker Service.  However, Alchemy has failed to compensate ANconnect for its services, and currently owes

13

**$10,539.36** in outstanding fees—an amount which Alchemy has not disputed. *See* Ex. N, Invoice for Classic-Dreamworks Oversticker Service.

37.    In May 2015, per an agreement between Jim Jenkins and Chuck Taylor, Alchemy engaged ANconnect to perform inventory transfer services at a transfer rate of $0.04 per unit.  ANconnect transferred 11,913,819 units, resulting in an outstanding balance of **$476,552.76**. *See* Ex. O, Invoice for Inventory Transfer Services.  Although ANconnect invoiced Alchemy for its inventory transfer services, Alchemy has not disputed the charges and, as of the date of this Complaint, has failed to make any payments.

## CAUSES OF ACTION

### COUNT 1: BREACH OF CONTRACT (PURCHASE AGREEMENT)

38.    Plaintiffs repeat and re-allege each allegation set forth herein.

39.    Under the Purchase Agreement, Alchemy was required to pay ANconnect certain post-closing adjustments in accordance with Sections 2.05(a)(i)(B), 2.05(a)(ii)(B), 2.06(a)(i), and 2.06(a)(ii).  Alchemy breached the Purchase Agreement by failing to pay these post-closing adjustments.

40.    Under the Purchase Agreement, Alchemy was required to pay to ANconnect the Millennium Receivable in accordance with Section 2.06(d) and the payment schedule set forth on Exhibit H.  Alchemy breached the Purchase Agreement by failing to make any payments to satisfy its obligation.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

41.    Under Amendment No. 2 to the Purchase Agreement, Alchemy was required to cause Anderson Digital to pay an amount of $1,450,924.92 to ANconnect in twelve equal monthly installments, in accordance with Section 2.06(f).    Alchemy breached the Purchase Agreement by failing to make any monthly payments.

42.    Under the Purchase Agreement, Alchemy was required to pay, perform, and discharge certain liabilities of ANconnect, in accordance with Section 2.03(d), including "all liabilities constituting, or arising in connection with, accounts payable and Gross Due Content Owner relating to the Business" of certain parties set forth in Exhibits A and B.    Alchemy breached the Purchase Agreement by failing to make required payments to the following vendors: Sony Music Entertainment, WEA Corp., E1 Entertainment, IMT Records, and Capital Christian Distribution, and Covenant Communications.    ANconnect made these payments instead.

43.    As a direct and proximate result of Alchemy's breaches of the Purchase Agreement, ANconnect has suffered damages in a net amount not less than **$10,840,011.00**.[2]

44.    All conditions precedent to ANconnect's claims for relief under the

---

[2] This net amount accounts for the $3,208,314 ANconnect owes Alchemy in post-closing adjustments per Section 2.06(a)(iv) of the Purchase Agreement. *See* Ex. A, Purchase Agreement, Ex. B; Ex. G, Closing Balance Sheet for the Wholesale Business.

15

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

Purchase Agreement have been performed or have occurred.

### COUNT 2: BREACH OF CONTRACT (TRANSITION SERVICES AGREEMENT)

45.    Plaintiffs repeat and re-allege each allegation set forth herein.

46.    Under the Transition Services Agreement, Alchemy was required to compensate ANconnect for its transition services in accordance with Section 3 and Exhibits A and B.  Alchemy has breached the Transition Services Agreement by failing to pay weekly fees for ANconnect's distribution and returns transition services and administrative services.

47.    As a direct and proximate result of Alchemy's breaches of the Transition Services Agreement, ANconnect has suffered damages in an amount not less than **$1,221,583.55**.

48.    All conditions precedent to ANconnect's claims for relief under the Transition Services Agreement have been performed or have occurred.

### COUNT 3: BREACH OF CONTRACT (MERCHANDISING AGREEMENT)

49.    Plaintiffs repeat and re-allege each allegation set forth herein.

50.    Under the Merchandising Agreement, Alchemy was required to compensate Anderson for its merchandising services by making monthly payments in accordance with Section 2.5 and Exhibit A.    Alchemy breached the Merchandising Agreement by failing to make any monthly payments.

51.    As a direct and proximate result of Alchemy's breach of the

16

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

Merchandising Agreement, Anderson has suffered damages in an amount not less than **$2,504,142.33**.

52.    All conditions precedent to Anderson's claims for relief under the Merchandising Agreement have been performed or have occurred.

### COUNT 4: BREACH OF CONTRACT (FAILURE TO REIMBURSE DATA ROOM FEES)

53.    Plaintiffs repeat and re-allege each allegation set forth herein.

54.    Per an agreement between representatives of Alchemy and ANconnect, Alchemy agreed to reimburse ANconnect for any fees and costs incurred during the set-up and use of a data room.  ANconnect paid Ansarada—a third party vendor—for Alchemy's data room usage.  Alchemy breached the parties' agreement by failing to reimburse ANconnect for amounts paid to Ansarada.

55.    As a direct and proximate result of Alchemy's breach of the parties' agreement, ANconnect has suffered damages in an amount not less than **$18,107.00**.

56.    All conditions precedent to ANconnect's claim for relief under this agreement have been performed or have occurred.

