### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OUR ALCHEMY, LLC, *et al.*, | ) | Case No. 16-11596 (KG) |
| | ) | (Jointly Administered) |
| | ) | |
| _____Debtors._____ | ) | |
| GEORGE L. MILLER, in his capacity as | ) | |
| Chapter 7 Trustee for the jointly administered | ) | |
| Bankruptcy estates of Our Alchemy, LLC and | ) | |
| Anderson Digital, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 18-50633 (KG) |
| | ) | |
| ANCONNECT, LLC; ANDERSON | ) | |
| MERCHANDISERS, LLC; ANDERSON | ) | |
| MERCHANDISERS CANADA, INC; OA | ) | |
| INVESTMENT PARTNERS LLC; OA | ) | |
| INVESTMENT HOLDINGS LLC; VIRGO | ) | |
| INVESTMENT GROUP, LLC; VIRGO | ) | |
| SOCIETAS PARTNERS, LLC; VIRGO | ) | |
| SOCIETAS PARTNERSHIP III (ONSHORE), | ) | |
| L.P.; VIRGO SOCIETAS PARTNERSHIP III | ) | |
| (OFFSHORE), L.P.; VIRGO SERVICE | ) | |
| COMPANY LLC; ARDON MOORE; MARK | ) | |
| PEREZ; JESSE WATSON; TODD DORFMAN; | ) | |
| BILL LEE; STEPHEN LYONS; and FREYR | ) | |
| THOR, | ) | |
| | ) | |
| _____Defendants._____ | ) | **Re: D.I. 7** |

## MEMORANDUM OPINION

## RE: DEFENDANT STEVE LYONS'S MOTION TO DISMISS

## INTRODUCTION

George L. Miller, in his capacity as Chapter 7 trustee (the "Plaintiff" or "Trustee") for the jointly administered bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson Digital") (collectively, the "Debtors"), brought this adversary proceeding against certain affiliates of the Debtors: ANConnect, LLC ("ANConnect"), Anderson Merchandisers, LLC, Anderson Merchandisers Canada, Inc., OA Investment Holdings LLC and OA Investment Partners LLC. The Trustee also brought this action against certain purchasers of Alchemy: Virgo Investment Group, LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., and Virgo Service Company LLC. Additional defendants include: Arc Entertainment, LLC, Ardon Moore, Mark Perez, Jesse Watson, Todd Dorfman, Bill Lee, Steve Lyons ("Mr. Lyons") and Freyr Thor ("Mr. Thor") who the Trustee named in their capacities.

Defendant Mr. Lyons moves to dismiss partially the Fourth and Sixth Claims against him in the thirteen-claim complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), made applicable here by Federal Rule of Bankruptcy Procedure 7012 ("Bankruptcy Rule 7012") (the "Motion"). In the alternative, Mr. Lyons moves to strike portions of the Fourth and Sixth claims pursuant to Rule 12(f), made applicable here by Bankruptcy Rule 7012. Mr. Lyons also seeks relief from the United States Bankruptcy Court for the District of Delaware pursuant to Local Rule 7007-1.

The Trustee alleges that the Lyons Transfers are actually and constructively fraudulent, preferential and/or constitute unjust enrichment. Mr. Lyons only seeks to dismiss the Fourth and Sixth Claims as it relates to the Six Disputed Lyons Transfers where Alchemy is the transferor or, in the alternative, strike references to such transfers within each claim, respectively.

## JURISDICTION

The Court has jurisdiction over this matter and the judicial authority to enter a final order pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1).[1] Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409. The preference claims are core matters under 28 U.S.C. § 157(b)(2)(F).

## BACKGROUND

This adversary proceeding has several claims against numerous defendants who also filed motions to dismiss. In this Memorandum Opinion, the Court will only recite the facts relevant to the Trustee's claims against Mr. Lyons.

### A. The ANConnect Transaction

In January 2015, Alchemy considered acquiring ANConnect's physical home video and digital distribution business, including Anderson Digital, LLC.[2] Compl. ¶¶ 8, 55. On February 11, 2015, Alchemy and ANConnect executed a Term Sheet indicating

---

[1] However, the Trustee has demanded a trial by jury and does not consent to the Court's entry of a final judgment. Compl. ¶ 4. In deciding a motion to dismiss, the Court is not required to state findings of fact or conclusions of law. *See* Fed. R. Bankr. P. 7052 & Fed. R. Civ. P. 52(a)(3).

[2] Prior to the consummation of the ANConnect Transaction, ANConnect owned a 51% membership interest in Anderson Digital. Defendants Mr. Lyons and Mr. Thor each owned the remaining 24.5% membership interest.

Alchemy's desire to purchase ANConnect's "US video and digital distribution business" for "a multiple of 4 times estimated Proforma EBITDA of the Physical Business and 6 times estimated Proforma EBITDA of the Digital Business" as well as the assumption of "certain specified [ANConnect] liabilities and obligations." Compl. ¶ 57.

