## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| OUR ALCHEMY, LLC, *et al.*, | ) | Case No. 16-11596 (KG) |
| | ) | (Jointly Administered) |
| _____Debtors. | ) | |
| GEORGE L. MILLER, in his capacity as | ) | |
| chapter 7 trustee for the jointly administered | ) | |
| bankruptcy estates of Our Alchemy, LLC and | ) | |
| Anderson Digital, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 18-50633 (KG) |
| | ) | |
| v. | ) | |
| | ) | |
| ANCONNECT, LLC; ANDERSON M | ) | |
| MERCHANDISERS, LLC; ANDERSON | ) | |
| MERCHANDISERS CANADA, INC.; OA | ) | |
| INVESTMENT PARTNERS LLC; OA | ) | |
| INVESTMENT HOLDINGS LLC; VIRGO | ) | |
| INVESTMENT GROUP, LLC; VIRGO | ) | |
| SOCIETAS PARTNERS, LLC; VIRGO | ) | |
| SOCIETAS PARTNERSHIP III (ONSHORE), | ) | |
| L.P.; VIRGO SOCIETAS PARTNERSHIP III | ) | |
| (OFFSHORE), L.P.; VIRGO SERVICE | ) | |
| COMPANY LLC; ARC ENTERTAINMENT, | ) | |
| LLC; ARDON MOORE; MARK PEREZ; JESSE | ) | **Re: Adv. Dkt. No. 38** |
| WATSON; TODD DORFMAN; BILL LEE; | ) | |
| STEPHEN LYONS; and FREYR THOR, | ) | |
| | ) | |
| _____Defendants. | ) | |

## MEMORANDUM OPINION[1]

## RE: DEFENDANTS ANCONNECT, LLC and ANDERSON MERCHANDISERS, LLC

---

[1] The Trustee has demanded a trial by jury and does not consent to the Court's entry of a final judgment. However, in deciding a motion to dismiss, the Court is not required to state findings of fact or conclusions of law. *See* Fed. R. Bankr. P. 7052; Fed. R. Civ. P. 52(a)(3).

George L. Miller, in his capacity as Chapter 7 trustee (the "Plaintiff" or "Trustee") for the jointly administered bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson Digital") (collectively, the "Debtors"), brought this adversary proceeding against certain affiliates of the Debtors: ANConnect, LLC ("ANConnect"), Anderson Merchandisers, LLC ("Anderson Merchandisers"), Anderson Merchandisers Canada, Inc., OA Investment Holdings, LLC and OA Investment Partners, LLC. The Trustee also brought this action against certain purchasers of Alchemy: Virgo Investment Group, LLC ("Virgo Investment Group"), Virgo Societas Partners, LLC ("Virgo Societas"), Virgo Societas Partnership III (Onshore), L.P. ("Virgo Onshore"), Virgo Societas Partnership III (Offshore), L.P. ("Virgo Offshore") and Virgo Service Company, LLC ("Virgo Service Company", and collectively the "Virgo Entities"). Additional defendants include: Arc Entertainment, LLC, Ardon Moore, Mark Perez, Jesse Watson, Todd Dorfman, Bill Lee ("Lee"), Steve Lyons ("Lyons") and Freyr Thor ("Thor") who the Trustee named in their capacities.

The Trustee alleges in Counts One through Five of the thirteen-count complaint (the "Complaint") that the Transfers (defined *infra*) are actually and constructively fraudulent, preferential and/or constitute unjust enrichment. In this Opinion the Court addresses defendants ANConnect and Anderson Merchandisers motion to dismiss Counts One through Five of the Complaint, as asserted against them, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), made applicable here by Federal Rule of Bankruptcy Procedure 7012 (the "Motion"). Further, ANConnect and Anderson

Merchandisers ask the Court to deny in part the Trustee's request to amend the Complaint.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

## FACTS[2]

This adversary proceeding has several claims against numerous defendants who also filed motions to dismiss. In this Memorandum Opinion, the Court will only recite the facts relevant to the Trustee's claims against ANConnect and Anderson Merchandisers.

### I.    The ANConnect Transaction

In 2010, Millennium Entertainment, LLC ("Millennium Entertainment"), now known as Alchemy, was formed as a film distribution and catalog company. Compl. ¶ 28. On August 18, 2014, Calrissian L.P. ("Calrissian") and the Virgo Entities purchased all outstanding equity interests in Millennium Entertainment.[3] Compl. ¶¶ 29-30. Calrissian had no operations or employees, and no real assets other than its equity interest in Alchemy. Compl. ¶ 31. Virgo Service Company served as Calrissian's general

---

[2] For purposes of Defendants' motion to dismiss, the Court "must accept all of the [C]omplaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[3] After the sale, Calrissian changed the name of Millennium Entertainment to Our Alchemy, LLC. Compl. ¶ 32.

partner, and Virgo Onshore, Virgo Offshore and Santa Rita Entertainment, LLC as its limited partners. Compl. ¶ 29.

In January 2015, Alchemy considered acquiring ANConnect's[4] physical home video and digital distribution business including Anderson Digital, LLC.[5] Compl. ¶ 55. The purported purpose of the acquisition was to make Alchemy an "[u]nstoppable force with thick competitive barrier to entry, dominating independent film distribution worldwide." Compl. ¶ 56.

On February 11, 2015, Alchemy and ANConnect executed a Term Sheet indicating Alchemy's intent to purchase ANConnect's "US video and digital distribution business" and to assume ANConnect's "certain specified liabilities and obligations" for "a multiple of 4 times estimated Proforma EBITDA of the Physical Business and 6 times estimated Proforma EBITDA of the Digital Business." Compl. ¶ 57.

