IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>OUR ALCHEMY, LLC, *et al*.,<br><br>　　　　　　　　　　*Debtors*.[1] | Chapter 7<br><br>Case No. 16-11596-JTD<br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as<br>Chapter 7 Trustee for the jointly administered<br>bankruptcy estates of Our Alchemy, LLC and<br>Anderson Digital, LLC,<br><br>　　　　　　　　　　*Plaintiff*,<br>v.<br><br>ANCONNECT, LLC, *et al*.,<br><br>　　　　　　　　　　*Defendants*. | Adv. Pro. No. 18-50633-JTD<br><br>**Hearing Date:**<br>**January 27, 2022 at 2:00 p.m. (ET)**<br><br>**Objection Date:**<br>**January 14, 2022 at 4:00 p.m. (ET)** |

## TRUSTEE'S MOTION FOR ENTRY OF BAR ORDER AND SANCTIONS FOR VIOLATING THE AUTOMATIC STAY AGAINST THE USURPING BANKS

George L. Miller, the Chapter 7 trustee (the "Trustee") of the jointly administered bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC (collectively with Alchemy, the "Debtors"), by and through his undersigned counsel, hereby files this *Motion for Entry of Bar Order and Sanctions for Violating the Automatic Stay Against the Usurping Banks* (the "Motion") under sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The Debtors are: Our Alchemy, LLC, Case No. 16-11596 and Anderson Digital, LLC, Case No. 16-11597.

## PRELIMINARY STATEMENT

In June 2018, the Trustee commenced an adversary proceeding against, among others, Virgo Investment Group, LLC and certain of its affiliates (referred to herein as the "Virgo Parties" or "Virgo Defendants"), which owned and controlled the Debtors. The Trustee recently settled the litigation against the Virgo Parties, pursuant to a Settlement Agreement which was approved by the Court on November 17, 2021 and became effective on December 2, 2021. Pursuant to the terms of the Settlement Agreement, the Trustee is entitled to an additional settlement payment of $300,000 in the event that, as sought herein, a bar order is entered enjoining two of Alchemy's pre-petition lenders from pursuing claims they have wrongfully asserted against the Virgo Parties.

Pre-petition, a group of lenders made loans to Debtor Alchemy pursuant to two Credit Agreements (defined herein). Despite irrevocably appointing SunTrust Bank as Administrative Agent and despite the Trustee's then-ongoing litigation against the Virgo Parties, in July 2021 two of these lenders—Emigrant Bank and Pacific Mercantile Bank (the "Usurping Banks")— commenced litigation against the Virgo Parties in state court in New York, in the matter of *Emigrant Bank, et al., v. Virgo Investment Group LLC, et al.*, N.Y. Supreme. Ct. N.Y. Cty. Index No. 654350/2021 (the "State Court Litigation"). In the Trustee's view, the State Court Litigation (a) purports to usurp and attempts to assert claims that are property of the Debtors' estates and may only be prosecuted by the Trustee, (b) constitutes a violation of the automatic stay to the substantial detriment of the Debtors' estates, and (c) prejudiced the Trustee's negotiating position in the context of the Court-approved mediation that resulted in the settlement with the Virgo Parties, complicated the settlement process, and resulted in the Trustee receiving less than he would have otherwise received. The timing of the State Court Litigation and the plaintiff-banks' lack of standing demonstrates that the State Court Litigation was brought as a tactic to interfere with the

2

Trustee's efforts to monetize property of the estate, to the detriment of the Debtors' bankruptcy estates. For these reasons, the Motion should be granted and the requested Bar Order entered.

## RELIEF REQUESTED

1.      The Trustee seeks entry of Orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** effectuating a bar order against the Usurping Banks and awarding damages for the Usurping Banks' breach of the automatic stay, respectively.

2.      The bases for the relief requested herein are sections 105(a) and 362 of the Bankruptcy Code.

## JURISDICTION & VENUE

3.      The United States Bankruptcy Court for the District of Delaware has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

4.      Debtor Our Alchemy, LLC ("Alchemy"), previously known as Millennium Entertainment, was an independent distributor of film and television content across all platforms in North America, including DVD, digital, and video-on-demand platforms.

5.      Calrissian LP ("Calrissian") is the 100% equity owner and sole member of Alchemy. Calrissian's general partner is Virgo Service Company, and Virgo Societas Partnership III (Onshore), L.P. and Virgo Societas Partnership III (Offshore), L.P. are limited partners. Calrissian was formed for purposes of Virgo's purchase of Alchemy in August 2014.[2]

---

[2]      Calrissian filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 15, 2017, under the caption *In re Calrissian LP*, No. 17-10356. Calrissian's bankruptcy case was converted to Chapter 7 on August 10, 2018, and was closed on January 9, 2020.

