## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.*, | Case No. 16-11596-JTD |
| *Debtors*.[1] | (Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | **Re: D.I. 957** |
| *Plaintiff*, | Adv. Pro. No. 18-50633-JTD |
| v. | **Re: Adv. D.I. 214, 220** |
| ANCONNECT, LLC, *et al.*, | |
| *Defendants*. | |

**VIRGO PARTIES (A) PARTIAL JOINDER TO TRUSTEE'S MOTION FOR ENTRY OF BAR ORDER AND SANCTIONS FOR VIOLATING THE AUTOMATIC STAY AGAINST THE USURPING BANKS; AND (B) RESPONSE TO THE USURPING BANKS' PRELIMINARY OBJECTION TO TRUSTEE'S MOTION FOR ENTRY OF BAR ORDER AND SANCTIONS FOR VIOLATING THE AUTOMATIC STAY**

Virgo Investment Group, LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore), L.P. ("Onshore"), Virgo Societas Partnership III (Offshore), L.P. ("Offshore"), Virgo Services Company, LLC, Jesse Watson, and Mark Perez (collectively, the "Virgo Parties"), hereby (this "Joinder and Response") (a) join the *Trustee's Motion for Entry of Bar Order and Sanctions for Violating the Automatic Stay Against the Usurping Banks* [Bankruptcy Docket No. 957] (the "Bar Motion")[2] solely with respect to the Trustee's request that the Court enter the Bar

---

[1] The Debtors in these chapter 7 cases are Our Alchemy, LLC, Case No. 16-11596 and Anderson Digital, LLC, Case No. 16-11597.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Complaint, Bar Motion or Objection, as applicable.

Order[3], and (b) respond to the Usurping Banks' *Preliminary Objection to the Trustee's Motion for Entry of Bar Order and Sanctions For Violating the Automatic Stay* [Docket No. 220] (the "Bank Objection"), and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.      The Virgo Parties join the Trustee's Bar Motion seeking to enjoin the Usurping Banks' improper prosecution of claims belonging to the Debtors' bankruptcy estates against the Virgo Parties. On July 9, 2019, the Usurping Banks commenced litigation against the Virgo Parties labeling their causes of action as fraud, aiding and abetting fraud, tortious interference with a contract, and unjust enrichment. Despite the labels given to their claims, the Usurping Banks seek to end-run the bankruptcy process by asserting thinly-veiled avoidance and derivative alter ego claims belonging to the trustee against the Virgo Parties. Additionally, they seek a "double dip" recovery by participating in the estate's settlement with the Virgo Parties and then by asserting virtually identical claims in other courts to increase their overall recovery. Thus, the Bar Motion should be granted because these claims belong solely to the Debtors' bankruptcy estates.

2.      *First,* the Usurping Banks' claims in the State Court Litigation are simply disguised fraudulent transfer and preference claims that belong to the Debtors' bankruptcy estates. The allegations made by the Usurping Banks against the Virgo Parties in the NY Complaint are largely a "copy and paste" of the Trustee's allegations in the adversary proceeding. Notwithstanding the labels given to their causes of actions in the NY Complaint, the substance of the Usurping Banks' allegations demonstrate that they merely seek to recover against the Virgo Parties on account of transfers made by Alchemy to Virgo Parties. The Usurping Banks even allege *three times* that they were induced into making loans *"to Virgo."* NY Complaint ¶¶ 1, 85, 95 (emphasis added). The

---

[3]      The Virgo Parties do not join the Bar Motion in relation to the Trustee's request for sanctions pursuant to section 362(k) of the Bankruptcy Code.

Usurping Banks' pleadings show that although these loans were to Alchemy, the Usurping Banks seek to bypass the borrower entirely and recover funds allegedly transferred to the Virgo Parties. These disguised fraudulent transfer and preference claims belong to the Debtors' bankruptcy estates and were pursued and settled by the Trustee for the benefit of all creditors, including the Usurping Banks.

