# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> OUR ALCHEMY, LLC, *et al.*, <br><br> Debtors. | Chapter 7 <br><br> Case No. 16-11596-JTD <br><br> (Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, <br><br> *Plaintiff*, <br> v. <br><br> ANCONNECT, LLC, *et al.*, <br><br> *Defendants*. | Adv. Pro. No. 18-50633-JTD <br><br> **Re: Docket No. 264** <br><br> **Obj. Deadline: November 10, 2022 at 4:00 p.m. (ET)** |

**LENDERS' MOTION TO AMEND AND SUPPLEMENT THE COURT'S OCTOBER 13, 2022 ORDER PURSUANT TO CIVIL RULES 52(b), 59(e), AND 60**

Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB" and, together with Emigrant, the "Lenders"), lenders to the debtors in the above-captioned chapter 7 cases, and plaintiffs in New York Supreme Court litigation (the "Virgo Litigation") against Virgo Investment Group, LLC and various associated entities and individuals (together "Virgo"), hereby submit this motion (the "Motion") pursuant to Rule 52(b) of the Federal Rules of Civil Procedure (the "Civil Rules") made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and in the alternative, pursuant to Civil Rules 59(e) and 60 made applicable by Bankruptcy Rules 9023 and 9024. By this Motion, the Lenders move to amend the findings and conclusions or make additional findings and conclusions in the Court's Order

(ECF No. 264) (the "Order") on the Trustee's *Motion for Entry of Bar Order and Sanctions for Violating the Automatic Stay* (ECF No. 214) (the "Bar Motion").[1]

## PRELIMINARY STATEMENT

1. The Lenders move to amend or supplement the Order for two reasons.

2. ***First***, the Order omits "essential findings [and] conclusions," leaving out entirely the Court's central ruling that the Virgo Litigation is ***not barred***, and does not address what the Court characterized as "the only question in front of me today… ***whether [the Virgo Litigation] complaint alleges direct claims that belong to the banks or does it allege derivative claims that belong to the trustee.***" Hr'g Tr. at 62:15-18.

3. ***Second***, the Order appears to enjoin claims that do not exist and are "future hypothetical claims." Any such injunction constitutes an unconstitutional advisory opinion. Moreover, the Order's language describing such claims is particularly overbroad, imprecise, and contradicts the Court's repeated admonitions that there is no such thing as an "alter ego claim," only an alter ego "theory of liability." *See* Hr'g Tr. at 77:15-24.

4. Therefore, the language of the Order is inconsistent with the central outcome of the dispute and with the Court's statements at the September 21, 2022 hearing (the "Hearing"), and it threatens to severely prejudice the Lenders in the Virgo Litigation. Rules 52(b), 59(e), and 60 provide the Court ample authority to clarify its findings and conclusions and amend the Order to cure these defects. The Lenders urge the Court to do so.

---

[1] Each capitalized term not defined herein shall have the meaning given to it in the Bar Motion.

**BASIS FOR RELIEF**

5. Civil Rule 52(b), made applicable under Bankruptcy Rule 7052, states:

> On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59. Fed. R. Civ. P. 52(b).

6. *Collier on Bankruptcy* states that "[t]he purpose of the motion to amend is to clarify essential findings or conclusions, correct errors of law or fact…." Collier on Bankruptcy, ¶ 7052.03 (Alan N. Resnick and Henry J. Sommer, eds., 16th ed.) (citations omitted).

7. Bankruptcy Rule 9023 incorporates Civil Rule 59(e), which provides that "[a] motion to alter or amend a judgment must be filed within [14] days after entry of judgment." Courts in this district grant such motions "if it appears that the court has … made a decision outside of the adversarial issues presented by the parties." *In re Hechinger Inv. Co. of Del.*, 303 B.R. 18, 23 (D. Del. 2003).

