## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al*., | Case No. 16-11596-JTD (Jointly Administered) |
| *Debtors*.[1] | Re: Bankr. D.I. 1010 |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | Adv. Pro. No. 18-50633-JTD |
| *Plaintiff*, | Re: A.D.I. 266 |
| v. | |
| ANCONNECT, LLC, *et al.*, | |
| *Defendants*. | |

## TRUSTEE'S BRIEF IN OPPOSITION TO LENDERS' MOTION TO AMEND AND SUPPLEMENT THE COURT'S OCTOBER 13, 2022 ORDER

KAUFMAN, COREN & RESS, P.C.
Steven M. Coren, Esq. (*Pro Hac Vice*)
2001 Market Street
Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170

COZEN O'CONNOR
John T. Carroll, III (DE Bar No. 4060)
1201 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2028
Fax: (302) 295-2013

Dated: November 9, 2022

*Counsel to George L. Miller, Chapter 7 Trustee*

---

[1]    The Debtors are: Our Alchemy, LLC, Case No. 16-11596 and Anderson Digital, LLC, Case No. 16-11597.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.   PRELIMINARY STATEMENT .............................................................................................1

II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY ...................................................2

III. ARGUMENT ........................................................................................................................9

    A.  The Order Was Properly Based On The Facts And Arguments Before the Court And
        Impacts The Rights of the Litigants, And Is Accordingly Not An Advisory Opinion ........9

    B.  The Responding Banks' Proposed Modifications Are Not Supported By The Record And
        Contradict Statements Made By Their Counsel and by the Court At Oral Argument ......12

    C.  The Responding Banks Fail To Meet The Operative Standards For Amendment or
        Reconsideration ................................................................................................................14

IV. CONCLUSION ...................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Budget Blinds, Inc. v. White*, 536 F.3d 244 (3d Cir. 2008) ............................................................. 15

*Chafin v. Chafin*, 568 U.S. 165 (2013) ...................................................................... 10

*In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81 (2d Cir. 2014) ........................................... 10

*In re Cubic Energy, Inc.*, 587 B.R. 849 (Bankr. D. Del. 2018) ................................................... 10

*In re Flintkote Co.*, 2015 WL 4762580 (Bankr. D. Del. Aug. 12, 2015) ..................................... 10

*In re Home Health Corp. of Am., Inc.*, 268 B.R. 74 (Bankr. D. Del. 2001) ................................ 14

*In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418 (3d Cir. 2013) ................................................ 10, 11

*In re MCSGlobal Inc.*, 562 B.R. 648 (Bankr. E.D. Va. 2017) .................................................... 10

*North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194 (3d Cir.1995) ........................... 14

*Pharmacy Corp. of Am./Askari Consol. Litig.*, No. CV 16-1123-RGA,
   2021 WL 4033238 (D. Del. Sept. 3, 2021) .............................................................................. 14

**Rules**

11 U.S.C. § 105 ................................................................................................................ 10

Federal Rule 59 .............................................................................................................. 14

Federal Rule of Civil Procedure 52 ................................................................................ *passim*

George L. Miller, the Chapter 7 trustee (the "Trustee") of the jointly administered bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC (collectively with Alchemy, the "Debtors"), by and through his undersigned counsel, hereby files this Opening Brief in opposition to the *Motion to Amend and Supplement the Court's October 13, 2022 Order* (Bankr. D.I. 1010; A.D.I. 266)[2] (the "Motion") filed by Emigrant Bank and Pacific Mercantile Bank (collectively, the "Responding Banks").

## I.    PRELIMINARY STATEMENT

The Trustee brought a motion in this Court to bar the Responding Banks from proceeding with litigation in state court which on its face alleged that debtor Alchemy was the alter ego of various individuals and entities associated with Virgo Investment Group, LLC.  Given that the Responding Banks' claims incorporated the prefatory allegations that Alchemy "acted as Virgo's alter ego[]" and agent at all relevant times and that Virgo used its "complete dominion and control" over Alchemy to "perpetrate fraud and other wrongdoing," the Trustee viewed the state court litigation to be inherently and necessarily based on the alter ego allegations and thus property of the estate.  Accordingly, the Trustee filed a motion seeking an order barring the Lenders from proceeding with the state court litigation (the "Bar Order").

