## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.*, | Case No. 16-11596-JTD |
| *Debtors.*[1] | (Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | **Re: D.I. 1010** |
| *Plaintiff,* | Adv. Pro. No. 18-50633-JTD |
| v. | **Re: Adv. 266** |
| ANCONNECT, LLC, *et al.*, | |
| *Defendants.* | |

### VIRGO PARTIES' OBJECTION TO LENDERS'
### (i) MOTION TO AMEND AND SUPPLEMENT THE COURT'S
### OCTOBER 13, 2022 ORDER PURSUANT TO CIVIL RULES 52(b),
### 59(e), AND 60 AND (ii) EMERGENCY MOTION TO EXPEDITE
### MOTION TO AMEND AND SUPPLEMENT

THE ROSNER LAW GROUP LLC
Frederick B. Rosner (DE No. 3995)
Jason A. Gibson (DE No. 6091)
824 Market Street, Suite 810
Wilmington, DE 19801
Tel.: 302-777-1111

DANIELS & TREDENNICK, PLLC
Andrea Levin Kim (*Pro Hac Vice*)
6363 Woodway, Suite 700
Houston, Texas 77057
Tel: (713) 917-0024

Dated: November 10, 2022

*Counsel for the Virgo Parties*

---

[1] The Debtors in these chapter 7 cases are Our Alchemy, LLC, Case No. 16-11596 and Anderson Digital, LLC, Case No. 16-11597.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT BACKGROUND .........................................................................................4

    A.  The Bar Motion and Related Pleadings ...........................................................4

    B.  The September Hearing .................................................................................5

    C.  Entry of the Alter Ego Bar Order ...................................................................8

    D.  The Motion to Expedite ..................................................................................9

OBJECTION ....................................................................................................................11

    A.  The Alter Ego Bar Order makes sufficient findings of fact and conclusions
        of law to satisfy Rule 52 because the Order's conclusion is indisputable and
        because the Order makes a conclusion of law that required no factual
        determinations. Alternatively, the facts needed to support the Order were
        not contested, so Rule 52 does not require factual findings…………………………11

    B.  The Alter Ego Bar Order is not an unconstitutional advisory opinion because
        it resolves a dispute between the parties that affects their behavior and because
        it has legal effects………………………………………………………….………15

    C.  The Alter Ego Bar Order does not state that alter ego is a cause of action;
        instead, it bars causes of action and theories of recovery that use an alter
        ego theory of liability. ....................................................................................18

    D.  The Lenders' Proposed Order fails to follow the hearing transcript and
        fails to cure the supposed problems alleged in the Motion to Amend........................20

CONCLUSION ...................................................................................................................21

# TABLE OF AUTHORITIES

*Ass'n of New Jersey Chiropractors v. Aetna, Inc.*,
  No. CIV.A. 09-3761 JAP, 2012 WL 1638166, at *11 (D.N.J. May 8, 2012) ........................19

*Baldinger v. Ferri*,
  483 Fed. Appx. 708 (3d Cir. 2012) ......................................................................................14

*Bernard L. Madoff Inv. Sec. LLC*,
  740 F.3d 81, 95 (2d Cir. 2014) ............................................................................................13

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
  123 F. Supp. 2d 245, 252 (D.N.J. 2000), *aff'd*, 273 F.3d 536 (3d Cir. 2001) ..........................19

*Cesar Castillo, Inc. v. Healthcare Enterprises, L.L.C.*,
  No. CV 2012-108, 2016 WL 5660437, at *3 (D.V.I. Sept. 27, 2016)....................................19

*Coffin v. Malvern Federal Sav. Bank*,
  90 F.3d 851 (3d Cir. 1996)..................................................................................................17

*D'Emanuele v. Montgomery Ward & Co.*,
  904 F.2d 1379 (9th Cir. 1990) .............................................................................................15

*Doctor's Assocs. Inc. v. Singh-Loodu*,
  No. CIV. 13-3030 RMB, 2014 WL 4988389, at *1 (D.N.J. Oct. 6, 2014)..............................19

*Emigrant Bank v. Virgo Inv. Group LLC*,
  No. 654350/2021, 2022 WL 406656, at *4 (2 Dep't Feb. 9, 2022)........................................10

*Heyward v. Stouffer*,
  No. CIV. A. 91-1452, 1991 WL 275604, at *3 (E.D. Pa. Dec. 23, 1991) ...............................19

*Hunkele v. Kerestes*,
  No. 12-1781, 2013 WL 12476782, at *1 (3d Cir. Feb. 12, 2013) ..........................................12

*In re Ambulatory Med. & Surgical Health Care, Inc.*,
  187 B.R. 888, 900 (Bankr. W.D. Pa. 1995) ...........................................................................19

*In re Cubic Energy*, Inc.,
  587 B.R. 849, 855 (Bankr. D. Del. 2018) .................................................................15, 16, 17

*In re Flintkote Co.*,
  2015 WL 4762580, at *9 (Bankr. D. Del. Aug. 12, 2015) .....................................................13

*In re Marvel Entm't. Grp. Inc.*,
  209 B.R. 832, 839- 40 (D. Del. 1997).....................................................................................17

*In re Maxus Energy Corp.*,
   560 B.R. 111, 117 (Bankr. D. Del. 2016) ..............................................................19

*In re Nader*,
   No. 11-13042 DHS, 2012 WL 1614856, at *2 (Bankr. D.N.J. May 9, 2012) ........................19

*In re Nutri/Sys., Inc.*,
   No. 93-0941DAS, 1994 WL 96963, at *5 (Bankr. E.D. Pa. Mar. 23, 1994) .........................19

*In re W.R. Grace & Co.*,
   475 B.R. 34, 97 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332
   (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd sub nom.*
   *In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 729 F.3d 311
   (3d Cir. 2013)...............................................................................................17, 18

*Island Const. Corp. v. Danielson*,
   316 F.2d 161 (3d Cir. 1963)...............................................................................15

*Jiminez v. All Am. Rathskeller, Inc.*,
   No. CIV. 4:04-CV-1897, 2006 WL 1548874, at *10 (M.D. Pa. June 2, 2006),
   aff'd, 503 F.3d 247 (3d Cir. 2007) ......................................................................19

