## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.*, | Case No. 16-11596 (JTD) |
| Debtors. | (Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | |
| *Plaintiff*, | Adv. Pro. No. 18-50633 (JTD) |
| v. | **Re:  Docket No. 264** |
| ANCONNECT, LLC, *et al.*, | |
| *Defendants.* | |

## REPLY TO TRUSTEE'S BRIEF IN OPPOSITION TO LENDERS' MOTION TO AMEND AND SUPPLEMENT THE COURT'S OCTOBER 13, 2022 ORDER

L. Katherine Good (Bar No. 5101)
Andrew L. Brown (Bar No. 6766)
**POTTER ANDERSON &
CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:  kgood@potteranderson.com
        abrown@potteranderson.com

Victor Noskov *(*admitted *pro hac vice)*
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
Email: victornoskov@quinnemanuel.com

*Attorneys for the Lenders*

Dated: November 14, 2022

# TABLE OF CONTENTS

REPLY ................................................................................................................................1

I.      Introduction ..........................................................................................................1

II.     The Question Raised by the Bar Motion Was Clear. .......................................4

III.    The Court Had Exclusive Jurisdiction to Answer the Question Raised by the
        Bar Motion. .........................................................................................................4

IV.     Rule 52 Requires Courts to Make Findings on Every Material Issue. ............6

V.      The Order Omits the Court's Determination of the Central Question in Front
        of the Court. .........................................................................................................7

VI.     Omission of Key Findings Causes Confusion for New York State Court. .....7

VII.    Virgo Uses the Ambiguity of the Order to Attempt to Have the New York
        State Court Deny Lenders' Appeal Based on the Order. ................................8

VIII.   The Order Must Be Clarified. ...........................................................................9

IX.     The Order's Injunction Is Improper. ...............................................................10

CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baldinger v. Ferri*,
    483 F. Appx 708 (3d Cir. 2012) ................................................................................................6

*In re Affirmative Ins. Holdings, Inc.*,
    565 B.R. 566 (Bankr. D. Del. 2017) ................................................................................. 4-5

*Kruger v. Purcell*,
    300 F.2d 830 (3d Cir. 1962) ....................................................................................................6

*Peacock v. Thomas*,
    516 U.S. 349 (1996) .........................................................................................................2, 11

*Pro. Plan Exam'rs of N.J., Inc. v. Lefante*,
    750 F.2d 282 (3d Cir. 1984) ....................................................................................................7

STATUTES

11 U.S.C. § 541 .......................................................................................................................3

OTHER AUTHORITIES

CIVIL RULES 52, 59(e), and 60 ........................................................................................ passim

Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB" and, together with Emigrant, the "Lenders"), lenders to the debtors in the above-captioned chapter 7 cases, and plaintiffs in New York Supreme Court litigation (the "Virgo Litigation") against Virgo Investment Group, LLC and various associated entities and individuals (together "Virgo"), hereby submit this reply (the "Reply") to the Trustee's *Brief in Opposition to Lenders' Motion to Amend and Supplement the Court's October 13, 2022 Order* (ECF No. 269) (the "Opposition") and Virgo Parties' Objection to Lenders' (i) Motion to Amend and Supplement the Court's October 13, 2022 Order Pursuant to Civil Rules 52(B), 59(E), And 60 and (ii) Emergency Motion to Expedite Motion to Amend and Supplement (ECF No. 270) (the "Virgo Opposition") and in support of the Lenders' *Motion to Amend and Supplement the Court's October 13, 2022 Order Pursuant to Rules 52(b), 59(e), and 60* (ECF No. 266) (the "Motion to Amend").[1]

## **REPLY**

### I.    **Introduction**

1.    By this motion, the Lenders simply request that the Bar Order contain the two essential findings of the Court at the September 21, 2022 hearing (the "Hearing"):  (i) the Virgo Litigation is not barred, and (ii) there is no violation of the automatic stay because the claims in the Virgo Litigation, as pleaded, are not the property of the estate.  The Lenders also request that the Court revise the language of the Order to comply with the law of alter ego and the Constitutional prohibition of advisory opinions.

