## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.*, | Case No. 16-11596 (JTD) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 1009** |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | Adv. Pro. No. 18-50633 (JTD) |
| *Plaintiff,* | |
| v. | |
| ANCONNECT, LLC, *et al.*, | |
| *Defendants.* | **Re:  Adv. Docket No. 266** |

## LENDERS' BRIEF REGARDING STATE COURT CLAIMS AND RELEVANCE OF ALTER EGO ALLEGATIONS IN CONNECTION WITH TRUSTEE'S BAR MOTION

L. Katherine Good (Bar No. 5101)
Andrew L. Brown (Bar No. 6766)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: kgood@potteranderson.com
        abrown@potteranderson.com

Victor Noskov (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
Email: victornoskov@quinnemanuel.com

*Attorneys for the Lenders*

Dated: January 13, 2023

## <u>TABLE OF CONTENTS</u>

**Page**

BRIEF ...................................................................................................................1

*In re Emoral* .......................................................................................................2

Count 1: Fraudulent Misrepresentation ...............................................................3

Count 2: Fraudulent Concealment .......................................................................5

Count 3: Aiding and Abetting Fraud ....................................................................8

Count 4: Tortious Interference with Contract ......................................................8

Count 5: Unjust Enrichment .................................................................................9

CONCLUSION.....................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

CASES

*Borg v. Warren*,
545 F. Supp. 3d 291 (E.D.Va. 2021) ................................................................4, 7

*Eidelman v. Sun Prod. Corp.*,
2022 WL 1929250 (2d Cir. June 6, 2022) ................................................................9

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)................................................................4

*In re Affirmative Ins. Holdings, Inc.*,
565 B.R. 566 (Bankr. D. Del. 2017) ................................................................1

*In re Emoral, Inc.*,
740 F. 3d 875 (3d Cir. 2014)................................................................ passim

*JP Morgan Chase Bank v. Winnick*,
406 F. Supp. 2d 247 (S.D.N.Y. 2005)................................................................8

*New Media Holding Co., LLC v. Kagalovsky*,
985 N.Y.S.2d 216 (1st Dep't 2014) ................................................................9

*P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*,
754 N.Y.S.2d 245 (1st Dep't 2003) ................................................................3, 6

*Plumbing Supply, LLC v. ExxonMobil Oil Corp.*,
2017 WL 3913020 (S.D.N.Y. Sept. 5, 2017)................................................................7

*Rich v. Fox News Network, LLC*,
939 F.3d 112 (2d Cir. 2019)................................................................8

*Shamis v. Ambassador Factors Corp.*,
1996 WL 457320 (S.D.N.Y. Aug. 14, 1996)................................................................5

*U.S. Bank National Association v. BFPRU I*,
LLC, 230 F. Supp. 3d 253 (S.D.N.Y. 2017)................................................................6

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
579 F. Supp. 2d 334 (E.D.N.Y. 2008) ................................................................5

Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB" and, together with Emigrant, the "Lenders"), hereby submit this brief in response to the Court's request for additional briefing with regard to the issue of the duty to disclose and the relevance of the alter ego allegations in Lenders' New York State Court claims (the "Virgo Claims") against Virgo Investment Group, LLC and various associated entities and individuals (together "Virgo").[1]

## **BRIEF**

1.      Whether the Virgo Claims are the property of the estate is "inherently an issue to be determined by the bankruptcy court." *In re Affirmative Ins. Holdings, Inc.*, 565 B.R. 566, 583 (Bankr. D. Del. 2017).  This Brief addresses each of the claims in the New York State Court Complaint (the "Complaint") with respect to the Court's inquiry regarding the basis for Virgo's duty to disclose certain information that Virgo concealed from the Lenders, and the relevance of the allegations of alter ego.  As shown below, none of the Virgo Claims should be barred because the duty to disclose is only an element of one claim and has been sufficiently alleged in that claim, none of the claims requires that Virgo be the alter ego of Alchemy, and each claim alleges a direct claim against Virgo for its wrongful actions.

