**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>OUR ALCHEMY, LLC, *et al.*,<br><br>　　　　　　Debtors. | Chapter 7<br><br>Case No. 16-11596 (MFW)<br><br>(Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>ANCONNECT, LLC, *et al.*,<br><br>　　　　　　Defendants. | Adv. Proc. No. 18-50633 (MFW) |

**[PROPOSED] JOINT PRETRIAL ORDER**

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure, incorporated by Rule 7016 of the Federal Rules of Bankruptcy Procedure and Local Rule 7016-2.

**Plaintiff:** George L. Miller, in his capacity as Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the jointly administered bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson Digital" and, together with Alchemy, the "Debtors")

> **Counsel:**
> John T. Carroll, III (DE No. 4060)
> Cozen O'Connor
> 1201 N. Market Street, Suite 1001
> Wilmington, Delaware 19801
> Telephone: (302) 295-2028
> Facsimile: (302) 701-2140
> Email: jcarroll@cozen.com
>
> -and-

1

Steven M. Coren, Esq. (pro hac vice)
Kaufman, Coren & Ress, P.C.
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, Pennsylvania 19103
Telephone: (215) 735-8700
Facsimile: (215) 735-5170
Email: SCoren@kcr-law.com

**Defendants:** ANConnect, LLC ("ANConnect") and Anderson Merchandisers, LLC ("Anderson Merchandisers" and, together with ANConnect, the "Anderson Defendants")

**Counsel:**
Evelyn J. Meltzer (DE No. 4581)
Troutman Pepper Locke LLP
Hercules Plaza, Suite 1000
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone: (302) 777-6532
Facsimile: (302) 421-8390
evelyn.meltzer@troutman.com

-and-

David J. Hungeling (pro hac vice)
Hungeling Rubenfield Law
Georgia State Bar No. 378417
Peachtree 25th, Suite 599
1718 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 574-2466
Facsimile: (404) 574-2467
david@hungelinglaw.com

## I. NATURE OF THE ACTION AND PLEADINGS

The Trustee initiated this adversary proceeding against the Anderson Defendants and others on June 29, 2018. Following the settlement of claims against the other defendants after mediation, the Trustee and the Anderson Defendants engaged in discovery and each filed motions for partial summary judgment (Adv. D.I. 284) (the "Trustee's MSJ") and (Adv. D.I. 310) (the "Defendants' MSJ"), which this Court denied (Adv. D.I. 331). The Trustee and the Anderson

Defendants then entered into a Stipulation Concerning Amendment of Plaintiff's Complaint on June 9, 2025 (Adv. D.I. 337), pursuant to which the Trustee withdrew all claims except: 1) a preference claim under 11 U.S.C. § 547(b) against Anderson Merchandisers for the allegedly improper setoff of approximately $3.2 million (the "Preference Claim"); and 2) claims for breach of contract and turnover under 11 U.S.C. § 542 against ANConnect regarding the alleged failure to remit over $6 million of accounts receivable allegedly collected on Alchemy's behalf by ANConnect pursuant to the Transition Services Agreement (the "TSA") with Alchemy (the "TSA Claim"). In June of 2025, the Trustee withdrew his demand for a jury trial (Adv. D.I. 338), which the Anderson Defendants moved to strike (Adv. D.I. 341). The Court denied the motion to strike (Adv. D.I. 349) and set this matter for a bench trial for September 1, 2026 and September 2, 2026. The Anderson Defendants deny all liability.

The operative pleadings are the Complaint (Adv. D.I. 1), ANConnect's Answer (Adv. D.I. 108), and Anderson Merchandiser's Answer (Adv. D.I. 109). No counterclaims or crossclaims have been filed, although the Defendants asserted affirmative defenses and ANConnect maintains a Proof of Claim (Claim 158-1) in the amount of $17,957,939.26 ($6,144,630 secured claim and $11,813,309.26 general unsecured claim) and Anderson Merchandisers maintains a Proof of Claim (Claim 157) in the amount of $2,476,624.94 ($2,446,991.44 general unsecured claim and $29,633.50 administrative expense claim) in the Debtors' bankruptcy cases.

## II. JURISDICTIONAL BASIS AND COMPLIANCE WITH FED. R. BANKR. P. 7016(b)

The parties do not dispute jurisdiction or venue. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b). The parties consent to entry of final orders and judgment by this Court in this adversary proceeding

and it is accordingly appropriate for this Court to hear and determine the adversary proceeding under Fed. R. Bankr. P. 7016(b).