### COUNT 5: BREACH OF CONTRACT (FAILURE TO PAY FOR OVERSTICKER SERVICES)

57.    Plaintiffs repeat and re-allege each allegation set forth herein.

58.    Alchemy engaged ANconnect to oversticker existing Universal

17

Product Codes on certain Dreamworks titles prior to shipping a liquidation order. ANconnect overstickered 131,742 units at its standard rate of $0.08 per unit. Alchemy breached the parties' agreement by failing to compensate ANconnect for its services.

59.   As a direct and proximate result of Alchemy's breach of the parties' agreement, ANconnect has suffered damages in an amount not less than **$10,539.36**.

60.   All conditions precedent to ANconnect's claim for relief under this agreement have been performed or have occurred.

## COUNT 6: BREACH OF CONTRACT (FAILURE TO PAY FOR INVENTORY TRANSFER SERVICES)

61.   Plaintiffs repeat and re-allege each allegation set forth herein.

62.   Per an agreement between representatives of Alchemy and ANconnect, Alchemy engaged ANconnect to perform inventory transfer services at a transfer rate of $0.04 per unit.  ANconnect transferred 11,913,819 units, but Alchemy breached the parties' agreement by failing to compensate ANconnect for its services.

63.   As a direct and proximate result of Alchemy's breach of the parties' agreement, ANconnect has suffered damages in an amount not less than **$476,552.76**.

64.   All conditions precedent to ANconnect's claim for relief under this

18

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

agreement have been performed or have occurred.

<u>COUNT 7: EQUITABLE SETOFF</u>

65.    Plaintiffs repeat and re-allege each allegation set forth herein.

66.    As reflected in Sections 2.05(a)(i)(B) and 2.05(a)(ii)(B) of the Purchase Agreement, the parties factored the respective estimated values of Walmart/Sam's Club, Best Buy, and Ingram product returns as an increase in the purchase price, subject to post-closing adjustments because such retailers would deduct amounts for product returns from amounts otherwise owed to ANconnect following the closing.    The actual product return deductions exceeded the aggregate estimated amounts by $4,422,675, which is due and owing to ANconnect as a post-closing adjustment under the Purchase Agreement. *See* Ex. A, Purchase Agreement §§ 2.05(a)(i)(B), 2.05(a)(ii)(B); Ex. E, Combined Product Return A/R Statement.    While deductions for product returns were charged by the retailers to ANconnect, the physical product being returned was delivered to Alchemy.    Although Alchemy received a substantial amount of physical product returns in excess of the parties' estimates, Alchemy has neither paid post-closing adjustments, nor performed its other obligations under the Purchase Agreement, Transition Services Agreement, Merchandising Agreement, or other agreements with ANconnect.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

67.    Under the Transition Services Agreement, ANconnect has collected receivables from Walmart/Sam's Club, Best Buy, and Ingram on behalf of Alchemy (which receivables were not charged with deductions made for product returns) and has remitted a portion of those amounts to Alchemy by wire transfer. However, given Alchemy's refusal to honor its various contractual obligations, ANconnect has withheld $6,047,325.00 as an equitable setoff for amounts due and owing to ANconnect under its various agreements with Alchemy.    Allowing Alchemy to both receive the gross amount of receivables (without reduction for product return deductions) and to hold the physical product returned while ANconnect suffers the economic impact of product return deductions due to Alchemy's continued shirking of its obligations to pay post-closing adjustments would be inequitable, and would allow Alchemy to financially benefit from its wrongful conduct.

68.    Accordingly, ANconnect seeks to retain the **$6,047,325.00** otherwise due to Alchemy under the Transition Services Agreement as an equitable setoff for amounts due and owing to Plaintiffs under their various agreements with Alchemy.

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.

## PRAYER FOR RELIEF

69.    For the foregoing reasons, Plaintiffs seek judgment against Alchemy, including the following:

(a)    Award Plaintiffs damages in the amount that will be proved at trial representing the actual loss caused by Alchemy's wrongful conduct in breach of the Purchase Agreement, the Transition Services Agreement, the Merchandising Agreement, as well as the parties' other agreements relating to reimbursement of data room fees, oversticker services, and inventory transfer services;

(b)    Award Plaintiffs their costs and expenses incurred in this action;

(c)    Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

(d)    Award Plaintiffs any such other relief that this Court deems proper and just.

/s/ Douglas D. Herrmann
Douglas D. Herrmann (Del. Bar No. 4872)
Christopher B. Chuff (Del. Bar No. 5729)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street, PO Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
herrmand@pepperlaw.com
chuffc@pepperlaw.com

OF COUNSEL:

Stephen C. Rasch
Anna Kalinina
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Stephen.Rasch@tklaw.com
Anna.Kalinina@tklaw.com

Attorneys for Plaintiffs ANconnect, LLC and
Anderson Merchandisers, LLC

Dated:  February 17, 2016

THIS DOCUMENT IS CONFIDENTIAL AND FILED UNDER SEAL.
REVIEW AND ACCESS TO THIS DOCUMENT IS PROHIBITED EXCEPT BY PRIOR COURT ORDER.