On May 7, 2015, Alchemy and ANConnect executed an Asset Purchase Agreement ("APA"). Compl. ¶ 59. The APA was amended on May 29, 2015 and again on June 9, 2015. Compl. ¶ 59. At a high level, the APA described Alchemy's purchase of the "Business" as ANConnect's "home video and digital distribution for motion pictures and other audiovisual media." Compl. ¶ 60. Specifically, the APA identified the "Purchased Assets" as including ANConnect's 51% membership interest in Anderson Digital. Compl. ¶ 61. The purchase price was $37,637,347, consisting of (a) $35,893,147 being allocated to the physical segment of the Business and (b) $1,744,200[3] for ANConnect's 51% membership interest in Anderson Digital subject to certain post-closing adjustments. Compl. ¶ 62. Pursuant to the APA, Alchemy assumed certain of ANConnect's liabilities. Compl. ¶ 63. On July 9, 2015, the sale closed (the "ANConnect Transaction.").

On July 2, 2015, prior to the closing of the ANConnect Transaction, Anderson Digital wired $1,001,864 into an escrow account for the benefit of its members. Compl. ¶ 73. In accordance with each member's interest, ANConnect received 51% (approximately

---

[3] The amount of $1,744,200 was calculated by multiplying Anderson Digital's estimated 2014 EBITDA of $570,000 by 6 ($570,000 * 6 = $3,420,000) and then deriving 51% of that sum ($3,420,000 * .51 = $1,744,200). Compl. ¶¶ 62, 87. This equation provides further context for the discussion of the Lyons Agreement in the next section.

$510,000) while Mr. Lyons and Mr. Thor each received 24.5% (approximately $245,000 each). Compl. ¶¶ 73, 98.

### B. Lyons Agreement

Around the same time as the ANConnect Transaction, Alchemy purchased Mr. Lyons' 24.5% interest in Anderson Digital. Compl. ¶ 85. Mr. Lyons was the co-founder, Managing Partner, and Executive Vice President of Sales, Marketing, and Business Development of Anderson Digital. Compl. ¶ 12. On June 30, 2015, Alchemy, Anderson Digital and Mr. Lyons entered into a Membership Interest Purchase Agreement (the "Lyons Agreement").[4] Compl. ¶ 86. Alchemy paid Mr. Lyons $1,800,000 for his interest in Anderson Digital.[5] Compl. ¶ 86. On July 9, 2015, Alchemy paid Mr. Lyons $1,400,000. Compl. ¶ 88. On December 11, 2015, Alchemy paid Mr. Lyons $150,000. Compl. ¶ 89. On February 19, 2016, Alchemy paid Mr. Lyons $250,000. Compl. ¶ 89.

On July 9, 2015, the same day the ANConnect Transaction closed, Mr. Lyons resigned from Anderson Digital. Compl. ¶ 12. The Lyons Agreement required Alchemy to pay Mr. Lyons's severance obligations which Mr. Lyons and Anderson Digital had agreed to in Mr. Lyons's 2012 employment agreement. Compl. ¶ 90. On July 17, 2015, Alchemy made a $61,000 severance payment to Mr. Lyons. Compl. ¶ 90. On February 19, 2016, Alchemy made a $331,000 severance payment to Mr. Lyons. Compl. ¶ 90. On March 4, 2016, Alchemy made a $1,487.42 severance payment to Mr. Lyons. Compl. ¶ 90.

---

[4] Alchemy also acquired Mr. Thor's 24.5% interest in Anderson Digital in a similar agreement (the "Thor Agreement"). *See* Compl. ¶¶ 94-101.

[5] Applying the equation in footnote 7 here, Mr. Lyons's 24.5% interest was worth $837,900 ($570,000 * 6 = $3,420,000) and then deriving 24.5% of that sum ($3,420,000 * .24.5 = $837,900)).

Finally, pursuant to the Lyons Agreement, Alchemy also paid $15,000 to the Bryan Cave law firm for the benefit of Mr. Lyons. Compl. ¶ 91.

## C. Disputed Transfers

The Trustee seeks to recover for the following transfers as, *inter alia*, preferential under the Bankruptcy Code and fraudulent under the Delaware Code:

| Transfer Number | Date of Transfer | Debtor Transferor | Lyons Transferee | Amount | Purpose for the Transfer |
|---|---|---|---|---|---|
| 1. | July 2, 2015 | Anderson Digital | Mr. Lyons | $245,0000 | Anderson Digital's distribution to members prior to the closing of the ANConnect Transaction |
| 2. | July 9, 2015 | Alchemy | Mr. Lyons | $1,400,000 | Mr. Lyons's Membership Interest |
| 3. | July 17, 2015 | Alchemy | Mr. Lyons | $61,000 | Mr. Lyons's Severance |
| 4. | December 11, 2015 | Alchemy | Mr. Lyons | $150,000 | Mr. Lyons's Membership Interest |
| 5. | February 19, 2016 | Alchemy | Mr. Lyons | $581,000 | $250,000 for Mr. Lyons's Membership Interest; $331,0000 for Mr. Lyons's Severance[6] |
| 6. | February __, 2016 | Alchemy | Bryan Cave for the benefit of Mr. Lyons | $15,000 | Pursuant to Lyons Agreement |
| 7. | March 4, 2016 | Alchemy | Mr. Lyons | $1487.82 | Mr. Lyons's Severance |
| Total | | | | $2,453,487.82 | |