On May 7, 2015, Alchemy and ANConnect executed an Asset Purchase Agreement ("APA"). Compl. ¶ 59. The APA was amended on May 29, 2015 and again on June 9, 2015. Compl. ¶ 59. The APA described Alchemy's purchase of the "Business" as ANConnect's "home video and digital distribution for motion pictures and other audiovisual media." Compl. ¶ 60. Section 2.01 of the APA identified the "Purchased Assets" as including ANConnect's 51% membership interest in Anderson Digital. Compl. ¶ 61. The purchase

---

[4] ANConnect is the physical distribution arm of, and is wholly owned by, Anderson Media Corporation. Compl. ¶ 9.
[5] Prior to the consummation of the ANConnect Transaction (defined *infra*), ANConnect owned a 51% membership interest in Anderson Digital. Compl. ¶ 9. Defendants Lyons and Thor owned the remaining membership interest (24.5% membership interest each). Compl. ¶¶ 12-13.

price for the "Purchased Assets" was $37,637,347 (the "Anderson Purchase Price"), which consisted of (a) $35,893,147 being allocated to the physical segment of the Business and (b) $1,744,200[6] for ANConnect's 51% membership interest in Anderson Digital, subject to certain post-closing adjustments. Compl. ¶ 62. Pursuant to section 2.03 of the APA, Alchemy assumed certain of ANConnect's liabilities. Compl. ¶ 63. On July 9, 2015, the sale closed (the "ANConnect Transaction"). Compl. ¶ 64.

On July 2, 2015, prior to the closing of the ANConnect Transaction, Anderson Digital wired $1,001,864 into a Bank of America escrow account for the benefit of the Anderson Digital members. Compl. ¶ 73. In accordance with ANConnect's 51% membership interest, ANConnect received approximately $510,000 of the escrowed amount. Compl. ¶ 73.

## II.    The Merchandising Agreement

On July 9, 2015, Alchemy and Anderson Merchandisers[7] entered into a Merchandising Agreement (the "Merchandising Agreement"), which provided that Alchemy would engage Anderson Merchandisers as a contractor to perform certain merchandising services. Compl. ¶ 123. Section 2.1 of the Merchandising Agreement stated that "[Alchemy] may offset amounts owed by ANConnect, LLC to it under [the APA], but only to the extent that such offset is specifically permitted by the APA." Compl.

---

[6] The amount of $1,744,200 was calculated by multiplying Anderson Digital's estimated 2014 EBITDA of $570,000 by 6 ($570,000 * 6 = $3,420,000) and then deriving 51% of that sum ($3,420,000 * .51 = $1,744,200). Compl. ¶ 87.

[7] Anderson Merchandisers provides in-store merchandising services, and is a wholly-owned subsidiary of Anderson Media Corporation. Compl. ¶ 10.

¶ 125 The Merchandising Agreement did not give Anderson Merchandisers the right to offset. Compl. ¶ 125.

Section 2.09(b)(iv) of the APA permitted Alchemy to offset amounts owed from another party in certain circumstances, including "any amounts owed to it by [ANConnect] . . . that have been agreed by [ANConnect] to be owed," against "any amounts that [Alchemy] may owe to [ANConnect], [or] [Anderson Merchandisers], . . . pursuant to the Merchandising Agreement." Compl. ¶ 126. The APA did not give ANConnect the right to offset. Compl. ¶ 126.

ANConnect owed Alchemy $3,208,314 for post-closing adjustments pursuant to Section 2.06(a)(iv) of the APA. Compl. ¶ 127. On April 12, 2016, Alchemy told ANConnect that it could use that money to satisfy an antecedent debt Alchemy owed to Anderson Merchandisers for services rendered under the Merchandising Agreement. Compl. ¶ 128.

### III.    Reimbursement Fees

In connection with the APA, ANConnect and Alchemy negotiated with third-party content suppliers to obtain their consent to the assignment of ANConnect's contracts to Alchemy. Compl. ¶ 130. Section 2.09 of the APA, entitled "Third Party Consents," provided:

> To the extent that Seller's rights under any Contract or Permit constituting a Purchase Asset, or any other Purchased Asset, may not be assigned to Buyer without the consent of another Person which has not been obtained . . . Seller shall use its best efforts to obtain any such required consent(s) from the Material Content Suppliers as promptly as possible and **Seller and Buyer shall share equally in any costs or fees imposed by any such Material Content Supplier as a condition to consenting to such assignment**; provided that such costs and fees . . . shall be subject to Buyer's approval. Compl. ¶ 130 (emphasis added).

The Merchandising Agreement provided that Alchemy would pay "Reimbursement Fees" to Anderson Merchandisers. Compl. ¶ 131. The Reimbursement Fees totaled $4,351,000 and represented Alchemy's reimbursement of half the costs ANConnect incurred to obtain consents from Material Content Suppliers, per Section 2.09 of the APA. Compl. ¶¶ 132-33. Between July 7, 2015 and July 1, 2016, Alchemy paid $2,089,775.45 of the Reimbursement Fees to Anderson Merchandisers through several transfers. Compl. ¶ 134.

### IV.    Alchemy's Liquidity Concerns

Prior to the July 9, 2015 closing of the ANConnect Transaction, Alchemy faced liquidity concerns. Compl. ¶ 67. The consummation of the ANConnect Transaction exacerbated Alchemy's liquidity due to, *inter alia*, Alchemy's assumption of certain of ANConnect's liabilities under the APA. Compl. ¶¶ 76-82. Just a few weeks after closing, Alchemy was unable to meet its obligations as they came due. Compl. ¶ 76. By April 2016, 50% of Alchemy's total liabilities were from its assumption of certain of ANConnect's liabilities pursuant to the APA. Compl. ¶ 82.

Before the ANConnect Transaction closed, Alchemy disclosed information about the deal to its lender, SunTrust Bank, N.A. ("SunTrust"). Compl. ¶¶ 69, 72. In a May 29, 2015 presentation, Alchemy told SunTrust that ANConnect's physical business (which is primarily based on DVD sales) was in rapid decline. Compl. ¶ 69. Alchemy further explained that total revenues in the physical media industry declined from $20.6 billion in 2006 to only $9.6 billion in 2015, with declines expected to accelerate rapidly through

2021. Compl. ¶ 69. Then on June 23, 2015, Alchemy informed SunTrust that ANConnect's third largest supplier of physical product to Walmart in 2014 would terminate its services in August 2015. Compl. ¶ 72. Alchemy estimated that the loss of this relationship would decrease annual EBITD by approximately $1.4 million. Compl. ¶ 72. Alchemy did not renegotiate the price of the ANConnect Transaction to account for this loss of business. Compl. ¶ 72.