LEGAL\55573766\2 00601.0823.000/390810.000

6.      In July 2015, Alchemy agreed to purchase certain physical home video and digital distribution capabilities from ANConnect, LLC, including, *inter alia*, the purchase of Debtor Anderson Digital, LLC.

7.      On July 1, 2016 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.

## I.      The Credit Agreements

8.      Pre-petition, a group of lenders (the "Pre-Petition Lenders") made loans to Alchemy under two Credit Agreements: (i) that certain Revolving Credit and Term Loan Agreement, dated as of September 4, 2014 (the "Original Credit Agreement"); and (ii) that certain Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July 9, 2015 (the "Amended Credit Agreement," and together with the Original Credit Agreement, the "Credit Agreements").  *See* Ex. C, Original Credit Agreement; Ex. D, Amended Credit Agreement.

9.      The Pre-Petition Lenders include SunTrust Bank ("SunTrust"), Emigrant Bank ("Emigrant"), and Pacific Mercantile Bank ("Pacific Mercantile").[3]

10.     In Section 9.1 of the Credit Agreements, the Pre-Petition Lenders irrevocably appointed SunTrust Bank as the Administrative Agent, with the sole authority to enforce the Credit Agreements on behalf of the Pre-Petition Lenders.  *See* Ex. C, Original Credit Agreement, at § 9.1 ("Each Lender irrevocably appoints SunTrust Bank as the Administrative Agent and authorizes it to take such actions on its behalf and to exercise such powers as are delegated to the Administrative Agent under this Agreement and the other Loan Documents, together with all such actions and

---

[3]      Pacific Mercantile was a party to and a lender under both Credit Agreements.  *See* Ex. C, Original Credit Agreement, at Schedule 1.  Emigrant became a party to and a lender under the Amended Credit Agreement by way of a Term Loan Joinder Agreement dated as of July 10, 2015. *See* Ex. F, Term Loan Joinder Agreement; *see also id.* at p. 2 (Emigrant's affirmation that it "appoints and authorizes" the Administrative Agent to act on its behalf under the Amended Credit Agreement).

LEGAL\55573766\2 00601.0823.000/390810.000

powers that are reasonably incidental thereto."); Ex. D, Amended Credit Agreement, at § 9.1 (same).

11.    Thus, pursuant to Section 9.1, any claims against Alchemy under the Credit Agreements that were allegedly held by the Pre-Petition Lenders had to be brought by SunTrust, as the Administrative Agent.

12.    On August 5, 2016, SunTrust, as Administrative Agent, filed suit against Calrissian in the Supreme Court of the State of New York, captioned *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016 (the "Guaranty Action"), alleging breach of the Guaranty and Security Agreement that secured the Credit Agreements (under which Calrissian was the guarantor). On October 15, 2020, SunTrust filed an Amended Complaint in the Guaranty Action, which adds Virgo Service Company (Calrissian's general partner) as a defendant in that action, alleging that it is liable for Calrissian's debts.

13.    SunTrust has not asserted claims against Alchemy under the Credit Agreements.

14.    On March 18, 2020, the Usurping Banks sued SunTrust in the United States District Court for the Southern District of New York, alleging that SunTrust's failure to assert claims directly against Virgo Investment Group, LLC and its affiliates based on theories of alter ego or principal-agent liability (*i.e.*, that Virgo was the alter ago or principal of Calrissian and/or Alchemy) constitutes a breach of the Credit Agreements and related agreements. *See Emigrant Bank, et al. v. SunTrust Bank, et al.*, U.S.D.C. S.D.N.Y. Case No. 20-cv-02391-PGG, D.I. 1 (Complaint) and D.I. 45 (First Amended Complaint). SunTrust's motion to dismiss the Usurping Bank's claims is currently pending.

## II.    The Trustee's Adversary Proceeding

15.    On June 29, 2018, the Trustee commenced an adversary proceeding in the Bankruptcy Court against (i) Virgo Investment Group, LLC; Virgo Societas Partners, LLC; Virgo

Societas Partnership III (Onshore), L.P.; Virgo Societas Partnership III (Offshore), L.P.; Virgo Service Company, LLC; OA Investment Partners, LLC; OA Investment Holdings, LLC; Jesse Watson; Mark Perez; and Todd Dorfman (collectively, the "Virgo Defendants"); (ii) ANConnect, LLC; Anderson Merchandisers, LLC; and Anderson Merchandisers Canada, Inc. (collectively, the "Anderson Defendants"); (iii) ARC Entertainment, LLC; and Ardon Moore; (iv) Stephen Lyons; (v) Freyr Thor; and (vi) Bill Lee, in a case styled *George L. Miller v. ANConnect, LLC, et al.*, 18-50633 (JTD), asserting causes of action against the Defendants for, *inter alia*, the avoidance and recovery of certain transfers by or on behalf of the Debtors under the Bankruptcy Code and Delaware Uniform Fraudulent Transfer Act, unjust enrichment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of contract (the "Adversary Proceeding").