3.      ***Second***, the Usurping Banks' alter ego claims, which are incorporated by reference into ***all*** their causes of action in the State Court Litigation, belong to the Debtors, because the applicable test set forth in *In re Emoral* is satisfied: (a) Alchemy had the ability to assert the alter ego claims at the commencement of the bankruptcy, and (b) the alter ego claims are not unique to the Usurping Banks. As set forth below, such non-unique alter ego claims are routinely found to belong to the bankruptcy estate. *See infra* at Section II. In the NY Complaint, the Usurping Banks allege that at all relevant times Alchemy was the alter ego of the Virgo Parties. NY Complaint, ⁋ 34. Despite their efforts to backpedal and hide from these allegations in their objection before this Court, the Usurping Banks incorporate their alter ego allegations by reference into every single cause of action in the NY Complaint. A plain reading of the NY Complaint shows that the alleged bases for these alter ego allegations would not be unique to the Usurping Banks, and therefore, belong to the Debtors' bankruptcy estates:

> Virgo's misuse of the legal forms and shifting of assets from Calrissian and Alchemy to Virgo was designed to enrich Virgo and its principals while shielding Virgo from liability to Plaintiffs ***and others***.

NY Complaint ⁋ 34. (emphasis added). On their face, these derivative alter ego allegations are not unique to the Usurping Banks and could be made by any other creditor of the Debtors.

4.      Each of the Usurping Banks' disguised fraudulent transfer and derivative alter ego claims belong to the Debtors' bankruptcy estates. Therefore, the Trustee's motion for a Bar Order

should be granted, and the Usurping Banks should be precluded from prosecuting these estate claims against the Virgo Parties.

## RELEVANT BACKGROUND

### A. The Adversary Proceeding

#### i. The Bankruptcy Filing

5.      On July 1, 2016, Debtors filed petitions under Chapter 7 of the Bankruptcy Code.

6.      On October 25, 2016, the Court granted the Trustee's motion for approval of a sharing and reimbursement agreement (the "Sharing Agreement") with SunTrust Bank, as administrative agent for itself and certain other lenders, including the Usurping Banks, that provided prepetition loans to Alchemy. [Bankruptcy Docket No. 302]. These lenders, including the Usurping Banks, were granted an allowed claim in the amount of the outstanding loans owed by the Debtors as of the Petition Date. [Bankruptcy Docket No. 226-2, ¶ 3].

#### ii. The Trustee's Complaint

7.      On June 29, 2018, the Trustee commenced the Adversary Proceeding by filing the Compliant [Adversary Proceeding ("AP") Docket No. 1] (the "AP Complaint") asserting thirteen claims against the Virgo Parties and several others.  The Trustee's claims against the Virgo Parties relevant here concerned transfers and transactions surrounding two pre-petition loans to Alchemy by a group of lenders, including the Usurping Banks, pursuant to two Credit Agreements.

8.      *First*, the Trustee sought to avoid and recover transfers made by Alchemy to Calrissian, subsequently transferred to Onshore and Offshore, following funding of the Original Credit Facility. AP Complaint ¶ 208a. The Trustee alleged that "[u]pon the closing of the September 2014 SunTrust Credit Facility, Calrissian – acting through Mark Perez – caused Alchemy to draw $14,539,123.65 out of the SunTrust loan proceeds and transfer that

$14,539,123.65 to Calrissian (Alchemy's sole member) as an equity distribution (the "Calrissian Distribution")." *Id.* ¶ 35. The Trustee alleged that, on September 17, 2014, nearly all of these funds were subsequently transferred to Onshore and Offshore (the "<u>$14 Million Transfer</u>"). *Id.* ¶ 39.

9.      The Trustee sought to recover the proceeds of the subsequent transfers to Onshore and Offshore as fraudulent transfers under the Bankruptcy Code and Delaware Uniform Fraudulent Transfer Act ("<u>UFTA</u>") and theories of unjust enrichment. *Id.* ¶¶ 208a, 221, 225, 241. The Trustee also alleged that Mr. Perez, Mr. Watson and Todd Dorfman, former members of Alchemy's board of managers, breached their fiduciary duties or aided and abetted breaches of fiduciary duties by "allowing the Debtors to enter into the Fraudulent Transfers . . ." *Id.* ¶ 260a.