8. Bankruptcy Rule 9024 incorporates Civil Rule 60, which provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." Fed R. Civ. P. 60(a). Accordingly, if a party believes that the court's intent is unclear under the terms of an order, a court may issue an order that clarifies the earlier order. *See, e.g., Accenture Glob. Servs., GmbH v. Guideware Software, Inc.,* 800 F. Supp. 2d 613, 623 (D. Del. 2011) (granting motion for clarification and clarifying order); *Morningred v. Delta Family-Care & Survivorship Plan*, 790 F. Supp. 2d 177, 190 (D. Del. 2011) (same); *Midway Games, Inc. v. Anonuevo (In re Midway Games, Inc.)*, Bankruptcy No. 09-10465(KG), 2010 WL 2076955, at *1 (Bankr. D. Del. May 20, 2010) (Gross, J.) (clarifying and correcting order pursuant

to plaintiffs' request under Rule 60 because the court's opinion was "not consistent with the record").

## BACKGROUND

9. The Trustee filed the Bar Motion on December 17, 2021, seeking to bar the Lenders from pursuing the Virgo Litigation in New York State Court. The Bar Motion sought a finding that the Virgo Litigation, based on the existing complaint, violated the automatic stay and that the Lenders' claims were property of the estate. The Trustee submitted two proposed orders seeking: (a) a factual finding that the Lenders' claims against Virgo are property of the Debtors' Bankruptcy Estate and may only be prosecuted by the Trustee (Ex. A to Bar Motion (Proposed Bar Order) [ECF 214-2 at 1]); (b) a bar of the Virgo Litigation (*id.* at 2, ¶ 2); and (c) a finding that the Lenders willfully violated the automatic stay and should therefore be subject to sanctions (*id.* at [ECF 214-3 at 2]).

10. In support of its requested relief, the Trustee and Virgo had the opportunity to submit multiple rounds of briefing and rely on an agreed-upon evidentiary record (which included 44 exhibits).[2] In all of its submissions, the Trustee ***never*** asked for the relief that he inserted into his proposed Order, which has become the Order of the Court.

11. The Trustee's (and, after its joinder, Virgo's) briefing and argument coalesced around one central theory: that the claims made in the Virgo Litigation were property of the estate and therefore violated the automatic stay because they were allegedly "alter ego claims," which belong to the estate under *In re Emoral* and its progeny.

---

[2] *See Stipulation Between the Trustee and the Responding Lenders Regarding Streamlined Motion Procedures*, approved by this Court's order dated May 13, 2022 [ECF No. 243] (the "Stipulation").

12. This Court focused on this theory as the crux of the Trustee's motion at the Hearing, explaining that "*the only question in front of me today is whether [the Virgo Litigation] complaint alleges direct claims that belong to the banks or does it allege derivative claims that belong to the trustee*. And if the complaint says Virgo made misrepresentations to us, the banks, that's dispositive at this point; isn't it?" Hr'g Tr. at 62:15-20 (emphasis added).

13. The Court then clearly answered this question. Upon considering the parties' briefing and the fully developed evidentiary record, the Court concluded: "*I'm not going to bar [the Lenders] from pursuing the complaint.*" Hr'g Tr. at 69:1-2.[3]

14. The Court thus indicated that it would *deny each and every aspect of the Trustee's proposed orders, as submitted with the Bar Motion.*[4] *See supra* at ¶ 9 (a)-(c). To reach this conclusion on the record at the Hearing, denying the relief sought by the Trustee in the Bar Motion (*i.e.*, no finding that Virgo Litigation claims belong to the estate; no bar of the Virgo Litigation, and no sanctions), the Court necessarily determined not only that the Virgo Litigation claims are not estate claims, but that they did not violate the automatic stay and were not claims based on a theory of alter ego liability.

15. When the Court said that it would deny the relief sought by the Trustee, the Court suggested that it would entertain a limited, negotiated order that would preclude the Lenders from pursuing "causes of action in the New York litigation that are based on an alter ego theory of liability." Hr'g Tr. at 79:16-20.

---

[3] *See also* Hr'g Tr. at 68:8-14 ("So, to the extent they're trying to argue that the debtor made misrepresentations and Virgo is somehow responsible for those misrepresentations because they were the alter ego of the debtor, they can't bring those claims. But they're arguing, they're saying Virgo, independently, made misrepresentations to us, and those I don't see how I could bar.")