After comprehensive briefing by the Trustee, the Responding Banks, and Virgo, the Court held oral argument at which the Responding Banks' counsel stated numerous times on the record that, contrary to the Trustee's interpretation of their pleading, the Responding Banks' state court claims were not based on an alter ego theory of liability.  After argument, the parties submitted competing proposed orders, with the Court ultimately entering an order which simply held the

---

[2]    Identical documents relating to the instant Motion and the underlying motion for bar order have been filed on both the main bankruptcy docket (No. 16-11596) and the adversary docket (18-50633).  For brevity's sake, only the adversary docket index numbers ("A.D.I.") are cited herein.

Responding Banks to their word by barring them from pursuing "causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of the Debtors."  Despite having essentially conceded to the relief on the record, the Responding Banks now take issue with the Court's order on the grounds that it was not the subject of the Trustee's bar order motion and constitutes an impermissible advisory opinion.  Given the extensive briefing and argument held with respect to the Bar Order motion and the fact that the Court's order resolves a significant dispute raised by the parties in the context of the Bar Order motion, the order was proper and the Responding Banks' motion should be denied.

## II.    <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>[3]

Debtor Our Alchemy, LLC ("<u>Alchemy</u>"), previously known as Millennium Entertainment, was an independent distributor of film and television content across all platforms in North America, including DVD, digital, and video-on-demand platforms which, along with affiliate Anderson Digital, LLC, filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code on July 1, 2016 (the "<u>Petition Date</u>").  *See* Bankr. D.I. 1.  Prior to the Petition Date, a group of banks, including the Responding Banks, made loans to Alchemy under two Credit Agreements, which irrevocably appointed SunTrust Bank as the Administrative Agent with the sole authority to enforce the Credit Agreements on behalf of the bank group.  *See* A.D.I. 247 at Ex. 1, Original Credit Agreement, at § 9.1; *id.* at Ex. 2, Amended Credit Agreement, at § 9.1.  After Alchemy filed for bankruptcy, SunTrust, acting as Administrative Agent, sued Alchemy's guarantor and its

---

[3]       Due to the comprehensive briefing already submitted to the Court, the facts herein are condensed to those necessary to resolve the Responding Banks' motion to amend.  A more fulsome recitation of facts is available in the Trustee's Opening Brief in Support of Motion for Entry of Bar Order, A.D.I. 247.  Unless otherwise indicated, exhibits cited herein are exhibits to the Declaration of Andrew J. Belli filed along with A.D.I. 247, and will be cited as "A.D.I. 247 at Ex. __."

general partner for sums due under the Credit Agreements. *Id.* at Exs. 4 and 16.

This was not enough for the Responding Banks, which, on March 18, 2020, sued SunTrust in the United States District Court for the Southern District of New York, alleging that SunTrust's failure to assert claims directly against Virgo Investment Group, LLC and its affiliates based on theories of alter ego or principal-agent liability (*i.e.*, that Virgo was the alter ago or principal of Calrissian and/or Alchemy) constitutes a breach of the Credit Agreements and related agreements. *See id.* at Exs. 6 and 22, Complaint and First Amended Complaint in *Emigrant Bank, et al. v. SunTrust Bank, et al.*, U.S.D.C. S.D.N.Y. Case No. 20-cv-02391-PGG.

On June 29, 2018, the Trustee commenced an adversary proceeding (the "Adversary Proceeding") in this Court against, inter alia, Virgo Investment Group, LLC; Virgo Societas Partners, LLC; Virgo Societas Partnership III (Onshore), L.P.; Virgo Societas Partnership III (Offshore), L.P.; Virgo Service Company, LLC; OA Investment Partners, LLC; OA Investment Holdings, LLC; Jesse Watson; Mark Perez; and Todd Dorfman (collectively, the "Virgo Defendants"). *See* A.D.I. 1.

The Trustee's claims against the Virgo Defendants sought the avoidance and recovery of a $14.5 million distribution made in September 2014, two transfers of approximately $3 million made in March 2015 and July 2015, respectively, and various transfers made to the OA Investment entities (including a $10 million transfer in July 2015) as fraudulent and/or preferential transfers, as well as claims for unjust enrichment and declaratory relief against the Virgo entities and breach of fiduciary duty and related aiding and abetting claims against the individual Virgo defendants. *See id.* at Counts I-VIII and XII and ¶¶ 208.a, 208.h, 208.j, 208.k, 227.b, 227.c, 227.d (identifying fraudulent and preferential transfers).