*Kruger v. Purcell*,
   300 F.2d 830, 831 (3d Cir. 1962).........................................................................14

*Lanin v. Borough of Tenafly*,
   515 F. App'x 114, 117 (3d Cir. 2013) ...................................................................14

*OCI Wyoming, L.P. v. PacifiCorp*,
   479 F.3d 1199, 1204 (10th Cir. 2007) ...............................................................13, 14

*P. H. Glatfelter Co. v. Babcock & Wilcox Power Generation Grp., Inc.*,
   No. 1:19-CV-02215, 2020 WL 7342754, at *8 (M.D. Pa. Dec. 14, 2020)..............................19

*Prairie Band of Potawatomi Indians v. Pierce*,
   253 F.3d 1234, 1246 (10th Cir. 2001) ...................................................................13

*Pro. Plan Exam'rs of N.J., Inc. v. Lefante*,
   750 F.2d 282 (3d Cir. 1984)...............................................................................14

*Rhodes v. Stewart*,
   488 U.S. 1, 4 (1988)........................................................................................15

*Sabinsa Corp. v. Creative Compounds, LLC*,
   609 F.3d 175, 183 (3d Cir. 2010)........................................................................13

*Spartan Concrete Prod., LLC v. Argos USVI, Corp.*,
   929 F.3d 107, 111 n.1 (3d Cir. 2019).....................................................................14

**Rules**

11 U.S.C. § 105(a) ...................................................................................................................12

Fed. R. Civ. P. 52 ...................................................................................................................13

Fed. R. Civ. P. 59 ...................................................................................................................18

Virgo Investment Group, LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., Virgo Services Company, LLC, Jesse Watson, and Mark Perez (collectively, the "<u>Virgo Parties</u>"), as and for their objection (this "<u>Objection</u>") to (i) *Motion to Amend and Supplement the Court's October 13, 2022 Order Pursuant to Civil Rules 52(b), 59(e), and 60* [D.I. 1010 and Adversary Proceeding ("<u>AP</u>") D.I. 266] (the "<u>Motion to Amend</u>")[1] filed by the Lenders, and (ii) *Lenders' Emergency Motion to Expedite Motion to Amend and Supplement the Court's October 13, 2022 Order Pursuant to Civil Rules 52(b), 59(e), and 60* [D.I. 1011 and AP D.I. 268] (the "<u>Motion to Expedite</u>" and when taken together with the Motion to Amend, the "<u>Motions</u>"), respectfully represent as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      The Motions represent the Lenders' latest attempt to leverage proceedings in this Court for their benefit in the already dismissed state court action in New York presently on appeal. Despite the Lenders' appeal having already been fully briefed and argued, they seek to convince this Court that somehow their ill-conceived request for this Court to reconsider its simple and clear Alter Ego Bar Order should now be expedited so that they can submit an *amended* order to the Appellate Division of the New York Supreme Court, First Department (the "<u>Appellate Division</u>"). While the Appellate Division requested a copy of the Alter Ego Bar Order to ensure that the appeal did not violate the automatic stay (which the Lenders have already delivered), that was the end of its import to that Court. Neither the Lenders nor the Virgo Parties suggested that this Court ruled the state court New York action was violative of the bankruptcy stay. Appellate Hearing Tr. 3:10-

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning(s) given to them in the Motion to Amend or the Bar Motion, as applicable.

4:2; Appellate Hearing Tr. 16:8-21.[2]  The Appellate Division *sua sponte* inquired into the status

of this Court's decision regarding the whether the Lenders' claims were barred, at the same time

recognizing that it was outside the record (Appellate Hearing Tr. 3:10-4:2) and that this Court's

bar order had not been decided at the time the trial court dismissed the action, which dismissal was

on entirely separate standing grounds (Appellate Hearing Tr. 18:13-19:10). Desperate to find a

way to spice up an unremarkable, baseless motion for reconsideration, the Lenders suggest that

this Court's order (in its current form or any other form) can be inserted into an already briefed

and argued appeal.  Not surprisingly, neither Lenders' Motions nor the appellate hearing transcript

provide a basis to have this Court participate in Lenders' wrongful attempt to create some new

issue in an already briefed and argued appeal of a dismissal based upon the separate issue of

whether the Lenders had standing to bring their claims in the first instance.

2.      As to the Motion to Amend, the Lenders are seeking to include statements and

purported findings regarding the Lenders' alter ego allegations pending against the Virgo Parties

in the State Court Litigation that this Court never made.  The Lenders attempt to effectuate these

improper revisions to the Court's order through Rules 52(b), 59(e) and 60 of the Federal Rules of

Civil Procedure, and their baseless assertion that the existing order enjoins "hypothetical" claims

(despite copious specific allegations in the State Court Litigation that the debtor Our Alchemy,

LLC ("Alchemy") was the alter ego of the Virgo Parties). The Alter Ego Bar Order–which

accurately reflects the Court's discussion at the September Hearing on the Bar Motion–does no

such thing.

---

[2] A copy of the transcript of the Appellate Hearing is attached to the Declaration of Andrea L. Kim ("Kim Decl."), Ex. 1.

3.      Without citing to any statements of the Court, the Lenders contend throughout their Motion to Amend that the Court found at the September Hearing that the claims the Lenders advanced before the New York Supreme Court (the "State Court") in the State Court Litigation (the "State Court Claims") do not involve alter ego liability, are not property of the estate, and that the State Court Litigation was therefore not barred.  *See, e.g.,* Mot. to Amend ¶¶ 2, 14, 19, 39, 40. But the Court made no such determination.  Rather, the Court stated that "They certainly cannot pursue claims based on an alter ego theory. . . .  So, to the extent they're trying to argue that the debtor made misrepresentations and Virgo is somehow responsible for those misrepresentations because they were the alter ego of the debtor, they can't bring those claims." Sept. Hearing Tr. 68:5-14.