2.    Significantly, all the parties agree that the Court (i) did not bar the Virgo Litigation, and (ii) did not find a violation of the automatic stay.  Such findings should be included in the

---

[1]    Each capitalized term not defined herein shall have the meaning given to it in the Motion to Amend or the Trustee's *Motion for Entry of Bar order and Sanctions for Violating the Automatic Stay* (ECF No. 214) (the "Bar Motion"), as applicable.

Order because they are required under Rule 52, reflect the statements of the Court at the Hearing, comport with the understanding of the parties, and would provide guidance to the New York State Court.  Although the Trustee and Virgo vainly try to justify the language of the Order they proposed, neither offers any reason not to include such findings.

3.      Further, setting aside the constitutional issue with the Order's injunction to the extent that it bars potential future claims, all the parties agree that there is no such thing as an alter ego cause of action, only an alter ego theory of liability.  *See Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (Alter ego is not an "independent [] cause of action.").  Therefore, if the Order were amended to clarify that the Lenders cannot bring claims against a party based on ***an alter ego theory of liability***, rather than "a cause of action … on the basis that that party was the alter ego of the Debtors," that would be consistent with the statements of the Court at the hearing, the parties' briefing, and the law of alter ego.

4.      The Lenders' request to amend the Order does not arise in the abstract.  Rather, statements by the First Department of the New York State Supreme Court Appellate Division (the "New York State Court") at a November 2, 2022 hearing (the "November 2 Hearing") have already shown significant confusion about the meaning of the Order.[2]  *See* Noskov Decl., Ex. A at 5:15-22 ("Did the bankruptcy court not say, Plaintiffs violated the automatic stay by bringing this action").  And Virgo's attempts to use this confusion to have the case dismissed have already materialized.  Virgo represented to the New York State Court: "[I]f you look in the complaint, there's at least seven or eight other references in the complaint connected to each cause of action where the alter ego is a principal element of that claim. ***What the bankruptcy court said is, hey,***

---

[2]      The Lenders previewed the issues raised at the November 2 Hearing in their Motion to Expedite, but now submit a transcript of the November 2 Hearing, along with specific quotations which highlight the need to grant the relief requested in the Motion to Amend.  The transcript is appended as Exhibit A to the Noskov Declaration, filed currently herewith ("Noskov Decl., Ex. A").

***no, you can't do that. You can't base your claims because those claims were before the
bankruptcy court and were settled as part of that proceeding.***" Noskov Decl., Ex. A at 20:11-20
(Emphasis added.)

5.       That is ***not*** what this Court said.  And it demonstrates that amendment of the Order
is critical to prevent Virgo from continuing to conflate the Lenders' factual assertions that Virgo
was the alter ego of Alchemy and made direct misrepresentations to the Lenders, with the
hypothetical assertion of claims against Virgo on a theory of alter ego liability based on Alchemy's
actions, a distinction that the Court clearly stated at the Hearing.[3]  After all, as this Court
recognized, it is plain that "Virgo is a separate entity [and] it can still act independently even if it
was the alter ego of Our Alchemy." *Hr'g Tr.* 65:15-20.

6.       The New York State Court should not have to guess at the meaning of the Order,
or rely on the argument of counsel, to understand the Order.  Rather, the essential findings and
correct statements of law should be contained in the Order as required by Rule 52.

7.       And contrary to the Trustee's and Virgo's newly changed position, the key findings
at issue—which go directly to the determination of what constitutes "property of the estate" under
section 541 of the Bankruptcy Code—cannot be left to the New York State Court to decide.  Again,
all the parties have agreed and the law is clear:  This Court has "***exclusive jurisdiction***" to

---

[3]       *See, e.g.,* Hr'g Tr. 67:15-68:14 ("THE COURT: ***Well, those aren't allegations, those are factual assertions
that they've made in their complaint,*** and you can have -- the debtor may have made misrepresentations too and those
certainly belong to the estate, those are estate causes of action, but that doesn't mean that Virgo couldn't also make the
same misrepresentations. The hypothetical I asked at the beginning where you hire a broker to go out and find lenders
to loan to the company, the broker knows that the person trying to get the loan is misrepresenting their financials, but
they still go out and do it anyway, they're directly liable to the parties that they went to get that loan -- to get those
loans from; right? So how is that different here? So I don't know how I could fashion an order. They certainly cannot
pursue claims based on an alter ego theory. ***Alter ego is not a cause of action; it's a theory of recovery. So, to the
extent they're trying to argue that the debtor made misrepresentations and Virgo is somehow responsible for those
misrepresentations because they were the alter ego of the debtor, they can't bring those claims. But they're arguing,
they're saying Virgo, independently, made misrepresentations to us, and those I don't see how I could bar***.")
(emphasis added).

determine what is the property of the estate, including claims against third parties in other courts, and it is therefore inappropriate to leave that determination for the New York State Court.