2.      In particular, for the first, third, fourth, and fifth causes of action, there is no need to allege a duty to disclose and there is no requirement of an alter ego relationship between Virgo and Alchemy.  For the second cause of action for fraudulent concealment, the duty to disclose is based on Virgo's superior knowledge and partial statements.  Again, there is no requirement of an alter ego relationship.  These claims should not be barred.

---

[1]      Each capitalized term not defined herein shall have the meaning given to it in the Motion to Amend or the Trustee's *Motion for Entry of Bar Order* (ECF No. 214) (the "Bar Motion"), as applicable.

### *In re Emoral*

3.      *In re Emoral* is the seminal case for the undisputed proposition that claims based on an alter ego theory of liability (*i.e.*, veil-piercing) are property of the estate.  *In re Emoral* is unlike the instant case, and highlights why the Virgo Claims should *not* be barred.

4.      In *In re Emoral*, Plaintiffs asserted personal injury claims against a non-debtor third-party, Aaroma, for injuries suffered because of the wrongdoing of the debtor, Emoral. Although Plaintiffs' injuries resulted solely from exposure to diacetyl manufactured or sold by Emoral, Plaintiffs alleged that Aaroma was liable for **all of Emoral's liabilities**, including plaintiffs' injuries, because there was a "continuity in management, shareholders, personnel, physical location, assets and general business operations" between Aaroma and Emoral." *In re Emoral, Inc.*, 740 F. 3d 875, 880 (3d Cir. 2014).

5.      The complaint in *In re Emoral* did not allege that Aaroma's own actions damaged the plaintiffs and did not assert direct claims (nor could it, since it was undisputed that Aaroma neither manufactured nor sold diacetyl).  *See id.* at 878.  The Court focused on the lack of direct allegations against Aaroma, emphasizing that plaintiffs' "**only** theory of liability as against Aaroma, a third party that is **not alleged to have caused any direct injury to the [plaintiffs]**, is that, as a matter of state law, Aaroma constitutes a 'mere continuation' of Emoral such that it has also **succeeded to all of Emoral's liabilities.**" *Id.* at 879 (emphasis added).  The Court likened this theory to one based on an alter ego theory of liability where a plaintiff seeks to pierce the debtor's corporate veil to recover from a third-party alter ego based on the debtor's wrongdoings.  The Court explained that because a corporation can pierce its own veil under New Jersey law, such a veil-piercing claim can inure to the benefit of all of the corporation's constituents and therefore belongs to the estate in bankruptcy. *Id.* at 880-81.

6.      In contrast, the Complaint here alleges direct claims against Virgo based on Virgo's own tortious conduct.

## Count 1: Fraudulent Misrepresentation

7.      The elements of a cause of action for fraudulent misrepresentation are: (1) a material misrepresentation of fact; (2) made intentionally to defraud or mislead the plaintiff; (3) reasonable reliance on the misrepresentation; and (4) damages proximately caused.[2]

8.      A duty to disclose is not one of the elements of a cause of action for fraudulent misrepresentation.  Therefore, the Court's concern with respect to the basis of a duty to disclose does not pertain to this cause of action.

9.      Furthermore, the Complaint plainly alleges direct claims against Virgo for Virgo's, own misrepresentations.  For example, the Complaint alleges:  "To benefit itself, **Virgo** made material and intentional misrepresentations of present fact to the Lenders" concerning, *inter alia*, Alchemy's earnings based on a report of Virgo's own accounting firm, Baker Tilly; the ability of Virgo's subsidiary, Calrissian, to honor the Guaranty Agreement and Virgo's intent to stand behind Calrissian financially; Virgo's projections of Alchemy's financial performance; ANConnect's actual and expected financial performance; and Virgo's own due diligence on the Alchemy and ANConnect transactions.  *See* Compl. ¶¶ 85(a) - (j) (emphasis added); *see also* ¶¶ 4, 5, 38, 48, 54, 60, 65.