### III. UNCONTESTED FACTS

The parties submit the following joint statement of undisputed facts which shall require no proof at trial and will become part of the evidentiary record in this case. The parties reserve the right to amend or supplement this statement as necessary as part of the meet-and-confer process leading up to trial. By submitting this joint statement, neither party admits that any stated fact is relevant to any material issue of dispute.

**A.      The ANC Transaction.**

1.      Alchemy, previously known as Millennium Entertainment, was an independent distributor of film and television content across all platforms in North America, including DVD, digital, and video-on-demand.

2.      In late 2014, Alchemy was interested in acquiring ANConnect's physical and digital video and movie distribution business (the "ANC Assets").

3.      On May 7, 2015, ANConnect and Alchemy entered into an Asset Purchase Agreement ("APA") pursuant to which Alchemy agreed to purchase and assume from ANConnect certain assets and liabilities of ANConnect's business consisting of home video and digital distribution of motion pictures and other audiovisual media.  JX-1 is a true and correct copy of the APA.

4.      Alchemy and ANConnect also entered into the Transition Services Agreement ("TSA") dated July 9, 2015.  JX-2 is a true and correct copy of the TSA.

5.      Alchemy and Anderson Merchandisers entered into a Merchandising Agreement dated July 9, 2015 ("Merchandising Agreement") under which Alchemy engaged Anderson

Merchandisers to perform merchandising services on Alchemy's behalf (such as stocking, inventory management, and setting up product displays) in Walmart stores. JX-3 is a true and correct copy of the Merchandising Agreement.

**B.      The Delaware Superior Court Action.**

6.      On February 23, 2016, ANConnect and Anderson Merchandisers filed a complaint (the "State Court Complaint") against Alchemy in the Superior Court of Delaware (the "State Court Action"), alleging various breaches of the APA, the TSA, and the Merchandising Agreement. JX-4 is a true and correct copy of the State Court Complaint. JX-5 is a true and correct copy of Alchemy's Answer and Counterclaim filed in the State Court Action.

**C.      Facts Concerning the Trustee's $3.2M Preference Claim.**

7.      In the State Court Complaint, the Anderson Defendants stated that "ANconnect has suffered damages in a net amount not less than $10,840,011.00.  This net amount accounts for the $3,208,314 ANconnect owes Alchemy in post-closing adjustments per Section 2.06(a)(iv) of the [APA]."  JX-4 at ¶ 43.

8.      On June 27, 2016, ANConnect sent a wire transfer in the amount of $3,228,731.14 to Anderson Merchandisers. D-13 is a true and correct copy of the Bank of America wire transfer receipt.

9.      On July 22, 2016, Anderson Merchandisers filed a motion with this Court for relief from the automatic stay (Case No. 16-11596, D.I. 42, the "Stay Motion").  P-4 is a true and correct copy of the Stay Motion.

10.      This Court granted Anderson Merchandisers' Stay Motion (Case No. 16-11596, D.I. 95). P-5 is a true and correct copy of this Court's order granting the Stay Motion.

11.     At trial Defendants will not rebut the presumption of insolvency under 11 U.S.C. § 547(f).

**D.      Facts Concerning the Trustee's Turnover/Breach of Contract Claims.**

12.     Under the TSA, ANConnect was obligated to provide Alchemy with services such as warehousing, order fulfillment, freight management, price stickering, return transition services and processing, and specific distribution and administrative services, as described in Exhibits A and B to the TSA.

13.     Exhibit B to the TSA identifies the administrative services ANConnect was required to provide, which services included the collection and remittance of accounts receivable owed to Alchemy on a weekly basis.

14.     In the State Court Complaint, ANConnect states as follows: "Under the Transition Services Agreement, ANConnect has collected receivables from Walmart/Sam's Club, Best Buy, and Ingram on behalf of Alchemy," but "has withheld $6,047,325.00 [of those receivables] as an equitable setoff" for amounts allegedly owed to ANConnect under other agreements.  JX-4 at ¶ 67.

15.     In the State Court Complaint, ANConnect states as follows: "ANConnect seeks to retain the $6,047,325.00 otherwise due to Alchemy under the Transition Services Agreement as an equitable setoff for amounts due and owing to [ANConnect and Anderson Merchandisers] under their various agreements with Alchemy."  *Id.* at ¶ 68.