The Trustee seeks to avoid the seven transfers above (collectively, the "Lyons Transfers"). In his Motion, Mr. Lyons seeks to dismiss transfers #2-7, where Alchemy is

---

[6] The Court is categorizing the transfer by date and thus lumps these two different payments into one transfer for the purposes of the table and discussion.

the transferor (the "Six Disputed Lyons Transfers"). Motion, ¶¶ 1,13; p. 15; Reply of Def. Steve Lyons in Supp. of Mot. to Dismiss, or in the Alternative, Mot. to Strike the Fourth and Sixth Claims of Pl.'s Compl. ("Mr. Lyons's Reply"), pp. 1, 11-12 (D.I. 11).

### D. Alchemy's Liquidity Issues

Prior to the July 9, 2015 closing of the ANConnect Transaction, Alchemy had liquidity issues. Compl. ¶¶ 67-69. The ANConnect Transaction exacerbated Alchemy's illiquidity due to, *inter alia*, Alchemy's assumption of certain of ANConnect's liabilities pursuant to the APA. Compl. ¶¶ 76-82. A few weeks after closing, Alchemy was unable to meet its obligations as they came due. Compl. ¶ 76. By April 2016, 50% of Alchemy's liabilities were from its assumption of certain of ANConnect's liabilities. Compl. ¶ 82.

Alchemy's insiders (at the time) informed Mr. Lyons of Alchemy's liquidity issues in November 2015 and February 2016. Compl. ¶ 79. In fact, Mr. Lyons's said that "Alchemy's acquisition of Anderson Digital's parent company has been an operational and financial disaster," as Alchemy "experienc[ed] serious trouble meeting its financial obligations as they come due, [including obligations] to vendors and suppliers which are critical to the company's continued existence." Compl. ¶ 79. Mr. Lyons acknowledged that the ANConnect Transaction left an illiquid Alchemy in a state of "financial triage." Compl. ¶ 79. On July 1, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. Compl. ¶ 7.

## LEGAL STANDARD

**I.    Motion to Dismiss under Rule 12(b)(6)**

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) is inextricably linked to Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In its seminal *Twombly* decision, the Supreme Court ushered in the modern era of notice pleading under Rule 8(a)(2). The Court observed that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligations to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The *Twombly* standard is one of "plausibility" and not "probability" - "it simply requires that the complaint state enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* at 556.

The Supreme Court again addressed the Rule 8(a)(2) notice pleading standard in its *Iqbal* decision. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). The *Iqbal* decision clarifies that the *Twombly* plausibility standard applies to all civil suits filed in federal courts and identifies two "working principles" underlying the *Twombly* decision. *Id.* at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation

omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

The United States Court of Appeals for the Third Circuit synthesized the preceding authorities in its *Fowler* decision:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, '[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."' This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

*Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted). The Court now proceeds with its analysis of the Virgo Defendants' Motion.

## II.    Motion to Strike under Rule 12(f)

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose is to "'clean up the pleadings, streamline litigation, and avoid the unnecessary

forays into immaterial matters.'" *Karpov v. Karpov*, 307 F.R.D. 345, 348 (D. Del. 2015) (citing *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012)).

A Rule 12(f) motion is disfavored. *Fesnak and Assocs. v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010). While courts have considerable discretion, striking a pleading or a portion thereof is a drastic remedy to be used sparingly due to the difficulty of deciding a case without a factual record at an early stage in the proceedings. *Karpov*, 307 F.R.D. at 349 (internal quotations omitted) (citing *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 142 (E.D. Pa. 2011) & *Simmons v. Nationwide Mut. Fire Ins. Co.*, 788 F. Supp. 2d 404, 407 (W.D. Pa. 2011)). A motion to strike should only be granted when the movant establishes that the challenged allegations are "so unrelated to the plaintiff's claims as to be unworthy of any consideration and that their presence in the pleadings will be prejudicial." *Id.* at 348 (citation omitted). Prejudice exists when a challenged reference in a pleading "confuses the issues or is so lengthy and complex that it places an undue burden on the responding party." *Id.* (citations omitted).

## DISCUSSION

The question is whether Mr. Lyons was a statutory or non-statutory insider of Alchemy under 11 U.S.C. § 547(b)(4) and/or 6 Del. C. §§ 1305(b), on the date of the Six Disputed Lyons Transfers. The Court finds that Mr. Lyons was not. The Court will grant Mr. Lyons partial dismissal of the Fourth and Sixth Claims as it relates to the Six Disputed Lyons Transfers. The Court will deny, as moot, Mr. Lyons's alternative relief to strike references to the Lyons Transfers in the Fourth and Sixth Claims.