Lyons said that "Alchemy's acquisition of Anderson Digital's parent company has been an operational and financial disaster," because it left Alchemy "experiencing serious trouble meeting its financial obligations as they c[a]me due, [including obligations] to vendors and suppliers which are critical to the company's continued existence." Compl. ¶ 79. Lyons explained that the ANConnect Transaction left an illiquid Alchemy in a state of "financial triage." Compl. ¶ 79.

## V.    Disputed Transfers

The Trustee seeks to avoid and recover the following transfers made pursuant to the ANConnect Transaction and Merchandising Agreement as fraudulent and preferential under the Bankruptcy Code and fraudulent under the Delaware Code:

| Transfer Number | Date of Transfer | Debtor Transferor | Transferee | Amount | Purpose of the Transfer |
|---|---|---|---|---|---|
| 1. | July 2, 2015 | Anderson Digital | ANConnect | $510,0000 | Anderson Digital's distribution to members prior to the closing of the ANConnect Transaction |
| 2. | July 9, 2015 | Alchemy | ANConnect | $29,888,124.40 | The cash portion of the Anderson Purchase Price |
| 3. | July 9, 2015 | Alchemy | ANConnect | Greater than $16,000,000 | Alchemy's assumption of liabilities in the ANConnect Transaction |
| 4. | Between July 7, 2015 and July 1, 2016 | Alchemy | Anderson Merchandisers | $2,089,775.45 | Payment of Reimbursement Fees pursuant to the Merchandising Agreement |
| 5. | April 12, 2016 | Alchemy | Anderson Merchandisers | $3,208,314 | Payment of services rendered under the Merchandising Agreement |

Compl. ¶¶ 208, 221, 227, 241. In the Motion, Defendants ANConnect and Anderson Merchandisers seek to dismiss the portions of Counts One through Five that relate to transfers 1-5 (collectively, the "Transfers"). Motion 5-10.

## STANDARD OF REVIEW

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) is inextricably linked to Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)"), which provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Over a decade ago, in its seminal *Twombly* decision, the Supreme Court ushered in the modern era of notice pleading under Rule 8(a)(2). The Court observed that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligations to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The *Twombly* standard is one of "plausibility" and not "probability" - "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* at 556.

The Supreme Court again addressed the Rule 8(a)(2) notice pleading standard in its *Iqbal* decision. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). The *Iqbal* decision clarifies that the *Twombly* plausibility standard applies to all civil suits filed in federal courts and identifies two "working principles" underlying the *Twombly* decision. *Id.* at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

The United States Court of Appeals for the Third Circuit synthesized the preceding authorities in its *Fowler* decision:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted). With these principles in mind, the Court will proceed with its analysis of the Defendants' motion to dismiss.

## DISCUSSION

Defendants ANConnect and Anderson Merchandisers ask the Court to dismiss partially five counts raised in the Complaint. The counts include: (1) actual fraudulent transfers based on bankruptcy law; (2) constructive fraudulent transfers based on

bankruptcy law; (3) unjust enrichment; (4) preferential transfers; and (5) fraudulent transfers based on Delaware state law. The Court will address each count in turn.

I.    **Count One – Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550**

In the Complaint's first count, the Trustee alleges that several transactions linked to the ANConnect Transaction and Merchandising Agreement constitute actual fraudulent transfers. Specifically, the Trustee seeks to avoid and recover (a) Anderson Digital's $510,000 membership distribution to ANConnect; (b) Alchemy's cash payment of $29,888,124.40 and assumption of obligations in excess of $16 million pursuant to the APA; and (c) Alchemy's payment of $2,089,775.45 in Reimbursement Fees to Anderson Merchandisers (collectively, the "Alleged Fraudulent Transfers").

"Generally speaking, Federal Rule of Civil Procedure 9(b) requires those asserting fraudulent transfer claims in bankruptcy proceedings to plead them with specificity." *Official Comm. Of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009). The Third circuit analyzed the Rule 9(b) standards as follows:

> We approach this question mindful of our recent admonition that in applying Rule 9(b), focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.' . . . Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of precise misconduct of which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 747 F.2d 786, 791 (3d Cir. 1984). Further, "[t]he requirements of Rule 9(b) are relaxed and interpreted liberally where a trustee, or trust formed for the benefit of creditors, as here, is asserting the fraudulent transfer claims . . . ." *Fedders*, 504 B.R. at 544. "This is because of the trustee's inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party." *Id.*

In order to avoid a transfer as actually fraudulent pursuant to section 548(a)(1)(A) of the Bankruptcy Code, the plaintiff must show that the transfer was made within two years preceding the petition date and "with actual intent to hinder, delay, or defraud" a past or future creditor. "Direct evidence of fraudulent intent, however, is often unavailable and courts usually rely on circumstantial evidence, including the circumstances of the transaction, to infer fraudulent intent." *Liquidation Tr. of Hechinger Inv. Co. of Del. v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 327 B.R. 537, 550-51 (D. Del. 2005). "When evaluating the circumstances of a transaction, courts have relied on 'badges of fraud' that include: (1) the relationship between the debtor and the transferee; (2) consideration for conveyance; (3) insolvency or indebtedness of the debtors; (4) how much of the debtor's estate was transferred; (5) reservation of benefits, control or dominion by the debtor; and (6) secrecy or concealment of the transaction." *Id.*

"The presence or absence of any single badge of fraud is not conclusive." *Fedders*, 405 B.R. at 545. "The proper inquiry is whether the badges of fraud are present, not whether some facts are absent." *Id.* "Although the presence of a single factor, i.e. badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.*

### A.    Anderson Digital's $510,000 membership distribution to ANConnect

Defendant ANConnect argues that Count One should be dismissed with respect to the $510,000 membership distribution because the Trustee failed to allege any fraudulent conduct in connection with the transfer. The Defendant further argues that the Trustee failed to adequately plead the existence of a sufficient number of the badges of fraud. The Court disagrees.

The Trustee adequately pleaded a sufficient number of badges of fraud to survive a Rule 12(b)(6) motion. First, the Court finds that the Trustee adequately pleaded a relationship between the Debtors and the transferee. The Bankruptcy Code defines "insider" as a "person in control of the debtor"[8] or an "affiliate," which includes an "entity that . . . owns . . . 20 percent or more of the outstanding voting securities of the debtor." 11. U.S.C. § 101(2)(A), (31)(B), (31)(E). According to the Complaint, ANConnect held a 51% membership interest in Anderson Digital on the day it received the $510,000 membership distribution. Thus, the Trustee adequately pleaded an insider relationship.