16.     In September 2021, the Trustee, the Virgo Defendants, and other defendants in the Adversary Proceeding participated in a voluntary mediation (the "Mediation") conducted before the Hon. James Peck (Ret.).

17.     Following mediation, the Trustee reached settlements with, among other parties, the Virgo Defendants.[4]

**III.     The Virgo Settlement Agreement**

18.     The Trustee's settlement with the Virgo Defendants is memorialized in a Settlement Agreement dated October 5, 2021 (the "Virgo Settlement Agreement").  *See* D.I. 927, *Motion of Chapter 7 Trustee Pursuant to Fed. R. Bankr. P. 9019 for an Order Approving Settlement Agreement Between Plaintiff George L. Miller, Chapter 7 Trustee and Defendants Virgo Investment Group, LLC; Virgo Societas Partners, LLC; Virgo Societas Partnership III (Onshore), L.P.; Virgo Societas Partnership III (Offshore), L.P.; Virgo Service Company, LLC; OA*

---

[4]     The Adversary Proceeding is ongoing against other defendants with which the Trustee has not settled.

LEGAL\55573766\2 00601.0823.000/390810.000

*Investment Partners, LLC; OA Investment Holdings, LLC; Jesse Watson; Mark Perez; and Todd Dorfman*, attaching Virgo Settlement Agreement as Exhibit A (D.I. 927-3).[5]

19.     On November 17, 2021, the Bankruptcy Court entered an order approving the Virgo Settlement Agreement. *See* D.I. 946 (the "<u>Approval Order</u>").

20.     The Virgo Settlement Agreement became effective on December 2, 2021, on which date the time for appeal had passed without an appeal having been taken and the Approval Order became a final order. *See* Virgo Settlement Agreement, § 2 (defining "<u>Effective Date</u>").

21.     The Virgo Settlement Agreement provides for a Settlement Payment in the amount of $5.2 million, *see id.*, § 3, plus an Additional Settlement Payment in the amount of $300,000 in the event that the Trustee is successful in obtaining the Bar Order sought in the instant Motion. *See id.*, § 4 ("Should the Trustee succeed in obtaining a Bar Order against the 'Usurping Banks' . . . the Settling Defendants shall pay to the Trustee the additional sum of Three Hundred Thousand Dollars ($300,000.00) in immediately available funds…").

22.     With respect to the Bar Order, Section 13 of the Virgo Settlement Agreement provides:

> <u>Trustee to Request a Bar Order</u>. A group of lenders (the "<u>Pre-Petition Lenders</u>") made loans to Debtor Alchemy under two Credit Agreements: that certain Revolving Credit and Term Loan Agreement, dated as of September 4, 2014, and that certain Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July 9, 2015 (collectively, the "<u>Credit Agreements</u>"). In Section 9.1 of the Credit Agreements, the Pre-Petition Lenders irrevocably appointed SunTrust Bank as the Administrative Agent, with the sole authority to enforce the Credit Agreements on behalf of the Pre-Petition Lenders. Two of the Pre-Petition Lenders—Emigrant Bank and Pacific Mercantile Bank (collectively, the "<u>Usurping Banks</u>")—have commenced litigation in state court against certain of the Settling Defendants in the matter of *Emigrant Bank, et al., v.*

---

[5]     For the Court's convenience, a copy of the Virgo Settlement Agreement is also attached hereto as Exhibit G.

*Virgo Investment Group LLC, et al.*, N.Y. Supreme. Ct. N.Y. Cty. Index No. 654350/2021 (the "<u>State Court Litigation</u>"). It is the Trustee's view that the State Court Litigation (a) purports to usurp and attempts to assert claims that are property of the Debtors' Bankruptcy Estate and may only be prosecuted by the Trustee, (b) constitutes a violation of the automatic stay of the Bankruptcy Code to the substantial detriment of the Debtors' bankruptcy estates, (c) prejudiced and devalued the Trustee's claims in the context of the Bankruptcy Court approved mediation that resulted in the settlement with the Virgo Defendants, complicated the settlement process, and resulted in the Trustee receiving less than he would have otherwise received. Given, among other things, the timing of the State Court Litigation, the Usurping Banks lack of standing to prosecute claims of the Pre-Petition Lenders, the pendency of the Adversary Proceeding in which the Trustee is prosecuting overlapping claims on behalf of the Debtors, it is the Trustee's view that the Usurping Banks brought the State Court Litigation as a tactic to inject themselves into the Trustee's efforts to monetize property of the estate, to the detriment of the Debtors' bankruptcy estates. **Accordingly, within fifteen (15) days of the Effective Date, the Trustee shall seek a Bar Order (the "<u>Bar Order</u>") prohibiting, restraining and enjoining the Usurping Banks from continuing to prosecute the State Court Litigation against the Virgo Defendants and from otherwise asserting claims against the Virgo Defendants arising out of or related to the Pre-Petition Loans or loan relationships with the Debtors**. The Settling Defendants shall be afforded the opportunity to review and comment on the form of proposed Bar Order before it is filed with the Bankruptcy Court. The Trustee will consider in good faith any suggested changes requested by the Settling Defendants, provided that the Trustee shall have the final discretion and say as to the form and content thereof.