10.     ***Second***, the Trustee brought claims against the Virgo Parties arising from transactions undertaken in connection with the Amended Credit Agreement, dated July 9, 2015, entered into between Alchemy, as borrower, and several banks (including the Usurping Banks) as lenders and SunTrust as the administrative agent. *See id.* ¶ 156. The Trustee sought to avoid and recover the following transfers by Alchemy under the Bankruptcy Code, Delaware UFTA and/or under theories of unjust enrichment: (1) $10,181,733.54 transferred to OA Investment Partners, LLC ("<u>OAIP</u>"), an entity partially owned by Onshore, on July 13, 2015 (the "<u>$10 Million Transfer</u>"), and (2) $3,033,534.25 transferred to Calrissian, which was subsequently transferred to Onshore and Offshore on July 10, 2015 (the "<u>$3 Million Transfer</u>"), loan repayments. *Id.* ¶¶ 208k, 221, 225, 227b, 227d, 243, 245a, 245c. The Trustee also alleged that Mr. Perez, Mr. Watson and Mr. Dorfman, breached their fiduciary duties or aided and abetted breaches of fiduciary duties by allowing Alchemy to make the $3 Million Transfer on July 10, 2015. *Id.* ¶ 260(a).

11.     On September 30, 2018, the Virgo Parties filed motions to dismiss certain claims brought by the Trustee in the Adversary Proceeding. [Docket Nos. 25 and 26 (collectively, the "Motions to Dismiss")].

12.     On December 3, 2019, the Court entered orders on the Motions to Dismiss. [Docket Nos. 102 (the "Entities' Dismissal Order") and 103 (the "Individuals' Dismissal Order")],[4] dismissing, among others, the following claims against the Virgo Parties: (a) breach of fiduciary duty claims against Messrs. Watson and Dorfman arising from the $14 Million Transfer (Individuals' Dismissal Order at 2); (b) breach of fiduciary duty claims against the Virgo Individuals for the $3 Million Transfer (*Id*. at 2); and (c) fraudulent transfer and unjust enrichment claims for the $3 Million Transfer on July 10, 2015 (Entities' Dismissal Order at 2).

### iii.     The Settlement Agreement.

13.     On October 5, 2021, the Trustee filed his motion [Bankruptcy Docket No. 927] (the "Settlement Motion") seeking approval of the Settlement Agreement.  Pursuant to Section 6 of the Settlement Agreement, the Trustee and Debtors released all claims against the Virgo Parties, including, without limitation, the following:

> liability, or cause of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law equity, statute, or otherwise, including without limitation any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, ***alter ego***, substantive consolidation, extension, or ***veil piercing*** and any and all fraudulent conveyance or transfer claims that, in either instance, ***could be brought by the Trustee or the Debtor under state, federal or foreign law, including but not limited to the claims that were or could have been asserted against the Settling Defendants in the Adversary Proceeding or any other action or proceeding***.

---

[4]     On September 16, 2019, this Court issued memorandum opinions regarding the Virgo Parties' motions to dismiss the Trustee's complaint. [Docket Nos. 82 (Memorandum Opinion RE: Virgo Entities' Motion to Dismiss) and 83 (Memorandum Opinion Re: The Virgo Individual Defendants' Motion to Dismiss)].

Settlement Agreement ¶ 6 (emphasis added).

14.     While the Usurping Banks did *not* object to the Settlement Motion, the Usurping Banks filed a statement [Docket No. 205] (the "Usurping Banks Statement") in response to the Settlement Motion.  In the Usurping Bank Statement, the Usurping Banks sought to reserve certain rights with respect to the Bar Order and the State Court Litigation. *See* Usurping Banks Statement, fn. 4. Therein, the Usurping Banks also concede that "as creditors of the estate, [they] share in any returns the Trustee may be able to obtain for the benefit of the estates, including through the Adversary Proceeding." Usurping Banks Statement at 2.