[4] The Court separately indicated that it would deny the sanctions request. *See* Hr'g Tr. at 82:14-15.

16. The Lenders understood that the Court intended the order to provide the Trustee with comfort that if the Lenders were to, in the future, seek to recover from Virgo based on a theory of alter ego liability, the Lenders could come back to this Court and seek to enjoin any such action.[5] *See* Hr'g Tr. at 66:10-11 ("THE COURT: Well, then you can come back to me and ask for sanctions because they violated the automatic stay."). After all, the Court was crystal clear that other than this to-be-negotiated carveout, all other requests by the Trustee were denied and the Virgo Litigation was not barred. *See* Hr'g Tr. at 81:15-19 ("MR. NOSKOV: Thank you, Your Honor. And just to be clear on the remainder of their requests to bar the order, the order ***you're proposing would be no bar of our litigation other than this carveout that we would negotiate***? THE COURT: Right.") (emphasis added).

17. When the parties were unable to agree on a form of order, they submitted a certification of counsel appending competing proposed orders. Without a conference or any other opportunity for the Lenders to address the issues presented by Trustee's proposed order, the Court entered the Trustee's proposed order, which did not address the "only" question in front of the Court and omitted any indication that the Virgo Litigation was not barred or that the automatic stay had not been violated. Instead, Trustee's proposed order provided, in relevant part, that:

> "The Responding Banks may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of the Debtors (Our Alchemy, LLC and Anderson Digital, LLC, collectively the Debtors)." Order at ¶ 1.

> "Nothing in this Order or the record at the hearing shall be construed as a finding of fact or conclusion of law with respect to the nature of the factual allegations or causes of action asserted by the Responding Banks in the State Court Litigation." Order at ¶ 2.

---

[5] The Lenders maintain that they do not intend to take any such action in the future.

## ARGUMENT

18. Respectfully, the Lenders submit that the Order, as entered, suffers from two fundamental defects that must be cured pursuant to Civil Rules 52(b), 59(e), and 60.

### I. THE ORDER OMITS ESSENTIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

19. *First,* rather than memorializing the Court's findings and explicit statement that it would deny the relief the Trustee sought in the Bar Motion—that the Virgo Litigation claims ***were not property of the estate*** and that the Virgo Litigation ***was not barred***—the Order provides that "[n]othing in this Order or the record at the hearing shall be construed as a finding of fact or conclusion of law with respect to the nature of the factual allegations or causes of action asserted by the [Lenders] in the State Court Litigation." *See* Order at ¶ 2. Thus, the Order simply does not answer the key gating question that was in front of the Court—rightly characterized by the Court as the "***only question in front of me today***." Hr'g Tr. at 62:15 (emphasis added).

20. But Civil Rule 52 ***mandates*** "the trial court to find the facts ***on every material issue***, including relevant subsidiary issues, and to 'state separately' its conclusions thereon with clarity." *Kruger v. Purcell*, 300 F.2d 830, 831 (3d Cir. 1962) (emphasis added). This is particularly true in the context of injunctions and "serves various purposes," including "inform[ing] the parties of the rationale for the order… defin[ing] for future cases the precise limitations of the issues and the determination thereon" and is "an important factor in the proper application of the doctrines of res judicata and estoppel by judgment." *Pro. Plan Exam'rs of N.J., Inc. v. Lefante*, 750 F.2d 282, 289 (3d Cir. 1984) (citing Fed.R.Civ.P. 52(a) advisory committee note and also noting that the requirement "assist[s] the appellate courts in fulfilling our review function"); *see also Baldinger v. Ferri*, 483 Fed. Appx. 708, 711 (3d Cir. 2012) (discussing importance of application of Civil Rule 52(a) in the context of injunctions).