On July 9, 2021—just thirty-two days after the Court entered an order approving a global mediation of the Adversary Proceeding (*see* A.D.I. 247 at Ex. 18) at which the Trustee and Virgo subsequently resolved all claims between the estate and Virgo (*see* A.D.I. 211)—the Responding Banks commenced litigation against certain of the Virgo Defendants in state court in New York, in the matter of *Emigrant Bank, et al., v. Virgo Investment Group LLC, et al.*, N.Y. Supreme. Ct. N.Y. Cty., Index No. 654350/2021 (the "State Court Litigation" or "State Court Action).  *See* A.D.I. 247 at Ex. 19, State Court Complaint.  Virgo Investment Group LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., Virgo Service Company, LLC, Jesse Watson, Mark Perez, and "Does 1 through 10, Inclusive" (collectively, the "Virgo Parties") are named as defendants in the State Court Litigation. *See id.* at ¶¶ 24-31.

In the State Court Litigation, the Responding Banks assert claims for fraudulent misrepresentation, fraudulent concealment, aiding and abetting fraud, tortious interference with contract, and unjust enrichment against the Virgo Parties. *See id.* at pp. 20-27.  The Responding Banks allege that: (i) Alchemy "acted as Virgo's alter ego[]" at all relevant times; (ii) Virgo used its "complete dominion and control" over Alchemy to "perpetrate fraud and other wrongdoing" against the Responding Banks; and (iii) Virgo "misuse[d] legal forms and shift[ed] assets from . . . Alchemy" in order to "enrich Virgo and its principals while shielding [itself] from liability." *Id.* at ¶ 34; *see also id.* at ¶ 33 (alleging that "Calrissian and Alchemy were the agents of Virgo and, in doing the acts alleged [in the State Court Complaint], acted within the course and scope of such agency, and each authorized and/or ratified the wrongful acts of each other."); *id.* at ¶¶ 1, 85, 95 (alleging loans made "to Virgo" even though the claims are based on loans made to Alchemy under the Credit Agreements).  The State Court Complaint alleges the Responding Banks suffered

4

damages in the form of the "tens of millions in loans" that were made to Alchemy under the Credit Agreements. *See id.* at ¶¶ 91, 101, 106, 117. The State Court Complaint also describes transfers of the loan proceeds that were made from Alchemy to the Virgo Parties. *See id.* at ¶¶ 44, 49-52.

At oral argument on the Virgo Parties' motion to dismiss in the State Court Litigation, counsel for the Responding Banks confirmed that their claims against the Virgo Parties are based on an alleged alter ego relationship with Alchemy. *See* A.D.I. 247 at Ex. 44, Transcript of 2/8/2022 Oral Argument, at p. 27 ("THE COURT: Are [Virgo and Alchemy] alter egos in your theory or not? MR. GANS: Yes."); *see also id.* at p. 30 (counsel's representation that the Responding Banks view Virgo and Alchemy as "one consolidated group"). On February 9, 2022, the New York state court entered a decision and order dismissing the State Court Litigation without prejudice and holding that the Responding Banks lacked standing to bring the suit because they had delegated such standing to SunTrust as Administrative Agent under the Credit Agreements. *See id.* at Ex. 39 at pp. 4-5. In reaching its conclusion, the NY state court relied on the Responding Banks' allegations that the Virgo Parties "may well be the alter-egos of Alchemy and Calrissian who allegedly fabricated cash flows to induce the lender-plaintiff to underwrite this loan." *Id.* at p. 1. The Responding Banks filed a Notice of Appeal in the State Court Litigation on March 10, 2022.

On December 17, 2021, the Trustee filed a motion seeking entry of a bar order prohibiting the Responding Banks from continuing to prosecute the State Court Litigation on the grounds that it violated the automatic stay because the claims asserted therein constituted property of the estate. *See* Ex. 34, Motion (A.D.I. 214). The Responding Banks filed their objection to the motion on January 14, 2022. On May 11, 2022, the Virgo Parties filed a partial joinder to the Trustee's motion and response to the Objection. *See* Adv. D.I. 239. The parties subsequently agreed to a stipulated record and briefing schedule in lieu of an evidentiary hearing. *See* A.D.I. 243.