4.      After the parties failed to agree on a form of order, the Lenders agreed that the parties should submit competing orders under a certification of counsel as an appropriate procedure to resolve the dispute. The Lenders accordingly submitted their own form of order, containing much of what they seek now, that this Court rejected it in favor of the Alter Ego Bar Order.  As entered, the Alter Ego Bar Order does exactly what the Court proposed at the September Hearing. Yet, the Lenders now feign surprise at the result of the process and seek an opportunity to re-litigate the Bar Motion.  At any point, they could have raised objections to the Court's proposed solution or submitted a form of order that was consistent with the Court's proposed approach rather than one that manufactured rulings and findings that the Court never made.

5.      The Alter Ego Bar Order accurately reflects the Court's findings at the September Hearing and left the ultimate determination regarding the merits of the Lenders' theories of liability and claims in the State Court Litigation to the State Court and the Appellate Division.  Realizing they likely need more to sustain their case in New York, the Lenders come back to this Court now

in an expedited fashion, having demonstrated no emergency, in an effort to demand that this Court reconsider its prior order as incomplete and inaccurate.  Neither the facts and circumstances nor the law require this Court to do so.  The Lenders have had a full and fair opportunity to be heard before this Court as they have also had before the Appellate Division and the State Court. Accordingly, the Court should reject the Lenders' inappropriate, unwarranted, and fast-tracked attempt to re-write the Alter Ego Bar Order and deny the Motions.

## **RELEVANT BACKGROUND**

### A. **The Bar Motion and Related Pleadings**

6.     On December 17, 2021, the Trustee filed the Bar Motion [Adv. D.I. 214].  In the Bar Motion, the Trustee, among other relief, sought entry of a bar order to broadly bar the Lenders from

> continuing to prosecute the State Court Litigation against the Virgo Parties and from otherwise asserting claims against the Virgo Parties arising out of or related to the Pre-Petition Loans or loan relationships with the Debtors.

Bar Motion ¶ 58.

7.     On January 14, 2022, the Lenders filed an objection to the Bar Motion [Adv. D.I. 221] and the Virgo Parties filed a partial joinder and response to the Lenders' objection [D.I. 982].

8.     On May 13, 2022, the Court entered the *Order Granting Stipulation Between the Trustee and the Responding Lenders Regarding Streamlined Motion Procedures* [D.I. 985] (the "Scheduling Order") setting forth a briefing schedule concerning the Bar Motion.

9.     On June 16, 2022, the Trustee and the Lenders submitted their opening briefs in accordance with the Scheduling Order.  *See* D.I. 990-91.  Further, in accordance with the Scheduling Order, the Trustee and the Lenders submitted reply briefs on June 30, 2022. *See* D.I. 995, 997.

10.     On June 30, 2022, the Virgo Parties also submitted a reply [D.I. 997] (the "Virgo Reply") to the Lenders' opening brief.  In the Virgo Reply, the Virgo Parties stated that the Court should bar any alter ego claims asserted by the Lenders and stated that

> Whether or not this Court concludes that the NY Complaint contains some claim separate and apart from the alter ego claims, despite its incorporation of alter ego allegations into each and every claim, this Court should bar any claims of the Usurping Banks in the State Court Litigation that allege that the Virgo Parties are the alter ego or agent of Alchemy.

Virgo Reply ¶ 5.

11.     On July 14, 2022, the Trustee and the Lenders jointly submitted the *Notice of Completion of Briefing Regarding Trustee's Motion for Entry of Bar Order and Sanctions for Violating the Automatic Stay Against the Usurping Banks* [D.I. 1001] notifying the Court that the briefing with respect to the Bar Motion was complete.

### B.  The September Hearing

12.     On September 21, 2022, the Court held a hearing on the Bar Motion (the "September Hearing").  Kim Decl., Ex. 2.

13.     At the September Hearing, the Trustee and the Virgo Parties argued that it was apparent on the face of the State Court Complaint that the State Court Claims were entirely premised on the Virgo Parties being the Debtor's alter ego and therefore property of the estate. *See, e.g, generally* Sept. Hearing Tr. 7:23-11:11; 12:24-14:10; 20:23-30:17.  The Lenders in response argued that, although they made factual assertions that the Virgo Parties were an alter ego of the Debtors, the Virgo Parties' liability was not premised on being the alter ego of the Debtors.

> MR. NOSKOV:  And that goes to the point about alter ego, too, which I'll get into later. We are not pursuing alter ego liability. They were alleging directly that Virgo acted in a certain way,

> misrepresented facts to us, and that induced us to provide the loans
> to Alchemy.
>
> If it were Alchemy that substance abused [sic] us, then – and then
> we would – then, the alter ego allegation would be relevant. But
> we're not pursuing that. We're not pursuing allegations against
> Alchemy, and then saying, Well, you're also on the hook because
> you're the alter ego.
>
> That's not in our complaint. That's not what we were pursuing.
> We've been clear in the State Court. We've been clear here that
> that's not what we're doing.

Sept. Hearing Tr. 36:21-37:7; *see also, e.g.,* Sept. Hearing Tr. 78:11-12 ("What we did not do is

we did not pursue liability based on that alter ego relationship.").

14.    The Court agreed that whether or not the Lenders claims were premised on an alter

ego theory of liability was dispositive of whether they were property of the estate and should be

barred:

> THE COURT:  They certainly cannot pursue claims based on an
> alter ego theory. Alter ego is not a cause of action; it's a theory of
> recovery.
>
> So, to the extent they're trying to argue that the debtor made
> misrepresentations and Virgo is somehow responsible for those
> misrepresentations because they were the alter ego of the debtor,
> they can't bring those claims.  But they're arguing, they're saying
> Virgo, independently, made misrepresentations to us, and those I
> don't see how I could bar.

Sept. Hearing Tr. 68:5-14.

15.    Rather, the Court explicitly declined to rule on whether the claims advanced in the

State Court Litigation were property of the estate and their assertion violated the automatic stay.