8.      Finally, this Order is not for the benefit of the estate.  The Trustee brought the claims he decided to bring against Virgo—which did not include claims of fraud and other torts Virgo committed against the Lenders—and those claims have been settled.  This Order is solely for the benefit of Virgo, the same Virgo that the Trustee said for years had committed fraud against the estate.  The Lenders simply want an opportunity to prove their own fraud claims against Virgo in New York State Court.

## II.      The Question Raised by The Bar Motion Was Clear.

9.      The Trustee's Bar Motion presented this Court with the following question:

- *Are the claims in the Virgo Litigation property of the estate and does the Virgo Litigation therefore violate the automatic stay?*

10.     The question was binary.  An answer in the affirmative would mean that the Virgo Litigation is barred and cannot proceed.  An answer in the negative would mean that the Virgo Litigation is not barred and may proceed as pleaded.

11.     The Court recognized the binary nature of the question at the Hearing, noting that "***the only question in front of me today is whether [the Virgo Litigation] complaint alleges direct claims that belong to the banks or does it allege derivative claims that belong to the trustee***.  And if the complaint says Virgo made misrepresentations to us, the banks, that's dispositive at this point; isn't it?" Hr'g Tr. at 62:15-20 (emphasis added).

## III.     The Court Had Exclusive Jurisdiction to Answer the Question Raised by the Bar Motion.

12.     This Court has "exclusive jurisdiction" to determine whether the claims belong to the estate.  *See In re Affirmative Ins. Holdings, Inc.*, 565 B.R. 566, 583 (Bankr. D. Del. 2017) ("The power of bankruptcy courts to determine if a particular asset constitutes property of the

bankruptcy estate is clear. As one bankruptcy court stated, '*[t]he determination of what constitutes property of the bankruptcy estate is inherently an issue to be determined by the bankruptcy court*.'") (Emphasis added and internal citations omitted).

13.    Both the Trustee and Virgo have agreed.  In the briefing for the Bar Motion, Lenders argued that the New York Supreme Court's decision on a motion to dismiss in the Virgo Litigation, which held that the Virgo Fraud Claims at issue had to be brought by the Administrative Agent under Alchemy's credit agreement "on behalf of all Lenders," was instructive and meant that that those claims belonged to the Lenders, not the estate. *See Defrauded Lenders' Opening Brief In Opposition To Trustee's Motion For Entry Of Bar Order And Sanctions For Violating The Automatic Stay* (ECF No. 248) at ¶¶ 7, 9.

14.    In response, the Trustee argued vociferously that, "as courts broadly recognize, the determination of what constitutes property of the bankruptcy estate is *inherently an issue to be determined by the bankruptcy court*." *Trustee's Reply Brief in Further Support of Motion for Entry of Bar Order Against the Usurping Banks* (ECF No. 250) (the "Trustee Bar Motion Reply Brief") (citing *In re Affirmative Ins. Holdings, Inc.*, 565 B.R. 566, 583 (Bankr. D. Del. 2017)) (emphasis added).  The Trustee emphasized that "[d]eterminations concerning what constitutes property of the estate are within the *exclusive purview of the Bankruptcy Court.*" *Id*. at 2 (emphasis added).

15.    The Trustee's conclusion on this point was emphatic:

> "This Court accordingly has exclusive jurisdiction to determine the applicability of the automatic stay and the scope of property of Alchemy's bankruptcy estate in connection with the Trustee's Motion. Because the New York state court had no jurisdiction to determine those issues (even if had endeavored to do so, which it did not), its ruling has no effect on this Court's authority to grant the requested Bar Order."

Trustee Bar Motion Reply Brief at 3.