10.      These claims are not based on an alter ego theory of liability and do not rely on the allegations of an alter ego relationship with Alchemy.  For example, Virgo misrepresented its due diligence on the Alchemy transaction, having had its own due diligence accounting firm change negative comments about Alchemy's earnings in its report (which took place before the Alchemy

---

[2]      *See P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 250 (1st Dep't 2003).

purchase and, necessarily, could not be based on an alter ego relationship).  *See id.*  ¶¶ 4, 38,  and

85(j).  Virgo misrepresented the financial ability of its subsidiary, Calrissian, to honor the Guaranty

Agreement as well as Virgo's own intent to stand behind Calrissian financially.  S*ee* ¶¶ 5, 48, 66,

85(g).   Virgo further misrepresented ANConnect's actual and expected financial performance

based on Virgo's own due diligence of ANConnect.  *See* ¶¶ 60, 65, 85(i), (j).

11.      A "plaintiff creditor may allege a direct cause of action against the alter ego … that

does not constitute property of the bankruptcy estate so long as the claim alleges a particularized

injury to the plaintiff that is directly traceable to conduct by the third party rather than any harm

resulting from the secondary effects of the injury by the third party to the debtor corporation."

*Borg v. Warren*, 545 F. Supp. 3d 291, 317 (E.D.Va. 2021) (citing *In re Emoral*, 740 F.3d 875 (3d

Cir.  2014))  (allowing  Plaintiffs  to  assert  claims  based  on  the  Defendants'  direct

misrepresentations).  *See also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995)

("when creditors ... have a claim for injury that is particularized as to them, they are exclusively

entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so.").

12.      Thus, the Court stated at the September 21 hearing:  "The only question in front of

me today is whether [the New York] complaint alleges direct claims that belong to the banks or

does it allege derivative claims that belong to the trustee. ***And if the complaint says Virgo made***

***misrepresentations to us, the banks, that's dispositive at this point; isn't it?***"  Sept. 21 Hr'g Tr.

at 62:15-20 (emphasis added).  When the Trustee further pursued this issue, the Court reiterated:

"[T]he complaint says Virgo made representations and warranties separate from that agreement,

and it's those that they're relying on. I mean, sure, they included the factual assertions [of alter

ego] in the complaint, but it doesn't form a basis for their claim that Virgo itself -- and let's assume

for a moment that Virgo did make direct representations to the banks and it turns out that those

representations were false, isn't that a direct claim that they have against Virgo? … *[I]f they're making allegations of direct misrepresentation, those belong to whoever received those direct misrepresentations by a third party*…." *Id.* at 64:10-18; 66:19-67:4 (emphasis added).  The Court concluded:  "*[T]hey're saying Virgo independently made misrepresentations to us, and those I don't see how I could bar*." *Id.* at 68:12-14 (emphasis added).

### Count 2: Fraudulent Concealment

13.    The only claim in the Complaint requiring a "duty to disclose" is the second cause of action for fraudulent concealment.  Under New York law, a duty to disclose arises in three situations: "(1) where there is a fiduciary relationship between the parties[;] (2) where one party possesses superior knowledge, not readily available to the other, and knows that the other party is acting on the basis of mistaken knowledge[;] or (3) where a party has made a partial or ambiguous statement." *Shamis v. Ambassador Factors Corp.*, 1996 WL 457320, at *5 (S.D.N.Y. Aug. 14, 1996) (citations omitted); *see also Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 352 (E.D.N.Y. 2008) (same).  Here, Lenders allege both that Virgo had superior knowledge and made partial and ambiguous statements to Lenders.

14.    ***Superior Knowledge.***  The Court noted at the November 29 hearing that a "special relationship" may be required to establish a duty to disclose.  Under New York law, a special relationship is a requirement only where a party bases a duty to disclose on a fiduciary duty owed by defendant to the plaintiff.  Neither of the other grounds for a duty to disclose – superior knowledge or a partial or ambiguous statement – requires a special relationship.  *See*, *e.g., Shamis*, 1996 WL 457320 at *5 (factoring services provider had duty to disclose third-party's deteriorating credit-worthiness where plaintiff extended credit to third-party).