**E.      Alchemy's Bankruptcy Petition**

16.     On July 1, 2016 (the "Petition Date"), the Debtors each commenced a bankruptcy case by filing a voluntary petition for relief in this Court under Chapter 7 of the Bankruptcy Code, with the cases jointly administered under the caption *In re Our Alchemy, LLC, et al.*, Bankr. D. Del. No. 16-11596.

6

17.    Plaintiff George L. Miller was appointed as Chapter 7 Trustee of the Debtors' estates and currently serves in that capacity.

18.    On June 29, 2018, the Trustee commenced this adversary proceeding by filing the Complaint with a Demand for Jury Trial against eleven (11) companies and seven (7) individuals, including ANConnect and Anderson Merchandisers. *See* Adv. D.I. 1.

19.    In the Alchemy bankruptcy, Anderson Merchandisers filed proof of claim no. 157 in the amount of $2,476,624.94 and ANConnect filed proof of claim no. 158 in the amount of $17,957,939.26. JX-7 is Anderson Merchandiser's proof of claim and JX-6 is ANConnect's proof of claim.

20.    The 90-day preference period runs from April 2, 2016, through and including July 1, 2016.

### IV. ISSUES OF FACT THAT REMAIN TO BE LITIGATED

The parties submit their following respective Statements of Issues of Fact to be Litigated, based on the claims and defenses they expect the other party are likely to present.  If the parties pursue different arguments, or raise additional issues, the parties reserve the right to amend or supplement this statement.  Should this Court determine that any issue identified herein is more properly considered an issue of law, the party incorporates that issue by reference into their respective Statement of Issues of Law to Be Litigated.  Should this Court determine that any issue identified in its respective Statement of Issues of Law to Be Litigated is more properly considered an issue of fact, the party incorporates that issue by reference into this Statement of Issues of Fact to Be Litigated.  The parties reserve the right to amend or supplement this statement as necessary as part of the meet-and-confer process leading up to trial, and in the event that any unanticipated new issues or arguments arise.  By including an issue of fact in their respective statement, the

parties do not assume the burden or proof or production with regard to issues that are the opposing party's burdens to prove.  Nor do the parties concede that any genuine factual dispute exists as to any of the issues listed below.

### A.   Plaintiff's Issues of Fact

**1.   Anderson Merchandisers Is Liable Under 11 U.S.C. § 547 for the Improper Setoff of $3,208,314 Due to Alchemy from ANConnect**

a.   Whether the Trustee has proven, by a preponderance of the evidence, that the setoff of $3,208,314 was an improper triangular setoff which is not protected by the Bankruptcy Code and thus constituted a transfer of an interest of the debtor in property.

b.   Whether the Trustee has proven, by a preponderance of the evidence, that the setoff of $3,208,314 was within the preference period (during which the presumption of insolvency applies) to or for the benefit of a creditor, for or on account of an antecedent debt, and that the setoff enabled Anderson Merchandisers to receive more than it would receive in this case had the transfer not been made.

c.   Whether the Trustee has proven, by a preponderance of the evidence, that Anderson Merchandisers was the initial transferee of the $3,208,314, or the entity for whose benefit the Transfers were made or, alternatively, the immediate or mediate transferee of such initial transferee.

d.   The amount of pre-judgment and post-judgment interest the Trustee is entitled to receive.

8

**2.     ANConnect Is Liable for Turnover and Breach of Contract Due to Its Wrongful Withholding of Alchemy's Accounts Receivable**

a.     Whether the Trustee has proven, by a preponderance of the evidence, that ANConnect breached the TSA by withholding at least $6,047,325.00 of Alchemy's accounts receivable.

b.     Whether the Alchemy accounts receivable withheld by ANConnect can be used in accordance with the provisions of section 363 and has more than inconsequential value to Alchemy's estate.

c.     Whether the amount of Alchemy accounts receivable wrongfully withheld by ANConnect is in the amount of $6,047,325, as admitted by ANConnect in the State Court Complaint, or in excess of $8,110,735 as admitted by ANConnect in a March 23, 2016 reconciliation.

d.     The amount of pre-judgment and post-judgment interest the Trustee is entitled to receive.