I.    **Fourth Claim – Avoidance and Recovery of Transfers Under 11 U.S.C. §§ 547(b) and 550**

   A. **Mr. Lyon's Motion to Dismiss**

   The Trustee brings a preference claim against Mr. Lyons. The Trustee alleges the Lyons Transfers are preferential. Mr. Lyons seeks partial dismissal of this claim as it relates to the Six Disputed Lyons Transfers where Alchemy is the transferor. The Trustee specifically alleges that the Lyons Transfers were made to and/or for the benefit of an insider, Mr. Lyons, within one year of the petition date on account of an antecedent debt, while Debtors were insolvent and the payment amounted to a sum more than Mr. Lyons would realize if the Debtors filed for relief under Chapter 7 of the Bankruptcy Code.

   To avoid a transfer under section 547(b) of the Bankruptcy Code, a plaintiff must show that the transfer: (1) was made to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made on or within 90 days of the petition date or one year if the creditor was an **insider**; and (5) enables such creditor to receive more than he would have if the case was a Chapter 7 liquidation. 11 U.S.C. § 547(b) (emphasis added).

   Under section 550 of the Bankruptcy Code, the Court can only grant the Trustee relief to the extent the transfers are avoidable under sections 544, 547, or 548 of the Bankruptcy Code. 11 U.S.C. § 550. Moreover, the Trustee is only entitled to "recover, for the benefit of the estate, the property transferred . . . from— (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

11

The only issue is whether Mr. Lyons was a statutory or non-statutory "insider" of Alchemy as of the date of any of the Six Disputed Lyons Transfers under section 547(b)(4).

### i. Statutory Insider

Section 101(31) of the Bankruptcy Code defines an "insider." A statutory insider includes in relevant part:

> (31) The term "**insider**" includes—
> (B) if the debtor is a corporation—
> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;
> (iv) partnership in which the debtor is a general partner;
> (v) general partner of the debtor; or
> (vi) relative of a general partner, director, officer, or person in control of the debtor;

11 U.S.C. § 101(31)(B) (emphasis added). A statutory insider also includes an "affiliate, or insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. § 101(31)(E).

### The Trustee's Argument

The Trustee argues that the Complaint sufficiently pleads facts showing Mr. Lyons was an insider of the Alchemy due to his ownership and management roles in Anderson Digital. Compl. ¶ 100; Pl.'s Mem. of Law in Opp'n to Def. Steve Lyons' Mot. to Dismiss, or, in the Alternative, Mot. to Strike the Fourth and Sixth Claims of Pl's Compl. ("Pl.'s Opp'n"), p. 8 (D.I. 8). The Trustee relies on Bankruptcy Code Section 101(31)(E), which defines an insider as including an "insider of an affiliate as if such affiliate were the debtor." 11 U.S.C. § 101(31)(E). An "affiliate" includes an entity or corporation that the debtor owns at least 20 percent of. 11 U.S.C. § 101(2)(B). The Trustee claims that when the ANConnect Transaction and Lyons Agreement (and the Thor Agrement) was

12

consummated, Alchemy became the owner of Anderson Digital rendering the two entities "affiliates." Pl.'s Opp'n, p. 8. As Mr. Lyons was undisputedly a statutory insider of Anderson Digital, he became a statutory insider of Alchemy on the date of each of the Lyons Transfers. *Id.*

### Mr. Lyons' Counter

Mr. Lyons counters that while he was a former insider of Anderson Digital, he was never an insider of Alchemy. Mr. Lyon's Reply, p. 6. Mr. Lyons argues that the Trustee fails to plead his statutory insider status. Mr. Lyon's Reply, p. 6. The ANConnect Transaction closed on July 9, 2015. *Id.* However, on that same day, Mr. Lyons resigned from all his positions at Anderson Digital. Mr. Lyon's *Id.* at p. 7 (citing Compl. ¶¶ 12, 86, 90). In fact, the Lyons Agreement "required Mr. Lyons to resign immediately upon closing of the sale and in exchange provided him with severance payments." *Id.*

### Ruling

A person's insider status must be determined on the exact date of each disputed transfer. Section 547(b)(4)'s plain language states a transfer is a preference if, *inter alia,* "such creditor **at the time of such transfer was an insider**." 11 U.S.C. § 547(b)(4)(B) (emphasis added). Indeed, the majority of courts have determined that "it is the date of the payment that counts when bringing an insider preference claim." *Zucker v. Freeman (In re NetBank, Inc.),* 424 B.R. 568; 570 (Bankr. M.D. Fla. 2010) (citations omitted); *see also Terry, Jr. v. Paschall (In re Paschall),* 403 B.R. 366, 377 (Bankr. E.D. Va. 2009) (same).