Second, the Trustee adequately pleaded insolvency. The Trustee alleged that the membership distribution made by Anderson Digital on July 2, 2015 reduced the company's working capital to $0 and contributed to the severe liquidity issues experienced by the Debtors in the weeks following the closing of the ANConnect Transaction. Defendant ANConnect argues that a working capital of $0 actually implies

---

[8] The term "person" under the Bankruptcy Code includes corporations. 11. U.S.C. § 101(41).

solvency because the Debtors were able to pay current liabilities from current assets. However, a close analysis of insolvency is not necessary at this stage in the proceeding. *See Zazzali v. Mott (In re DBSI, Inc.)*, 445 B.R. 344, 349 (Bankr. D. Del. 2011) ("Insolvency is generally a factual determination not appropriate for resolution in a motion to dismiss."). Because the Trustee alleged that Anderson Digital experienced liquidity issues and could not fund operations[9] shortly after the membership distribution, the Court finds that the Trustee adequately pleaded the insolvency badge of fraud.

Finally, the Trustee sufficiently pleaded the badges of fraud related to the amount of the Debtors' estate transferred and the consideration for conveyance. The Trustee alleged that a substantial portion of Anderson Digital's estate – *i.e.*, all capital available to fund operations – was transferred away in the membership distribution. *See Beskrone v. OpenGate Capital Grp. (In re PennySaver USA Publ'g, LLC)*, 587 B.R. 445, 461 (Bankr. D. Del. 2018) (finding allegations that debtors transferred away more than they could afford sufficiently pled badge of fraud regarding how much of debtors' estate was transferred). The Trustee further pleaded that Anderson Digital received no consideration for its membership distribution to ANConnect. Based on these allegations, the Trustee sufficiently pleaded the existence of a third and fourth badge of fraud. Four badges of fraud are certainly enough for an actual fraudulent transfer claim to survive a Rule

---

[9] Working capital "represents the capital the business has at its disposal to fund operations." *Dell, Inc. v. Magnetar Glob. Event Driven Master Fund Ltd.*, 177 A.3d 1, 44 n.217 (Del. 2017).

12(b)(6) motion. *See id.* Accordingly, the Court will deny the Defendants' motion to dismiss Count One as it relates to the $510,000 membership distribution.

**B.      Alchemy's cash payment of $29,888,124.40 and assumption of obligations in excess of $16 million pursuant to the APA**

Defendant ANConnect asserts that the Trustee failed to allege any fraudulent conduct in connection with Alchemy's payment and assumption of obligations under the APA. Yet, the Trustee opines that he sufficiently pleaded three badges of fraud: insolvency, the amount of the debtors' estate transferred, and consideration for conveyance. The Court finds that the Trustee adequately pleaded the circumstances surrounding the ANConnect Transaction to allow the Court to plausibly infer actual fraudulent transfers.

With respect to Alchemy's insolvency, the Complaint describes Alchemy's poor liquidity, inability to pay debts as they became due, and indebtedness both before and after the ANConnect Transaction. The Trustee explains that in the months leading up to the closing of the ANConnect Transaction, Alchemy defaulted on millions of dollars' worth of obligations owed to vendors. Compl. ¶¶ 67-68. Also, emails exchanged between Alchemy insiders revealed concerns about liquidity and cash flow. Compl. ¶ 67. After the ANConnect Transaction closed, Alchemy's financial condition continued to deteriorate and "was in the midst of a crippling liquidity crisis." Compl. ¶ 76. Pursuant to the APA, Alchemy assumed more than $16 million in ANConnect liabilities, which accounted for about 50% of Alchemy's total liabilities. Moreover, one

day after the closing of the APA, the Trustee purports that Lee[10] wrote an email that listed "[m]anage[ment] [of] negative $5M working capital requirement through September" as one of Alchemy's top priorities. Compl. ¶ 77. Based on these facts, the Court finds that the Trustee has adequately pleaded the insolvency badge of fraud.

With respect to the amount of the Debtors' estate transferred, the Trustee alleges Alchemy transferred its remaining liquidity in the ANConnect Transaction. Specifically, Alchemy transferred $29,888,124.40 in cash and assumed in excess of $16 million pursuant to the APA. The email sent by Lee on July 10, 2015 implies that Alchemy had negative working capital one day after the ANConnect Transaction closed. Accordingly, Alchemy could not pay obligations owed to vendors and fund operations. Because the Trustee sufficiently pleaded that "the amount [transferred] was most likely more than the Debtors could afford," he adequately pleaded the badge of fraud related to how much of the debtors' estate was transferred. *See In re PennySaver USA Pbl'g, LLC,* 587 B.R. at 461.

Lastly, the Trustee asserts he adequately pleaded that Alchemy received less than reasonably equivalent value in exchange for its transfers in the ANConnect Transaction. The Complaint alleges that Alchemy's insiders ignored information about ANConnect while negotiating the deal, which resulted in a "vastly overinflated" Anderson Purchase price and the assumption of excessive liabilities. Compl. ¶¶ 69-72.

---

[10] Lee served as Alchemy's Chief Executive Officer until he was fired by the Alchemy Board of Managers in December 2015. Lee also served on Alchemy's Board of Managers during his time with the company.

The information Alchemy allegedly failed to consider during negotiations includes: the sharp decline in ANConnect's physical media sales, as well as the rapid deterioration of the entire physical media industry; ANConnect's solvency following the closing of the deal; and the termination of ANConnect's relationship with a significant supplier, which allegedly should have reduced the Anderson Purchase Price by $5.6 million. Compl. ¶¶ 69-72. Defendant ANConnect counters the Trustee's interpretation of the facts in the Complaint, arguing that the Complaint actually establishes that the ANConnect Transaction was the product of arm's length negotiations between sophisticated parties and an independent third-party underwriter (SunTrust); Defendant also opines that a court should not reevaluate the reasonableness of such a transaction with the benefit of hindsight. After considering the alleged flaws in the negotiation process and the immediate financial distress caused by the ANConnect Transaction,[11] the Court finds that the Trustee sufficiently pleaded lack of reasonably equivalent value.