*Id.*, § 13 (emphasis added).[6]

23. The Approval Order states: "While Section 13 of the Virgo Defendants Settlement Agreement contemplates the Trustee requesting a Bar Order, this Order makes no determination with respect to the merits of the contemplated request for a Bar Order. Further, this Order does not

---

[6]   As required by Section 13 of the Virgo Settlement Agreement, the Virgo Defendants were afforded the opportunity to review and comment on the form of the proposed Bar Order prior to filing of the instant Motion.

bar or release and has no effect whatsoever on any claim alleged in the State Court Litigation (as defined in paragraph 10.J. of the Motion) or any other litigation and does not affect the rights of any party or person in connection with the request for a Bar Order to be filed by the Trustee pursuant to Section 13 of the Virgo Defendants Settlement Agreement." D.I. 46, Approval Order, at ¶ 5.[7]

### IV.     The State Court Litigation

24.     On July 9, 2021, just over one month after this Court's entry of an Order authorizing the Mediation (Adv. D.I. No. 201), the Usurping Banks commenced litigation in state court in New York against certain of the Virgo Parties in the matter of *Emigrant Bank, et al. v. Virgo Investment Group LLC, et al.*, N.Y. Supreme Ct. N.Y. Cty. Index No. 654350/2021 (the "State Court Litigation"). *See* Ex. E, State Court Complaint.

25.     Virgo Investment Group LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., Virgo Service Company, LLC, Jesse Watson, Mark Perez, and "Does 1 through 10, Inclusive" are named as defendants in the State Court Litigation.

26.     In the State Court Litigation, the Usurping Banks assert claims for fraudulent misrepresentation, fraudulent concealment, aiding and abetting fraud, tortious interference with contract, and unjust enrichment against the Virgo Parties.

---

[7]     *See also* D.I. 943, *Certification of Counsel Regarding Submission of Revised Order* (submitting revised version, adding paragraph 5, of the proposed approval order). The Usurping Banks filed a statement in response to the Trustee's motion for approval of the Virgo Settlement Agreement, wherein they did not object to approval of the settlement but expressed their intent to oppose the Trustee's subsequent pursuit of the Bar Order. *See* D.I. 935, *Statement of the Defrauded Lenders in Response to the Motion of Chapter 7 Trustee Pursuant to Fed. R. Bankr. P. 9019.*

LEGAL\55573766\2 00601.0823.000/390810.000

27.     The Usurping Banks allege that Alchemy and Calrissian "acted as Virgo's alter egos" and were used by Virgo "to perpetrate fraud and other wrongdoing" against the Usurping Banks.  *See* Ex. E, State Court Complaint, ¶ 34.

**BASIS FOR RELIEF**

28.     The State Court Litigation (i) constitutes a willful violation of the automatic stay to the substantial detriment of the estate, insofar as it attempts to effect an end-run around administration of the estate by asserting claims that have been assigned to and could only have been brought by SunTrust (and which SunTrust elected not to bring), and, further, (ii) purports to usurp and exercise control over property of the Debtors' bankruptcy estate, insofar as it attempts to assert claims that belong to the estate and may only by prosecuted by the Trustee.  For this interference with the Debtors' bankruptcy estate and willful violation of the automatic stay, the Court should (i) issue the Bar Order, and (ii) impose sanctions on the Usurping Banks.

**I.      The Automatic Stay Is Undeniably Broad and Applies to Actions Taken Against Third Parties**

29.     "When a debtor files for bankruptcy, Section 362(a) of the Bankruptcy Code imposes a broad automatic stay."  *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011).  "The automatic stay is intended 'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'"  *In re Aleris Int'l, Inc.*, 456 B.R. 35, 46 (Bankr. D. Del. 2011) (quoting *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991)).  Consequently, "[t]he automatic stay provides one of the fundamental protections for debtors found in the Bankruptcy Code."  *Nortel Networks*, 669 F.3d at 137 (citing *Midlantic Nat'l. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)).

30.     Given its multiple essential purposes, "[t]he automatic stay is intended to cast a wide net and is applied broadly to effectuate its purposes." *In re Bennett*, 528 B.R. 273, 279 (Bankr. E.D. Pa. 2015) (citing *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir. 1998)); *accord In re Linear Elec. Co., Inc.*, 852 F.3d 313, 317 (3d Cir. 2017) ("In general, we interpret the breadth of the stay broadly."); *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 327 (3d Cir. 1990) ("The scope of the automatic stay is undeniably broad.").