15.     On November 17, 2021, the Court entered an order approving the Settlement Motion [Docket No. 211] (the "Settlement Order").  With respect to the request for a Bar Order and the State Court Litigation, the Settlement Order "makes no determination with respect to the merits of the contemplated request for a Bar Order" and "does not bar or release and has no effect whatsoever on any claim alleged in the State Court Litigation . . . or any other litigation and does not affect the rights of any party or person in connection with the request for a Bar Order to be filed by the Trustee pursuant to Section 13 of the Virgo Defendants Settlement Agreement." *See* Settlement Order ¶ 5.

**B.  The State Court Litigation.**

16.     On July 9, 2021, thirty-two days after this Court entered its *Order Authorizing Mediation and Modifying Scheduling Order* [Docket No. 201] which led to the Trustee's settlement with the Virgo Parties, the Usurping Banks commenced the State Court Litigation. Therein, the Usurping Banks purport to recover against the Virgo Parties under common law theories of fraud, tortious interference with a contract and unjust enrichment — alleging that at all relevant times "Alchemy acted as Virgo's alter ego[]." NY Complaint ¶ 34 and ¶¶ 1, 85, 95

(additional alter ego allegations). Regardless of the labels applied to their claims, the NY Complaint shows that they seek to recover under estate claims that the Virgo Parties have settled.

17.     As to the transfers surrounding the Original Credit Agreement, the Usurping Banks' allegations are identical to the those in the Trustee's Complaint: "[u]pon the closing of the 2014 Credit Agreement, Virgo—acting through its CFO, Perez—caused Alchemy to draw $14,539,123.65 from the credit facility and to transfer all of that sum to Calrissian (the "Virgo Distribution")." *Id.* ¶ 49; *cf.* AP Complaint ¶ 35. The NY Complaint then parrots the AP Complaint alleging that Onshore and Offshore were subsequent transferees of the $14 Million Transfer. NY Complaint ¶¶ 50-52; *cf.* AP Complaint ¶¶ 38-39, 41.

18.     As to the Amended Credit Facility, the Usurping Banks allege that "Virgo caused Alchemy to draw over $13 million from the newly established credit facility and pay that sum through Calrissian to Virgo." NY Complaint ¶¶ 12, 68. The Usurping Banks allege that the Virgo Parties were unjustly enriched by their purported receipt of these amounts. NY Complaint ¶ 117. These $13 million are the same amounts the Trustee sought to recover for the $3 Million Transfer and the $10 Million Transfer. AP Complaint ¶¶ 49-54, 150-53, 208k, 225, 227(b).

19.     The Usurping Banks' incorporate their allegation that at all relevant times "Alchemy acted as Virgo's alter ego[]" into each of their causes of action against the Virgo Parties. NY Complaint ¶¶ 34, 84, 94, 104, 109, 116. The Usurping Banks even allege (three times) that they were purportedly induced to extend tens of millions of dollars in loans "***to Virgo***[.]" *Id.* ¶¶ 1, 85, 95 (emphasis added). Such allegations simply restate the Usurping Banks' alter ego claims, as the NY Complaint is based upon loans to Alchemy under the Credit Agreements between Alchemy and the group of lenders, including the Usurping Banks. *See* NY Complaint, ¶¶ 44, 50, 54, 67-68, 97. There are no allegations of loans actually made to the Virgo Parties, because there

were none.  In the course of questioning by the New York State Supreme Court (the "NY Court")

during the hearing on the Virgo Parties' motion to dismiss, counsel for the Usurping Banks

admitted that the alter ego claims were key to the Usurping Banks' Complaint:

> THE COURT:  So let me see if I got this right in your theory.  Let me see if I
> understand this.  So you're saying that Virgo and Alchemy are not alter egos.
>
> MR. GANS: I'm not saying that.  I saying that I believe they are ---
>
> THE COURT:  Are they alter egos in your theory or not?
>
> MR. GANS:  Yes.
>
> THE COURT:  So what I just said is so they are alter egos and Virgo's liability in
> inducing the lenders to – it's not the representations in the loan agreement that you
> are suing on as it relates to the lenders; right?
>
> MR. GANS:  Right.