7

21. This omission of "essential findings or conclusions" (*see* Civil Rule 52(a)) from the Order therefore runs afoul of Civil Rule 52(a) and is inconsistent with the Court's central conclusion that the Virgo Litigation should not be barred and omits the factual findings on which that conclusion was based. *See Ferri*, 483 Fed. Appx. at 711 ("Findings are inadequate if they are not sufficient for a clear understanding of the basis of the decision.") (internal quotations omitted); *Lefante*, 750 F.2d at 289 ("[I]f the record does not provide a sufficient basis to ascertain the legal and factual grounds for issuing the injunction or if the findings are inadequate to explain the basis for that ruling or to permit meaningful review the appellate court must vacate the injunction and remand to the district court for further findings.") (internal quotations omitted); *Island Const. Corp. v. Danielson*, 316 F.2d 161, 163 (3d Cir. 1963) (remanding case because "[w]ithout findings covering the essential facts, we cannot know the basis of the court's conclusion that the counterclaim fails and, therefore, are not in position to review the merits of this matter").

22. As such, consistent with the Court's statements at the Hearing, the Lenders move to add to the Order an express conclusion that ***the Virgo Litigation is not barred***. Absent such an addition to the Order, finding that the Trustee's requested relief is denied, the Lenders will face significant risk that Virgo will attempt to relitigate issues related to the nature of the Virgo Litigation in New York State Court and may not accurately express the nature of the Order in that forum. It should be this Court, not the New York State Court based on the arguments of the parties, that determines what this Court concluded and what is property of the estate. Given that this Court has decided the issue at hand, an explicit order documenting its decision is in the interest of judicial economy and fairness, and is appropriate under Civil Rule 52(b). *See D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1391 (9th Cir. 1990) ("[I]n the interests of stability and judicial economy, … the trial court, not the appellate tribunal, should be the finder of facts. It follows that

challenges to the specificity of the district court's factual findings should be dealt with as much as possible at the trial court level. Rule 52(b) is the device for ensuring this will occur.") (*overruled on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)).

23. For the same reasons, the Lenders also move to add to the Order an explicit finding that the Virgo Litigation ***does not violate the automatic stay and the claims in that litigation do not belong to the estate (including that they are not based on an alter ego theory of liability).*** These findings are not only consistent with, but constitute the basis for, the determination that the Virgo Litigation is not barred. As the Court said at the Hearing, these findings go directly to the only question raised by the dispute, and they therefore should be expressly addressed by the Order.

24. There can be no question that both the Trustee (by bringing the Bar Motion in this Court and seeking a determination on issues relating to the automatic stay and property of the estate) and Virgo (through its joinder) have submitted these issues to this Court. Moreover, it is undisputed that this Court is the proper forum to determine these questions. Therefore, the Court should not leave any such determination for adjudication by the New York State Court. *See In re Affirmative Ins. Holdings, Inc.*, 565 B.R. 566, 583 (Bankr. D. Del. 2017) ("The power of bankruptcy courts to determine if a particular asset constitutes property of the bankruptcy estate is clear. As one bankruptcy court stated, '[*t*]*he determination of what constitutes property of the bankruptcy estate is inherently an issue to be determined by the bankruptcy court*.' Another bankruptcy court rightly indicated that, '... the bankruptcy court always has jurisdiction to determine what is, or is not, property of the bankruptcy estate under 11 U.S.C. § 541.'") (emphasis added and internal citations omitted).

25. Indeed, after almost a year of litigation in connection with the Bar Motion, including multiple rounds of briefing and the submission of evidence by both parties, it would be

9

unfair for the Court to abstain from making an explicit determination on these issues, and the Lenders affirmatively request that the Court do so at this time. Interests of judicial economy and fairness support the need for express findings.[6]

## II. THE BROAD INJUNCTION OF ALTER EGO "CAUSES OF ACTION" IS UNCONSTITUTIONAL

26. In addition to the key omissions of findings and conclusions discussed above, the language of the Order improperly bars all potential future alter ego "causes of action." As the Lenders demonstrated, the Virgo Litigation does not contain claims against Virgo based on an alter ego theory of liability. And, given the Court's decision not to bar the Virgo Litigation from proceeding, the Order's injunction can relate only to hypothetical claims that have not yet arisen. In fact, the Court stated that the existing Virgo Litigation consisted of direct claims against Virgo for alleged misrepresentation made to the Lenders, not alter ego "causes of action."[7]

27. As such, the Lenders move to strike from the Order any affirmative injunction of such future *hypothetical* claims because it constitutes an unconstitutional advisory opinion.