After submitting comprehensive briefs detailing their positions, the parties participated in oral argument before the Court.  At the argument, the Trustee and the Virgo Parties cited the numerous allegations made by the Responding Banks in the State Court Litigation indicating that they were proceeding with an alter ego theory of liability which was the exclusive property of the estate.  *See, e.g.,* A.D.I. 262, Transcript of Oral Argument ("Tr.") at 8:2-24 (Trustee's counsel directs the Court to paragraphs 33 and 34 of the Complaint in the State Court Litigation, which state that "[a]t all times relevant" to the litigation, Alchemy was the agent of Virgo and acted as Virgo's alter-ego), *id.* at 21:8-10 (counsel for the Virgo Parties argues that, "[r]ight out of the gate the complaint . . . treats Virgo parties as if we were the debtor and it doesn't change from there").

The Responding Banks' counsel, on the other hand, attempted to minimize the allegations highlighted by the Trustee and the Virgo Parties and repeatedly represented to this Court that the banks were not proceeding under an alter ego theory of liability:

- "We are not pursuing alter ego liability.  [We are] alleging directly that Virgo acted in a certain way, misrepresented facts to us, and that induced us to provide the loans to Alchemy. . . . We're not pursuing allegations against Alchemy, and then saying, [w]ell, you're also on the hook because you're the alter ego."  Tr. at 36:21-37:4;

- "[W]e're not alleging that somehow Virgo is responsible for Alchemy's actions as an alter ego."  *Id.* at 37:23-24;

- "[T]here's one allegation in paragraph 34 of our State Court complaint that says that Alchemy is the alter ego of Virgo – that is true – and we don't run away from that.  We believe that Virgo was the alter ego of Alchemy.  But our allegations or the liability we seek are not about that relationship.  Those allegations are against Virgo for what Virgo did."  *Id.* at 47:8-14;

- "[W]e are not pursuing an alter-ego theory [in the State Court Litigation]."  *Id.* at 51:9-10;

- Counsel describes discussions with the Virgo Parties in which the Responding Banks stated "[l]ook, we just want to make sure there's

no disagreement here.  We are not alleging – we're not seeking alter ego liability here." *Id.* at 51:16-18;

- "[W]e're not running away from the fact that after [Virgo] acquired [Alchemy], we think that they were the alter ego; it's just not the basis for our liability, and that being the alter ego doesn't shield them from liability of what they did directly to our clients." *Id.* at 53:2-6;

- "Virgo should . . . raise their actual arguments on the merit[s] in the state court litigation, but it does not mean that our claims . . . are somehow based on alter ego liability, which they just are not." *Id.* at 56:24-57:3; and

- "[W]e allege that they are the alter ego in our complaint, that's true. What we did not do is we did not pursue liability based on the alter ego relationship." *Id.* at 78:9-12.

Indeed, counsel for the Responding Banks conceded that, should the New York court find that their claims are premised on an alter ego theory of liability, then the claims must be dismissed because they needed to be filed in this Court:

> But I think it all goes to the merits of the State Court action.  If, in the State Court action, there is discovery and that action goes forward and Virgo says, ["]We were not acting on our behalf; we were acting on behalf of Alchemy, and so we shouldn't have any liability for these [claims].  These executives are really acting on behalf of Alchemy.  This is a lawsuit against Alchemy, and you should have brought that in the Bankruptcy Court.["]  **And if they prevail, then that case should be dismissed.**

Tr. at 36:12-19 (emphasis added); *see also id.* at 78:18-24 ("What we shouldn't be doing and we are not doing is pursuing liability based on [an alter ego] relationship.  If the New York State Court finds that representatives of Virgo really were representatives of Alchemy, and it's really Alchemy who was at fault for all these actions that we allege, then we can't turn around and say, oh great, now let's get Virgo because they're the alter ego.").