Sept. Hearing Tr. 63:13-24; 66:19-68:14; 73:13-75:15.  The Court indicated that it was not in a

position to make the factual determination of whether the claims put forth by the Lenders in the

State Court Litigation were necessarily premised on an alter ego theory of liability.  *Id.*

16.     Having not made a determination as to whether the State Court Claims were property of the estate, the Court suggested instead that it could "fashion an order that says that [the Lenders are] barred from bringing any claims that are based on an alter ego theory of liability . . ." Sept. Hearing Tr. 68:23 – 69:2.  The Court repeated its proposal again and elicited feedback from Lenders' counsel.  Sept Hearing Tr. 79:16-20 ("I mean, as I view this or what I'm thinking at this point is and I haven't made a final decision, but a form of order that says you cannot pursue causes of action in the New York litigation that are based on an alter ego theory of liability.").

17.     Moreover, the Court was very clear regarding the intended effect of entering an order that would bar any claims based on an alter ego theory but would permit the State Court to make the threshold determination as to whether the Lenders' claims as asserted against the Virgo Parties were viable absent the use of an alter ego liability theory, telling the Lenders' counsel:

> THE COURT:   You go back to New York and you say, Judge, New York Judge, we're not pursuing alter ego theories of liability; we're pursuing direct claims against Virgo.
>
> The New York court disagrees with you and says those aren't direct claims, those are alter ego claims.  Now you've got an order that I've already ruled that you can't bring those claims and, therefore, your case gets dismissed.  No harm, no foul to you because you're saying you're not pursuing alter ego claims, right?
>
> So why can't we fashion an order along those lines?
>
> MR. NOSKOV: That's correct, Your Honor. The reason – well, I'm not disagreeing in principle that that is something that we could get behind.  The nuance that I'm trying to bring to the forefront that we need to address, I think – and I'm not sure I have the perfect answer right now – is that they can't then go to the state court and say, well, now you can't talk about the relationship between Virgo and Alchemy, now you can't – now you have to withdraw just the factual statement that they were the alter ego, you have to withdraw allegations that substantiate your reliance.

Sept. Hearing Tr. 79:20 – 80:15.

18.    It is clear that the nature of the determination that the Court was proposing to leave

to the State Court was not lost on Lenders' counsel.  In fact, Lenders' counsel repeated back its

understanding of what the Court was proposing the New York court would adjudicate:

> MR. NOSKOV:  Right.  And the alter ego, just so I understand Your
> Honor correctly and for the record, the alter ego liability that you're
> talking about is the type of claim where really the New York State
> Court determines that all of our allegations about Virgo's
> independent actions were really allegations of something that
> Alchemy did itself, and that the only reason - - the only way to reach
> Virgo for liability for those actions is the alter ego relationship.  Is
> that correct?

> THE COURT: That's generally my view at this point, but I'm not
> going to hold anybody to this at this point. I'm going to ask you to
> go back and talk about this and see if you can come up with a form
> of order that both sides can agree with.  If you can, I'll order it; if
> you can't, come back and I'll have to rule on the pending motions
> on that.

Sept. Hearing Tr. 80:24-81:14.

### C.  Entry of the Alter Ego Bar Order

19.    As instructed by the Court at the September Hearing, the Trustee, Lenders and

Virgo Parties met and conferred on September 30, 2022 and were unable to reach agreement on a

proposed form of order. *See Certificate of Counsel Regarding Order on Trustee's Motion for Entry*

*of Bar Order for Violating and Sanctions for Violating the Automatic Stay Against the Usurping*

*Banks* [D.I. 1008] (the "Certificate of Counsel") ¶ 3.

20.    As contemplated by the parties and after exchanging comments on a form of

certificate of counsel, the Trustee and Virgo Parties, on one hand, and the Lenders on the other,

submitted competing forms of order for the Court's consideration.  *See* Certificate of Counsel ¶¶ 4-

6.

21.    On October 13, 2022, the Court entered the *Order Granting in Part and Denying in Part the Chapter 7 Trustee's Motion for Entry of Bar Order and Sanctions for Violating the Automatic Stay Against Emigrant Bank and Pacific Mercantile Bank* [D.I. 1009] (the "Alter Ego Bar Order"). The Alter Ego Bar Order entered by the Court was in the form of the order submitted by the Trustee and Virgo Parties for the Court's consideration in the Certificate of Counsel. *See* Certificate of Counsel, Ex. A.

**D.  The Motion to Expedite**

22.    On November 2, 2022, the Appellate Division held a hearing (the "Appellate Hearing") on the Lenders' appeal of the State Court's decision to grant the Virgo Parties' motion to dismiss the State Court Litigation without prejudice.  The State Court had concluded that the Lenders lacked standing because they delegated the authority to bring their asserted claims to SunTrust as the Administrative Agent under the Credit Agreement with Alchemy.  The Lenders' lack of standing was the sole basis for the dismissal of the State Court Litigation and the central issue on appeal.  While both the State Court and the Appellate Division engaged in dialogue with the parties regarding alter ego theories of liability and questioned the Lenders' theories, the State Court did not decide the case on that basis.

23.    During the Appellate Hearing, the Appellate Division *sua sponte* inquired into the status of this Court's decision regarding whether the Lenders' claims were barred, recognizing it was outside the record (Appellate Hearing Tr. 3:10-4:2) and that this Court's bar order was not decided at the time the trial court dismissed the action on entirely separate standing grounds (Appellate Hearing Tr. 18:13-19:10). In response to these inquiries, the Lenders' counsel represented to the Appellate Division that this Court had not enjoined the State Court Litigation but "did say we [the Lenders] cannot bring alter ego claims against Virgo but we are not doing

that." Appellate Hearing Tr. 3:10-4:2. Any purported "confusion" regarding the Alter Ego Bar Order was of the Lenders' own making and does not create an "issue" for the appeal. Nor does the Appellate Division's inquiry into the status of the Alter Ego Bar Order change the scope of the issues on appeal as the State Court's dismissal was confined to the issue of the Lenders' lack of standing. *See Emigrant Bank v. Virgo Inv. Group LLC*, No. 654350/2021, 2022 WL 406656, at *4 (2 Dep't Feb. 9, 2022) ("This action is dismissed for lack of standing.").