16.     In its reply brief, Virgo unequivocally agreed, explaining that:

> "[I]t is well-established that the bankruptcy court has exclusive jurisdiction to determine what is and what is not property of the estate, and thus, ***state courts cannot make such determinations***."

*Virgo Parties' Reply to The Usurping Banks' Opening Brief in Opposition to Trustee's Motion for Entry of Bar Order and Sanctions For Violating the Automatic Stay* (ECF No. 253) at note 6 (citing cases) (emphasis added).

## IV.    <u>Rule 52 Requires Courts to Make Findings on Every Material Issue.</u>

17.     Not only did the Court have exclusive jurisdiction to determine whether the Virgo Litigation claims, as alleged, belong to the estate, it also had the affirmative obligation under Federal Rule of Civil Procedure 52 "to find the facts ***on every material issue***, including relevant subsidiary issues, and to 'state separately' its conclusions thereon with clarity." *Kruger v. Purcell*, 300 F.2d 830, 831 (3d Cir. 1962) (emphasis added). *See* Motion to Amend at ¶ 20. This principle is particularly important in the context of injunctions. *See Baldinger v. Ferri*, 483 F. Appx 708, 711 (3d Cir. 2012) (discussing importance of application of Civil Rule 52(a) in the context of injunctions).

18.     At the Hearing, the Court expressly stated that ***it would not bar the Virgo Litigation as it has been pleaded in the New York State Court***. *See* Hr'g Tr. at 69:1-2 ("I'm not going to bar [the Lenders] from pursuing the complaint.").[4] The Court's determination was based on several rounds of briefing and evidence submitted by the Trustee, the Lenders, and Virgo, and after oral argument, including ample discussion of the specific allegations of the Virgo Litigation complaint and the law on alter ego as it relates to property of the estate.

---

[4]     *See also* Hr'g Tr. at 68:8-14 ("So, to the extent they're trying to argue that the debtor made misrepresentations and Virgo is somehow responsible for those misrepresentations because they were the alter ego of the debtor, they can't bring those claims. But they're arguing, they're saying Virgo, independently, made misrepresentations to us, and those I don't see how I could bar.")

19.     Given that the question of whether the Virgo Litigation claims were property of the estate was squarely in front of the Court, the Court had **exclusive** jurisdiction to determine whether existing claims belong to the estate, and, as discussed below, that the New York State Court's decision will no doubt be influenced by this Court's decision on this issue, the Court's findings should be included in the Order to properly guide the parties and the New York State Court. *See Pro. Plan Exam'rs of N.J., Inc. v. Lefante*, 750 F.2d 282, 289 (3d Cir. 1984) (explaining that compliance with Rule 52 is "an important factor in the proper application of the doctrines of res judicata and estoppel by judgment" and "assist[s] the appellate courts in fulfilling our review function").

## V.     The Order Omits the Court's Determination of the Central Question in Front of the Court.

20.     Nevertheless, the Order proposed by the Trustee and Virgo that was ultimately entered by the Court did not provide **any** findings.  The omission, together with the inclusion of what the Lenders understood was intended to be a limited, negotiated carve-out recognizing the principles espoused by *In re Emoral*, has already caused confusion in the New York State Court. This confusion threatens not only to prejudice the Lenders, but also to undermine this Court's exclusive jurisdiction over questions of estate property.

## VI.     Omission of Key Findings Causes Confusion for New York State Court.

21.     As noted in the Lenders' motion to expedite a decision on the Motion to Amend (ECF No. 268) (the "Motion to Expedite"), the New York State Court held oral argument on the Lenders' appeal of an order granting Virgo's motion to dismiss in the Virgo Litigation on Wednesday, November 2, 2022.  Before argument could even begin, the New York State Court interjected: "Wait a second.  Did the bankruptcy court not say, Plaintiffs violated the automatic stay by bringing this action and that they were not permitted to pursue causes of action based on a

theory that any of the Defendants was an alter ego? Is that not what the bankruptcy court said?"
Noskov Decl., Ex. A at 5:15-22.  Plainly, the New York State Court did not understand this Court's
Order.