15.     In *Swersky v. Dreyer & Traub*, the Court held that "the arm's length nature of this transaction negates any alleged duty to disclose based upon a fiduciary relationship," but still found a duty to disclose based on superior knowledge:  "Under the 'special facts' doctrine, a duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair."  219 A.D.2d 321, 327 (1st Dep't 1996); *see also P.T. Bank Central Asia v ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 252 (1st Dep't 2003) (where the defendant had "information, not readily available to plaintiff" that an appraisal was overstated, a duty to disclose arose because "one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair' …"); *U.S. Bank National Association v. BFPRU I*, LLC, 230 F. Supp. 3d 253, 260 (S.D.N.Y. 2017) (finding that a duty to disclose existed where a loan servicer had exclusive knowledge regarding leases under negotiation).

16.     The Complaint alleges a number of grounds for Virgo's superior knowledge.  First, Virgo conducted due diligence on the acquisition of Alchemy in which it gained superior knowledge of Alchemy's earnings, including Baker Tilly's original and altered analyses of Alchemy's earnings.  Compl. ¶¶ 4, 38, 39, 95, 96.

17.     Second, Virgo had superior, if not exclusive, knowledge of its subsidiary Calrissian's finances and inability to fulfill its obligations under the Guaranty Agreement, as well as Virgo's intent to guarantee those obligations.  *Id.* ¶¶ 5, 40, 41, 48, 95(j).

18.     Third, Virgo conducted due diligence with respect to ANConnect, and gained superior knowledge of ANConnect's actual and expected financial performance.  *Id.* ¶¶ 60, 95(k).

19.     Fourth, Virgo, and Jesse Watson and Mark Perez specifically, had superior knowledge of Alchemy's finances and business practices because of their involvement in overseeing Alchemy's operations.  *See id.,* ¶¶ 53-57, 60, 63, 65, 69-72, 95, 96.

6

20.     Fifth, Virgo's alter ego relationship with Alchemy provided Virgo with superior knowledge of Alchemy's finances, operations and management. *Id.,* ¶¶ 34, 95, 96.   Significantly, the allegation of an alter ego relationship is only one of a number of allegations establishing Virgo's superior knowledge and the resulting duty to disclose.

21.     This alter ego *allegation* is not akin to *veil piercing*.  Rather, under New York law, Virgo's all-access relationship establishes that Virgo—independent of Alchemy—had its own duty to disclose material facts in its possession about Alchemy to the Lenders which, as alleged in the Complaint, Virgo did not do.  The fact that Virgo's relationship with Alchemy also allegedly crosses the alter ego line does not insulate Virgo from liability for its own tortious violations of New York law.  *See Borg*, 545 F. Supp. 3d at 317 (citing *In re Emoral*, 740 F. 3d at 879) ("[A] Plaintiff creditor may allege a direct cause of action against the alter ego or another third party that has misused the debtors' property that does not constitute property of the bankruptcy estate so long as the claim alleges a particularized injury to the plaintiff *that is directly traceable to conduct by the third party* rather than any harm resulting from the secondary effects of the injury by the third party to the debtor corporation.") (emphasis added).

22.     Thus, the Court properly stated at the September 19 Hearing that the allegations of the Complaint are "*dispositive at this point*" and the Court did not see how it could bar them.  Sept. 19 Hr'g Tr. at 62:15-20; 68:12-14.

23.     *Partial or Ambiguous Statement*s.   Superior knowledge is only one of the independent prongs sufficient to establish a duty to disclose.  Under New York law, "[a] duty to disclose arises if, among other things, 'one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party.'" *Plumbing Supply, LLC v. ExxonMobil Oil Corp.*, 2017 WL 3913020, at *4 (S.D.N.Y. Sept. 5, 2017).

7

24.     The Complaint contains numerous allegations of "partial or ambiguous" statements made by Virgo that likewise created a duty to disclose.  For example, the Complaint alleges that in the months leading up to the execution of the Amended Credit Agreement, including at a specific meeting on May 29, 2015 at which Virgo's founding partner and CFO Mark Perez presented, Virgo failed to disclose Alchemy's true earning and business practices notwithstanding the fact that he knew statements made at the meeting were false and misleading.  Compl. ¶¶ 57, 60.  And, during meetings on February 25, 2015 and March 12, 2015, Jesse Watson, Virgo's Managing Member,[3] "***pitched*** the transaction to Emigrant Bank" all while "intentionally with[holding] material information."  *Id*. ¶ 65 (emphasis added).