**B.     Defendants' Issues of Fact**

**1.     The Trustee's Preference Claim against Anderson Merchandisers**

a.     Did ANConnect owe Alchemy $3,208,314 or did that amount reflect an adjustment in Alchemy's favor for the Buy/Sell Supplier A/P in the post-closing adjustment calculations encompassing several post-closing credits and debits?

b.     Did Alchemy have a right to payment of the Credit under the APA?

c.     Was Alchemy contractually entitled to use the Credit as an offset against amounts it owed to Anderson Merchandisers under the APA and the Merchandising Agreement?

d.     If Alchemy was contractually entitled to use the Credit as an offset

against amounts it owed to Anderson Merchandisers under the APA and the Merchandising Agreement, was the Credit available to be used in April of 2016?

e. Did Alchemy agree or acquiesce to ANConnect in applying the Credit against amounts Alchemy owed ANConnect prior to the Petition Date?

f. If Alchemy had the right to receive payment of $3,208,314 from ANConnect, did ANConnect have a senior right of setoff?

g. Was Alchemy in material breach of the APA and, if so, did that breach relieve ANConnect of any obligation to pay Alchemy the $3,208,314 Credit without setoff?

h. Did ANConnect have a right of mutual setoff under Delaware law regarding the $3,208,314 Credit?

i. Was ANConnect's $3,228,731.14 payment to Anderson Merchandisers a transfer of Alchemy's property?

j. Was ANConnect's $3,228,731.14 payment to Anderson Merchandisers a lawful indemnification?

k. If ANConnect's $3,228,731.14 payment to Anderson Merchandisers is considered a transfer of Alchemy's property, what portion of that sum applied to antecedent debt, if any?

l. If Alchemy owed money to ANConnect, was ANConnect's $3,228,731.14 payment to Anderson Merchandisers a "triangular setoff"?

2. **The Trustee's Turnover Claim against ANConnect.**

a. Did ANConnect have the right to offset the $6,047,325.00 of accounts receivable it collected on Alchemy's behalf ("Collected Amount") against amounts Alchemy owed to ANConnect under the APA and TSA?

10

b.      Did the parties post-closing conduct modify the operative agreements regarding setoff, indemnification, credits, or debits and, if so, did that modification permit ANConnect to offset the $6,047,325.00 against amounts Alchemy owed to ANConnect?

c.      Did Alchemy have a property interest in the $6,047,325.00 that Alchemy could use, sell, or lease?

d.      Did Alchemy have a property interest in the $6,047,325.00 that ANConnect collected from vendors for services it performed on Alchemy's behalf, despite Alchemy never paying for the assets that generated the sum at issue?

e.      Was the $6,047,325 that ANConnect collected under the TSA subject to offset against mutual debts owed by Alchemy?

## V. ISSUES OF LAW THAT REMAIN TO BE LITIGATED

Pursuant to the Order (Adv. D.I. 352) establishing pretrial deadlines, the Parties intend to identify the issues of law that remain to be litigated, with citations to authorities and evidence, in their pretrial brief to be filed by July 31, 2026.

## VI. EXHIBITS

The following exhibits have been pre-marked for trial.  The parties reserve the right to lodge additional objections based on the manner in which an exhibit is cited in pretrial briefing or used at trial.

| EXHIBIT NO. | DATE | DESCRIPTION | OBJECTION(S) |
|---|---|---|---|
| JOINT EXHIBITS | | | |
| JX-1 | 05/07/2015 | Asset Purchase Agreement between ANConnect, LLC and Our Alchemy, LLC | |
| JX-2 | 07/09/2015 | Transition Services Agreement between ANConnect, LLC and Our Alchemy, LLC | |