Here, Mr. Lyons's seeks to dismiss transfers #2-7 where Alchemy is transferor (*see* Table, *supra* at pp. 6). Transfer #2 was made on July 9, 2015. On that same day, the

ANConnect Transaction closed and Mr. Lyons resigned from Anderson Digital. As of July 9, 2015, Mr. Lyons was not an insider of Anderson Digital and thus not an insider of Alchemy. The Trustee fails to plead Mr. Lyons's statutory insider status. It follows that Mr. Lyons could not have been an insider of Alchemy on the date of the consequent transfers #3-7. As a result, Mr. Lyons was not a statutory insider under Bankruptcy Code section 547(b)(4) at any time during the Six Disputed Lyons Transfers.

### ii. Non-Statutory Insider

The word "includes" in section 101(31) suggests that this section only defines a non-exhaustive list of insiders. Therefore, non-statutory insiders, persons who do not fit within a definition under section 101(31), do exist. *Anstine v. Carl Zeiss Meditec AG (In re U.S. Med., Inc.)*, 531 F.3d 1272, 1276 (10th Cir. 2008) (because section 101(31)'s "include" references only specific examples, there must be insiders who are not listed); *In re Foothills Texas, Inc.*, 408 B.R. 573, 578 (Bankr. D. Del. 2009) (citing *Schubert v. Lucent Techs. (In re Winstar Commc'ns., Inc.)*, 554 F.3d 382, 395 (3d. Cir. 2009) (same)).

For a person to be a non-statutory insider, "there must be a close relationship with the debtor and some evidence, other than the relationship, that the transaction was not conducted at arm's length." *Burtch v. Opus, LLC (In re Opus East, LLC)*, 528 B.R. 30, 93 (Bankr. D. Del. 2015) (citing *Winstar*, 554 F.3d at 396-97). There are three factors to determine whether a person is a non-statutory insider of the debtor: "(1) the closeness of the relationship between the transferor and transferee, (2) the degree of influence the transferee exerts over the transferor, and (3) whether the transactions were arms-length."

14

*Id.* (citing *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 523-24 (Bankr. D. Del. 2006) (citation omitted)).

### The Trustee's Argument

The Trustee argues that the Complaint sufficiently pleads facts showing Mr. Lyons was a non-statutory insider of Alchemy. Pl.'s Opp'n, pp. 8-9. Even after Mr. Lyons resigned from Anderson Digital, he was aware that Alchemy faced "serious operational and financial difficulties immediately after the ANConnect Transaction, that Alchemy was having trouble paying vendors, suppliers, and others as obligations became due, that Alchemy was in a state of 'financial triage, picking and choosing which of its creditors [to] pay,' and that Alchemy was having difficulty making timely lease and license payments." *Id.* at p. 9 (citing Compl. ¶ 79). The Complaint also alleges that Alchemy informed Mr. Lyons of its liquidity concerns in November 2015 and February 2016. *Id.* Mr. Lyons "had more access to and involvement with Alchemy than would an average creditor or uninvolved third party," and knew of Alchemy's liquidity concerns at the time of each of the Six Disputed Lyons Transfers. *Id.* (citing Compl. ¶¶ 89-91, 93). Thus, Mr. Lyons was a non-statutory insider of Alchemy.

The Trustee further argues that he alleges sufficient facts showing that the Lyons Agreement benefited Mr. Lyons to the detriment of Alchemy, thus questioning whether the transaction was conducted at arm's length. *Id.* at p. 10. Specifically, the Complaint alleges that the Lyons Agreement stripped Alchemy of its working capital for the benefit of, *inter alia*, Mr. Lyons. *Id.* at p. 9 (citing Compl. ¶¶ 78, 88-93). Moreover, on July 2, 2015, a week before the closing of the ANConnect Transaction, Anderson Digital "paid out

15

nearly all of its working capital to its insiders" including $245,000 to Mr. Lyons. *Id.* at pp. 9-10 (citing Compl. ¶¶ 73, 98-101). Mr. Lyons's close relationship with Alchemy suggests the Lyons's Agreement was not negotiated at arm's length and so Mr. Lyons's was a non-statutory insider at the time of each of the Six Disputed Lyons Transfers.

### Mr. Lyons' Counter

The Trustee fails to plead facts showing that Mr. Lyons's relationship with Alchemy was anything but an arm's length transaction where Alchemy, a third party, purchased Mr. Lyons's minority membership interest in Anderson Digital. Motion, ¶ 32. Mr. Lyons concedes that while the Trustee pleads facts detailing those involved in the ANConnect Transaction, Mr. Lyons was not included. Mr. Lyons's Reply, p. 10 (citing Compl. ¶¶ 55-84). Mr. Lyons argues that aside from the Lyons Agreement, he did not have any relationship with Alchemy. *Id.* Even though Mr. Lyons received payments from Alchemy after his resignation, he had no influence over Alchemy. *Id.* The Trustee's allegations that Mr. Lyons knowledge of Alchemy's liquidity concerns giving him "more access to and involvement with Alchemy than would an average creditor or uninvolved third party" is insufficient to render Mr. Lyons a non-statutory insider. *Id.* (citing Pl.'s Opp'n, p. 9 (citing Compl. ¶¶ 69, 72, 79, 87, 89-92, 93, 96)).