The Trustee sufficiently alleged three badges of fraud. "The confluence of several [badges of fraud] in one transaction generally provides conclusive evidence of an actual intent to defraud." *In re PennySaver USA Publ'g, LLC*, 587 B.R. at 461. Thus, the Court will deny the Defendants' motion to dismiss Count One as it relates to Alchemy's cash

---

[11] Lyons stated that after the ANConnect Transaction closed, "it was immediately apparent" that "Alchemy's acquisition of Anderson Digital's parent company [was] an operational financial disaster." Compl. ¶ 79.

payment of $29,888,124.40 and assumption of obligations in excess of $16 million pursuant to the APA.

### C. Alchemy's payment of $2,089,775.45 in Reimbursement Fees to Anderson Merchandisers

Defendant Anderson Merchandisers argues that Count One should be partially dismissed with respect to the $2,089,775.45 in Reimbursement Fees Alchemy transferred to Anderson Merchandisers because the Trustee failed to plead the transfers with the requisite particularity under Rule 9(b). A "[t]rustee must specifically identify the allegedly fraudulent transfers, and he may do so by providing specific facts about (a) the date of the transfer, (b) the amount of the transfer, (c) the name of the transferor, and (d) the name of the transferee." *Zazzali v. Swenson* (*In re DBSI, Inc.*), No. 10-54649, 2011 WL 1810632, at *3 (Bankr. D. Del. May 5, 2011). Thus, "[a]llegations that a debtor made an aggregate amount or series of cash . . . transfers over a period of time, without further particularization, are insufficient to state an intentional fraudulent transfer claim." *Official Comm. Of Unsecured Creditors v. JP Morgan Chase Bank* (*In re M. Fabrikant & Sons, Inc.*), 394 B.R. 721, 733 (Bankr. S.D.N.Y 2008).

The Trustee alleges that Alchemy transferred $2,089,775.45 of Reimbursement Fees to Anderson Merchandisers during the period of July 7, 2015 and July 1, 2016. The Complaint does not identify the number of transfers Alchemy made, or the specific dates and amounts of those transfers. Instead, it aggregates the transfers into a lump sum over a one year period. Hence, the Trustee failed to satisfy the heightened pleading standards of Rule 9(b). The Court will grant the Defendants' partial dismissal of Count One as it

relates to the $2,089,775.45 in Reimbursement Fees Alchemy transferred to Anderson Merchandisers. In light of this conclusion, the Court finds it unnecessary to analyze the Trustee's argument that it adequately pleaded a sufficient number of the badges of fraud.

## II.    Count Two – Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550

In the Complaint's second count, the Trustee pleads that the Alleged Fraudulent Transfers are constructively fraudulent. In order to avoid a transfer as constructively fraudulent pursuant to section 548(a)(1)(B) of the Bankruptcy Code, the plaintiff must show, as is relevant here, that the transfer was (1) made within two years of the petition date; (2) that the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation;" and (3) that the debtor "was insolvent on the date that such transfer was made . . . , or became insolvent as a result of such transfer." 11. U.S.C. § 548(a)(1)(B)(i), (ii)(I).

### A.    Anderson Digital's $510,000 membership distribution to ANConnect

The Trustee alleges that the $510,000 transfer from Anderson Digital to ANConnect on July 2, 2015 constitutes a constructive fraudulent transfer. The Defendant ANConnect argues that Count Two as it relates to the membership distribution should be dismissed because the Trustee failed to adequately plead that Anderson Digital was insolvent at the time of the transfer.[12]

---

[12] The Defendant does not contest the sufficiency of the Trustee's allegation that Anderson Digital received less than reasonably equivalent value in exchange for the membership distribution.

"Insolvency [is] generally [a] factual determination[] that should be reserved for discovery." *In re PennySaver USA Pbl'g, LLC*, 587 B.R. at 456. "This is because the determination of insolvency is highly fact-specific and should be based on seasonable appraisals or expert testimony." *See, e.g., id.* at 459; *In re DBSI, Inc.*, 445 B.R. at 349. With this principle in mind and based on the facts discussed above in connection with the insolvency badge of fraud, *see supra* Section I.A, the Court finds it may plausibly infer that Anderson Digital was insolvent on July 2, 2015. Thus, the Court will deny the Defendants' motion to dismiss Count Two as it relates to Anderson Digital's $510,000 membership distribution to ANConnect.

### B. Alchemy's cash payment of $29,888,124.40 and assumption of obligations in excess of $16 million pursuant to the APA

ANConnect argues that Count Two should be partially dismissed with respect to Alchemy's payment of $29,888,124.40 and assumption of obligations in excess of $16 million pursuant to the APA because the Trustee failed to adequately plead lack of reasonably equivalent value.[13] The Court disagrees.

The Third Circuit requires the application of a "totality of the circumstances" test in determining whether reasonably equivalent value was exchanged for a transfer. *See Mellon Bank, N.A. v. Official Comm. Of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 153 (3d Cir. 1996). The test includes consideration of factors such as market value, good faith, and whether the transaction was at arm's length. *See id.* Given

---

[13] The Defendant does not contest the sufficiency of the Trustee's allegation that the Debtors were insolvent on the date of the transfers.

the wide number of variables to consider, and the less stringent pleading requirements of Rule 8(a)(2) to constructive fraud claims, "[t]he issue of 'reasonably equivalent value' requires a factual determination that cannot be made on a motion to dismiss." *See In re Qimonda Richmond, LLC*, 467 B.R. 318, 327 (Bankr. D. Del. 2012).

Here, ANConnect uses the same argument that it raised against the actual fraudulent transfer claim: the Trustee failed to adequately plead lack of reasonably equivalent value because the Complaint alleges that the ANConnect transaction was an arm's length transaction negotiated and consummated in good faith. In the Complaint, the Trustee alleges that Alchemy ignored information about ANConnect's business during the negotiation process, which led to an overinflated purchase price and an assumption of excess liabilities. Then, the Debtors' financial condition rapidly deteriorated after the ANConnect Transaction closed. ANConnect  asserts that the Trustee failed to allege the value it received in the ANConnect Transaction, but such a determination is not necessary at this stage in the proceeding. *See id.* Accordingly, the Trustee adequately pleaded lack of reasonably equivalent value.[14] The Court will deny the Defendants' partial dismissal of Count Two as it relates to Alchemy's cash payment of $29,888,124.40 and assumption of obligations in excess of $16 million pursuant to the APA.