31.     The automatic stay prohibits, *inter alia*, "any act to obtain possession of . . . or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(3). A violation of § 362(a)(3) "requires both (1) a post-petition act; and (2) property of the estate." *In re Welded Constr., L.P.*, 609 B.R. 101, 127 (Bankr. D. Del. 2019) (citing *In re APF Co.*, 274 B.R. 408, 416 (Bankr. D. Del. 2001)).

32.     The prohibition in § 362(a)(3) "applies to actions against third parties as well as actions against the debtor." *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006) (citing *Krystal Cadillac Oldsmobile GMC Truck*, 142 F.3d at 637 n.11). Courts routinely recognize this principle. *See, e.g.*, *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 628 (D. Del. 2018) ("Section 362(a)(3), the terms of which are further defined by Section 541, applies to actions against third parties as well as actions against the debtor."); *In re Prithvi Catalytic, Inc.*, 2015 WL 1651433, at *12 (Bankr. W.D. Pa. Apr. 8, 2015) ("[T]he prohibition in section 362(a)(3) applies to actions taken against third parties as well as actions against the debtor.") (citing *ACandS*, 435 F.3d at 259).

33.     Section 541 of the Bankruptcy Code defines "property of the estate" broadly, to include, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see also* 11 U.S.C. § 541(a)(3) (property of

the estate includes "[a]ny interest in property that the trustee recovers under section . . . 550 . . . of [the Bankruptcy Code]"). The Third Circuit has emphasized "Congress' intent to delineate in broad terms what constitutes property of the estate," which under § 541 includes "all kinds of property, including tangible or intangible property [and] causes of action." *In re O'Dowd*, 233 F.3d 197, 202 (3d Cir. 2000) (internal citation omitted); *see also Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d at 613 (Causes of action are property of the bankruptcy estate "if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law.") (citing *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014)).

34. The Usurping Banks' filing of the State Court Litigation violates the automatic stay because it constitutes a post-petition act intended to interfere with and exercise control over property interests belonging to the Debtors.

## II. The Usurping Banks' Attempt to Re-Plead Alleged Contract Claims Against Alchemy as Tort Claims Against the Virgo Parties Constitutes an Attempt to Jump the Line of Creditors in Alchemy's Bankruptcy

35. As the Usurping Banks' own allegations reveal, their claims in the State Court Litigation represent an attempt to morph purported contract claims against Alchemy into tort claims against the Virgo Parties in an effort to jump the line of creditors in Alchemy's bankruptcy case.

36. The State Court Complaint characterizes the alleged harms to the Usurping Banks as having not been repaid by Alchemy under the Credit Agreements and having been denied the ability to recover from Alchemy in advance of Alchemy's bankruptcy filing. *See, e.g.*, Ex. E, State Court Complaint, ¶¶ 91, 101 (alleging that they would not have entered into the Amended Credit Agreement with Alchemy, that they would not have loaned funds to Alchemy, and that "but for

12

Virgo's misrepresentations, Plaintiffs could have sought to recover the loaned funds prior to Alchemy's default and bankruptcy").

37.     In addition to the fact such claims have been assigned to the Administrative Agent and are barred by the automatic stay, recovery on these claims is also barred by New York's economic loss doctrine,[8]  which provides that "a contracting party seeking only a benefit of the bargain recovery may not sue in tort notwithstanding the use of familiar tort language in its pleadings."  *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 2016 WL 1169515, at *9 (S.D.N.Y. Mar. 22, 2016) (applying New York law).

38.     Furthermore, to the extent the State Court Complaint alleges various misrepresentations and omissions concerning Alchemy's financial condition, these are governed by Sections 4.4 and 4.12 of the Credit Agreements, and the affirmative covenant set forth in Section 5.1.  *See* Credit Agreements, at §§ 4.4, 4.12, 5.1.

39.     Contract claims are not permitted to be morphed into fraud or other tort claims under New York law.  *See Metro. Transp. Auth. v. Triumph Advertising Prods.*, 116  A.D.2d 526, 527 (N.Y. App. Div. 1986) ("[A] cause of action for fraud does not arise when the only alleged fraud relates to a breach of contract."); *Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711 (N.Y. 2018) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."); *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 390 (N.Y. 1987) ("Merely . . . employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim."); *Ocean Gate Homeowners Ass'n, Inc. v. T.W. Finnerty Prop.*

---

[8]     The Credit Agreements are governed by New York law.  *See* Credit Agreements, at § 10.5(a).

*Mgmt., Inc.*, 163 A.D.3d 971, 974 (N.Y. App. Div. 2018) ("Where a plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory.") (citation omitted).