*See* Declaration of Andrea L. Kim ("Kim Decl."), Ex. A (*Emigrant Bank v. Virgo Inv. Grp. LLC*,

No. 654350/2021 (Feb. 28, 2022) Hr'g Tr.) at 27.[5]

20.    The NY Court subsequently entered a decision and order, which among other

things, dismissed the State Court Litigation without prejudice and held that the Usurping Banks

did not have standing to commence the state court action because standing to bring such claims

was delegated to SunTrust, the Administrative Agent under the Credit Agreements. *See Emigrant*

*Bank v. Virgo Inv. Group LLC*, No. 654350/2021, 2022 WL 406656, at *4 (2 Dep't Feb. 9, 2022).

21.    On March 10, 2022, the Usurping Banks filed a notice in the State Court Litigation

appealing the NY Court's decision and order. The Usurping Banks have yet to file any substantive

pleadings in relation to the appeal.

---

[5]    The parties in the State Court Litigation are currently in the process of finalizing errata sheets but do
anticipate that there will be significant changes to the hearing transcript.

**C.   The Bar Order Proceeding**.

22.     On December 17, 2021, the Trustee filed the Bar Motion seeking an order:

(a) effectuating a bar order against the Usurping Banks; and (b) awarding sanctions for damages

from the Usurping Banks' breach of the automatic stay. *See* Bar Motions ¶ 1.  The Usurping Banks

filed the Objection on January 14, 2022 [Docket No. 220].

<u>**JOINDER AND RESPONSE**</u>

23.     The Court has authority to enter bar orders under section 105(a) of the Bankruptcy

Code in order to enjoin creditors from prosecuting estate claims. *See In re Bernard L. Madoff*

*Securities Inv. Securities LLC*, 740 F.3d 81, 95 (2d Cir. 2014) (affirming Bankruptcy Court's

authority to permanently enjoin creditor's disguised fraudulent transfer claims asserted in a state

court action); *In re MCSGlobal Incorporated,* 562 B.R. 648, 655-58 (Bankr. E.D.Va. 2017)

(approving a bar order to prevent creditors from prosecuting estate claims); *In re Flinkote Co.*,

Case No. 04-11300, 2015 WL 4762580, at * 9 (Bankr. D. Del. 2015) (approving bar order that

barred all third-parties from bringing the debtors' claims and claims derivative of the debtors'

claims, against the released parties); *In re Tribune Co.,*464 B.R. 126, 176 (Bankr. D. Del. 2011)

("Bankruptcy Courts have authority to enter settlement bar orders").  Further, orders approving

settlements often contain injunctions that bar the pursuit of derivative claims of the debtor that are

property of the estate. *See In re Nicole Gas Production, Ltd.*, 518 B.R. 429, 443 (Bankr. S.D. Ohio

2014) ("[O]rders approving settlements often contain injunctions against the pursuit of claims that

are derivative of claims of the debtor and that therefore are property of the estate.") (citing cases).

24.     At bottom, the issue for the Court to address here is limited to whether the Usurping

Banks are improperly prosecuting estate claims in the State Court Litigation. The Virgo Parties

submit that the Usurping Banks' claims are either direct or derivative claims of the Debtors'

estates, and thus, entry of the Bar Order is appropriate here to enforce the Settlement Agreement.

**I.    The Usurping Banks Assert Covert Fraudulent Transfer and Preference Claims in the State Court Litigation, and thus, Entry of the Bar Order is Warranted.**

25.    The Usurping Banks should be barred from prosecuting their covert avoidance

claims against the Virgo Parties in the State Court Litigation. *See In re Bernard L. Madoff*

*Securities Inv. Securities LLC*, 740 F.3d at 95.  Regardless of the labels applied to the Usurping

Banks' causes of action, the substance of their allegations demonstrate that they seek to prosecute

claims in the State Court Litigation against the Virgo Parties already prosecuted and settled by the

Trustee. *See Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 442 (4th Cir. 1999)

("To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the

bankruptcy process and undermine an ordered distribution of the bankruptcy estate.").