28. It is firmly established that federal courts cannot issue advisory opinions. *See Flast v. Cohen*, 392 U.S. 83, 96-97 (1968) ("[T]he implicit policies embodied in Article III, and not history alone, impose the rule against advisory opinions[.]") (internal citations omitted). In *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 853 (3d Cir. 1996), the Third Circuit wrote that the "oldest and most consistent thread in the federal law of justiciability is that federal courts will not give

---

[6] This is especially true here since the parties have expended significant resources litigating the issues presented to this Court over the course of nine months and the Court has the benefit of multiple rounds of briefing, a full evidentiary record, and oral argument to make its determination.

[7] *See* Hr'g Tr. at 68:8-14 ("So, to the extent they're trying to argue that the debtor made misrepresentations and Virgo is somehow responsible for those misrepresentations because they were the alter ego of the debtor, they can't bring those claims. But they're arguing, they're saying Virgo, independently, made misrepresentations to us, and those I don't see how I could bar.")

advisory opinions." (Citing 13 Wright, Miller, Cooper, Federal Practice and Procedure, § 3529.1, p. 293 (2d ed. 1984).

29. *In re Cubic Energy, Inc.*, 587 B.R. 849 (Bankr. D. Del. 2018) involved a motion for an order that, *inter alia*, would bar the Trustee and others from "asserting any claim, cause of action or remedy, including alter ego and veil piercing claims and remedies … to the extent such claim, cause of action or remedy relates to the Louisiana Judgment or is an attempt to hold [certain parties] liable for damages under the Louisiana Judgment." *Id.* at 854-55. The Court denied the motion, writing that Article III of the Constitution "restricts the Judicial Power of the United States to 'cases' and 'controversies.'" *Id.* at 855 (citing *Unalachtigo Band of the Nanticoke Lenni Lenape Nation v. Corzine*, 606 F.3d 126, 129 (3d Cir. 2010) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

30. The *In re Cubic Energy* Court emphasized that Federal courts, including bankruptcy courts, are "barred from giving 'opinions advising what the law would be upon a hypothetical state of facts.'" 587 B.R. at 855 (citing *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)) (internal quotations omitted). In particular, in the bankruptcy context, "the Third Circuit has determined that an opinion is not advisory where it actually invalidates a clause, orders a party to do something, or otherwise resolves the parties' litigation." *Cubic Energy*, 587 B.R. at 855.

31. The Court concluded that "[t]he present Motion does not ask the Court to strike a provision in the Cubic Plan, prevent ongoing litigation, or force the parties to do something. Movants rightly point to language in the Liquidating Trust's objection that signals a willingness to file or join claims against the Movants, but the [] Trustee has yet to do so. The only action currently pending against Movants that has been brought to the Court's attention is the adversary proceeding

filed against them by Gloria's Ranch…. In other words, to decide on the Motion at this stage would be to indulge in appraising a "hypothetical set of facts." *Id.* at 856-57. *See also Coffin*, 90 F.3d at 853 (Third Circuit held that where an issue was not before the court for adjudication and no actual controversy between the parties was decided pursuant to an order of the bankruptcy court, such an order was an impermissible advisory opinion); *In re Marvel Entm't. Grp. Inc.*, 209 B.R. 832, 839-40 (D. Del. 1997) ("[T]he court believes that it would be inappropriate to apply the automatic stay merely because of speculation that a new board elected by the bondholders might take some action that would violate the automatic stay. Should a new board elected by the bondholders attempt to take any action that would run afoul of § 362(a), they can be enjoined from doing so.").