The Court concluded argument by stating that, while it was inclined to leave findings as to the nature of the State Court Litigation to the state court, it would consider entering an order barring claims based on an alter ego theory of liability:

> THE COURT: . . . [H]ow do I sit here and make a determination as to whether representations made by someone who . . . was an officer of director of Virgo and was also an officer and director of the debtors, how do I make a determination as to whether they were acting on behalf of Virgo independently or were they acting on behalf of Our Alchemy as the alter ego?
>
> * * *
>
> [W]hat I'm thinking at this point is and I haven't made a final decision, but a form of order that says you cannot pursue causes of action in the New York litigation that are based on an alter ego theory of liability. You go back to New York and you say, Judge, . . . we're not pursuing alter ego theories of liability; we're pursuing direct claims against Virgo.
>
> The New York court disagrees with you and says those aren't direct claims, those are alter ego claims. Now you've got an order that I've already ruled that you can't bring those claims and, therefore, your case gets dismissed. No harm, no foul to you because you're saying you're not pursuing alter ego claims, right?

Tr. at 75:6-13, 79:16-80.

Following oral argument, two competing proposed orders were submitted to the Court under certification of counsel. *See* A.D.I. 263. The Trustee and the Virgo Parties proposed an Order which attempted to effectuate the Court's proposal and which held the Responding Banks to their word by barring them from "pursuing causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of the Debtors." *Id.* at Ex. A. The Trustee's proposed order also made clear that "[n]othing in this Order or the record at the hearing shall be construed as a finding of fact or conclusion of law with respect to the nature of the factual allegations or causes of action asserted by the Responding Banks in the State Court Litigation." *Id.* The Responding Banks, on the other hand, proposed an Order which, contrary to

the Court's statements at oral argument, explicitly included the finding "that the claims brough by [the Responding Banks] in the [State Court Litigation] are not based on an alter ego theory of liability, are not property of the estate, and do not violate the automatic stay." *Id.* at Ex. B.

The Court ultimately entered the order proposed by the Trustee and the Virgo Parties, A.D.I. 264 (the "Order"), which the Responding Banks are now challenging.

## III.    ARGUMENT

### A.    The Order Was Properly Based On The Facts And Arguments Before the Court And Impacts The Rights of the Litigants, And Is Accordingly Not An Advisory Opinion

The Responding Banks argue that the Order should be reconsidered for two reasons, first because it purportedly "leav[es] out entirely the Court's central ruling that the Virgo Litigation is not barred" and second because it is "an unconstitutional advisory opinion." The Responding Banks' arguments are dispositively refuted by the plain language of the Order itself, which resolved a disputed issue concerning the State Court Litigation and plainly ***does bar*** the Responding Banks from proceeding in the State Court Litigation on alter ego causes of action or theories of recovery. *See* A.D.I. 264, Order at ¶ 1 ("The Responding Banks may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of the Debtors[.]"). Notably, the Responding Banks do not challenge the ultimate legal issue decided in the Order, i.e., their ability to proceed with causes of action or theories of recovery which are based on an alter ego theory of liability. Nor could they, because they conceded that they could not do so on the record before this Court, *see, e.g.,* Tr. at 36:12-19; and because, as set forth in detail in the Trustee's substantive briefing, this Court has the inherent authority to enter a bar order barring alter ego claims which are property of the estate. *See generally* A.D.I. 247; *see also* 11 U.S.C. § 105(a) ("The court may issue any order, process, or

9

judgment that is necessary or appropriate to carry out the provisions of this title."); *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 95 (2d Cir. 2014) (affirming bankruptcy court's authority to permanently enjoin creditor's disguised fraudulent transfer claims asserted in state court action); *In re MCSGlobal Inc.*, 562 B.R. 648, 655-68 (Bankr. E.D. Va. 2017) (approving a bar order to prevent creditors from prosecuting estate claims); *In re Flintkote Co.*, 2015 WL 4762580, at *9 (Bankr. D. Del. Aug. 12, 2015) (approving bar order that barred all third parties from bringing the debtors' claims and claims derivative of the debtors' claims, against the released parties).

Because the Order resolved a pending controversy and impacts the ability of the Responding Banks to proceed with causes of action based on the theory that Virgo is the alter ego of Alchemy, the Order is not "an unconstitutional advisory opinion." "Federal courts have no jurisdiction to render advisory opinions. Put another way, they 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'" *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). As interpreted in a bankruptcy context, "the Third Circuit has determined that an opinion is not advisory where it actually invalidates a clause, orders a party to do something, or otherwise resolves the parties' litigation. To the extent a bankruptcy opinion does 'nothing to resolve whether . . . courts would be required to abide by it, . . . the opinion ha[s] no legal effect' and is merely advisory. But an opinion that has some valid 'legal effect' will not be advisory, even if the proceeding 'sought to impact [a] state proceedings.'" *In re Cubic Energy, Inc.*, 587 B.R. 849, 855 (Bankr. D. Del. 2018) (alterations in original; quoting *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d at 421–22).