24.     On November 8, 2022, the Lenders filed the Motion to Expedite requesting an expedited hearing on the Lenders' Motion to Amend. Therein, the Lenders incorrectly argue that the Alter Ego Bar Order somehow creates "confusion" in the State Court Litigation and was misread by the Appellate Division. Motion to Expedite ¶¶ 4-5. However, the Alter Ego Bar Order was not part of the appellate record in the State Court Litigation. Appellate Hearing Tr. 18:13-19:10.

25.     In the Motion to Expedite, the Lenders also incorrectly claim that the Virgo Parties represented to the Appellate Division that this Court held that the Lenders could not bring their claims in the State Court Litigation. That did not happen. To support their allegation, Lenders pluck a quote out of context, a quote that can be found at Appellate Hearing Tr. 20:18-20. *See* Motion to Expedite at ¶3. But a reading of the transcript shows that the discussion was only answering the Appellate Division's question about what the *trial court* said and in fact explicitly acknowledged that this Court's order was not at issue because it had not been issued at the time of the appeal:

> HON. CYNTHIA KERN: It was not about the bar order because the bar order --
>
> MR. GRILLO: That's correct.
>
> HON. CYNTHIA KERN: -- had not been issued yet but in the confines of the standing, what is your understanding of what the trial court held about the issue of piercing the corporate veil on alter ego?

Appellate Hearing Tr. 19:3-20:20.  To the contrary, counsel for the Virgo Parties plainly stated that the Alter Ego Bar Order only prevented the Lenders from asserting alter ego theories of recovery:

> HON. CYNTHIA KERN: Can I just ask you –
>
> MR. GRILLO: Yes.
>
> HON. CYNTHIA KERN: Do you agree that the bankruptcy court has not stayed this action?
>
> MR. GRILLO: The bankruptcy court – I agree the bankruptcy court has not stayed this action.
>
> HON. CYNTHIA KERN: Oh, it hasn't.  It hasn't said that this is not an appropriate action.
>
> MR. GRILLO: Well, no.  The bankruptcy court did not exercise any judgment with respect to the propriety of the action itself.  What the bankruptcy court said is that what they are not allowed to do, which is replete in their complaint, is make claims based on alter ego allegations –

Appellate Hearing Tr. 16:8-21.

26.     Ultimately, the Lenders provide no justification to accelerate consideration of the Motion to Amend in the Motion to Expedite.[3]  The Appellate Division merely asked for a copy of the existing Alter Ego Bar Order and asked whether it stayed the State Court Action or the appeal.  No one suggested that it did.  However, the Virgo Parties object to the Motion to Amend and urge this Court to reject the Lenders' continued improper attempts to now re-write the Alter Ego Bar Order and deny the Motion to Amend.

## **OBJECTION**

**A. The Alter Ego Bar Order makes sufficient findings of fact and conclusions of law to satisfy Rule 52 because the Order's conclusion is indisputable and because the Order makes a conclusion of law that required no factual determinations.  Alternatively, the**

---

[3] Notably, the Lenders waited six days after the Appellate Hearing to file their Motion to Expedite and do not seek to change the deadline for their reply to any objections to the Motion to Amend, belying any purported urgency.

**facts needed to support the Order were not contested, so Rule 52 does not require factual findings.**

27.     The Lenders purport to argue that the Alter Ego Bar Order fails to make sufficient factual findings.  Their real complaint, however, is that they want the Order to say something different than what the Court actually determined.  While the Lenders did not like the outcome of the hearing, Rule 52 does not permit parties to relitigate their claims. *See Hunkele v. Kerestes*, No. 12-1781, 2013 WL 12476782, at *1 (3d Cir. Feb. 12, 2013) (noting that "the purpose of Rule 52(b) is to allow a court to correct manifest errors of law or fact . . . not to relitigate old issues, to advance new theories, or to secure a rehearing on the merits").  In the Alter Ego Bar Order and in the September Hearing, the Lenders asked the Court to find that the State Court Litigation did not involve any liability based on alter ego theories. Sept. Hearing Tr. 57:24-58:2. The Court explicitly refused to make that finding at the hearing, stating:

> The only question in front of me today is whether that complaint alleges direct claims that belong to the banks or does it allege derivative claims that belong to the trustee. And if the complaint says Virgo made misrepresentations to us, the banks, that's dispositive at this point; isn't it? *I can't make rulings on whether or not their complaint is accurate or not.*

*Id*. 62:15-22 (emphasis added).   The Court proposed an alternative form of order and then entered the Alter Ego Bar Order, which is consistent with that proposed resolution.  After failing to get the outcome they wanted, Rule 52 does not give the Lenders a second bite at the apple. *Hunkele*, 2013 WL 12476782, at *1.

28.     The Alter Ego Bar Order satisfies Rule 52 because its conclusion is indisputable. The Order makes an unquestionable legal conclusion: The Lenders cannot pursue claims of the bankruptcy estate.[4]  Where a Court makes a determination that is indisputable, Rule 52 does not

---

[4] The Court has authority under Section 105(a) of the Bankruptcy Code to enter bar orders to enjoin creditors from interfering with estate property, including from prosecuting estate claims. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process or judgement that is necessary or appropriate to carry out the provisions of this title."); *In re*

require extensive factual findings. *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 183 (3d Cir. 2010) ("'[W]e need not remand if application of the correct standard could support only one conclusion.'") (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 712 (3d Cir. 2004))*; see also Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001) (observing "that a court of appeals can consider a district court's failure to make adequate findings of fact as nonreversible error if it can ascertain from the record that one party or the other was clearly entitled to judgment in its favor.").