## VII.  **Virgo Uses the Ambiguity of the Order to Attempt to Have the New York State Court Deny Lenders' Appeal Based on the Order.**

22.     Lenders' counsel attempted to correct the misconception, but the New York State
Court's confusion persisted, with the Court posing the same question to Virgo.  *See* Noskov Decl.,
Ex. A at 16:8-9 ("COURT: Do you agree that this bankruptcy court has not stayed this action?").
Virgo's counsel nominally confirmed that the "bankruptcy court has not *stayed* this action"
(Noskov Decl., Ex. A at 16:10-12 (emphasis added), but immediately tried to use the Order's
ambiguity to get the Court to deny Lenders' appeal, arguing that "what the bankruptcy court said
is that what [Lenders] are not allowed to do which is replete in their complaint is make claims
based on alter ego allegations."  Noskov Decl, Ex. A at 16:16-17:2 (emphasis added).

23.     Then, Virgo's counsel went even further, representing to the New York State Court
that "there's at least seven or eight other references in the complaint connected to each cause of
action where the alter ego is a principal element of that claim.  *What the bankruptcy court said is,
hey, no, you can't do that.  You can't base your claims because those claims were before the
bankruptcy court and were settled as part of that proceeding.*"  Noskov Decl., Ex. A at 20:13-20
(emphasis added).  This Court never said any such thing and it is flatly untrue.

24.     Virgo's counsel also blatantly reversed course on its previous (correct) position that
this Court has the exclusive jurisdiction to determine whether claims are property of the estate,
telling the New York State Court that it is *actually up to the New York State Court to determine*
whether the claims asserted in the Virgo Litigation are alter ego claims and therefore are property
of the estate.  *See* Noskov, Decl., Ex. A at 16:22-17:10.  This, of course, was irreconcilable with

Virgo's own proclamation, in the Virgo Bar Motion Reply, that "*state courts cannot make such determinations*." Virgo Bar Motion Reply at note 6 (emphasis added). *See also* Noskov Decl., Ex. A at 19:11-20:20 (asking the New York State Court to determine that the Virgo Litigation claims as pleaded are alter ego claims solely because the complaint includes factual assertions that Virgo was Alchemy's alter ego, an argument that this Court, with exclusive jurisdiction over the matter, has rejected).[5]

25.      *That is wrong and flies in the face of established Third Circuit law that the Bankruptcy Court must be the arbiter of what constitutes property of the estate, which all parties to this dispute previously agreed on.  See supra ¶¶12-16.*

**VIII.   The Order Must Be Clarified.**

26.      At bottom:

- Whether the Virgo Litigation claims as pleaded in the Virgo Litigation complaint are property of the estate and should be barred was ***the*** issue in front of this Court.  Nobody disagrees.

- This Court had exclusive jurisdiction to determine that issue.  Nobody disagrees.

- The Court stated at the Hearing that it would not bar the Virgo Litigation because Lenders alleged direct claims against Virgo.  Nobody disagrees.

- Federal Rule of Civil Procedure 52 requires findings on the central question in front of the Court, particularly in the context of issuing injunctions.

27.      Given these undisputed legal principles and facts, and in light of the evident confusion in the New York State Court and Virgo's attempts to improperly characterize this Court's findings, it is imperative for this Court to amend its Order to include the Court's conclusion that the Virgo Litigation, as pleaded, does not violate the automatic stay and is not barred.

---

[5]      *See supra* note 3.

## IX.    __The Order's Injunction Is Improper__.

28.     As to whether the injunction in the Order, as entered, is an advisory opinion, the Trustee's Opposition fails to address the "only" question in front of the Court.  Indeed, the Trustee's framing diminishes the Court's decision to a recitation of law and ignores that the Order is inconsistent with the law on alter ego and the Court's repeated statements at the hearing.

29.     The Trustee suggests that after considering all the evidence and briefing in front of it and hearing from the parties at oral argument, the Court's decision was limited solely to recognizing the legal principle that a claim based on an alter ego theory of liability is property of the estate.  But the Lenders have never questioned that *In re Emoral* and its progeny supports that proposition in the abstract.  Rather, the dispute before this Court has always been to determine *whether* the specific claims alleged in the Virgo Litigation were indeed claims based on an alter ego theory of liability, and whether they were therefore property of the estate and violated the automatic stay.  *That* is the central question the Court identified at the Hearing and *that* is the question the Trustee submitted to the Court in the Bar Motion.  The Order should answer it.[6]