25.     Therefore, there are two alternative bases for a duty to disclose, neither requiring a finding of an alter ego relationship between Virgo and Alchemy.

## Count 3: Aiding and Abetting Fraud

26.     A claim for aiding and abetting fraud has three elements: (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.[4]  None of these elements require a finding of a duty to disclose or an alter ego relationship between Virgo and Alchemy.

## Count 4: Tortious Interference with Contract

27.     The elements of a claim for tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third-party's breach of the contract without

---

[3]     Both Mark Perez and Jesse Watson are defendants in the New York State Court Action and claims against them should likewise not be barred.

[4]     *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005).

8

justification; (4) actual breach of the contract; and (5) damages resulting therefrom.[5]  None of these elements requires a finding of a duty to disclose or an alter ego relationship between Virgo and Alchemy.   Indeed, a claim for tortious interference is incompatible with a theory of alter ego because a tortious interference claim requires that the defendant knowingly interfered with another party's contract.  *See, e.g.*, *New Media Holding Co., LLC v. Kagalovsky*, 985 N.Y.S.2d 216, 224 (1st Dep't 2014) ("defendants are correct in concluding that they cannot be simultaneously alter egos and tortious intervenors") (citation omitted).

**Count 5: Unjust Enrichment**

28.    A claim for unjust enrichment has three elements: (1) the other party was enriched; (2) at the plaintiff's expense; and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.[6]  None of these elements require a duty to disclose or an alter ego relationship between Virgo and Alchemy.

## CONCLUSION

29.    Throughout this dispute, the Trustee and Virgo have attempted to expand the application of *In re Emoral* beyond its holding and use the Lenders' factual allegation of an alter ego relationship as an all-encompassing shield—arguing that simply using the words "alter ego" in a complaint transforms all direct claims against a non-debtor into estate claims.  The Lenders, however, are not seeking to pierce the corporate veil or ascribe Alchemy's liability to Virgo through a disregard of the corporate form—the type of claim that belongs to the estate pursuant to

---

[5]      *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126 (2d Cir. 2019).

[6]      *Eidelman v. Sun Prod. Corp.*, 2022 WL 1929250, at *2 (2d Cir. June 6, 2022).

*In re Emoral*.   Rather, the claims are based on duties owed and actions taken by Virgo in contravention of New York law.[7]

30.     The Lenders urge this Court to avoid the perverse result the Trustee and Virgo seek: that ***because*** Virgo allegedly ignored corporate separateness and took advantage of its insider position, it should be immunized from its own tortious conduct.   The Court recognized that the Trustee and Virgo were "trying to raise alter ego as a defense," and that "Virgo is a separate entity, [and] can still act independently even if it was the alter ego of Our Alchemy."   Sept. 29 Hr'g Tr. at 65:15-20.   This defensive use of *In re Emoral* is unprecedented and the Court should not bar the Lenders from pursuing their direct claims against Virgo.   Each of the causes of action in the Complaint has been sufficiently alleged and, based on these "dispositive" allegations, none of them should be barred.

Dated: January 13, 2023
Wilmington, Delaware

Respectfully submitted,

*/s/ Andrew L. Brown*
L. Katherine Good (Bar No. 5101)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email: kgood@potteranderson.com
         abrown@potteranderson.com

 - and -

Victor Noskov (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Email: victornoskov@quinnemanuel.com

*Attorneys for the Lenders*

---

[7]      As the Court stated:  "I mean, sure, they included the factual assertions [of alter ego] in the complaint, but … let's assume for a moment that Virgo did make direct representations to the banks and it turns out that those representations were false, isn't that a direct claim that they have against Virgo?"  Sept. 29 Hr'g Tr. at 64:12-18.