| | | | |
|---|---|---|---|
| JX-3 | 07/09/2015 | Merchandising Agreement between Anderson Merchandisers, LLC and Our Alchemy, LLC | |
| JX-4 | 2/23/2016 | Complaint filed by ANConnect, LLC and Anderson Merchandisers, LLC in Delaware Superior Court (C.A. No. N16C-02-152 WCC [CCLD]) | |
| JX-5 | 4/11/2016 | Alchemy Answer and Counterclaim in Delaware Superior Court Action | |
| JX-6 | 10/13/2016 | ANConnect, LLC Proof of Claim No. 158 filed in In re Our Alchemy, LLC, Case No. 16-11596 (MFW) | |
| JX-7 | 10/13/2016 | Anderson Merchandisers, LLC Proof of Claim No. 157 filed in In re Our Alchemy, LLC, Case No. 16-11596 (MFW) | |
| JX-8 | 09/29/2022 | Deposition Transcript of Jay R. Maier (Rule 30(b)(6) designee for ANConnect, LLC and Anderson Merchandisers, LLC) | |
| JX-9 | 3/2/2023 | Deposition Transcript of Matthew Rowand (Rule 30(b)(6) designee for SunTrust Bank and SunTrust Robinson Humphrey) | |
| JX-10 | 4/20/2023 | Deposition Transcript of William Homony | |
| JX-11 | 4/20/2023 | Deposition Transcript of George Miller | |
| **TRUSTEE'S EXHIBITS** | | | |
| P-1 | 4/12/2016 | Letter from James G. Sammataro (Stroock) to Scott McDaniel (Anderson Merchandisers) | |
| P-2 | 6/22/2016 | Email from Anderson Media Corporation CFO Jay Maier to ANConnect and Anderson Merchandisers personnel | |
| P-3 | 6/23/2016 | Email from Anderson Merchandisers personnel to ANConnect personnel attaching Invoice for $3,208,314 "due from Alchemy" | |
| P-4 | 7/22/2016 | Anderson Merchandisers' Motion for Relief from the Automatic Stay, Bankr. D. Del. 16-11596-JTD, D.I. No. 42 | |
| P-5 | 8/1/2016 | Order granting Anderson Merchandisers' Stay Relief Motion, Bankr. D. Del. 16-11596, D.I. No. 95 | |
| P-6 | 3/15/2016 | Email chain from Jay Maier, et al., to Mark Perez of Virgo | |

| P-7 | 6/30/2016 | Email from ANConnect CFO Chuck Taylor | |
| P-8 | 4/20/2016 | Forbearance Agreement between Alchemy and Suntrust Bank | |
| P-9 | 3/23/2016 | Email and associated attachment from ANConnect CFO Chuck Taylor to Anderson personnel | |
| P-10 | | Board of Governors of the Federal Reserve System Graph Depicting Prime Rate and Discount Rate from 2016-Present | FRE 901 (no foundation: FRE 402 (irrelevant) |
| P-11 | | Alchemy Claims Register | |
| P-12 | 10/18/2015 | Email from Bill Lardie to Chuck Taylor, Jay Maier, and Charlie Anderson | |
| P-13 | 10/29/2015 | Email chain in which, inter alia, Mark Perez (a member of Alchemy's board) and Jay Maier negotiate the "concept . . . that Anderson is buying the A/R in exchange for cash" | |
| P-13A | 10/29/2015 | Draft Receivables Purchase Agreement drafted by ANConnect's Counsel and attached to email chain at P-12 | |
| P-13B | 10/29/2015 | Draft Amendment to TSA drafted by ANConnect's Counsel and attached to email chain at P-12 | |
| P-14 | 10/21/2016 | Email from Chuck Taylor to Bill Lardie re: Reconciliation between Amerch and ANC | |
| P-15 | | [RESERVED] | |
| P-16 | 8/16/16 | Alchemy's Bankruptcy Schedules (D.I. 123) | |
| P-17 | June 2026 | Estate Bank Statement | |
| P-18 | 6/15/2016 | SunTrust Notice of Acceleration of Debt | |
| P-19 | 10/21/15 | Email from M. Perez to S. Moore, et al. re: ANConnect | |
| P-20 | 9/1/2016 | SunTrust Sharing and Reimbursement Agreement | |
| **ANDERSON DEFENDANTS' EXHIBITS** | | | |
| D-1 | 3/2/16 | Mark Perez Email with Post-Closing Adjustment Spreadsheets | |

| D-2 | 10/18/2015 | Bill Lardie Letter to Alchemy | |
| D-3 | 10/21/2015 | Jim Jenkins Email Chain | |
| D-4 | 11/10/2015 | Jim Jenkins Email with attached summary | |
| D-5 | 11/11/15 | Jim Jenkins Email Chain | |
| D-6 | 1/13/2016 | Mark Perez email chain re: Anderson settlement update | |
| D-7 | | Alchemy Settlement Memo | |
| D-8 | | SunTrust Lender Presentation | |
| D-9 | April 2016 | Confidential Information Memorandum Debt Recapitalization | |
| D-10 | 6/11/2016 | Mark Perez Email Chain re: Alchemy/SunTrust | |
| D-11 | | Updated Post-Closing Adjustment Spreadsheet | |
| D-12 | 6/23/2016 | Bill Lardie Email | |
| D-13 | 6/27/2016 | Bank of America Wire Transaction Detail | |
| D-14 | 6/27/2016 | Letter from Anderson Merchandisers to Alchemy | |

**Depositions**

Any party may use any deposition taken in this case in connection with trial, including in pre- and post-trial submissions. Deposition testimony shall be admitted into evidence to the extent such testimony is admissible under the Federal Rules of Evidence. The admissibility of deposition testimony cited in the parties' briefs shall be subject to the Court's determination of any evidentiary objection made by a party as if the deponent were testifying live at trial.