### Ruling

Here, the Court applies the three *Opus East* factors in turn. The first factor is "the closeness of the relationship between the transferor and transferee." *Opus East*, 528 B.R. at 93 (citing *Oakwood Homes*, 340 B.R. at 523-24) (citation omitted)). The most salient point is whether Mr. Lyons was an insider at the time of each of the Six Disputed Lyons

Transfers. *See* 11 U.S.C. 547(b)(4)(B). Based on the Complaint, Mr. Lyons's only relationship with Alchemy was his status as a contract counterparty as it related to the Lyons Agreement. Compl. ¶¶ 85-93; 100-101. Mr. Lyons did not play a role in negotiating the APA. Compl. ¶¶ 55-101. In fact, on July 9, 2015, at the same time as the closing of the ANConnect Transaction, Mr. Lyons resigned from Anderson Digital. Compl. ¶ 12. Thus, on the date of the Six Disputed Transfers starting from July 9, 2015 to February 2016 (*see* Table, *supra* at pp. 6-7), Mr. Lyons had no relationship with Alchemy whatsoever. The Complaint does not allege facts showing otherwise.

The Complaint only alleges that Alchemy's consideration for Mr. Lyons's 24.5% membership interest was "in excess of reasonably equivalent value." Compl. ¶¶ 57, 67, 86-87. However, those facts are insufficient to allege that Mr. Lyons was in such a close relationship with Alchemy that he was a non-statutory insider. Similarly, the Trustee's facts that Mr. Lyons knew about Alchemy's liquidity concerns at the time of each payment are insufficient to allege that Mr. Lyons was in such a close relationship with Alchemy that he was a non-statutory insider. Compl. ¶¶ 79, 89-93. The Trustee fails to plead sufficient facts showing Mr. Lyons to be an insider of Alchemy on the date of any of the Six Disputed Lyons Transfers.

The second factor is "the degree of influence the transferee exerts over the transferor." *Id.* At the time of each of the Six Disputed Lyons Transfers, Mr. Lyons was not an insider of Alchemy. The Complaint does not plead any facts showing that Mr. Lyons exerted any influence over Alchemy. The Complaint only alleges facts mentioned in the first factor where Mr. Lyons was aware of Alchemy's liquidity concerns on each

17

payment date and that Mr. Lyons received what the Trustee deemed over-consideration in the Lyons Agreement. Those facts, *per se*, do not sufficiently allege that Mr. Lyons exerted any material degree of influence, if any at all, over Alchemy on the date of any of the Six Disputed Lyons Transfers.

The third factor is "whether the transactions were arms-length." *Id.* The Trustee does not plead sufficient facts showing that the Lyons Agreement was anything less than arm's length. Section 547(b)(4)(B)'s plain language indicates that insider status is determined at the time of each transfer. At the time of the Six Disputed Lyons Transfers, Mr. Lyons's was only a contract counterparty to Alchemy. Outside of the Lyons Agreement, Mr. Lyons did not have any relationship with Alchemy.

Consider the following counterfactual. The Court backdates its analysis to the June 30, 2015 date when the Lyons Agreement was entered into and determines that the Trustee pleads facts showing the Lyons Agreement was not an arm's length transaction. That would suggest Mr. Lyons may have been an insider for purposes of the *Opus East* test and this factor weighs in favor of the Trustee. However, on the date of each transfer, Mr. Lyons was not and could not have been a non-statutory insider of Alchemy. The Trustee's pleading of facts concerning whether the Lyons Agreement was arm's length is ultimately inessential. *See Jahn v. Char (In re Incentium)*, 473 B.R. 264 (Bankr. E.D. Tenn. 2012) (holding that under section 547(b)(4)(B), "the transferee must constitute an insider at the time the transfer was made, and that it is not enough that the transferee be an insider at the time the transfer was arranged. This holding is consistent with virtually all

of the cases that have examined the issue in the last twenty years."); *accord Zucker v. Freeman (In re NetBank, Inc.)*, 424 B.R. 568, 570-72 (Bankr. M.D. Fla. 2010) (same).

The Trustee fails to plead Mr. Lyons's non-statutory insider status. It follows that Mr. Lyons could not have been an insider of Alchemy on the date of the consequent transfers #3-7. As a result, Mr. Lyons was not a non-statutory insider under Bankruptcy Code section 547(b)(4) at any time during the Six Disputed Lyons Transfers.