---

[14] The Court further supports this holding with its analysis of the badge of fraud concerning lack of reasonable equivalent value. *See supra* Section I.B.

C.    **Alchemy's payment of $2,089,775.45 in Reimbursement Fees to Anderson Merchandisers**

Defendant Anderson Merchandisers argues that Count Two should be partially dismissed with respect to the $2,089,775.45 in Reimbursement Fees Alchemy transferred to Anderson Merchandisers because the Trustee failed to plead the actual date and amount of each transfer. Also, the Defendant asserts that the Complaint fails to adequately allege that Alchemy received less than reasonably equivalent value. Again, the Court disagrees.

Rule (9)(b) does not apply to constructive fraudulent transfer claims. *In re M. Fabrikant & Sons, Inc.*, 394 B.R. at 735. Instead, a plaintiff must satisfy the less rigorous pleading requirements under Rule 8(a) when alleging a constructive fraudulent transfer. *Id.* Rule 8(a) only requires that the allegations "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* As a result, "some of the same courts that rejected the non-particularized allegations of intentional fraudulent transfers upheld the sufficiency of the constructive fraudulent transfer claims based on the same allegations." *See, e.g., Id.* at 733-36; *Fed. Nat'l Mortg. Ass'n v. Pinter*, No. 04-CV-497, 2006 WL 2802092, at *9 (E.D.N.Y. Sept. 28, 2006) (finding allegations that aggregated and lumped a series of transfers made over a three to five year period and failed to identify the number of transfers, the specific dates of the transfers or the amounts of the transfers "are sufficient to satisfy the notice pleading standard of Rule 8, but, [with one exception], not the heightened pleading standard

of Rule 9(b)"); *Gindi v. Silvershein*, No. 93-Civ-8679, 1995 WL 347397, at *4-6 (S.D.N.Y

Dec. 23, 2013).

The Complaint alleges that Alchemy transferred $2,089,775.45 of Reimbursement

Fees to Anderson Merchandisers during the period of July 7, 2015 and July 1, 2016.

These allegations fail to meet the requisite particularity under Rule 9(b) because the

Trustee aggregated the transfers into a lump sum over a one year period. *See supra*

Section I.C. However, the Trustee satisfies the pleading requirements under Rule 8(a)

because he describes the transferor, transferee, total amount and nature of the transfers,

and the time frame over which the transfers occurred. *See, e.g., In re M. Fabrikant & Sons,*

*Inc.,* 394 B.R. at 733-36; *Fed. Nat'l Mortg. Ass'n*, 2006 WL 2802092, at *9; *Gindi*, 1995 WL

347397, at *4-6.    These details about the transfers provide  Anderson Merchandisers

with fair notice of the Trustee's claim. *Fed. Nat'l Mortg. Ass'n,* 2006 WL 2802092, at *9.

The Trustee also satisfies the Rule 8(a) pleading requirements with respect to lack

of reasonably equivalent value. The Defendant asserts that the Reimbursement Fees paid

to Anderson Merchandisers were for reasonably equivalent value because the payments

were on account of an antecedent debt under the APA and Merchandising Agreement. A

transfer that results in a "[r]eduction of a preexisting obligation" is for reasonably

equivalent value *unless* the trustee can show the value was not sufficient. *See Elway Co.,*

*LLP v. Miller (In re Elrod Holdings Corp.),* 421 B.R. 700, 714 (Bankr. D. Del. 2010). The

Complaint alleges that both the APA and Merchandising Agreement obligated Alchemy

to the same costs, and the Reimbursement Fees transferred to Anderson Merchandisers

were actually reimbursements for costs incurred by ANConnect. These facts raise

questions as to whether Anderson Merchandisers conveyed any consideration to the Debtors in exchange for the Reimbursement Fees.[15] Therefore, the Trustee sufficiently pleaded lack of reasonably equivalent value. The Court will deny the Defendants' motion to dismiss Count Two as it relates to the $2,089,775.45 in Reimbursement Fees Alchemy transferred to Anderson Merchandisers.

### III.    Count Three – Unjust Enrichment

In the Complaint's third count, the Trustee alleges unjust enrichment claims against the Defendants. Defendants Alchemy and Anderson Merchandisers seek the dismissal of these claim. To establish an unjust enrichment claim, the plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Emerald Capital Advisors Corp. v. Bayerische Moteren Weke Aktiengesellschaft (In re FAH Liquidating Corp.)*, 572 B.R. 117, 130 (Bankr. D. Del. 2017) (citing *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).

The Defendants argue that the Trustee failed to allege adequately the first four elements of unjust enrichment because "a claim for unjust enrichment is not available where, as here, there is an underlying contract." Defs.' Reply 20-21. Defendants cite *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) in support of their position. However, at the pleading stage "it is entirely acceptable to pursue alternative

---

[15] The exact value Alchemy received from Anderson Merchandisers requires a factual determination that is not suitable at this stage in the proceeding. *See In re Qimonda Richmond, LLC*, 467 B.R. at 327.

theories," and "it is also well established" that a plaintiff may plead an alternative unjust enrichment theory even where the pleading contains a contract based claim. *In re FAH Liquidating Corp.*, 572 B.R. at 131; *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012).

The Trustee adequately pleads the elements of unjust enrichment. First, the Trustee pleads sufficient facts showing an enrichment as the Defendants received payment and/or a reduction of liabilities in each of the Alleged Fraudulent Transfers. Second, the Trustee alleges that the Debtors suffered an impoverishment as they could not fund operations or pay vendors after the Alleged Fraudulent Transfers occurred. Third, the Trustee alleges facts showing a relation between the enrichment and impoverishment as the Defendants' receipt of payment and/or reduction of liabilities from the Alleged Fraudulent Transfers led to the Debtors' insolvency. Fourth, the Trustee sufficiently pleads facts showing an absence of justification for the Alleged Fraudulent Transfers as the Defendants were allegedly insolvent and received less than reasonably equivalent value in each of the Alleged Fraudulent Transfers.