40.      Nor, as discussed below, can the Usurping Banks get around the automatic stay (or the Trustee's authority to bring claims for the benefit of all creditors) by asserting claims against the Virgo Parties as "alter egos" of Alchemy.

41.      The Usurping Banks' dissatisfaction at having been unable to "recover the loaned funds prior to Alchemy's default and bankruptcy" (State Court Complaint, ¶¶ 91, 101) does not permit them to recast what are obviously contract claims against Alchemy under the Credit Agreements—which only SunTrust as the Administrative Agent could have, but has not, asserted—as tort claims entitling them to recovery ahead of other creditors, in an end-run around administration of the Debtors' bankruptcy estate.

42.      Furthermore, to the extent the Usurping Banks have sued Perez and Watson (members of Alchemy's Board of Managers) for actions they took on behalf of Alchemy or that harmed Alchemy, such claims plainly belong to Alchemy and can only be asserted by the Trustee—*indeed*, the Trustee already did bring claims of this nature against Perez and Watson in the Adversary Proceeding.

### III. The Usurping Banks' Claims Based on an Alleged Alter Ego Relationship Between Alchemy and Virgo Are Property of Alchemy's Bankruptcy Estate and Therefore May Only Be Asserted By the Trustee

43.      The State Court Complaint alleges that, at all times relevant to the claims asserted therein, Alchemy acted as Virgo's alter ego and was used by Virgo to perpetrate the fraud and other wrongdoing alleged in the State Court Complaint.  *See* Ex. E, State Court Complaint, ¶ 34. The State Court Complaint further alleges that Virgo was Alchemy's alter ego based on alleged "shifting of assets from . . . Alchemy . . .  to enrich Virgo and its principals."  *Id.*

14

44.     These claims belong to the Trustee and are property of Alchemy's bankruptcy estate.

45.     Under the Bankruptcy Code, the Trustee acts in fiduciary capacity to collect and reduce to money the property of Alchemy's bankruptcy estate for the benefit of all creditors including any and all property consisting of claims against third parties. *See* 11 U.S.C. §§ 704, 541.

46.     A cause of action is property of the estate when the claim is a "general one, with no particularized injury arising from it." *Emoral*, 740 F.3d at 879. On the other hand, a claim will be considered specific to a creditor if it involves an injury personal to the creditor and other creditors generally have no interest in the claim. *Id.*

47.     "[W]here a claim is 'a general one, with no particularized injury arising from it . . . the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.'" *Id.* (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989)).

48.     Courts have repeatedly found that alter ego and other similar claims are general claims which inure to the benefit of all creditors, and thus constitute property of the bankruptcy estate and may only be asserted by the Trustee. *See, e.g.*, *id.* at 880-81 (discussing cases finding that alter ego, veil piercing, and/or successor liability claims were property of the estate); *In re OODC, LLC*, 321 B.R. 128, 136 (Bankr. D. Del. 2005) (holding that successor liability claims could only be pursued by the trustee because they were general to all unsecured creditors, and noting that "most other courts have found that the trustee in bankruptcy has standing to bring successor liability (or alter ego) suits on behalf of all creditors").

LEGAL\55573766\2 00601.0823.000/390810.000

49.     For example, in *Harrison v. Soroof Int'l, Inc.*, the district court found that a plaintiff-creditor lacked standing to bring claims that the defendant was the alter ego of the bankruptcy debtor because such claims were not unique to that particular creditor and were therefore property of the bankruptcy estate. 320 F. Supp. 3d at 619-27. Similar to the Usurping Banks' allegations in the State Court Litigation, the plaintiffs in *Harrison v. Soroof Int'l* alleged that a parent company had used a purportedly separate entity to perpetrate a fraud, by, *inter alia*, dominating the board, failing to observe corporate formalities, and causing the entity to be undercapitalized. *See id.* at 621-22. The court found that these allegations were ones "that any number of [debtor's] creditors might use to show that [debtor] and [its parent] are each other's alter ego," and explained that in cases such as these the Third Circuit focuses on whether the alleged alter ego status is based on facts "generally available" to any creditor, not on the particulars of the fraudulent scheme alleged by the specific plaintiff-creditor. *Id.* at 622-24 (citing *Emoral*, 740 F.3d at 881; *In re Buildings by Jamie, Inc.*, 230 B.R. 36, 38-43 (Bankr. D.N.J. 1998)).

50.     Similarly, in *In re Maxus Energy Corp.*, 571 B.R. 650, 656-61 (Bankr. D. Del. 2017), the bankruptcy court found that alter ego claims against a former indirect parent of the debtor were property of the debtors' estates. The Court found that, even though the plaintiff's claims were brought under a contractual indemnity provision that could only be invoked by the plaintiff, the claims were still "clearly general" and therefore property of the estate because the theory of alter ego liability relied on generalized harm that affected all creditors collectively. *Id.* at 660.