26.    The Usurping Banks' "copy and paste" of many of the Trustee's allegations

demonstrates that the Usurping Banks plead nothing more than that the Virgo Parties allegedly

fraudulently withdrew money from Alchemy:

| Adversary Proceeding | State Court Litigation |
|---|---|
| ***Trustee's factual allegations.*** The Trustee alleged that upon the closing of the Original Credit Facility, Calrissian acting through Perez caused Alchemy to draw $14,539,123.65 of the SunTrust loan proceeds and transfer such funds to Calrissian as an equity distribution. AP Complaint ¶ 35. The Trustee alleged that such funds were subsequently transferred to Onshore and Offshore. *See id.* 39. | ***Usurping Banks' factual allegations.*** The Usurping Banks allege that Virgo acting through Perez caused Alchemy to draw $14,539,123.65 from the credit facility and transfer that sum to the Virgo Parties. *See* NY Complaint ¶ 49. The Usurping Banks allege that such funds were subsequently transferred to Onshore and Offshore. *See id.* ¶ 50. |
| ***Trustee's claims.*** The Trustee sought to avoid and recover the $14 Million Transfer from Onshore and Offshore pursuant to Bankruptcy Code sections 548(a)(1)(A), 548(a)(1)(B), Delaware UFTA sections 1304(a) and 1305(a) and under an unjust enrichment theory. *See id.* | ***Usurping Banks' re-characterization of Trustee's claims.*** The Usurping Banks seek to recover amounts alleged allegedly "induced" to "loan" to ***Virgo and its affiliates*** even though such amounts were loaned to Alchemy through the assertion of purported fraudulent |

| Adversary Proceeding | State Court Litigation |
|---|---|
| ¶ 208(a), 221, 225, 241. In the Seventh and Eighth Claims, the Trustee sought to recover against Perez, Watson and Dorfman for allowing the Debtors to enter into the $14 Million Transfer. *Id.* ¶ 260a. | misrepresentation and fraudulent concealment claims. *See* NY Complaint ¶¶ 85, 95. The Usurping Banks thus seek to recover on account of transfers made by the Debtors. |
| ***Trustee's factual allegations.*** The Trustee alleged that Alchemy made the following avoidable transfers: (1) $3,033,534.25 to Calrissian, which was subsequently transferred to Onshore and Offshore, on July 10, 2015 (AP Complaint ¶¶ 49-50), (2) $10,181,733.54 to OAIP on July 13, 2015 (*Id.* ¶ 153). | ***Usurping Banks' factual allegations.*** The Usurping Banks allege that "Virgo caused Alchemy to draw over $13 million from the newly established credit facility and pay that sum through Calrissian to Virgo[,]" and "[t]hrough this transaction, Virgo sought to benefit itself at the expense of the Lenders." NY Complaint ¶¶ 12, 68. |
| ***Trustee's claims.*** In the First though Sixth Claims, the Trustee sought to recover the $3 Million Transfer and $10 Million Transfer, as fraudulent and preferential transfers and under unjust enrichment theories. *Id.* ¶¶ 208(k), 221, 225, 227(b), 227(d), 243, 245(a), 245(c). | ***Usurping Banks' re-characterization of Trustee's claims.*** The Usurping Banks assert a claim for unjust enrichment and allege that they were induced "to provide tens of millions in loans, from which Virgo benefited . . ." *Id.* ¶ 117. |

27.     Accordingly, the substance of the Usurping Banks' claims in the State Court Litigation are simply fraudulent transfer and preference actions that belong to the Debtors' estates. The Usurping Banks plainly allege that Virgo caused Alchemy to transfer loan proceeds to "benefit itself at the expense of the Lenders [Alchemy's creditors]." NY Complaint ¶ 68. And the Usurping Banks even allege that they were induced to "extend tens of millions of dollars in loans to Virgo and its affiliates," explicitly treating the Debtors and the Virgo Parties as interchangeable. *Id.* ¶ 95. Thus, the Bar Order should be granted and the Usurping Banks' wrongful attempt to circumvent the bankruptcy process and prosecute the covert estate claims should be barred.