32. *In re W.R. Grace & Co.,* is also instructive. *See In re W.R. Grace & Co.,* 475 B.R. 34, 97 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013). There, a company with mining operations in Montana declared bankruptcy, and various residents of the municipality where the debtor's operations were located brought claims against the company for environmental torts. The residents reached a settlement agreement with the company which, among other things, established a trust that channeled funds from the bankruptcy estate as well as various insurers to a trust. The settlement agreement included a proposed injunction against any actions that would interfere with channeling funds to the trust. Along with the motion to approve the settlement agreement, the residents moved the court to enjoin future tort actions against the insurers.

33. The Bankruptcy Court denied the motion for an injunction, and the District of Delaware upheld that denial. The court held that the entry of an injunction against hypothetical future actions would be an advisory opinion and therefore unconstitutional. *In re W.R. Grace &*

*Co.*, 475 B.R. at 97. Most importantly, the court held: "there is no actual dispute, nor are the claims [at issue] presented with clear concreteness[,] precisely framed and necessary for decision…. The Libby Claimants have not [] articulated to the Court what specific conduct or actions these alleged insurer tort claims are based upon or when they have or will occur, but instead merely allude to hypothetical future claims that are too conjectural at this point in time. *Id.* at 97–98 (internal citations omitted).

34. So too here. As the Court determined, the Virgo Litigation complaint does not involve claims based on alter ego liability. To the extent the Lenders do pursue such a theory of liability in the future (they do not intend to), the Trustee retains the right to return to this Court and renew his request for a bar order against the Lenders on that basis.[8] But until that hypothetical situation materializes, any such injunction is premature and unconstitutional. As the Bankruptcy Court wrote in *In re W.R. Grace:* "***If and when the Appellants bring such a suit for independent insurer liability, then a court will consider the merits of these claims and decide whether or not they are derivative of Grace's liability, and therefore entitled to injunctive protection. This inquiry is simply too premature at this point in time. The Bankruptcy Court properly declined to rule on these purely hypothetical claims. This Court likewise declines the invitation to do so.***") *Id.* at 98 (emphasis added).

35. An amendment to the Order pursuant to Rule 52(b) is therefore appropriate here and is likewise supported by Rule 59(b) which allows reconsideration of issues where "it appears that the court has … made a decision outside of the adversarial issues presented by the parties." *See In re Hechinger Inv. Co. of Del.*, 303 B.R. 18, 23 (D. Del. 2003). The concept of a modified order relating to any claims based on an alter ego theory of liability was not introduced by the

---

[8] Our proposed amended order includes a reservation of rights carve-out to this effect.

Trustee or entertained by the Court until the Hearing. Nor was the idea (or appropriateness) of such relief briefed by the parties in their multiple rounds of submissions to the Court. And upon the submission of the competing orders, the parties did not have the opportunity to present arguments to the Court. Under these circumstances, the Lenders urge the Court to reconsider its Order and strike those portions which improperly purport to enjoin action that has not yet happened, and may never happen, and therefore constitute an improper advisory opinion under the circumstances. *See U.S. v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation…. [W]e rely on parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present…. [C]ourts normally decide only questions presented by the parties.") (internal citations and quotations omitted).

### III. THE ALTER EGO "CAUSE OF ACTION" INJUNCTION IS OVERBROAD AND INCONSISTENT WITH THE COURT'S STATEMENT OF THE LAW AT THE HEARING

36. In addition to the unconstitutionality of the scope of the Order's injunction, the language describing the "causes of action" purportedly enjoined by the Order is imprecise, does not accurately characterize the nature of an "alter ego" theory, and creates significant risk for misunderstanding in the New York State Court.

37. As entered, the Order provides:

> "The Responding Banks ***may not pursue causes of action*** or theories of recovery in the State Court Litigation against a party ***on the basis that that party was the alter ego of the Debtors*** (Our Alchemy, LLC and Anderson Digital, LLC, collectively the Debtors)." Order at ¶ 1 (emphasis added).