As set forth in detail above, the parties debated the nature of the claims asserted by the Responding Banks in the State Court Litigation, with the Trustee and Virgo taking the Complaint

at its word and interpreting its claims as advancing an alter ego theory of liability, and with the Responding Banks assuring this Court that they were not proceeding on such a theory. The actual facts presented to this Court – i.e., the allegations and statements made by the Responding Banks in their pleading and at argument in the State Court Litigation, and the state court's subsequent statement that the Virgo Parties "may well be the alter-egos of Alchemy and Calrissian who allegedly fabricated cash flows to induce the lender-plaintiff to underwrite this loan" – raised an actual, and not hypothetical, dispute as to the true nature of the Responding Banks' claims. The Order resolved that dispute by barring the Responding Banks from proceeding with any claims or theories of recovery which are based on an alter ego theory of liability.

Accordingly, pursuant to binding Third Circuit case law, the Order cannot be an advisory opinion because it resolved a pressing dispute among the parties and has an actual effect on the Responding Banks' ability to argue in the state court that their claims are in fact based on an alter ego theory of liability. *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d at 421. This facts of this matter are thus entirely distinguishable from the facts addressed in *In re Cubic Energy, Inc.*, the principal case relied on by the Responding Banks, because that case addressed a motion which "d[id] not ask the Court to . . . prevent ongoing litigation, or force the parties to do something" and in which "the Movants have not successfully shown a case involving both them and the [parties against whom a bar order was sought]." 587 B.R. at 856. Here, in contrast, the Responding Banks have actually commenced ongoing litigation which on its face incorporates alter ego allegations into each and every one of its claims. *See* A.D.I. 247 at Ex. 19, State Court Complaint, ¶¶ 32-24, 84, 94, 104, 109, 116. This Court properly resolved the actual dispute presented by virtue of such allegations by entering an Order barring any alter ego theories of recovery from going forward in

that specific litigation.  *See* Order at ¶ 1 (barring alter ego-based causes of action or theories of recovery in the "State Court Litigation").

### B.    The Responding Banks' Proposed Modifications Are Not Supported By The Record And Contradict Statements Made By Their Counsel and by the Court At Oral Argument

While the Responding Banks attack the Court for purportedly omitting "essential findings or conclusions" under Federal Rule of Civil Procedure 52(a), it is clear from their proposed modifications to the Order that they take issue not with the Order's lack of an essential finding or conclusion, but instead with its lack of their desired findings and conclusions.  The Responding Banks' proposed order adds no explanation or elaboration to the Court's decision, but instead fundamentally changes the relief granted by this Court.  The Order originally entered by this Court was entirely proper and the Responding Banks' motion should be denied.

The Responding Banks' claim that essential findings or conclusions were omitted from the Order is based almost entirely on a cherry-picked sentence made by the Court during oral argument in which the Court described the allegations of the State Court Complaint as "the only question in front of me today."  *See* A.D.I. 266, Motion ¶¶ 12-19 (quoting Tr. 62:15-18).  Reference to the entire context of the Court's statements, however, makes it clear that the Court definitively stated that it was not going to make a determination as to the nature of the claims made in the State Court Litigation, as such a determination was properly left to the state court itself.  *See, e.g.,* Tr. at 63:15-22 ("THE COURT: Well, isn't [the interpretation of the State Court Complaint] for the court in New York to figure out?  I mean, [the Responding Banks have] said they're not seeking anything under an alter ego theory and the complaint, they pointed me to sections where they say Virgo made these . . . false representations . . . and how do I, sitting here, make a determination as to whether those allegations are correct?"), *id.* at 75:2-13 (the Court states that the New York court

is the proper forum to resolve the issue of whether statements cited in the Complaint by individuals who had roles at both Virgo and Alchemy were made on behalf of Virgo or on behalf of Alchemy). The revised order sought by the Responding Banks turns these statements on their head by having this Court make the affirmative finding that the claims in the "State Court Action do not belong to the Debtors' estates and are not based on an alter ego theory of liability."  A.D.I. 266, Motion at Ex. A.