29.    Additionally, the Alter Ego Bar Order satisfies Rule 52 because its legal conclusion does not require a factual basis.  Rule 52 only requires factual determinations on facts relevant to the Order, not every fact before the Court on a matter. "Rule 52(a) does not require the district court to set out its findings and conclusions in excruciating detail. As stated in the advisory committee notes to Rule 52, 'the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters . . . .'" *OCI Wyoming, L.P. v. PacifiCorp*, 479 F.3d 1199, 1204 (10th Cir. 2007) (quoting Fed. R. Civ. P. 52 Notes of Advisory Committee on 1946 Amendments).  Here, the Court did not need to decide any facts about the State Court Litigation to draw the legal conclusion that Alchemy's bankruptcy barred any claims for liability based on alter ego. Thus, no "pertinent findings" were required.  *Id.*

30.    But, even if this legal conclusion did require a factual basis, the facts were not disputed by the Lenders on the issues surrounding the Alter Ego Bar Order's ruling, so Rule 52 would still not require a finding of fact.  At the hearing, the Lenders' counsel explicitly stated: "I'm not going to get into the factual back-and-forth. We agree with Your Honor that a lot of these

---

*Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 95 (2d Cir. 2014) (affirming bankruptcy court's authority to permanently enjoin creditor's disguised fraudulent transfer claims asserted in state court action); *In re Flintkote Co.*, 2015 WL 4762580, at *9 (Bankr. D. Del. Aug. 12, 2015) (approving bar order that barred all third parties from bringing the debtors' claims and claims derivative of the debtors' claims against released parties).

arguments are for the merits in the state court." Sept. Hearing Tr. 77:15-18; see *also id.* 36:11-21

("But I think it all goes to the merits of the State Court action. If, in the State Court action, there

is discovery and that action goes forward and Virgo says, We were not acting on our behalf; we

were acting on behalf of Alchemy, and so we shouldn't have any liability for these. These

executives are really acting on behalf of Alchemy. This is a lawsuit against Alchemy, and you

should have brought that in the Bankruptcy Court. And if they prevail, then that case should be

dismissed. And that goes to the point about alter ego, too, which I'll get into later."). Where the

facts are undisputed, the Court does not need to provide findings of fact. *Spartan Concrete Prod.,

LLC v. Argos USVI, Corp.*, 929 F.3d 107, 111 n.1 (3d Cir. 2019); *see also PacifiCorp*, 479 F.3d at

1204 (only requiring finding of fact on contested matters).

      31.    In *Spartan Concrete*, the district court failed to make any findings of fact because

it mistakenly applied Rule 50's standards and viewed the evidence in light most favorable to one

party. *Spartan Concrete*, 929 F.3d at 111 n.1. The Third Circuit noted that because "the facts are

largely undisputed," it reviewed the record without requiring additional findings of fact from the

district court. *Id.*  Similarly, here, where the Lenders counsel agreed that the Court need not make

factual determinations about the claims in the State Court Litigation, Rule 52 did not require the

Court to set out findings of fact in the Alter Ego Bar Order.[5]  Rule 52 provides no basis for

amending the Alter Ego Bar Order.[6]

---

[5] Even beyond the Order itself, if findings of fact are needed, the hearing by itself can serve as a basis for findings of fact for any reviewing court. In *Borough of Tenafly*, the Third Circuit responded to a charge that the district court had failed to make findings of fact under Rule 52 by pointing to the hearing transcript as sufficient: "[W]e are satisfied that the District Court's decision and the full hearing transcript collectively provide sufficient factual findings and conclusions of law to give us a clear understanding of the decision and allow for meaningful appellate review." *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117 (3d Cir. 2013) (internal citation omitted).

[6] Tellingly, none of the cases cited regarding Rule 52 in the Motion to Amend involve bar orders issued by bankruptcy courts; indeed, none involve bankruptcy at all.  *See Kruger v. Purcell*, 300 F.2d 830 (3d Cir. 1962) (specific performance in the context of a contract dispute); *Pro. Plan Exam'rs of N.J., Inc. v. Lefante*, 750 F.2d 282 (3d Cir. 1984) (an injunction of a construction code and regulations); *Baldinger v. Ferri*, 483 Fed. Appx. 708 (3d Cir. 2012)

        

**B. The Alter Ego Bar Order is not an unconstitutional advisory opinion because it resolves a dispute between the parties that affects their behavior and because it has legal effects.**

32.     The Supreme Court has distinguished advisory opinions from cases and controversies by assessing whether the opinion resolves disputes between the parties: "'The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff.'" *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)).  Along these same lines, the authority quoted in the Motion to Amend states an opinion is *not* advisory if it "has some valid 'legal effect'" but is advisory to the extent it "does nothing to resolve . . . whether courts would be required to abide by it." *In re Cubic Energy*, Inc., 587 B.R. 849, 855 (Bankr. D. Del. 2018) (internal quotation omitted).

33.     Here, the Alter Ego Bar Order is not advisory because it resolves a dispute between the parties concerning whether the Lenders can pursue theories of liability and thereby "affects the behavior of the defendant towards the plaintiff." *Rhodes*, 488 U.S. at 4. Specifically, the Order forbids the Lenders from pursuing certain claims: "The Responding Banks may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of the Debtors."  The Order makes plain that other courts must "abide by it" and it has the "legal effect" of barring claims against the Virgo Parties on the basis that they are Alchemy's alter ego. *In re Cubic Energy*, 587 B.R. at 855.

34.     The Lenders' false belief that the opinion is advisory stems from two sources.  First, in arguing the Alter Ego Bar Order is advisory, the Lenders ignore the language of the Order and

---

(various claims such as defamation against an attorney); *Island Const. Corp. v. Danielson*, 316 F.2d 161 (3d Cir. 1963) (a lease dispute); *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379 (9th Cir. 1990) (attorneys fees in an ERISA action).

suggest that the Order bars "only [] hypothetical claims that have not yet arisen" and not those that the Lenders have already brought. Mot. to Amend ¶ 26. The Lenders, however, misconstrue the Order and incorrectly claim that the Court found that the State Court Litigation did not involve any alter ego claims: "As the Court determined, the Virgo Litigation complaint does not involve claims based on alter ego liability." Mot. to Amend ¶ 34. In the September Hearing, the Court did not find that the State Court Litigation did not involve alter ego claims or violated the automatic stay but instead refused to make a determination on that topic, stating: "So, to the extent they're trying to argue that the debtor made misrepresentations and Virgo is somehow responsible for those misrepresentations because they were the alter ego of the debtor, they can't bring those claims." Sept. Hearing Tr. 68:8-11. The Court plainly recognized that the State Court Litigation may contain theories on liability based on alter ego, but left that determination for the State Court. *See id.* 66:5-15; 79:16-80:3. In the Alter Ego Bar Order, the Court explicitly made no factual finding stating the State Court Litigation did not involve alter ego liability as the Lenders' incorrectly claim now. Thus, the Order is not about hypothetical claims that have not yet arisen but claims and theories of liability that are currently being asserted in the State Court Litigation.