---

[6]     The Trustee dismisses the Court's acknowledgement of the need to answer this question to resolve the issue in front of it (*i.e.*, "the only question in front of me today") by pointing to statements by the Court which ***do not have anything to do with the need by this Court to determine the question in front of it.*** *See* Opposition at 12-13. The Trustee cites to statements from the Court that it is up to the New York State Court to determine whether "allegations [of direct misrepresentations] are correct" and whether statements alleged to have been made by Virgo's executives were made in their capacities as Alchemy's executives (questions of fact for the New York State to decide at trial) as evidence that the Court also intended to defer the question in front of it (*i.e.*, should the Virgo Litigation be barred?) to the New York State Court.  But the issue presented here is based solely on the pleadings.  And the Court determined that the pleadings contain "direct claims" against Virgo.

The Trustee also misunderstands the Lenders' counsel's comments that if the New York State Court determines that Virgo's executives were not acting on behalf of Virgo, but instead on behalf of Alchemy, then the case should be dismissed, as a concession that it is up to the New York State Court to determine whether the claims are "alter ego claims." *See* Opposition at 7.  But this again muddles the questions of (a) agency (*i.e.*, on whose behalf were Virgo executives acting—New York State Court question) and (b) whether the Virgo Litigation involves claims on the basis of an alter ego theory of liability (*i.e.*, whether the Virgo Litigation complaint sought recovery from Virgo ***based on actions*** of Alchemy only—question for this Court).

10

30.     If answered in the negative—as the Lenders understand the Court to have done in deciding that the Virgo Litigation is not barred—any injunction imposed by the Court must necessarily relate only to future hypothetical claims.  And while the Lenders are mindful that parties sometimes amend pleadings or make new claims, and that the Trustee and Virgo should not be precluded from challenging any future claims that are based on an alter ego theory of liability as property of the estate, such unasserted theories of recovery cannot be barred in the abstract for the constitutional reasons articulated in the Motion to Amend.  *See* Motion to Amend at ¶¶ 26-35.

31.     Further, the Order as drafted by the Trustee and Virgo states that the Lenders may not pursue "***causes of action*** or theories of recovery in the State Court Litigation against a party ***on the basis that that party was the alter ego of the Debtors***."  Order at ¶ 1 (emphasis added).  But alter ego is not an "independent [] cause of action, but rather is a means of imposing liability on an underlying cause of action."  *Peacock v. Thomas*, 516 U.S. 349, 354 (1996).  Indeed, at the Hearing, the Court was clear, stating several times that "[a]lter ego is not a cause of action; it's a theory of recovery."  Hr'g Tr. at 68:6-7; *see also* Hr'g Tr. at 77:23-24.

32.     Therefore, the language in the Order barring Lenders from pursuing "***causes of action … on the basis that [a] party was the alter ego of the Debtors***" is vague and contrary to both the law and this Court's statements.  The language is fodder for Virgo's attempts to improperly use the Order to bar the Virgo Litigation solely because the complaint includes factual assertions of an alter ego relationship between Alchemy and Virgo as opposed to restricting the Lenders from asserting alter ego theories of liability against Virgo based on an underlying cause of action against Alchemy, based on Alchemy's conduct.  The Court has already rejected Virgo's attempts to do so here, and should make that clear in the Order.

11

## <u>CONCLUSION</u>

33.    For the reasons stated above, the Lenders request that the Court amend the Order.


Dated: November 14, 2022                    Respectfully submitted,

                                            */s/ Andrew L. Brown*
                                            L. Katherine Good (Bar No. 5101)
                                            Andrew L. Brown (No. 6766)
                                            **POTTER ANDERSON & CORROON LLP**
                                            1313 N. Market Street, 6th Floor
                                            Wilmington, Delaware 19801
                                            Telephone: (302) 984-6000
                                            Email: kgood@potteranderson.com
                                                       abrown@potteranderson.com

                                             - and -

                                            Victor Noskov (admitted *pro hac vice*)
                                            **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
                                            51 Madison Avenue, 22nd Floor
                                            New York, New York 10010
                                            Telephone:  (212) 849-7000
                                            Email: victornoskov@quinnemanuel.com

                                            *Attorneys for the Lenders*

12