The parties shall exchange deposition designations no later than **July 15, 2026**. Counter-designations shall be served no later than **July 22, 2026,** after receipt of the initial designations. Any objections to designations or counter-designations shall be served no later than **July 31, 2026,** and shall be submitted to the Court for resolution as directed by the Court.

14

**Demonstrative Exhibits**

Copies of any demonstrative exhibits must be provided to the opposing party by no later than 5:00 p.m. (ET) on **August 27, 2026**.

## VII.   WITNESSES

### A.   Plaintiff's Witnesses

Plaintiff intends to call the following witnesses at trial (in person unless otherwise noted):

1.   William A. Homony, CIRA, Partner, Miller Coffey Tate LLP

2.   Jay Maier, CFO of Anderson Media Corporation (Individually and as representative of Defendants; as on cross examination)

[NOTE: Plaintiff reserves the right to call any witness identified by Defendants.]

### B.   Anderson Defendants' Witnesses

The Anderson Defendants intend to call the following witnesses at trial (in person unless otherwise noted):

1.   Jay Maier, CFO of Anderson Media Corporation

2.   John Campbell, former CFO of Anderson Merchandisers

3.   Bill Lardie, former CEO of ANConnect and Anderson Merchandisers

## VIII. PLAINTIFF'S STATEMENT OF INTENDED PROOF

### A.   The Trustee's $3.2MM Preference (Setoff) Claim Against Anderson Merchandisers

The Trustee will prove that the setoff of $3,208,314 due to Alchemy by ANConnect under the APA to satisfy an antecedent debt owed by Alchemy to Anderson Merchandisers constituted an avoidable preferential transfer under the Bankruptcy Code.

In its State Court Complaint, filed on February 23, 2016, ANConnect admitted that it owed Alchemy $3,208,314 for post-closing adjustments pursuant to the APA.  On April 12, 2016, Alchemy instructed ANConnect and Anderson Merchandisers to "offset the $3,208,314.00 that

ANconnect admittedly owes to Alchemy under the APA against the $2,281,556.13 Anderson [Merchandisers] demands as payment in full satisfaction of the amounts owed [to Anderson Merchandisers] under the Merchandising Agreement." These instructions were not effectuated until June 2016, when Anderson Merchandisers invoiced ANConnect $3,208,314.00 for "Amounts due from Alchemy for merchandising and related fee's [sic]." The invoice was paid by ANConnect before June 30, 2016, thus effectuating the setoff directed in Alchemy's April 12, 2016 letter within Section 547(b)'s ninety (90) day lookback period.

The setoff, in which a debt owed by ANConnect to Alchemy was used to offset a debt owed by Alchemy to Anderson Merchandisers, was triangular, not mutual, is thus outside the protection of Section 553, and is properly analyzed as a preference under Section 547. Alchemy's right to payment of $3,208,314.00 admittedly owed by ANConnect under the APA was used to satisfy an antecedent debt owed by Alchemy to creditor Anderson Merchandisers under the Merchandising Agreement, thus establishing the "to or for the benefit of a creditor" and antecedent debt elements of Section 547(b). Because the preferential transfer occurred during the ninety days immediately preceding the petition date, "the debtor is presumed to have been insolvent." 11 U.S.C. § 547(f). Finally, there is no conceivable situation where Alchemy's unsecured creditors will receive a 100% payout and accordingly the setoff enabled Anderson Merchandisers to receive more than it would in this chapter 7 case had the improper setoff not been made. The Trustee seeks recovery under Section 550 the $3,208,314 preferential transfer amount, plus pre-judgment and post-judgment interest.

**B.    The Trustee's Claims for Turnover and Breach of Contract Against ANConnect**

The Trustee will prove that ANConnect materially breached the TSA by collecting millions of dollars of Alchemy's accounts receivable and failing to remit those amounts to Alchemy as

16

required by Exhibit B to the TSA.  ANConnect has admitted that it holds at least $6,047,325 of Alchemy's accounts receivable which it collected on behalf of Alchemy yet failed to remit to Alchemy, thus admitting breach and establishing the Trustee's entitlement to turnover.  The Trustee will prove that the full amount of funds withheld by ANConnect is in excess of $8,110,735, which is the amount of damages he seeks, plus pre-judgment and post-judgment interest.