The Trustee has not adequately pleaded a claim under 11 U.S.C. § 547. As the Trustee fails to plead a preference claim, he cannot prevail under section 550. The Court will grant Mr. Lyons partial dismissal of the Fourth Claim as it relates to the Six Disputed Lyons Transfer where Alchemy is the transferor.

### B. Mr. Lyon's Motion to Strike

Alternatively, Mr. Lyons moves to strike any references to the "Lyons Transfers" in the Fourth Claim where Alchemy is the transferor. Motion, ¶¶ 13, 38-39; p 15; Mr. Lyons's Reply, pp. 11-12 ("Mr. Lyons has not sought relief from this Court in the Motion as to the $245,000 transfer made by Anderson Digital. The Motion was limited solely to the transfers made by Our Alchemy."). As the Court will grant Mr. Lyons dismissal of the Fourth Claim as it relates to the Six Disputed Lyons Transfers, the Court will deny, as moot, Mr. Lyons's alternative relief to strike under Rule 12(f).

### II.    Sixth Claim – Avoidance and Recovery of Transfers Under 6 Del. C. §§ 1305(b) and 11 U.S.C. §§ 544 and 550

### A. Mr. Lyon's Motion to Dismiss

19

The Trustee alleges a fraudulent transfer claim under state law against Mr. Lyons. The Trustee alleges the Lyons Transfers are fraudulent under Delaware law. Mr. Lyons seeks partial dismissal of this claim as it relates to the Six Disputed Lyons Transfers where Alchemy is the transferor. The Trustee specifically alleges that the Lyons Transfers were made to an insider, Mr. Lyons, on account of an antecedent debt when Alchemy was insolvent and Mr. Lyons had reasonable cause to believe Alchemy was insolvent.

A claim under Delaware Code section 1305(b) is applicable to this adversary proceeding pursuant to Bankruptcy Code section 544(b)(1). 11 U.S.C. § 544(b)(1). Delaware Code section 1305(b) states:

> (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an **insider** for an antecedent debt, the debtor was insolvent at that time and the **insider had reasonable cause to believe that the debtor was insolvent**.

6 Del. C. § 1305(b) (emphasis added). The Court also adopts the law on section 550 of the Bankruptcy Code from Section I.A. above.

Section 1305(b) of the Delaware Code closely tracks section 547(b) of the Bankruptcy Code. *See Halperin v. Moreno (In re Green Field Energy Servs.)*, 2015 WL 5146161 at *17 (Bankr. D. Del. Aug. 31, 2015) ("[T]he requirements of Section 1305(b) largely overlap with those of Section 547(b)."). Many courts have found that the Delaware Fraudulent Transfer Act closely tracks the Bankruptcy Code's fraudulent transfer provisions. *See Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re BMT-NW Acquisition, LLC)*, 582 B.R. 846, 856 (Bankr. D. Del. 2018) (finding that a fraudulent transfer under 6 Del. C. § 1304 is the "Delaware state law equivalent of 11 U.S.C. § 548" as the "two statutes

contain equivalent substantive requirements."); *Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 473 B.R. 525, 567 (Bankr. D. Del. 2012) ("It is undisputed that the Delaware . . . Fraudulent Transfer Acts track section 548 of the Bankruptcy Code (or vice versa)"). Here, the only issue is whether Mr. Lyons was a statutory or non-statutory "insider" of Alchemy as of the date of any of the Six Disputed Lyons Transfers under Delaware Code section 1305(b).

### i. Statutory Insider

The Delaware Code's definition of an "insider" is identical to the Bankruptcy Code's in substance. A statutory insider includes in relevant part:

> (7) "**Insider**" includes:
>   b. If the debtor is a corporation:
>     1. A director of the debtor;
>     2. An officer of the debtor;
>     3. A person in control of the debtor;
>     4. A partnership in which the debtor is a general partner;
>     5. A general partner in a partnership described in paragraph (7)a.2. of this section; or
>     6. A relative of a general partner, director, officer, or person in control of the debtor;

6 Del. C. § 1301(7)b (emphasis added). A statutory insider also includes an "affiliate, or insider of an affiliate as if such affiliate were the debtor." 6 Del. C. § 1301(7)d.

As a statutory insider under Delaware Code section 1301(7) is the substantively the same as a statutory insider under Bankruptcy Code section 101(31), the Court adopts the law and analysis of a statutory insider from Section I.A.i. above. As a result, Mr. Lyons was not a statutory insider under Delaware Code section 1305(b) on the date of any of the Six Disputed Lyons Transfers.

### ii. Non-Statutory Insider

As indicated, Delaware Code section 1305(b) closely tracks Bankruptcy Code section 547(b). The word "includes" in Delaware Code section 1301(7) closely mirrors Bankruptcy Code section 101(31). As the Bankruptcy Code's definition of a statutory insider is non-exhaustive, it is logical to infer that the Delaware Code's is the same. As a result, an "insider" under section 1305(b) includes non-statutory insiders who are not listed under section 1301(7). The Court has not found any Delaware case law to the contrary nor a case that explicitly defines a non-statutory insider. The Court adopts the law and analysis of a non-statutory insider from Section I.A.ii. above. As a result, Mr. Lyons is not a non-statutory insider under Delaware Code section 1305(b).

The Court notes one caveat. Bankruptcy Code section 547(b)(4)(B) sets a temporal threshold in determining a person is an insider on the date of the transfer at issue. Delaware Code section 1305(b) does not have the same language. Nevertheless, the Trustee does not plead sufficient facts showing Mr. Lyons had an inordinately close relationship with Alchemy nor did Mr. Lyons exert undue influence over Alchemy. The Trustee does not plead sufficient facts showing that the Lyons Agreement was not an arm's length transaction. Outside of the Lyons Agreement, Mr. Lyons did not have any relationship with Alchemy. While the Trustee believes that Alchemy overpaid for Mr. Lyons's interest, that is an insufficient allegation to show a non-arm's length transaction. The Court notes that the Trustee did adequately plead facts showing that Mr. Lyons may have "had reasonable cause to believe that the debtor was insolvent." 6 Del. C. § 1305(b). However, alleging sufficient facts for insider status is a prerequisite. *Id.*

The Trustee has not adequately pleaded a claim under 6 Del. C. § 1305(b) and 11 U.S.C. § 544. Thus, the Trustee cannot prevail under section 550. The Court will grant Mr. Lyons partial dismissal of the Sixth Claim as it relates to Six Disputed Lyons Transfer.

### B.  Mr. Lyon's Motion to Strike

Alternatively, Mr. Lyons moves to strike any references to the "Lyons Transfers" in the Sixth Claim where Alchemy is the transferor. Motion, ¶¶ 13, 38-39; p 15; Mr. Lyons's Reply, p. 11-12. As the Court will grant Mr. Lyons dismissal of the Sixth Claim as it relates to the Six Disputed Lyons Transfers, the Court will deny, as moot, Mr. Lyons's alternative relief to strike under Rule 12(f).

### III.    Local Rule 7007-1's Briefing Requirements

Local Rule 7007-1 of the United States Bankruptcy Court for the District of Delaware sets out certain requirements for briefs and affidavits. In his Motion, Mr. Lyons requested that the Court relieve him from Local Rule 7007-1's briefing requirements. Motion, ¶ 13. The Court will grant Mr. Lyons's request.

### IV.    Leave to Amend

Rule 15(a), made applicable here by Bankruptcy Rule 7015, provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Granting such leave is within the court's discretion and courts liberally allow amendments. *See, e.g., Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192-93 (Bankr. D. Del. 2003); *In re Crucible Materials Corp.*, 2011 WL 2669113, at *4-5 (Bankr. D. Del. Jul. 6, 2011). However, "denial of leave to amend is justified if there is

undue delay, bad faith, a dilatory motive, prejudice or futility." *Valley Media*, 288 B.R. at 193 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434).

In a footnote, the Trustee seeks leave to amend in the event the Court dismisses any of his claims. Pl.'s Opp'n, 10 n.9. Courts have observed that where a plaintiff only requested leave to amend in a footnote in a response in opposing a motion to dismiss, doing so was not the proper method to seek leave to amend. *Malivuk v. Ameripark, LLC*, 694 Fed. Appx. 705, 710-11 (11th Cir. 2017) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.")). A plaintiff's request for leave to amend a complaint is improper without indicating the particular grounds on which amendment is sought. *Mackereth v. Kooma, Inc.*, 2015 WL 2337273, at *12 (E.D. Pa. May 14, 2015) (quoting *U.S. ex rel Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013) (denying plaintiff's footnote request for leave to amend the response in opposition to defendants' motion to dismiss).

The Trustee had the opportunity to amend his Complaint within 21 days when he received service of Mr. Lyons's Motion. Fed. R. Civ. P. 15(a)(1)(B). The Trustee was on notice of the possibly deficient Complaint but opted to oppose the Motion instead of amend. The Court will deny the Trustee's request for leave to amend based on procedural infirmities. The Court is not making a finding of undue delay, bad faith, a dilatory motive, prejudice or futility. The Court finds that a request for leave to amend a complaint that is embedded in a footnote of an opposition to a motion to dismiss is improper.

## CONCLUSION

For the foregoing reasons, the Court grants Mr. Lyons's partial dismissal of the Fourth and Sixth Claims as it relates to the Six Disputed Lyons Transfers without prejudice. However, the Court denies Mr. Lyons's alternative move to strike references to the Lyon Transfers in the Fourth and Sixth Claims as moot. The Court grants Mr. Lyons's request to be relieved from Local Rule 7007-1's briefing requirements. The Court denies the Trustee's request to amend the complaint, without prejudice. The Court directs Mr. Lyons to prepare and circulate a form of order which reflects the Court's rulings and thereafter to submit the proposed order to the Court.

Dated: September 16, 2019

KEVIN GROSS, U.S.B.J.