Finally, the Trustee satisfies the fifth element of its unjust enrichment claims. A claim for unjust enrichment "can survive a motion to dismiss where it is plausible that the plaintiff's other claims may fail and leave the Plaintiff without a remedy at law." *In re FAH Liquidating Corp.*, 572 B.R. at 131. Here, it is plausible that the Trustee could be left without an adequate remedy at law against the Defendants if, for example, his failure to prove insolvency at a later stage in the proceeding is fatal to his fraudulent transfer counts. Accordingly, the Court will deny the Defendants' dismissal of the

unjust enrichment claims contained in Count Three that relate to the Alleged

Fraudulent Transfers.

### IV.  Count Four – Avoidance and Recovery of Transfers Pursuant to 11 U.S.C. §§ 547(b) and 550

In the Complaint's fourth count, the Trustee alleges two preference claims

against Anderson Merchandisers. The first claim relates to Alchemy's payment of

$3,208,314 on April 12, 2016 for services rendered under the Merchandising Agreement;

the second relates to the payment of Reimbursement Fees arising under the

Merchandising Agreement.  In order for the Trustee to avoid an allegedly preferential

transfer pursuant to section 547(b) of the Bankruptcy Code, he must satisfy the elements

set forth in the statue itself:

> Except as provided in subsections (c) and (i) of this section, the trustee may
> avoid any transfer of an interest of the debtor in property—
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor
>>    before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made—
>>> (A) on or within 90 days before the date of the filing of the
>>>    petition; . . . and
>> (5) that enables such creditor to receive more than such creditor
>>    would receive if—
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the extent
>>>    provided by the provisions of this title.

11 U.S.C. § 547(b). Defendant Anderson Merchandisers argues that the Court should

dismiss both preference claims because (1) two documents that the Complaint "relies

upon show that the alleged preferential transfer of $3,208,314.00 by or on behalf of

[Alchemy] to [Anderson Merchandisers] did not occur"; and (2) the Complaint "fails to identify any actual transfer" of Reimbursement Fees. Motion 20-22.

### A. Alchemy's payment of $3,208,314 for services rendered under the Merchandising Agreement

The Defendant argues that two documents cited in the Complaint show that ANConnect setoff the $3,208,314 on or before February 17, 2016, almost two months before the alleged preferential transfer to Anderson Merchandisers on April 12, 2016. Motion 21-22. First, the Complaint references a complaint filed by ANConnect and Anderson Merchandisers against Alchemy in the Superior Court of the State of Delaware (the "State Court Complaint"). Compl. ¶ 127. Second, the Complaint references ANConnect's proof of claim ("Proof of Claim"). *See* Compl. ¶ 114, 285-86. The Defendant asks the Court to take judicial notice of the State Court Complaint and Proof of Claim because the Complaint "relies upon and incorporates" both documents.

For purposes of Rule 12(b)(6), "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). An extrinsic document may only be considered on a motion to dismiss if it is "integral to or explicitly relied upon" in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

If a court takes judicial notice of a document, "[t]he fact that a document is included in the relevant record does not mean that the bankruptcy judge . . . is entitled to use it for any purpose." *Nantucket Inv'rs II v. California Fed. Bank (In re Indian Palms*

*Assocs., LTD*), 61 F.3d 197, 205 (3d Cir. 1995). "[A] previously filed court document will generally not be competent evidence of the truth of the matters asserted therein." *Id.*

The Complaint explicitly relies upon the State Court Complaint and Proof of Claim. The Trustee references the State Court Complaint in paragraphs 112 and 127 of the Complaint to demonstrate that ANConnect owed Alchemy $3,208,314; and thus Alchemy could use this amount to offset the debt it owed to Anderson Merchandisers. *See* Compl. ¶¶ 125-128 (alleging that "ANConnect admitted that it owed [$3,208,314] to Alchemy in the [State Court Complaint]"). In the Trustee's turnover claim, which is not at issue in the instant Motion, the Complaint references the Proof of Claim to establish that entities were withholding property of the Debtors' estate. *See* Compl. ¶ 114 (alleging that "[t]he Proof of Claim . . . admits that . . . [Anderson Merchandisers Canada, Inc.] is . . . withholding $126,094.69 CAD . . . of additional receivables . . . rightfully belonging to Alchemy"). Therefore, the Court finds that it can consider the State Court Complaint and Proof of Claim because the Complaint "explicitly relied upon" both documents.

Yet, the Court agrees with the Trustee's argument that "the Court [can] only take judicial notice of the existence of the [State Court Complaint and Proof of Claim], not the truth of various facts averred by the . . . Defendants therein." Pl.'s Opp'n 25. Although a court may consider judicially noticeable facts on a motion to dismiss, the contents of the State Court Complaint and Proof of Claim are not such a fact. *See NC & VA Warranty Co. v. Fidelity Bank (In re NC & VA Warranty Co.)*, 554 B.R. 110, 121 (Bankr. M.D.N.C. 2016) (finding that the court could not take judicial notice of the facts in the

complaint and accept those facts as true); *Gordon v. Harrison* (*In re Alpha Protective Servs., Inc.*), 531 B.R. 889, 907 (Bankr. M.D. Ga. 2015) ("The Court may take judicial notice that [a party] has filed a proof of claim, but it cannot take judicial notice of the contents of that claim because such facts must be evaluated using ordinary evidentiary rules, such as hearsay and its exceptions."). Because the Court cannot consider the contents of the State Court Complaint and the Proof of Claim at this stage of the case, and "must accept all of the [C]omplaint's well-pleaded facts as true," *Fowler*, 578 F.3d at 210-11, the Court finds that the Trustee plausibly pleaded Alchemy's preferential transfer of $3,208,314 to Anderson Merchandisers on April 12, 2016. Thus, the Court will deny the Defendants' motion to dismiss Count Four as it relates to Alchemy's payment of $3,208,314.

### B.    Alchemy's payment of Reimbursement Fees pursuant to the Merchandising Agreement

Defendant Anderson Merchandisers argues that the Trustee's preferential transfer claim related to the Reimbursement Fees fails to meet the pleading requirements under Rule 8(a). In *Valley Media Inc. v. Borders, Inc.* (*In re Valley Media, Inc.*), 288 B.R. 189, 192 (Bankr. D. Del. 2003), the Court determined that "the following information must be included in a complaint to avoid preferential transfers in order to survive a motion to dismiss: (a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer." However, many courts have criticized and rejected the heightened pleading standard set out in *In re Valley Media*. *See, e.g., Official Comm. of Unsecured Creditors v.*

*Brandywine Apartments*, 313 B.R. 370, 373 (Bankr. D. Del. 2004) (explaining that "the specificity demanded by *Valley Media*" is "inappropriate and unnecessarily harsh," and goes beyond what Rule 8 requires); *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324, 340-41 (Bankr. D. Conn. 2005) (rejecting the *In re Valley Media* standard); *In re Green Field Energy Servs., Inc.*, No. 15-50262, 2015 WL 5146161, at *13 (Bankr. D. Del. Aug. 31, 2015) (rejecting the *In re Valley Media* standard as "unduly restrictive").

While the Court rejects the *In re Valley Media* standard as "unduly restrictive," *see In re Green Field Energy Servs., Inc.*, 2015 WL 5146161, at *13, the Court still finds that the Trustee failed to satisfy the pleading requirements under Rule 8(a). The Complaint only asserts that the Trustee seeks to avoid "Reimbursement Fees paid by Alchemy to Anderson Merchandisers between April 1, 2016 and the Petition Date." Compl. ¶ 227. The Trustee does not state the dates or values of the transfers that occurred between April 1, 2019 and July 1, 2019. When the Complaint only identifies the transferor and transferee, the Court cannot plausibly infer that a preferential transfer exists. *See cf. id.* at *4, *13 (finding that the plaintiff sufficiently pleaded a preference claim when he provided the transferor, transferee *and total amount* of the transfers). Therefore, the Court will grant the Defendants' motion to dismiss Count Four as it relates to the transfer of Reimbursement Fees.

### V.    Count Five – Avoidance and Recovery of Transfers Pursuant to 6 Del. C. §§ 1304(a) and 1305(a), and 11. U.S.C §§ 544 and 550

In the Complaint's fifth count, the Trustee pleads that the Alleged Fraudulent Transfers are actual and constructive fraudulent transfers under the Delaware Uniform

Fraudulent Transfer Act ("DUFTA"). *See* DEL. CODE ANN. tit. 6, §§ 1304(a), 1305(a). The

Third Circuit recognizes the similarities between the fraudulent transfer provisions in

DUFTA and the Bankruptcy Code:

> The relevant DUFTA and Bankruptcy Code provisions are nearly identical, and Delaware courts have interpreted and applied them uniformly. "Because Delaware has adopted the Federal UFTA, a statute that was itself modeled on Section 548 of the Bankruptcy Code . . . Delaware courts generally recognize that our state and the federal fraudulent transfer statutes' principles are substantially the same." DUFTA is "virtually a carbon copy of the fraudulent transfer law under the Bankruptcy Code" and "the result under Delaware law should be the same as the outcome under the Bankruptcy Code."

*Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 85-86 (3d Cir.

2018) (citations omitted). The Trustee and Defendants both agree that the Court's

disposition of the Motion on Counts One and Two should apply equally to

Count Five. Thus, the Court adopts its holdings from Sections I and II above.

With respect to the DEL. CODE ANN. tit. 6, § 1304(a) claims, the Court will deny the

dismissal of Count Five as it relates to Anderson Digital's membership distribution and

Alchemy's payment and assumption of liabilities pursuant to the APA. Further, the Court

will dismiss Count Five as it relates to Alchemy's payment of Reimbursement Fees.

With respect to the DEL. CODE ANN. tit. 6, § 1305(a) claims, the Court will deny the

dismissal of Count Five as it relates to all the Alleged Fraudulent Transfers.

## VI.    Leave to Amend

Rule 15(a), made applicable here by Bankruptcy Rule 7015, provides that "a party

may amend its pleading only with the opposing party's written consent or the court's

leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P.

15(a)(2). Granting such leave is within the court's discretion and courts liberally allow amendments. *See, e.g., Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192-93 (Bankr. D. Del. 2003); *In re Crucible Materials Corp.*, 2011 WL 2669113, at *4-5 (Bankr. D. Del. Jul. 6, 2011). However, "denial of leave to amend is justified if there is undue delay, bad faith, a dilatory motive, prejudice or futility." *In re Valley Media*, 288 B.R. at 193 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434).

In a footnote, the Trustee seeks leave to amend in the event the Court dismisses any of his claims. *See* Pl.'s Opp'n 32 n.22. The district court previously observed that where a plaintiff only requested leave to amend in a footnote in a response in opposing a motion to dismiss, doing so was not the proper method to seek leave to amend. *Malivuk v. Ameripark, LLC*, 694 Fed. Appx. 705, 710-11 (11th Cir. 2017) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.")). Moreover, a plaintiff's request for leave to amend a complaint is improper without indicating the particular grounds on which amendment is sought. *Mackereth v. Kooma, Inc.*, 2015 WL 2337273, at *12 (E.D. Pa. May 14, 2015) (quoting *U.S. ex rel Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 (3d Cir. 2013)) (denying plaintiff's footnote request for leave to amend the response in opposition to defendants' motion to dismiss).

The Trustee had the opportunity to amend his Complaint within twenty-one days when he received service of ANConnect's and Anderson Merchandisers's Motion. Fed. R. Civ. P. 15(a)(1)(B). The Trustee was on notice of the possibly deficient Complaint but

opted to oppose the Motion instead of amend. The Court will deny the Trustee's request for leave to amend based on procedural infirmities. The Court is not making a finding of undue delay, bad faith, a dilatory motive, prejudice or futility. Rather, the Court finds that a request for leave to amend a complaint that is merely embedded in a footnote of an opposition memorandum to a motion to dismiss is improper.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Motion. The Trustee is directed to prepare and circulate a form of order which reflects the Court's rulings and thereafter to submit the proposed order to the Court.

Dated: September 16, 2019

KEVIN GROSS, U.S.B.J.