51.     Here, the Usurping Banks theory of alter ego liability relies on allegations about Virgo's domination and control, Virgo's use of Alchemy to perpetrate fraud, Virgo's "misuse of legal forms," and the "shifting of assets" to enrich Virgo at Alchemy's expense. *See* Ex. E, State

16

Court Complaint, ¶ 34. These are the type of alter ego allegations the court in *Harrison v. Soroof Int'l* found were "general" to all creditors. *See* 320 F. Supp. 3d at 621-22. Furthermore, the Usurping Banks' various allegations concerning inflated financials, channel-stuffing schemes, undercapitalization, and excessive debts imposed on Alchemy by Virgo (*see, e.g.*, Ex. E, State Court Complaint, ¶¶ 12-14, 49-52, 53, 55, 61, 112) allege the type of generalized harms that would affect all of Alchemy's creditors. *See Maxus Energy Corp.*, 571 B.R. at 660.

IV. **The Usurping Banks' Filing of the State Court Complaint Interfered with the Settlement of the Adversary Proceeding**

52. The State Court Litigation prejudiced and devalued the Trustee's claims in the context of the Court-approved mediation of the Adversary Proceeding, complicated the settlement process, and resulted in the Trustee receiving less than he would have otherwise received in connection with the Virgo Settlement Agreement.

*53.* Even in situations which do not involve violations of the automatic stay, bankruptcy courts have the authority to enter bar orders in aid of settlement. *See In re Tribune Co.*, 464 B.R. 126, 176 (Bankr. D. Del. 2011). In *Tribune*, for example, the court explained the significance of bar orders for partial settlements in order to prevent non-settling defendants from later asserting contribution or indemnity claims against settlement defendants. *See id.* at 176-77 ("If a nonsettling defendant against whom a judgment had been entered were allowed to seek payment from a defendant who had settled, the settlement would not bring the latter much peace of mind.") (citation omitted).

54. Similar reasoning can apply here—entry of the Bar Order would encourage settlement by preventing the Virgo Defendants from settling the Trustee's claims here while still being subject to separate claims arising out of the same facts and loan agreements that, while being asserted by third parties, actually belong to the Trustee or to the Administrative Agent. Indeed,

17

this concern is reflected in the Virgo Settlement Agreement's provision for an additional settlement payment to the Trustee in the event that the Bar Order is entered.

55.     Entry of the Bar Order would not be unfair to the Usurping Banks because, as discussed herein, they lack standing to bring the State Court Litigation because their claims either are property of the estate which can only be asserted by the Trustee or are claims which have been assigned to SunTrust as the Administrative Agent under the Credit Agreements. *See In re Continental Airlines*, 203 F.3d 203, 212-14 (3d Cir. 2000) (explaining, in the reorganization context, that a non-consensual third-party release should be fair, necessary to the reorganization, and supported by factual findings).[9]

56.     Additionally, any due process concerns will be satisfied because the Usurping Banks will have the opportunity to respond to the Trustee's request for a Bar Order as part of this contested matter. *See In re SemCrude, L.P.*, 2010 WL 4814377, at *3 (Bankr. D. Del. Nov. 19, 2010) (due process concerns satisfied where party subject to bar order participated in briefing and argument relating to the settlement).

57.     Given, among other things, the timing of the State Court Litigation, the Usurping Banks' lack of standing to prosecute claims of the Pre-Petition Lenders, and the pendency of the Adversary Proceeding wherein the Trustee prosecuted overlapping claims on behalf of the

---

[9]     Outside of the reorganization context, some courts have found that a bar order for a third party is only appropriate if it is "integral" to the settlement, such that the parties would not have entered into the settlement agreement without it. *See In re Centro Group, LLC*, 2021 WL 5158001, at *3 (11th Cir. Nov. 5, 2021) (discussing Eleventh Circuit's approach). The Third Circuit has not established its own rule concerning this issue, and other circuits have applied different parameters for when a settlement bar order is appropriate. *See, e.g.*, *In re Greektown Holdings, LLC*, 728 F.3d 567, 578 (6th Cir. 2013) (agreeing with Fifth Circuit's approach that "inquired simply whether the outcome of the actions covered by the bar order would affect the bankruptcy estate") (citing *Matter of Zale Corp.*, 62 F.3d 746, 755-59 (5th Cir. 1995)). Furthermore, this case is distinguishable from situations barring valid claims by third parties, because here the Usurping Banks do not even have standing to assert the claims at issue, for the reasons discussed above.

LEGAL\55573766\2 00601.0823.000/390810.000

Debtors, it is apparent that the Usurping Banks brought the State Court Litigation as a tactic to inject themselves into the Trustee's efforts to monetize property of the estate, to the detriment of the Debtors' estates.

58.     Accordingly, the Court should issue the Bar Order, as requested herein, prohibiting, restraining, and enjoining the Usurping Banks from continuing to prosecute the State Court Litigation against the Virgo Parties and from otherwise asserting claims against the Virgo Parties arising out of or related to the Pre-Petition Loans or loan relationships with the Debtors.

## V.     Sanctions Are Warranted for the Usurping Banks' Willful Violation of the Automatic Stay and Interference with Estate Property

59.     When there has been a willful violation of the automatic stay, Section 362(k)(1) of the Bankruptcy Code provides for the award of "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, . . . punitive damages." 11 U.S.C. § 362(k)(1).

60.     A party's violation of the automatic stay will be deemed willful "if they violate the stay with the knowledge that a bankruptcy petition has been filed." *Prithvi Catalytic, Inc.*, 2015 WL 1651433, at *12 (citing *In re Lansdale Family Restaurants, Inc.*, 977 F.2d 826, 829 (3d Cir. 1992). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *Lansdale Family Restaurants*, 977 F.2d at 829.

61.     The Usurping Banks were plainly aware of the Debtors' bankruptcy filing when they filed the State Court Complaint. *See* Ex. E, State Court Complaint, ¶ 79. "Knowledge of the existence of the bankruptcy case is treated as knowledge of the automatic stay." *In re Boltz-Rubinstein*, 596 B.R. 494, 503 (Bankr. E.D. Pa. 2019) (internal citation omitted).

LEGAL\55573766\2 00601.0823.000/390810.000

62.     By intentionally taking an action which, as discussed above, violated the automatic stay, the Usurping Banks committed a "willful" violation within the meaning of Section 362(k)(1) and should be subject to sanctions.

63.     The Trustee is entitled to the costs and fees it incurred filing the instant Motion, which was necessary to stop the Usurping Banks' ongoing violation of the automatic stay and interference with the administration of the bankruptcy estate, which injured Debtors' estate by prejudicing and devaluing the Trustee's claims in connection with the mediation and causing the Trustee to receive less than he otherwise would have as part of the settlement with Virgo. *See In re Lanslaw*, 853 F.3d 657, 668 (3d Cir. 2017) (acknowledging that a debtor may suffer "financial injury in the form of attorneys' fees" that are incurred to "enjoin further violations of the stay," which are compensable as actual damages under § 362(k)(1)).

64.     Section 362(k)(1) also provides for punitive damages in order to punish outrageous conduct or deter similar conduct, as determined in the discretion of the bankruptcy court. *In re Iskric*, 496 B.R. 355, 365 (Bankr. M.D. Pa. 2013).

65.     Furthermore, bankruptcy courts have inherent power to impose sanctions in appropriate circumstances and, pursuant to Section 105(a) of the Bankruptcy Code, to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, such as when a party engages in bad faith or willful misconduct. *See In re Bailey*, 321 B.R. 169, 178 (Bankr. E.D. Pa. 2005); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991).

66.     As set forth above, the Usurping Banks engaged in willful misconduct in violating the automatic stay and attempting to purposefully interfere with the Court-approved mediation of the Adversary Proceeding, for which sanctions pursuant to the Court's inherent powers and/or punitive damages pursuant to § 362(k)(1) are warranted.

LEGAL\55573766\2 00601.0823.000/390810.000

## RESERVATION OF RIGHTS

67.     The Trustee reserves all rights to seek further or additional relief, including the damages incurred by the Debtors' estates as a result of the Usurping Banks' actions.


## NOTICE

68.     Notice of the hearing on the relief requested in this Motion as well as a copy of the Motion itself will be provided by the Trustee in accordance and compliance with Bankruptcy Rule 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including: (a) the U.S. Trustee for the District of Delaware; (b) the Usurping Banks (with notice to be served per Rule 9104(b) via U.S. Mail and email); (c) the Defendants in the Adversary Proceeding, including the Virgo Parties; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

69.     No prior request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the Orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Date:   December 17, 2021
        Wilmington, DE

COZEN O'CONNOR

By:   */s/ John T. Carroll, III*
      John T. Carroll, III (DE No. 4060)
      1201 North Market Street
      Suite 1001
      Wilmington, DE  19801
      302-295-2028
      302-295-2013 Fax
      Email:  jcarroll@cozen.com

      KAUFMAN, COREN & RESS, P.C.
      Steven M. Coren (*Pro Hac Vice*)
      Two Commerce Square
      Suite 3900
      2001 Market Street
      Philadelphia, PA 19103
      215-735-8700
      215-735-5170 Fax
      Email:  SCoren@kcr-law.com

      *Counsel to George L. Miller,*
      *Chapter 7 Trustee*

LEGAL\55573766\2 00601.0823.000/390810.000