**II.     The Usurping Banks Should be Barred From Prosecuting Derivative Alter Ego Claims That Are Property of The Debtors' Estates.**

28.     Even if the Usurping Banks were not attempting to re-litigate the Trustee's avoidance actions, which the foregoing demonstrates that they are, the Usurping Banks' alter ego claims against the Virgo Parties in the State Court Litigation are derivative claims that are property

of the Debtors' estate. *See Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 627 (D. Del. 2018) (holding that alter ego claims were property of the debtor's bankruptcy estate); *In re: Mee Apparel, LLC*, No. CV 15-5697 (FLW), 2016 WL 3535805, at *6-7 (D.N.J. June 28, 2016) (holding that the state court plaintiffs' fraud claims were merely recast alter ego claims that belonged to the bankruptcy estate).[6] The Bar Order should be granted, and the Usurping Banks should be enjoined from prosecuting their derivative alter ego claims against the Virgo Parties. *See In re Nicole Gas Production, Ltd.*, 518 B.R. at 443 (citing cases).

29.     In the Third Circuit, *In re Emoral* provides the test to determine whether claims predicated upon alter ego liability against a third-party non-debtor constitute property of the bankruptcy estate: "(1) the claim must be one that both existed at the commencement of the filing and that the trustee could have asserted on his own behalf under applicable state law; *and* (2) the claim must be a general one, with no particularized injury arising from it." *In re Maxus Energy Corp.*, 571 B.R. 650, 658 (Bankr. D. Del. 2017) (citing *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014)) (emphasis in original). Both elements are satisfied here as to the Usurping Banks' alter ego claims which are incorporated into *each* of their causes of action.

30.     *First*, Alchemy had the ability (regardless of whether it would have succeeded), through the Trustee, to pierce its own corporate veil at the commencement of the bankruptcy. *See Harrison*, 320 F. Supp. 3d at 614–17 (holding that under Delaware law the debtor-subsidiary's alter ego claim to pierce its own corporate veil existed at the commencement of the bankruptcy).

---

[6]      A number of other courts have also held alter ego claims are property of the bankruptcy estate. *See e.g.*, *In re Bridge Info. Sys., Inc.*, 344 B.R. 587, 594 (E.D. Mo. 2006) ("This Court concludes that the bankruptcy court correctly decided that Highland lacked standing as a creditor to pursue tort and veil-piercing claims on behalf of the bankrupt debtor (Bridge) against a third party (Welsh Carson). The bankruptcy court properly found that these claims are exclusively the property of the Bridge estate."); *In re Icarus Holdings, LLC.*, 290 B.R. 171, 179 (Bankr. M.D. Ga. 2002), *subsequently aff'd sub nom. Baillie Lumber Co., LP v. Thompson*, 413 F.3d 1293 (11th Cir. 2005) ("A trustee has the exclusive right to bring an alter ego action if it is property of the bankruptcy estate."); *Raytheon Co. v. Boccard USA Corp.*, 369 S.W.3d 626, 638 (Tex. App. 2012) (holding that the debtor in possession was the only party with standing to assert an alter ego claim to reach the assets of its parent).

31.    **Second**, the Usurping Banks' alter ego claims are general claims benefiting all creditors and not claims of particularized harm. In making this determination, the focus is on the alter ego claim itself rather than the underlying claim. *Id.* at 619. In the NY Complaint, the Usurping Banks' allege that "Alchemy acted as Virgo's alter ego[,]" and "Virgo's misuse of legal forms and shifting of assets from Calrissian and Alchemy to Virgo was designed to enrich Virgo and its principals while shielding Virgo from liability to Plaintiffs **and others**." NY Complaint ⁋ 34 (emphasis added). These generalized allegations of alter ego, which are facially not unique to the Usurping Banks, are incorporated by reference into all of the Usurping Banks' causes of action. *Id.* ⁋⁋ 34, 84, 94, 104, 109, 116; *Harrison*, 320 F. Supp. 3d at 622 (holding that alter ego claims were "general" where any number of the debtors' creditors could have use the same allegations to establish alter ego); *In re: Mee Apparel, LLC*, 2016 WL 3535805, at *6-7 (holding that the state court plaintiffs' claims were general where such claims "would inure to the benefit of every creditor who sold merchandise to the Debtors through their alleged purchasing arm . . ."). Here, any creditor could attempt to hold the Virgo Parties liable as the Debtors' alter ego on the basis that they allegedly shifted the Debtors' assets to enrich themselves. Such allegations are not unique to the Usurping Banks, and thus, such alter ego claims belong to the Debtors' bankruptcy estates.

32.    In tacit recognition that the alter ego claims belong to the bankruptcy estates, the Usurping Banks retreat from their position in the Bank Objection and claim that their alter ego allegations are not the basis for their fraud claims against the Virgo Parties. Bank Objection ⁋ 1, 34. But this reversal is belied by the NY Complaint and the direct dialogue between counsel for the Usurping Banks and the NY Court in that action. An alter ego theory may not be selectively applied. *See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (holding that to pierce the corporate veil under an alter ego theory,

"[e]ffectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."). The Usurping Banks claim that "at all times relevant . . . Alchemy acted as Virgo's alter ego[]." NY Complaint, ⁋ 34.  The Usurping Banks' also treat Alchemy and the Virgo Parties as one and the same even alleging that the loans they seek to recover were made to "Virgo and its affiliates" in their claims labeled fraudulent inducement and fraudulent misrepresentation. *Id*. ⁋⁋ 85, 95.  Accordingly, the Usurping Banks' claims against the Virgo Parties are based on their asserted alter ego theory. Their own counsel expressly admitted as much. The Bar Order should be granted to prevent the Usurping Banks' continued prosecution of derivative alter ego claims belonging to the Debtors' bankruptcy estates.

33.     Further, the Usurping Banks did not even attempt to assert individualized harm claims against the Virgo Parties in the NY Complaint because they cannot. Such claims are barred by the Credit Agreements under which the Usurping Banks acknowledged that they had each "made its own credit analysis and decision to enter into [the Credit Agreements]" "independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate[.]" Original Credit Agreement, § 9.3; Amended Credit Agreement, § 9.3. Thus, the Usurping Banks' claims in the State Court Litigation are not individualized harm claims.[7]

## CONCLUSION

34.     For the reasons stated above, the Virgo Parties respectfully request that the Court grant the relief sought by the Trustee in the Bar Motion.[8]

---

[7]     Further, any claims by Pacific Mercantile Bank, Alchemy's existing lender prior to the entry of the Original Credit Agreement in September 2014 (Original Credit Agreement at 17), would be barred by New York's six-year statute of limitations. *See* N.Y. CPLR § 213(8).

[8]     The Virgo Parties reserve all rights to supplement or add to the legal and factual arguments raised in this Joinder and Response at a future date.

Dated: May 11, 2022
       Wilmington, Delaware               Respectfully submitted,

**THE ROSNER LAW GROUP LLC**

*/s/ Jason A. Gibson*
Frederick B. Rosner (DE 3995)
Jason A. Gibson (DE 4885)
824 Market Street, Suite 810
Wilmington, DE 19801
Tel.: 302-777-1111
Gibson@teamrosner.com

-and-

**DANIELS & TREDENNICK, PLLC**
Andrea Levin Kim
6363 Woodway, Suite 700
Houston, Texas 77057
Tel: (713) 917-0024
Andrea.Kim@dtlawyers.com

*Counsel for the Virgo Parties*