38. But at the Hearing, the Court was crystal clear, clarifying for the record several times, that "[a]lter ego is not a cause of action; it's a theory of recovery." Hr'g Tr. at 68:6-7; *see also* Hr'g Tr. at 77:23-24 ("It's not a claim, it's a theory of liability."). Plainly, the Order confuses

matters by purportedly barring the Lenders from pursuing "causes of action … ***on the basis that [a] party was the alter ego of the Debtors***." Given the Court's accurate characterizations of alter ego as a "theory of recovery" or a "theory of liability" and not a "cause of action," the prohibition on bringing a cause of action "on the basis that a party was the alter ego of the Debtors" is improper.

39. It appears that this language was crafted by the Trustee and Virgo to create an ambiguity Virgo may exploit in New York State Court to re-litigate the same issues this Court already has properly decided. It severely heightens the concern Lenders' counsel articulated to the Court at the Hearing: that Virgo will take the Order to New York and argue, in New York State Court, that it bars the current Virgo Litigation because the complaint contains ***factual*** assertions by the Lenders that Virgo is an alter ego of Alchemy (and therefore had access to Alchemy's financials). It is transparent that Virgo intends to use the Order in New York State Court to argue (as it did throughout the Hearing) that the causes of action in the Virgo Litigation complaint are brought on the basis that Virgo was the alter ego of the Debtors which is property of the estate. *See, e.g.,* Hr'g Tr. at 29:19-20 (MS. KIM: "They're really trying to get their bite at the debtor by calling [Virgo] the 'alter ego' ….").[9]

40. As such, rather than serving to provide comfort to the Trustee that it can come back to this Court if the Lenders actually assert an alter ego theory of liability in the future, the Order is bound to become a battering ram for Virgo in seeking to ignore this Court's determination that the

---

[9] It is clear to the Lenders that the Court understood the difference between factual assertions that Virgo was an alter ego of the Debtors and allegations that formed the basis of any liability based on an alter ego relationship. *See* Hr'g Tr. at 67:10-21 ("MR. BELLI: So all these allegations in the New York complaint about alter ego, all these allegations in the New York complaint about the debtor did this and the debtor did that, can Your Honor bar them from proceeding based on those allegations. THE COURT: Well, those aren't allegations, those are factual assertions that they've made in their complaint, and you can have -- the debtor may have made misrepresentations too and those certainly belong to the estate, those are estate causes of action, but that doesn't mean that Virgo couldn't also make the same misrepresentations."). The Lenders urge the Court to avoid any ambiguity in its Order that would allow the Trustee or Virgo to continue to argue that the current Virgo Litigation complaint is barred based on its language.

15

Virgo Litigation may proceed, and to make the same arguments based on the same theories rejected by this Court. The Court should not allow the Trustee and Virgo to circumvent its authority to determine what is "inherently an issue to be determined by the bankruptcy court" in this way. *See In re Affirmative Ins. Holdings, Inc.*, 565 B.R. 566, 583 (Bankr. D. Del. 2017).[10]

41. To the extent the New York State Court needs to understand the Order, it should be able to do so from this Court's findings and conclusions, not the argument of counsel.

## **CONCLUSION**

42. For the reasons stated above, the Lenders request that the Court amend the Order consistent with **Exhibit A** (proposed order) and **Exhibit B** (redline against Order) attached hereto, which reflect the Lenders' proposed changes to the Order.

Dated: October 27, 2022

Respectfully submitted,

*/s/ Andrew L. Brown*
L. Katherine Good (No. 5101)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email: kgood@potteranderson.com
       abrown@potteranderson.com

- and -

Victor Noskov (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Email: victornoskov@quinnemanuel.com

*Attorneys for the Lenders*

---

[10] Needless to say, the Trustee's intentional omission from the Order of any explicit finding that the Virgo Litigation is not barred and the Trustee's intentional attempt to neuter the findings necessary for the Court to determine the same (*supra* ¶ 39) is likewise indicative of the internal design of Virgo's strategy and weighs in favor of the relief sought by this Motion.