The Responding Banks' requested finding is unsupported by the record, which reflects that the alter ego allegations are incorporated into each of the claims made in the State Court Litigation. *See* A.D.I. 247 at Ex. 19, State Court Complaint, ¶¶ 32-24, 84, 94, 104, 109, 116.  The Order as entered properly resolved the dissonance between the Responding Banks' pleading, which is permeated with alter ego allegations, and the Responding Banks' unequivocal statements to this Court that they are not pursuing, and are legally unable to pursue, an alter ego theory of liability. *See, e.g.,* Tr. at 36:21-37:4, 37:23-24, 47:8-14, 51:9-10, 51:16-18, 53:2-6, 56:24-57:3, 78:9-12, 36:12-19, 78:18-24.  The Court insightfully explained how an order like the one which was ultimately entered would both protect property of the estate and guide the parties going forward:

> [W]hat I'm thinking at this point is and I haven't made a final decision, but a form of order that says you cannot pursue causes of action in the New York litigation that are based on an alter ego theory of liability.  You go back to New York and you say, . . . New York Judge, we're not pursuing alter ego theories of liability, we're pursuing direct claims against Virgo.
>
> The New York court disagrees with you and says those aren't direct claims, those are alter ego claims.  Now you've got an order that I've already ruled that you can't bring those claims and, therefore, your case gets dismissed.  No harm, no foul to you because you're saying you're not pursuing alter ego claims, right?

Tr. at 79:16-80:3.[4]

### C.    The Responding Banks Fail To Meet The Operative Standards For Amendment or Reconsideration

The Responding Banks, perhaps aware that their requested relief is unsupported by any Federal Rule of Civil Procedure, raise all three potential rules that might form the basis for reconsideration.  None support their request to walk back their statements in open court in the instant matter, and their request should be denied.

"The purpose of a Rule 52(b) motion is to correct manifest errors of law or fact . . . . A Rule 52(b) motion to amend is permitted only when the issues are 'basic or essential' to the litigation.  Importantly, Rule 52(b) does not permit a party to get a 'second bite at the apple,' e.g., by relitigating old issues." *Pharmacy Corp. of Am./Askari Consol. Litig.*, No. CV 16-1123-RGA, 2021 WL 4033238, at *2 (D. Del. Sept. 3, 2021) (quotation marks and citations omitted). Likewise, reconsideration under Federal Rule 59(e) "is an extraordinary means of relief in which the movant must do more than simply reargue the facts of the case or legal underpinnings." *In re Home Health Corp. of Am., Inc.*, 268 B.R. 74, 76 (Bankr. D. Del. 2001) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)).  A motion to amend under Federal Rule 59(e) must be based on (1) an intervening change in controlling law; (2) the availability of new or previously unavailable evidence; or (3) the need to correct clear error or prevent manifest injustice. *Id.*  And the Third Circuit has held that Federal Rule 60 should be applied only upon a showing of "extraordinary circumstances." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008)

---

[4]    To the extent the Responding Banks are requesting that language be added to the Order stating that the State Court Litigation is not barred to the extent it is not pursuing alter ego causes of action or theories of recovery, such language is unnecessary, as the Order is clear that it is only pertains to alter ego-based claims and theories of recovery.

The Responding Banks raise no basis for relief under any of the aforecited Rules.  There is no new evidence or change in controlling law, and the banks have failed to establish a need to "correct clear error or manifest injustice" that would warrant an amendment under Rule 59(e), a "manifest error[] of law or fact" that would warrant modification under Rule 52(b), or the "extraordinary circumstances" which would warrant relief under Rule 60.  Indeed, as set forth in detail above, the Order was entirely proper as a matter of law, was based on the facts and arguments made before the Court, and was consistent with statements made by the Responding Banks during oral argument.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, the Trustee respectfully requests that the Court deny the

Responding Banks' Motion and leave its properly decided Order in effect.

Dated:  November 9, 2022
        Wilmington, DE

COZEN O'CONNOR

By:    <u>/s/ John T. Carroll, III</u>

John T. Carroll, III (DE No. 4060)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2028
Fax: (302) 295-2013
Email: jcarroll@cozen.com

KAUFMAN, COREN & RESS, P.C.
Steven M. Coren, Esq. (*Pro Hac Vice*)
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
Email: scoren@kcr-law.com

*Counsel to George L. Miller,*
*Chapter 7 Trustee*

16