35.     Second, the Lender's misreading of the Order stems from its flawed comparisons between the present case and past precedent on advisory opinions. In these comparisons, the Lenders seem to forget that they have sued the Virgo Parties in the State Court Litigation. In *In re Cubic Energy*, the court was not asked to resolve a dispute currently being litigated. 587 B.R. 849, 856 (Bankr. D. Del. 2018). The Trustee in that case had signaled a willingness to file a claim against the party seeking an order but had not sued. *Id.* "That the Tauren Trustee's litigation may be imminent, however, is not a sufficient reason to provide an advisory opinion." *Id.* The Trustee could have brought a variety of types of claims in *In re Cubic* if it did sue, so the Court said any

decision would be based on a hypothetical set of facts. *Id.* at 857. Here, on the other hand, the Lenders have already filed claims against the Virgo Parties. The claims are written in black and white in the State Court Litigation complaint and are not hypothetical. *In re Cubic*'s reasoning is entirely inapposite.

36.    Similarly, no controversy existed between the parties in the other case on which the Lenders rely, *Coffin v. Malvern Federal Sav. Bank*, 90 F.3d 851 (3d Cir. 1996). In that case, the bankruptcy court issued an opinion on whether a lien on a debtor's home would survive the bankruptcy. *Id.* at 853. But, the debtor had not asserted a lien avoidance claim, the lender had not sought to enforce its lien, and the bankruptcy court's determination about the lien could not bind the state court that would enforce the lien if the mortgage company brought an action sometime in the future. *Id.* Thus, the opinion was advisory. *Id.* Here, the Lenders have actually sued the Virgo Parties in the State Court Litigation, and the Court's Alter Ego Bar Order can affect the parties' behavior. *Coffin*'s facts fundamentally differ from the present case and offer no reason to classify the Alter Ego Bar Order as an advisory opinion.[7]

37.    In the final case on which the Lenders rely, the court applies the following standard to assess whether an opinion is advisory: "In order for a case to be justiciable and not an advisory opinion, there must be an actual dispute between adverse litigants." *In re W.R. Grace & Co.*, 475 B.R. 34, 97 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013). In *In re W.R. Grace*, one aspect of the

---

[7] The Lender's citation to *In re Marvel Entm't. Grp. Inc.*, 209 B.R. 832, 839- 40 (D. Del. 1997) is particularly misguided because that opinion does not say anything about advisory opinions at all. The word advisory does not appear in the opinion. And that case has the same fatal difference to the present case as the others the Lenders cite: It was about mere "speculation that a new board elected by the bondholders might take some action that would violate the automatic stay" and did not involve active litigation between the parties like the present case. *Id.* 840.

case failed that standard because no one had sued anyone else related to those claims. *Id.* at 98.  In the present case, on the other hand, the Lenders have sued the Virgo Parties precisely related to the activity in the Alter Ego Bar Order, rendering that Order non-advisory. *In re W.R. Grace* and the present case are exact opposites—one involving no litigation, and one involving an active case on precisely the same issues that are involved in the proceedings before the Court.

38.     Finally, the Lenders' appeal to Rule 59(e) based on the strange argument that the issue of barring claims based on alter ego was not before the Court ignores the pleadings in this case. Mot. to Amend at ¶ 35.  The Lenders are incorrect that the pleadings before the Court failed to present the idea that the Court could order the Lenders to not pursue claims based on an alter ego theory.  In the Virgo Reply, the Virgo Parties stated that the Court should bar any alter ego claims asserted by the Lenders and stated that

> Whether or not this Court concludes that the NY Complaint contains some claim separate and apart from the alter ego claims, despite its incorporation of alter ego allegations into each and every claim, this Court should bar any claims of the Usurping Banks in the State Court Litigation that allege that the Virgo Parties are the alter ego or agent of Alchemy.

Virgo Reply ¶ 5; *see also* Bar Motion ¶¶ 43-51 (asserting that the Lenders' claims in the State Court Litigation based on allegations that the Virgo Parties were Alchemy's alter ego belong to the Trustee). Thus, the Lenders' appeal to Rule 59(e) is misplaced, and it does not provide a reason to amend the Alter Ego Bar Order.

**C.  The Alter Ego Bar Order does not state that alter ego is a cause of action; instead, it bars causes of action and theories of recovery that use an alter ego theory of liability.**

39.     The Lenders complain about the language in the Alter Ego Bar Order because they assert that it mistakenly refers to a theory of liability premised on alter ego as a cause of action. On the contrary, the Alter Ego Bar Order bars "causes of action or theories of recovery . . . on the basis that that party was the alter ego of the Debtors . . . ."  Barring a cause of action or theory of

recovery based on alter ego is different from asserting that alter ego is a distinct cause of action, and because the Order does not bar any "alter ego cause of action," it accurately reflects the Court's discussion at the hearing. *See* Sept. Hearing Tr. 79:14-80:5.

40.    Courts in the Third Circuit consistently use the same language as the language in the Order to describe liability arising out of alter ego situations.[8] Similarly, courts in the Third Circuit often use "theory of liability," "theory of recovery," and "cause of action" interchangeably.[9]    Thus, the Lenders' preoccupation with semantics disregards how courts routinely discuss these concepts.

41.    Moreover, the language of the Order mirrors almost exactly the language the Lenders' counsel used at the hearing to describe what the Order should bar.  In the hearing, the Lenders' counsel asserted, "What we did not do is we did not pursue *liability based on that alter ego relationship*. . . . What we shouldn't be doing and we are not doing is pursuing *liability based*

---

[8] *See, e.g., Cesar Castillo, Inc. v. Healthcare Enterprises, L.L.C.*, No. CV 2012-108, 2016 WL 5660437, at *3 (D.V.I. Sept. 27, 2016) (describing a "cause of action under an alter-ego or piercing-the-corporate-veil theory"); *Doctor's Assocs. Inc. v. Singh-Loodu*, No. CIV. 13-3030 RMB, 2014 WL 4988389, at *1 (D.N.J. Oct. 6, 2014) (noting "the Complaint contains substantive law causes of action to seek relief against Amie LLC under an alter-ego theory"); *In re Maxus Energy Corp.*, 560 B.R. 111, 117 (Bankr. D. Del. 2016) (stating that the complaint asserted "12 causes of action relating to contractual indemnity claims predicated on an alter ego theory of liability"); *In re Nader*, No. 11-13042 DHS, 2012 WL 1614856, at *2 (Bankr. D.N.J. May 9, 2012) (noting that the "Complaint also sets forth a cause of action under an 'alter ego' theory"); *In re Nutri/Sys., Inc.*, No. 93-0941DAS, 1994 WL 96963, at *5 (Bankr. E.D. Pa. Mar. 23, 1994) (stating the requirements to "to give rise to a viable cause of action under an alter ego theory").

[9] *See, e.g., P. H. Glatfelter Co. v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 1:19-CV-02215, 2020 WL 7342754, at *8 (M.D. Pa. Dec. 14, 2020) ("Courts in this Commonwealth have continually recognized that a litigant may advance alternative or conflicting theories of recovery, including causes of action for breach of contract and quantum meruit/unjust enrichment.") (internal quotation omitted); *Ass'n of New Jersey Chiropractors v. Aetna, Inc.*, No. CIV.A. 09-3761 JAP, 2012 WL 1638166, at *11 (D.N.J. May 8, 2012) (citing cases that describe unjust enrichment as a cause of action and a theory of recovery and concluding that the "Court is in agreement with this authority"); *Jiminez v. All Am. Rathskeller, Inc.*, No. CIV. 4:04-CV-1897, 2006 WL 1548874, at *10 (M.D. Pa. June 2, 2006), aff'd, 503 F.3d 247 (3d Cir. 2007) (noting a specific count of a complaint "is a vehicle for other causes of action" and "is not a separate theory of liability"); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 252 (D.N.J. 2000), aff'd, 273 F.3d 536 (3d Cir. 2001) ("The second cause of action is for negligent entrustment. Under this theory of recovery . . . ."); *In re Ambulatory Med. & Surgical Health Care, Inc.*, 187 B.R. 888, 900 (Bankr. W.D. Pa. 1995) ("The trustee in effect seeks to assert a new theory of recovery or cause of action by adding references to 39 P.S. § 357 . . . ."); *Heyward v. Stouffer*, No. CIV. A. 91-1452, 1991 WL 275604, at *3 (E.D. Pa. Dec. 23, 1991) (describing invasion of privacy as both "the new theory of recovery" and "a new cause of action").

*on that relationship*." Sept. Hearing Tr. 78:11-12; 18-19 (emphasis added).  Because the court

largely adopted this same approach in the Order, the Lenders cannot now complain about its usage.

**D.  The Lenders' Proposed Order fails to follow the hearing transcript and fails to cure the supposed problems alleged in the Motion to Amend.**

42.     The proposed form of order the Lenders filed as an exhibit to the Motion to Amend

(the "Lenders' Proposed Order") flatly contradicts the Court's conclusions at the Hearing.  First,

the Lenders' Proposed Order states, "causes of action asserted by the Responding Banks in the

State Court Action do not belong to the Debtors' estates and are not based on an alter ego theory

of liability." Mot. to Amend Ex. B.  At the September Hearing, the Court said the exact opposite,

refusing to find that "State Court Action" was not premised on an alter ego theory. Sept. Hearing

Tr. 63:13-24; 66:19-68:14; 73:13-75:15; 79:16-80:5.

43.     Second, the Lenders' Proposed Order does not bar the Lenders from pursuing

claims that are based on an alter ego theory of recovery.  In fact, it is a "bar order" that bars no

action whatsoever.  In contrast, the Court was clear in the hearing that the Lenders are barred from

pursuing alter ego theories: "They certainly cannot pursue claims based on an alter ego theory. . .

.  So, to the extent they're trying to argue that the debtor made misrepresentations and Virgo is

somehow responsible for those misrepresentations because they were the alter ego of the debtor,

they can't bring those claims." Sept. Hearing Tr. 68:5-11.  Thus, the Court should not adopt the

Lenders' Proposed Order because it contradicts the Court's statements at the September Hearing.

44.     Finally, the Lenders' Proposed Order does not fix the supposed problems of the

original Order.  The Motion to Amend argues for the Order to "'find the facts on every material

issue, including relevant subsidiary issues, and to "state separately" its conclusions thereon with

clarity.'" Mot. to Amend ¶ 20 (quoting *Kruger v. Purcell*, 300 F.2d 830, 831 (3d Cir. 1962)).  The

Lenders' Proposed Order does not state separately the conclusions of law from factual findings,

and it does not make any factual findings beyond their proposed findings which contradict what

the Court found (or declined to find) at the September Hearing.  Moreover, because the Lenders'

Proposed Order does not explain the subsidiary facts behind that erroneous fact finding, it does

not serve as a superior guide to an appellate review than the unamended Order.  Thus, even if the

Court accepted the Lenders' spurious Rule 52 argument, the Lenders' Proposed Order does not fix

the "problems" it alleges to exist.

## **CONCLUSION**

For the reasons stated above, the Lenders' Motion to Amend the Alter Ego Bar Order

should be denied.


Dated: November 10, 2022
        Wilmington, Delaware                          Respectfully submitted,

                                          **THE ROSNER LAW GROUP LLC**

                                          */s/ Jason A. Gibson*
                                          Frederick B. Rosner (DE No. 3995)
                                          Jason A. Gibson (DE No. 6091)
                                          824 Market Street, Suite 810
                                          Wilmington, DE 19801
                                          Tel.: 302-777-1111
                                          gibson@teamrosner.com

                                                    -and-

                                          **DANIELS & TREDENNICK, PLLC**
                                          Andrea Levin Kim
                                          6363 Woodway, Suite 700
                                          Houston, Texas 77057
                                          Tel: (713) 917-0024
                                          Andrea.Kim@dtlawyers.com

                                          *Counsel for the Virgo Parties*