## IX. DEFENDANTS' STATEMENT OF INTENDED PROOF

### A.      The Trustee Cannot Prevail on his Preference Claim for $3,208,314

The Anderson Defendants will prove that ANConnect never "owed" Alchemy the Credit as the Trustee claims. The Credit was one part of a complex set of adjustments under the APA. Section 2.06 of the APA provided that Alchemy and ANConnect were to "jointly agree on any Purchase Price adjustments [. . .]"[1] within 180 days following the closing. Despite months of back-and-forth exchanges of correspondence and spreadsheets, Alchemy and ANConnect were unable to agree on the post-closing purchase price adjustments. However, Alchemy has always acknowledged that it owes more to ANConnect than *vice versa*.

ANConnect never had an obligation to "pay" Alchemy the Credit amount and Alchemy had no right to payment of the Credit. Thus, ANConnect could not have transferred and been paid on an antecedent debt owed to it by Alchemy.  Moreover, ANConnect did not pay the Credit to Anderson Merchandisers. ANConnect had already applied the Credit to amounts Alchemy owed ANConnect as noted in the Complaint filed in the State Court Action and ANConnect's proof of claim. Rather, what took place was that ANConnect made a wire transfer of $3,228,731.14 to Anderson Merchandisers on June 27, 2016.  This is corroborated by the demand letter from Anderson Merchandisers to Alchemy of the same date, demanding that Alchemy pay Anderson

---

[1] JX-1, APA, Section 2.06(vi).

Merchandisers $3,228,731.14 because it had not done so previously. ANConnect agreed to prevent its startup sister company from suffering losses arising from ANConnect's transaction of business. ANConnect indemnified Anderson Merchandisers in the amount of $3,228,731.14 and not the Credit amount of $3,208,314. Even if the Credit could be viewed as a transfer of Alchemy's property, Alchemy directed that only a portion of the Credit amount be applied to antecedent debt in April 2016.

Alchemy never paid as agreed under the APA and it failed to comply with its obligations under Sections 2.05 and 2.06 of the APA to finalize post-closing adjustments. Alchemy's compliance with the APA was a condition precedent to ANConnect's payment obligations. Thus, Alchemy's breaches of the APA bar it from claiming any right to payment of the Credit and ANConnect was permitted to apply the Credit to the substantial debt Alchemy owed ANConnect.

### B. The Trustee's Turnover Claim for $6,047,325 is without Merit.

The Trustee has no right to turnover of the Collected Amount because Alchemy always owed more to ANConnect than it was entitled to receive. Alchemy has acknowledged that ANConnect had setoff rights under the operative agreements and under Delaware law regarding the Collected Amount. Alchemy also understood that it benefitted from ANConnect setting off receivables collected under the TSA against sums Alchemy owed ANConnect because Alchemy needed ANConnect to continue providing valuable services under the TSA. Alchemy and ANConnect agreed that ANConnect could setoff the Collected Amount and it was the parties' practice to use such setoffs for their mutual benefit. This was permissible under the APA and TSA because the agreements were interrelated, and receivables collected under the TSA were subject to APA adjustments under section 2.06(d) of the APA. Even if that were not the case, the parties' conduct shows an intent and agreement to modify the contracts to permit the setoffs.

The Collected Amount was obtained from ANConnect's work under the TSA and based on the assets that Alchemy purchased but never paid for under the APA. Alchemy's failure to perform under the contracts relieved ANConnect from the obligation to remit receivables and eliminated any property right that Alchemy could claim in those sums. Regardless, Alchemy always owed a net debt to ANConnect and ANConnect had the right to setoff against the Collected Amount.

## X. SETTLEMENT EFFORTS

The parties hereby certify that they have engaged in a good faith effort to explore the resolution of the controversy by settlement, including via an in-person private mediation.

## XI. CONCLUSION

**THIS ORDER SHALL CONTROL THE SUBSEQUENT COURSE OF THE ACTION UNLESS MODIFIED BY THE COURT TO PREVENT MANIFEST INJUSTICE.**

Dated: July 10th, 2026
Wilmington, Delaware

MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE